UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LANDSCAPE CONSULTANTS OF TEXAS, INC., and METROPOLITAN LANDSCAPE MANAGEMENT, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF HOUSTON, TEXAS, and MIDTOWN MANAGEMENT DISTRICT, <br><br> Defendants. | Civil Action No. 4:23-cv-3516 <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> **JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This is an Equal Protection Clause challenge to the City of Houston and Midtown Management District's requirements for awarding public contracts based on the race of the bidding company's owner.

2. Plaintiffs Landscape Consultants of Texas, Inc. (Landscape Consultants), and Metropolitan Landscape Management, Inc. (Metropolitan), are two Houston-area small businesses that share approximately fifty employees. When they bid for local public contracts, Landscape Consultants and Metropolitan cannot compete on an equal footing with other businesses due to policies of Defendants City of Houston and Midtown Management District that give preferences to businesses owned by racial minorities.

1

3. Although most of Landscape Consultants' and Metropolitan's employees are racial minorities, the owners are not. These businesses are thus placed at a disadvantage just because their owners are not from a preferred race. Picking winners and losers based on race violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

## JURISDICTION AND VENUE

4. Plaintiffs bring this civil rights lawsuit pursuant to 42 U.S.C. §§ 1981 & 1983, for the violation of rights secured by the Fourteenth Amendment to the United States Constitution and to secure their rights to equal protection and equal benefit of the laws.

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

6. Venue is proper under 28 U.S.C. § 1391(b), on the ground that all or a substantial part of the acts giving rise to Plaintiffs' claims have occurred or will occur in the Southern District of Texas.

## PARTIES

7. Plaintiff Landscape Consultants of Texas, Inc., is a Texas corporation with its principal place of business in Spring, Texas. Landscape Consultants is 51 percent owned and controlled by a male individual who does not qualify as a Minority Business Enterprise (MBE) under the City's MBE

ordinance. Landscape Consultants has bid on landscaping contracts offered by Defendant City of Houston in the past, and stands ready, willing, and able to bid on government contracts in the greater Houston area.

8. Plaintiff Metropolitan Landscape Management, Inc., is a Texas corporation with its principal place of business in Spring, Texas. Metropolitan is 51 percent owned by a female individual who does not exercise day-to-day control and does not qualify as an MBE under the City's MBE ordinance. Metropolitan has bid on landscaping contracts offered by Defendant Midtown Management District in the past, and is ready, willing, and able to bid on government contracts in the greater Houston area.

9. Defendant City of Houston is a municipality of the State of Texas. A municipality is a "person" subject to suit under 42 U.S.C. § 1983. *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 690 (1978). Through the City's Office of Business Opportunity (OBO), the City and its agents are responsible for implementing and enforcing the City's minority set-aside program. Houston Code § 15-84(b).

10. Defendant Midtown Management District (MMD) is a special district created under Section 59, Article XVI of the Texas Constitution and operates under Chapter 375 of the Texas Local Government Code and Chapter 3809 of the Texas Special Districts Local Laws Code. A special district is a political subdivision that qualifies as a "person" subject to suit under 42 U.S.C.

§ 1983. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). Through its Board of Directors, who were appointed by the Houston Mayor and City Council, MMD and its agents are responsible for implementing and enforcing MMD's minority set-aside programs. Tex. Local Gov't Code § 375.222.

## FACTUAL ALLEGATIONS

### The Plaintiff Companies

11. Landscape Consultants and Metropolitan are family businesses owned by Gerald and Theresa Thompson. The companies share approximately fifty employees.

12. Since 2006, they have provided full-service landscaping across the Houston metro area, including irrigation installation, landscape design, and routine maintenance.

13. Both companies have a successful track record; they have a history of winning and delivering on large public contracts with the City, Harris County, and local government agencies, including a $1.5 million flood control tree planting and maintenance contract for Harris County. Due to their quality performance and fair pricing, Landscape Consultants and Metropolitan's public contracts are routinely renewed, and government agencies seek the companies out for assistance when other contractors fail to deliver.

14. Much of Metropolitan and Landscape Consultants' business depends on winning government landscaping contracts, which account for between 80–90 percent of their annual revenue.

## Houston's Racial Set-Aside Program

### *The MWSBE Program Requirements*

15. The City has operated a racial set-aside program since 1984. It is City policy to "stimulate the growth of local minority, women, and small business enterprises by encouraging the full participation of these business enterprises in various phases of city contracting." Houston Code § 15-81(a).

16. To further this policy, the City Council sets annual citywide percentage goals for awarding City contracts in construction, goods and nonprofessional services, and professional services to businesses that either (1) are owned by racial minorities, known as "minority business enterprises" or "MBEs," (2) are owned by women, known as "women business enterprises" or "WBEs," or (3) qualify as "small business enterprises" or "SBEs." Houston Code § 15-83(b). Collectively, MBEs, WBEs, and SBEs are referred to as "MWSBEs."

17. Landscape Consultants and Metropolitan do not challenge the City's preference program for either woman-owned business enterprises or small business enterprises.

18. City ordinance defines "minority business enterprise" or "MBE" as a business in which at least 51 percent of the ownership, stock, or assets is owned, controlled, and managed by "minority persons." Houston Code § 15-82.

19. The City in turn defines "minority person" along strict racial and ethnic lines as "a citizen or legal resident alien of the United States who is:

   a. Black American, which includes persons having origins in any of the black racial groups of Africa;

   b. Hispanic American, which includes persons of Mexican, Puerto Rican, Cuban, Central or South American, or other Spanish or Portuguese culture or origin, regardless of race;

   c. Asian-Pacific American, which includes persons having origins from Japan, China, Taiwan, Korea, Burma (Myanmar), Vietnam, Laos, Cambodia (Kampuchea), Thailand, Malaysia, Indonesia, the Philippines, Brunei, Samoa, Guam, the U.S. Trust Territories of the Pacific Islands (Republic of Palau), the Commonwealth of the Northern Marianas Islands, Macao, Fiji, Tonga, Kiribati, Juvalu [sic], Nauru, the Federated States of Micronesia, or Hong Kong, or the region generally known as the Far East;

   d. Native American, which includes persons having origins in any of the original people of North America, American Indian, Eskimo, Aleut, Native Hawaiian; or

    e. Subcontinent Asian American, which includes persons whose origins are from India, Pakistan, Bangladesh, Bhutan, the Maldives Islands, Nepal, or Sri Lanka."

Houston Code § 15-82.

20. The citywide overall goal for construction contracts awarded to MWSBEs, which has remained the same for a decade, is 34 percent of overall contracting dollars spent. The citywide goal for professional services contracts awarded to MWSBEs is 24 percent, and goods and nonprofessional services contracts awarded to MWSBEs is 11 percent.

21. City departments are required to set contract-specific percentage goals for construction contracts in excess of $1 million, goods and nonprofessional services contracts in excess of $100,000, and professional service contracts in excess of $50,000. Houston Code §§ 15-82, 15-83(c)(2); Office of Business Opportunity, Policies and Procedures (Feb. 2, 2022) at 22.[1] These contract-specific goals are not required in specific circumstances, such as during a state of public or administrative emergency, or if the possible MWSBE participation level is negligible. Houston Code § 15-83(c)(1).

22. City construction contracts include separate percentage goals for MBEs and WBEs. SBEs may be used to fulfill up to 4 percent of either the MBE

---

[1] Available at https://www.houstontx.gov/obo/docsandforms/OBO-Policies-and-Procedures-20220202.pdf

7

or WBE goal. City contracts for professional services or goods and nonprofessional services have combined MWBE percentage goals. These combined goals may be met with MBE participation, WBE participation, or a combination of both that may also include up to 4 percent SBE participation.

23. Prior to bidding on any City contract, bidders must submit a plan explaining how they will meet the contract-specific goal or provide proof that they took specific steps demonstrating a genuine good faith effort to obtain MWSBE participation.

24. Failure to prove good faith efforts can lead to a five-year suspension from all City contracts. Houston Code § 15-86(a).

*The MWSBE Program's Justification*

25. At least every five years, the City "shall make its best efforts" to review the minority business enterprise program so that the City Council may determine whether there is "strong statistical and anecdotal evidence of discrimination" against minority business enterprise in city contracting that warrants a continued race-conscious policy. Houston Code § 15-81(b).

26. The City undertakes this review of its MWSBE program through comprehensive disparity studies. The most recent comprehensive disparity study is dated December 31, 2006.[2]

---

[2] The City of Houston Disparity Study, Mason Tillman Associates, December 2006, https://www.houstontx.gov/obo/docsandforms/2006-COH-Disparity-Study.pdf

8

27. The City contracted for but never released a 2016 comprehensive disparity study.

28. The City recently engaged a consulting firm to provide a new disparity study.

*How the MWSBE Program Affects the Plaintiff Businesses*

29. Landscape Consultants is currently in year three of a $1.3 million, five-year contract with the City. The contract-specific goal for MWBEs in this nonprofessional services contract is 11 percent of the total contract value.

30. This means that Landscape Consultants must take at least $143,000 of work away from its (largely minority) staff, even though they are capable of doing the work, and pay a competitor to do the work—solely because of the race of Landscape Consultants' owner and the race of its competitor's owner.

31. Similarly, when bidding on a contract, Plaintiffs' bid must compensate for the percentage of the total contract value that must be given away to an MBE or WBE.

32. Plaintiffs' competitors, who are certified MWBEs, are not required to give away the entire value of the contract-specific goal or compensate for such loss in their bids.

33. Plaintiffs have no plain, speedy, and adequate remedy at law for this violation of their right to equal protection. Damages are indeterminate or unascertainable and would not fully redress Plaintiffs' harm.

## MMD's Racial Set-Aside Program

### *The MWDBE Program*

34. Defendant MMD enforces a race-based bid evaluation system for public contracts. This system awards bonus points to bids from "minority, women, and disadvantaged business enterprises" (MWDBEs) that are certified by the City, the Houston Minority Business Council, or the "Houston Women's Business Council."

35. MMD communicates its MWDBE program to bidders through bid documents accompanying each contract, which contain a paragraph advising bidders that "[i]t is the policy of the Midtown District to stimulate the growth of minority, women, and disadvantaged business enterprises by encouraging the full participation of MWDBE businesses in all phases of its procurement activities and affording those firms a full and fair opportunity to compete for contracts." *See, e.g.*, Ex. 1–4.

36. MMD also communicates its MWDBE policy through its published criteria for evaluating bids. Bidders may earn up to 100 points across four categories. Ten points are awarded for being a minority business enterprise.

The other three categories and their point allocations have changed over the years, but the 10 points awarded to MWDBEs remains constant. *Id.*

37. Businesses that are not certified MWDBEs can never receive these 10 points and are therefore put at a significant disadvantage because of their race.

38. MMD did not conduct a market study to support its policy that awards points based on the race of a business's owner.

### *How MMD's race-based programs affect Plaintiff Businesses*

39. Plaintiff Metropolitan has successfully bid on MMD contracts since the early 2000s.

40. Plaintiffs are majority-owned by individuals who cannot qualify as minority-owned and cannot qualify for an MWDBE preference. Plaintiffs cannot be certified as an MBE or WBE by the City.

41. In 2022, Metropolitan bid for the Field Maintenance Services Project, a contract it had repeatedly won for the last fifteen years. Bids were evaluated on the following point scale:

> Financial considerations – 50 points
> Organizational Qualifications and References – 25 points
> Proposed Approach – 15 points
> Minority, Women, Disadvantaged Enterprise (MWDBE) – 10 points

Only the 10 MWDBE points are awarded on an all-or-nothing basis. Ex. 3.

42.    The successful bidder and highest point-scorer earned 87.68 points total, including 10 points awarded in the MWDBE category for being certified as a minority and women-owned business enterprise. Metropolitan scored the second highest, with 84.98 points total. Metropolitan received zero MWDBE points.

43.    The following chart shows bidders on the project and their point scores:

Midtown Management District - Field Maintenance Services Project
November 2022

|  | Financial Considerations | Organizational Qualifications and References | Proposed Approach | Minority, Women, Disadvantaged Business Enterprise (MWDBE) | Comments | AVG TOTAL |  |
|---|---|---|---|---|---|---|---|
| ASSIGNED WEIGHT | 0.50 | 0.25 | 0.15 | 0.10 |  |  |  |
|  | 50.00 | 14.63 | 10.28 | 10.00 |  | 84.90 |  |
| Metropolitan Landscape Management | 46.14 | 24.58 | 14.25 | 0.00 |  | 84.98 |  |
|  | 23.14 | 12.71 | 2.88 | 0.00 |  | 38.73 |  |
|  | 44.10 | 21.08 | 12.50 | 10.00 |  | 87.68 | * |
|  | 37.48 | 18.83 | 11.50 | 10.00 |  | 77.82 |  |
|  | 20.41 | 20.58 | 11.83 | 0.00 |  | 52.82 |  |

\* - Contract Award

44.    If not for the 10 MWDBE points that were awarded to the successful bidder and not awarded to Metropolitan on the basis of its owner's race, Metropolitan would have scored higher than all other bidders and secured the $350,000 contract.

45.    Plaintiffs would like to bid on MMD contracts in the future but cannot submit competitive bids for many or all of those contracts due to the 10-point disadvantage they suffer as non-MWDBE certified businesses.

12

46. Plaintiffs have no plain, speedy, and adequate remedy at law for this violation of their right to equal protection. Damages are indeterminate or unascertainable and would not fully redress Plaintiffs' harm.

## FIRST CLAIM FOR RELIEF

### The City of Houston's MBE Program Violates the Equal Protection Clause of the Fourteenth Amendment, through 42 U.S.C. § 1983

47. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs of this Complaint.

48. The City's MWSBE program treats businesses differently based on the race of their owners.

49. Because the City's MWSBE program grants special preferences to businesses based on the race of the business owner, it must satisfy strict scrutiny.

50. The City does not have a compelling governmental interest that justifies the MWSBE program's racial classifications.

51. The City lacks a strong basis in evidence that its MBE goals are related to remedying the past or present effects of racial discrimination in any particular industry or in the City.

52. The MWSBE program's racial classifications are not narrowly tailored to meet any such compelling interest.

53. Because the City's MWSBE program uses racial classifications to award public contracts, furthers no compelling interest, and is not narrowly tailored, it violates the Equal Protection Clause.

54. Plaintiffs have been in the past and, unless enjoined by this Court, will continue to be harmed in the future by the City's MWSBE program.

55. Accordingly, Plaintiffs are entitled to injunctive and declaratory relief.

## SECOND CLAIM FOR RELIEF

### MMD's MWDBE Program Violates the Equal Protection Clause of the Fourteenth Amendment, through 42 U.S.C. § 1983

56. Plaintiffs allege and incorporate by reference the allegations set forth in the preceding paragraphs of this Complaint.

57. MMD's MWDBE program treats businesses differently based on the race of their owners.

58. Because MMD's MWDBE program grants special preferences to businesses based on the race of the business owner, it must satisfy strict scrutiny.

59. MMD does not have a compelling governmental interest that justifies the MWDBE program's racial classifications.

60. MMD lacks any basis, let alone a strong basis in evidence, that its 10-point MBE set-aside is necessary to remedy past or present racial discrimination.

61. The City of Houston's racial classifications as adopted by MMD's MWDBE policy are not narrowly tailored to a compelling governmental interest.

62. The MWDBE policy's broad borrowed definition of "minority persons" and its crude division between minority and nonminority owned businesses are beyond the scope of what is constitutionally permissible to remedy past intentional discrimination by MMD.

63. Plaintiffs have been in the past, and unless enjoined by this Court, will in the future be harmed by MMD's MWDBE program.

64. Plaintiffs are entitled to injunctive and declaratory relief.

## THIRD CLAIM FOR RELIEF

### City of Houston's MBE Program Violates Plaintiffs' Equal Rights Under the Law, through 42 U.S.C. § 1981

65. Plaintiffs allege and incorporate by reference the allegations set forth in the preceding paragraphs of this Complaint.

66. Plaintiffs are "persons" within the meaning of 42 U.S.C. § 1981.

67. The City of Houston's MBE Program discriminates on the basis of race in violation of 42 U.S.C. § 1981.

68. The City of Houston's Program granting preferential treatment on the basis of race denies Plaintiffs the full and equal benefit of the laws within the meaning of 42 U.S.C. § 1981.

69. Plaintiffs are entitled to injunctive and declaratory relief.

## FOURTH CLAIM FOR RELIEF

### MMD's MWDBE Program Violates Plaintiffs' Equal Rights Under the Law, through 42 U.S.C. § 1981

70. Plaintiffs allege and incorporate by reference the allegations set forth in the preceding paragraphs of this Complaint.

71. Plaintiffs are "persons" within the meaning of 42 U.S.C. § 1981.

72. MMD's MWDBE Program discriminates on the basis of race in violation of 42 U.S.C. § 1981.

73. MMD's Program granting preferential treatment on the basis of race denies Plaintiffs the full and equal benefit of the laws within the meaning of 42 U.S.C. § 1981.

74. Plaintiffs are entitled to injunctive and declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

1. Declare the City of Houston's MWSBE program unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §§ 1981 & 1983;

2. Permanently enjoin the City of Houston from operating its MWSBE program or using similar racial preferences in the award of public contracts;

3. Declare Midtown Management District's MWDBE policy unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

4. Permanently enjoin Midtown Management District from operating its MWDBE policy or using similar racial preferences in the award of public contracts;

5. Issue an award of attorneys' fees and costs in this action pursuant to Federal Rule of Civil Procedure 54(d) and 42 U.S.C. § 1988; and

6. Provide such other and further relief as the Court deems just and proper.

DATED: September 19, 2023.

Respectfully submitted,

Joshua P. Thompson*
*Of Counsel*
Cal. Bar No. 250955
Pacific Legal Foundation
555 Capitol Mall
Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Fax: (916) 419-7747
jthompson@pacificlegal.org

*Pro Hac Vice forthcoming

s/ *Erin E. Wilcox*
Erin E. Wilcox
*Attorney-in-Charge*
Cal. Bar No. 337427
S.D. Tex. Bar No. 3369027
Pacific Legal Foundation
555 Capitol Mall
Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Fax: (916) 419-7747
ewilcox@pacificlegal.org

*Counsel for Plaintiff*