**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| LANDSCAPE CONSULTANTS OF TEXAS, INC., and METROPOLITAN LANDSCAPE MANAGEMENT, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> CITY OF HOUSTON, TEXAS, and MIDTOWN MANAGEMENT DISTRICT, <br><br> *Defendants*. | Civil Action No. 4:23-cv-03516 <br><br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF HOUSTON'S MOTION TO DISMISS** |

## INTRODUCTION

Two Houston-area small businesses want to compete for local public contracts on an equal footing with their competitors. Defendant City of Houston (City) won't let them, thanks to its set-aside program that requires the City to treat contractors differently based on the race of the business' owner. It now asks this Court to dismiss the small businesses' civil rights complaint. This Court should refuse.

This case involves two plaintiffs: Metropolitan Landscape Management, Inc., (Metropolitan) and Landscape Consultants of Texas, Inc., (Landscape Consultants) (collectively, Plaintiffs). The case also involves two defendants: the City and Midtown Management District (MMD). In their Complaint, ECF No. 1, Plaintiffs bring a total of four claims, with two claims against each Defendant. With respect to the City, the Complaint alleges that the City operates a Minority, Women, and Small Business Enterprise (MWSBE) program that treats public contractors differently based on the

1

race of the business' owner. Complaint, ECF No. 1 at ¶¶ 47–55, 65–69. This race-based differential treatment violates both the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and the "full and equal benefit of the laws" clause of 42 U.S.C. § 1981. *Id*.

| Plaintiffs | Defendant | Claim for Relief |
|---|---|---|
| Landscape Consultants & Metropolitan | City of Houston | Equal Protection Clause through 42 U.S.C. § 1983 |
| Landscape Consultants & Metropolitan | MMD | Equal Protection Clause through 42 U.S.C. § 1983 |
| Landscape Consultants & Metropolitan | City of Houston | Equal Rights Under the Law through 42 U.S.C. § 1981 |
| Landscape Consultants & Metropolitan | MMD | Equal Rights Under the Law through 42 U.S.C. § 1981 |

Notably, the City's Motion to Dismiss does not challenge Landscape Consultant's Fourteenth Amendment equal protection claim in any respect. Regardless of how this Court rules on the instant motion, the case will go forward.

But both of Plaintiffs' claims against the City should move forward, and both Plaintiffs have standing to press those claims. Both claims seek declaratory and injunctive relief. Both Plaintiffs are qualified, willing, and able to bid on future City of Houston contracts. The City's Motion to Dismiss misunderstands the facts pled in Plaintiffs' Complaint. It also misstates the relevant case law applicable to prospective equal protection claims against government set-aside programs. Metropolitan satisfies the standing and pleading requirements for its claims against the City—just

like Landscape Consultants—which the City doesn't even dispute. The City's Motion to Dismiss should be denied.

## STATEMENT OF FACTS

**Legal Background**

The City's MSWBE program exists to "stimulate the growth of local minority, women, and small business enterprises by encouraging the full participation of these business enterprises in various phases of city contracting." Houston Code § 15-81(a). To achieve this goal, the City Council sets annual citywide percentage goals for City contracts in the areas of construction, goods and nonprofessional services, and professional services. Houston Code § 15-83(b). Each City department then sets contract-specific percentage goals for each individual contract, with limited exceptions. Houston Code §§ 15-82, 15-83(c)(1)−(2). Successful bidders who fail to either satisfy the contract-specific goal or prove good faith efforts to do so can be banned from all City contracts for five years. Houston Code § 15-86(a).

The City "shall make its best efforts" to review the MWSBE program every five years to determine if it's still necessary. Houston Code § 15-81(b). The City's last comprehensive disparity study was completed in 2006. ECF No. 1 at ¶ 26.

**Factual Background**

Landscape Consultants and Metropolitan are small family landscaping businesses that share approximately fifty employees. *Id.* ¶ 4. Both companies have provided landscaping services across the Houston area since 2006. *Id.* at ¶ 12. Approximately 80−90 percent of each company's annual revenue comes from winning government landscaping contracts. *Id.* at ¶ 13.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(1) authorizes the dismissal of a case for lack of subject matter jurisdiction. In evaluating a motion to dismiss under Rule 12(b)(1), the court "construes the complaint broadly and liberally" and must "accept as true all uncontroverted factual allegations of the pleadings." *Lawal v. British Airways, PLC*, 812 F.Supp. 713, 716 (S.D. Tex. 1992) (citations omitted).

When considering a motion to dismiss under Rule 12(b)(6), courts must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001). All questions of fact and any ambiguities in the controlling substantive law must be resolved in favor of the plaintiff. *Id.*

Under both Rule 12(b)(1) and Rule 12(b)(6), motions to dismiss "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n of Mississippi, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998); *see also Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001); *Benton v. U.S.*, 960 F.2d 19, 21 (5th Cir. 1992).

**ARGUMENT**

I.  **Metropolitan Has Standing and Raises Viable Section 1981 and 1983 Claims**

Plaintiffs stand in the same position today as they did in their Complaint. Both companies are qualified, willing, and able to bid on City contracts, but they are disadvantaged because of the racial barriers imposed by the City's MWSBE program.

4

Landscape Consultants has previously bid on City landscaping contracts and Metropolitan has bid on similar contracts with other local government entities. ECF No. 1 at ¶¶ 7–8. Under longstanding Supreme Court precedent, these allegations more than suffice for Article III standing in a forward-looking equal protection claim. The allegations also satisfy the statutory standing requirements for section 1981 claims.

### A. This Court has Jurisdiction over Each of Metropolitan's Claims

Metropolitan has Article III standing to bring its equal protection claim against the City because it has suffered (1) an "injury in fact" (2) that is "fairly traceable" to the City and (3) redressable by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). In a forward-looking equal protection challenge to a set-aside program like the City's, the "'injury in fact' is the inability to compete on an equal footing in the bidding process, not the loss of a contract." *N.E. Fla. Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 666 (1993).

In *W.H. Scott Const. Co. v. City of Jackson,* the Fifth Circuit held that a construction company was not required to prove that it lost contracts because of the city's minority set-aside policy, but only that the policy forces the company to compete for contracts on an unequal basis. 199 F.3d 206, 213 (5th Cir. 1999) (citing *N.E. Fla.*, 508 at 666: "The 'injury in fact'…is the denial of equal treatment resulting from the imposition of [a] barrier, not the ultimate inability to obtain the benefit."); *see also Nuziard v. Minority Business Development Agency*, No. 4:23-cv-0278, 2023 WL 3869323, at *3 (N.D. Tex. June 5, 2023) (plaintiff has standing if he is likely to apply

5

for program in the reasonably foreseeable future if not for the government's unconstitutional barriers). Metropolitan "need only demonstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis." *W.H. Scott Const.*, 199 F.3d at 212.

Metropolitan's Complaint could not be clearer. It alleges that it is qualified, willing, and able to bid on government contracts in the Houston area, which includes the City of Houston, and that it is prevented from doing so on an equal basis by the City's MWSBE program. ECF No. 1 at ¶¶ 8, 31–32. This showing satisfies the injury and traceability requirements of Article III standing. The City does not dispute that a favorable decision from this court would redress Metropolitan's injury. The fact that Metropolitan has bid on similar landscaping contracts in Houston—although ones let by other government instrumentalities—*strengthens* its claim that it is ready to bid on City of Houston contracts as well. It certainly doesn't undercut it.

Metropolitan also has standing to bring its section 1981 claim against the City. A plaintiff has statutory standing if it falls within the class of plaintiffs whom Congress has authorized to sue. *White Glove Staffing, Inc. v. Methodist Hospitals of Dallas*, 947 F.3d 301, 307 (5th Cir. 2020) (citing *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)). Courts examine "(1) whether the plaintiff falls within the statute's zone of interests and (2) whether the plaintiff's alleged injuries were proximately caused by violation of the statute." *White Glove*, 947 F.3d at 307 (internal quotation marks omitted).

The zone of interest inquiry is "not especially demanding," and looks to the operative statute. *Id*. Section 1981 protects the equal right of "[a]ll persons within the jurisdiction of the United States … to the full and equal benefit of all laws" without respect to race. 42 U.S.C. § 1981. Metropolitan's section 1981 claim that the City's race-based MWSBE program leaves Metropolitan unable to compete equally for contracts with the City because of the race of its owner falls squarely within this zone. *See Lexmark*, 572 U.S. at 130 (zone of interest tests not met "only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot be reasonably assumed that Congress authorized that plaintiff to sue.") (internal quotation marks and citation omitted).

The proximate cause test is met if the "harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Id*. at 133. In *White Glove*, a hospital terminated the contract of a temporary staffing agency because the agency assigned a black employee when the hospital had demanded Hispanic employees. 947 F.3d at 304. The staffing agency demonstrated proximate cause under section 1981 because the contract termination had a "sufficiently close connection" to the racial discrimination in making and enforcing contracts prohibited in section 1981. *Id*. at 308. Here, Metropolitan's alleged harm—the inability to compete for contracts on an equal footing because of the race of its owners—has an equally close connection to section 1981's guarantee of the "full and equal benefit of all laws." Accordingly, this Court has jurisdiction and Metropolitan has standing to bring its section 1981 claim against the City.

**B. Metropolitan Properly Pleads a Prospective Equal Protection Claim**

Race-based classifications by local governments are subject to strict scrutiny. *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493−94 (1989). As the Supreme Court held in *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College* (*SFFA*), the only two compelling interests that permit race-based government policies like the City's are "remediating specific, identified instances of past discrimination that violated the Constitution or a statute," or avoiding prison race riots. 600 U.S. 181, 207 (2023). Plaintiffs allege that the City's stated purpose to "simulate the growth of local minority, women, and small business enterprises by encouraging the full participation of these business enterprises in various phases of city contracting" falls far short of that high bar and that the City lacks a strong basis in evidence that its race-based contracting goals are related to remedying past or present discrimination in any particular industry or in the City. ECF No. 1 at ¶¶ 15, 49−51.

Race-based classifications by local governments must also be narrowly tailored to survive strict scrutiny. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995). Plaintiffs allege that the MWSBE program's racial classifications, which are virtually identical to the U.S. Department of Transportation's racial classifications under 49 CFR § 26.5 and encompass the entire populations of two continents and thirty-seven countries, are not narrowly tailored to meet any compelling interest. ECF No. 1 at ¶¶ 19, 52; *see also Croson*, 488 U.S. at 506 ("gross overinclusiveness" of a city's racial preference "strongly impugns" its claim of remedial motivation and narrow tailoring); *Vitolo v. Guzman*, 999 F.3d 353, 363−64 (6th Cir. 2021) (race-based

8

grant program's reliance on Small Business Administration racial classifications not narrowly tailored). Plaintiffs also allege facts showing the MWSBE program has no end point, a key requirement for a narrowly tailored race-based program. ECF No. 1 at ¶¶ 15, 25–26 (MWSBE program has been in place since 1984 with no comprehensive evaluation in seventeen years); *see also Grutter v. Bollinger*, 539 U.S. 306, 342 (2003) (race-conscious programs must have a termination point); *SFFA*, 600 U.S. at 225 (periodic review does not "make unconstitutional conduct constitutional").

Just like Landscape Consultants' unchallenged equal protection claim, Metropolitan's equal protection claim is properly pled and should proceed.

## C. Metropolitan Properly Pleads a Prospective Claim under 42 U.S.C. § 1981

The test typically used establish a claim under section 1981 is to require a showing that (1) the "plaintiff is a member of a racial minority;" (2) the defendant intended to "discriminate on the basis of race;" and (3) "the discrimination concerned one or more of the activities enumerated in the statute." *Bluitt v. Houston Indep. Sch. Dist.*, 236 F.Supp.2d 703, 719 (S.D. Tex. 2002) (citation omitted). Despite the racial minority requirement, the Supreme Court has long recognized that section 1981 prohibits racial discrimination regardless of the plaintiff's race. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295 (1976) (Section 1981 was intended to "proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race").

To satisfy the second and third prongs at the pleading stage, Plaintiffs allege that the City intentionally operates a MWSBE program that uses racial

9

classifications to disadvantage non-minority contractors during the bidding process and contract performance. ECF No. 1 at ¶¶ 15, 30−32. Both activities fall within section 1981's protection to "make and enforce contracts" without respect to race. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006).

Although 42 U.S.C. § 1983 is the exclusive federal damages remedy for a section 1981 claim against a state actor, *Jett v. Dallas Independent School District*, 491 U.S. 701, 733 (1989), Plaintiffs seek only forward-looking declaratory and injunctive relief. ECF No. 1 at 16−17 (Prayer for Relief). Plaintiffs' section 1981 claim against the City should proceed.

## II. The City's Arguments Are Unpersuasive

The City's arguments for dismissal under Rules 12(b)(1) and 12(b)(6) misunderstand Plaintiffs' complaint. Although it is undoubtedly true that the City discriminated against Plaintiffs in awarding *past* contracts, Plaintiffs are not seeking remedies for those discriminatory actions. The City's arguments are entirely backwards-looking, but Plaintiffs' actual claims are entirely forward-looking. While Plaintiffs have been harmed in the past by the MWSBE program's racially-discriminatory contract goals and barriers to equal competition, their claims seek to prevent future violations of their right to equal protection and equal benefit of the laws.

### A. Metropolitan Makes Direct Claims Against the City

The City's failure to grapple with the forward-looking nature of Metropolitan's claims explains its focus on distinguishing itself from the Midtown Management District. It argues that Metropolitan's claims against the City should be dismissed

pursuant to Rule 12(b)(1) because the City and Midtown are separate entities. ECF No. 18 at 4. This argument misunderstands the nature of Plaintiffs' claims. Metropolitan's claims against the City do not rely on an agency theory of vicarious liability. *See* ECF No. 18 at 6–7. They do not rely on proving the discriminatory nature of past bids at all. As alleged in Plaintiffs' Complaint, Metropolitan—like Landscape Consultants—is harmed by the *City's* ongoing and future use of discriminatory criteria when administering its public contracting program. ECF No. 1 at ¶¶ 31–32, 54.

### B. Discriminatory Intent Is Not Required

In arguing for dismissal under Rule 12(b)(6), the City contends that Metropolitan fails to state an equal protection claim because it does not "adequately allege" disparate treatment. ECF No. 18 at 10. The City claims that Metropolitan must allege that "(1) it received different treatment from others and (2) the unequal treatment came from discriminatory intent." *Id*. Once again, the City fails to grasp Metropolitan's claim.

Metropolitan has not brought a Title VII disparate impact claim or a claim of racial harassment under Title VI—it alleges that the City's MWSBE program *facially* requires discriminatory racial classifications in violation of the Equal Protection Clause. ECF No. 1 at ¶¶ 47–55. Metropolitan alleged in the Complaint that the City's MWSBE program treats businesses differently based on the race of their owners, that Metropolitan does not qualify as a minority-owned business under the City's MWSBE program, that Metropolitan would be required to compensate for the percentage of the total contract value that must be given away to a MBE or WBE when bidding for

City contracts, and that MBE and WBE competitors are not required to give away the entire value of the contract-specific goal or compensate for such loss in their bids. ECF No. 1 at ¶¶ 8, 31–32, 48. A showing of discriminatory intent or animus is not required in equal protection challenges to race-based government programs. *See, e.g., Croson*, 488 U.S. at 500 (striking down race-based contracting program despite supposedly benign purpose); *Adarand*, 515 U.S. at 226 ("good motives" not enough when state employs explicit racial classification system); *Shelley v. Kraemer*, 334 U.S. 1, 19-20 (1948) (racially restrictive covenants violate Equal Protection Clause even absent discriminatory intent).

In support of its claim, the City cites three cases, none of which involve race-based public contracting programs. In *Fennell v. Marion Independent School District*, students brought a Title VI racially hostile environment claim and equal protection claims against their school district for racial discrimination and harassment by students and employees. 804 F.3d 398, 401 (5th Cir. 2015). The facts of *Priester v. Lowndes County* involve a racially-motivated attack on a high school student. 354 F.3d 414, 418 (5th Cir. 2004). And in *Walker v. University of Texas Medical Branch*, the factual and legal bases for the pro se plaintiff's claims were so "unclear" that it was initially "impossible for the court to determine" whether it had jurisdiction and if so, whether the facts alleged would establish cognizable claims. No. 1:08-cv-417, 2009 WL 2461024, at *2 (E.D. Tex. Aug. 7, 2009). None of these cases are remotely relevant to Plaintiffs' claims.

12

## C. Metropolitan Does Not Qualify as a Woman-Owned Business Enterprise

The City contends that Metropolitan's equal protection claim should also be denied because "it has also pleaded facts that demonstrate that it could be treated the same as MBEs under the City's program," presumably as a woman-owned business enterprise (WBE). ECF No. 18 at 11. This is flatly incorrect. While Metropolitan's majority owner is female, ECF No. 1 at ¶ 8, to qualify as a WBE under City law, Metropolitan must be "owned, controlled and managed by one or more women." The definition of "owned, controlled, and managed" requires that woman owners "shall have recognized, ultimate control over all day-to-day business decisions affecting the …WBE and shall hold a title commensurate with such control." Houston Code § 15-82 (emphasis added). The Complaint clearly states that Metropolitan "is 51 percent owned by a female individual who *does not* exercise day-to-day control" over the company, making Metropolitan ineligible for certification as a WBE. ECF No. 1 at ¶ 8 (emphasis added).

## D. Plaintiffs' Section 1981 Claims Seek Only Equitable Remedies

In addition to their constitutional claims, Metropolitan and Landscape Consultants allege that the City's MWSBE program discriminates on the basis of race in violation of 42 U.S.C. § 1981. ECF No. 1 at ¶¶ 65−69. Citing *Jett*, 491 U.S. at 735, the City contends that Plaintiff's section 1981 claims should be dismissed because section 1981 "does not create a cause of action or remedy against a municipality independent of what is provided for by section 1983." ECF No. 18 at 8. However, what the Supreme Court actually concluded in *Jett* is that section 1983 "provides the

exclusive *federal damages remedy* for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." 491 U.S. at 735 (emphasis added). The Fifth Circuit applied *Jett*'s holding in *Escamilla v. Elliott*, finding that plaintiffs are required to assert causes of action against local government actors under section 1983 "in order to obtain a monetary remedy for violations of civil rights protected by § 1981." 816 Fed. Appx. 919, 922 (5th Cir. 2020). The City finds no support in *Oden v. Oktibbeha County*, 246 F.3d 458 (5th Cir. 2001), either; the plaintiff in that case sought compensatory and punitive damages against the government defendants. *Id.* at 462. In fact, the City cannot cite any case that holds that section 1981 does not provide an equitable remedy for claims against state actors, nor does it dispute that Plaintiffs seek only declaratory and injunctive relief, ECF No. 1 at 16−17 (Prayer for Relief). Plaintiffs' section 1981 claims should proceed.

### E. Section 1981 Claims Do Not Require an Ongoing Contractual Relationship

Finally, the City claims that Metropolitan fails to articulate a section 1981 claim because Metropolitan did not "attempt to bid or otherwise contract with the City." ECF No. 18 at 12. The City goes on to fault Metropolitan because it "fails to identify a specific contract it wishes to make with the City." *Id.* However, the Supreme Court has been "clear" on "what should be obvious from reading the text of the statute: Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship," in addition to impairing an existing contractual relationship. *Domino's Pizza*, 546 U.S. at 476. What's more, the City's race-based set aside program discriminates against Plaintiffs in every future landscaping contract,

14

and the City cites no cases in support of its claim that Plaintiffs must identify a specific contract they want to bid for under this circumstance. Metropolitan does not claim that the City's MWSBE program denies Metropolitan the equal benefit of the laws under section 1981 in a single contract; it denies Metropolitan the equal benefit of the laws under section 1981 in *every* contract simply because of the race of its owners.

Metropolitan and Landscape Consultants allege in the Complaint that they are qualified, willing, and able to bid on government contracts in the Houston metro area, and that the City's MWSBE program places them at a competitive disadvantage in the bidding process which impairs the creation of a contractual relationship. ECF No. 1 at ¶¶ 7–8, 31–32; *see also Runyan v. McCrary*, 427 U.S. 160, 172 (section 1981 protects the rights of those who "sought to enter into contractual relationships"). An ongoing contractual relationship is not required to plead a section 1981 claim, and Metropolitan's section 1981 claim should proceed.

## CONCLUSION

Defendant City of Houston's Motion to Dismiss should be denied.

DATED: December 20, 2023

Respectfully submitted,

s/ *Erin E. Wilcox*

| | |
|---|---|
| Joshua P. Thompson* | Erin E. Wilcox |
| *Of Counsel* | *Attorney-in-Charge* |
| Cal. Bar No. 250955 | Cal. Bar No. 337427 |
| Pacific Legal Foundation | S.D. Tex. Bar No. 3369027 |
| 555 Capitol Mall | Pacific Legal Foundation |
| Suite 1290 | 555 Capitol Mall |
| Sacramento, CA 95814 | Suite 1290 |
| Telephone: (916) 419-7111 | Sacramento, CA 95814 |
| Fax: (916) 419-7747 | Telephone: (916) 419-7111 |
| jthompson@pacificlegal.org | Fax: (916) 419-7747 |
| | ewilcox@pacificlegal.org |

*Pro Hac Vice

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2023, I served this document via the Court's electronic filing system to the Defendants.

s/ *Erin E. Wilcox*  
Erin E. Wilcox  
Pacific Legal Foundation