# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| LANDSCAPE CONSULTANTS OF TEXAS, INC., and METROPOLITAN LANDSCAPE MANAGEMENT, INC., | Civil Action No. 4:23-cv-03516 |
| *Plaintiffs*, | |
| v. | **PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, AND MEMORANDUM IN SUPPORT, AGAINST DEFENDANT CITY OF HOUSTON** |
| CITY OF HOUSTON, TEXAS, and MIDTOWN MANAGEMENT DISTRICT, | |
| *Defendants*. | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................... i

TABLE OF AUTHORITIES ................................................................................ ii

MOTION FOR SUMMARY JUDGMENT ........................................................ 1

INTRODUCTION ............................................................................................... 1

STATEMENT OF FACTS .................................................................................. 3

    *City of Houston's MWSBE Program* ........................................................ 3

    *The Plaintiffs* ............................................................................................ 5

    *Procedural History* ................................................................................... 6

STANDARD OF REVIEW ................................................................................. 6

ARGUMENT ...................................................................................................... 7

CONCLUSION ................................................................................................. 13

CERTIFICATE OF SERVICE ......................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).................................................................................6

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).................................................................................7

*City of Richmond v. J.A. Croson Co.*,
   488 U.S. 469 (1989)....................................................................8–10, 12

*Crowe v. Henry*,
   115 F.3d 294 (5th Cir. 1997) ...................................................................6

*DynaLantic Corp. v. U.S. Dep't of Def.*,
   885 F. Supp. 2d 237 (D.D.C. 2012)........................................................12

*Edmonson v. Leesville Concrete Co.*,
   500 U.S. 614 (1991).................................................................................7

*Fisher v. Univ. of Tex.*,
   570 U.S. 297 (2013).................................................................................7

*L. Tarango Trucking v. Cnty. of Contra Costa*,
   181 F. Supp. 2d 1017 (N.D. Cal. 2001)..................................................12

*Loving v. Virginia*,
   388 U.S. 1 (1967).....................................................................................7

*O'Donnell Const. Co. v. D.C.*,
   963 F.2d 420 (D.C. Cir. 1992)................................................................12

*Palmore v. Sidoti*,
   466 U.S. 429 (1984).................................................................................7

*Shaw v. Hunt*,
   517 U.S. 899 (1996)...............................................................................11

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023)...............................................................7–9

*W.H. Scott Const. Co. v. City of Jackson*,
  199 F.3d 206 (5th Cir. 1999) ..............................................................10

*Wilson v. Tregre*,
  787 F.3d 322 (5th Cir. 2015) ................................................................6

## Statutes

42 U.S.C. § 1981 ......................................................................................1

42 U.S.C. § 1983 ......................................................................................1

Houston Code § 15-81(a) .....................................................................3, 13

Houston Code § 15-81(b) ...........................................................................4

Houston Code § 15-82 .............................................................................4, 6

Houston Code § 15-83(b) ...........................................................................4

Houston Code § 15-83(c)(1) .......................................................................4

Houston Code §15-83(c)(2) .......................................................................4

Houston Code § 15-86(a) ...........................................................................4

## Other Authorities

Fed. R. Civ. P. 56 ......................................................................................1

Fed. R. Civ. P. 56(a) ..................................................................................6

Houston Television, Houston City Council Consolidated Session
  Meeting (Jan. 17, 2024),
  https://houstontx.new.swagit.com/videos/295029 .....................2, 4, 11

Mason Tillman Associates, Ltd.,
  *The City of Houston Disparity Study*, (Dec. 2006)
  https://www.houstontx.gov/obo/docsandforms/2006-COH-
  Disparity-Study.pdf ................................................................................4

Office of Business Opportunity, Disparity Study,
  https://www.houstontx.gov/obo/disparity_study.html ..........................3

U.S. Commission on Civil Rights, *Disparity Studies as Evidence of Discrimination in Federal Contracting* (2006) ..................................................12

## MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Plaintiffs Landscape Consultants of Texas, Inc., and Metropolitan Landscape Management, Inc., move this Court for Summary Judgment and an order declaring Defendant City of Houston's Minority, Women, and Small Business Enterprise (MWSBE) program unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §§ 1981 and 1983, and permanently enjoining enforcement thereof.

## INTRODUCTION

Landscape Consultants of Texas and Metropolitan Landscape Management (Plaintiffs) are two small Houston-area landscaping companies. They regularly contract with governments in and around the City of Houston. For years, the City of Houston's MWSBE Program (Program) has put these small businesses at a significant disadvantage because of the race of their owner. This blatant and unconstitutional racial discrimination must stop, and it must stop immediately.

With discovery still open, Plaintiffs are aware of the unusual posture of this motion for summary judgment. But it is Houston's unilateral actions that have forced their hand. Rather than cease what is an obviously unconstitutional MWSBE Program while it adopts a replacement, Houston has asked this Court to allow it to continue unlawfully discriminating against contractors while it pursues a strategy that it believes might moot the case and divest the Court of jurisdiction. This tactic is not only a transparent attempt to dodge accountability but also a flagrant abuse of

1

the legal process. It effectively seeks to place Houston above the law, allowing it to evade immediate judicial scrutiny by dangling the mere possibility of future compliance. As the concurrently-filed opposition to Houston's stay motion argues, that attempt should be rejected. ECF No. 43.

Not only should the Court reject Houston's motion for a stay, the Court ought to declare the Program unconstitutional and enjoin Houston from enforcing it. There is no need to further the charade that the current MWSBE Program could survive constitutional scrutiny. The evidence is overwhelming and irrefutable.[1] Houston admits that it knows of no evidence of a prime contractor discriminating in the past five years. Ex. 1, City of Houston's Resp. to Pltfs.' Requests for Admissions No. 4. Houston admits that it has not adopted any study that identifies discrimination in public contracting in the past five years. Ex. 1, No. 6. And Houston admits it knows of no constitutional or statutory violation related to its public contract procurement process in the past five years. Ex. 1, No. 20. Each of these admissions independently

---

[1] Indeed, the unconstitutionality of the current program is so painfully obvious even the Mayor and City Attorney recognize it. *See* Houston Television, Houston City Council Consolidated Session Meeting (Jan. 17, 2024), https://houstontx.new.swagit.com/videos/295029 at 39:29 (City Attorney Arturo Michel: "You have to have a disparity study to show what the issue is. They get stale over time. Ours is now stale."), 39:43 (Mayor John Whitmire: "We probably need to review the process to emphasize how important it is. It seems to me like some of the valuations are pretty subjective. I heard the other day that one prime [contractor] had gone through 31 possible [MWBE] subs and the issue wasn't resolved and the firm was rejected, so it just seems to me like we need to review our process, support it, and be prepared to go to court with our strongest case.").

suffice to prove that the race-based Program does not further a compelling government interest. Together they undeniably compel the conclusion that the Program is unconstitutional.

The entire impetus for the Program is a disparity study that is nearly two decades old.[2] Relying on historical grievances to justify contemporary inequities is a legal and moral anachronism that has no place in a society that aspires to be fair and just. No Court has ever upheld a race-conscious set-aside program based on decades-old disparities. This Court should not be the first. When and whether Houston adopts a new discriminatory procurement policy does nothing to change the fact that the one before the Court is unconstitutional.

## STATEMENT OF FACTS

*City of Houston's MWSBE Program*

Houston's MWSBE Program exists to "stimulate the growth of local minority, women, and small business enterprises by encouraging the full participation of these business enterprises in various phases of city contracting." Houston Code § 15-81(a). The MWSBE Program is not intended to "remedy any single specific, past violation of the U.S. Constitution," Ex. 2, City of Houston's Resp. to Pltfs.' Interrogatories No. 7, but is rather "designed to mitigate and remedy the effects of past discrimination and its lingering effects against minority and women-owned

---

[2] Office of Business Opportunity, Disparity Study, https://www.houstontx.gov/obo/disparity_study.html.

businesses, and to make public contracting opportunities equally available to such businesses." Ex. 2, No. 4. In pursuit of this objective, the City Council sets annual citywide percentage goals for city contracts in three areas: construction, goods and nonprofessional services, and professional services. Houston Code § 15-83(b). City departments then set contract-specific percentage goals for individual contracts, with limited exceptions. Houston Code §§ 15-82, 15-83(c)(1)–(2). Companies awarded city contracts who do not satisfy the contract-specific percentage goal or prove good faith efforts to do so can be banned from all Houston contracts for five years. Houston Code § 15-86(a).

Every five years, Houston "shall make its best efforts" to review the MWSBE program to determine if its racial preferences are still necessary. Houston Code § 15-81(b). The most recent comprehensive study of gender and racial disparities in Houston public contracting is dated December 31, 2006 (2006 Disparity Study).[3] At a City Council meeting on January 17, 2024, Houston City Attorney Arturo Michel admitted that the 2006 Disparity Study "is now stale."[4] Houston received but never released a 2016 comprehensive disparity study. *Supra* n.1. On March 28, 2023, Houston again contracted for a comprehensive disparity study. Hoyrd Aff. ¶ 5, ECF

---

[3] Mason Tillman Associations, Ltd., *The City of Houston Disparity Study*, (Dec. 2006) https://www.houstontx.gov/obo/docsandforms/2006-COH-Disparity-Study.pdf.
[4] Houston Television, Houston City Council Consolidated Session Meeting (Jan. 17, 2024), https://houstontx.new.swagit.com/videos/295029 at 39:29.

No. 41-1. According to the Interim Director of the City's Office of Business Opportunity, this disparity study was "expected" to be provided to City administrators by May 1, 2024 (ECF No. 41 at 2; Ex. 2, Hoyrd Aff. ¶ 6) or May 15, 2024 (Hoyrd Aff. ¶ 5, ECF No. 41-1). As of the date of this motion, Plaintiffs are unaware if that has occurred.

Houston has specific policies in place that forbid discrimination in awarding public contracts. Ex. 1, No. 3. It has identified no prime contract awards based on intentional discrimination against minority-owned business enterprise (MBE) or woman-owned business enterprise (WBE) bidders in the last five years, nor has it disciplined any employee or City official for discriminating in the award of public contracts during that period. Ex. 1, Nos. 1, 2. In fact, Houston has not identified *any* specific Constitutional or statutory violations related to its public contracting or procurement process or awards in the last five years. Ex. 1, No. 20. Instead, "[t]he compelling interests advanced by the MWSBE program include the City of Houston's attempts to remedy past discrimination by rectifying its own actions." Ex. 1, No. 4.

*The Plaintiffs*

Plaintiffs Landscape Consultants of Texas, Inc. (Landscape Consultants) and Metropolitan Landscape Management, Inc. (Metropolitan) are small family-owned landscaping businesses that share approximately fifty employees. Thompson Decl.

5

¶ 3. The companies have operated in the Houston area since 2006, and approximately 80–90 percent of each company's annual revenue comes from winning local government landscaping contracts. *Id*. at ¶¶ 2, 4. Neither Landscape Consultants nor Metropolitan qualify as an MBE or WBE under Defendant City of Houston's MWSBE Program, Houston Code § 15-82. *Id*. at ¶ 5.

*Procedural History*

Plaintiffs filed their Complaint on September 19, 2023. ECF No. 1. On January 12, 2024, this Court denied separate motions to dismiss filed by Houston and codefendant Midtown Management District (Midtown). ECF No. 36. On May 6, 2024, Houston filed an opposed motion to stay the lawsuit pending its receipt and review of the 2024 disparity study and the City Council's enactment of amendments to Chapter 15, Article 5 of the City's Code of Ordinances consistent with the 2024 disparity study. ECF No. 41. Plaintiffs filed their opposition to Houston's motion to stay on May 28, 2024. ECF No. 43.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) (quoting Rule 56(a)). "A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997) (citing *Anderson v.*

6

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Where the nonmoving party bears the burden of proof on an issue at trial, the movant need only point to the absence of evidence, shifting the burden to the nonmoving party to show why summary judgment should not be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## ARGUMENT

The "core purpose" of the Equal Protection Clause is "doing away with all governmentally imposed discrimination based on race." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 206 (2023) (*SFFA*) (cleaned up) (quoting *Palmore v. Sidoti*, 466 U.S. 429, 432 (1984)); *see also id.* at 214 ("Racial discrimination is invidious in all contexts.") (cleaned up) (quoting *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 619 (1991)). Thus, the Supreme Court has "consistently denied the constitutionality of measures which restrict the rights of citizens on account of race." *Id.* at 205 (quoting *Loving v. Virginia*, 388 U.S. 1, 11–12 (1967)). To satisfy the Constitution, a statute or regulation that discriminates based on race must "survive a daunting two-step examination" of strict scrutiny. *Id.* at 206. That is, the statute's racial discrimination must (1) further a compelling government interest, (2) in a manner that is "'narrowly tailored'— meaning 'necessary'—to achieve that interest." *Id.* at 206–07 (quoting *Fisher v. Univ. of Tex.*, 570 U.S. 297, 311–12 (2013)).

Houston has no compelling interest that it can use to justify its racially discriminatory MWSBE Program. The compelling interest requirement is designed to "assur[e] that the legislative body is pursuing a goal important enough to warrant use of a highly suspect tool." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493 (1989). Under current Supreme Court precedent, there are only two recognized interests that can be sufficiently compelling to allow the government to treat individuals differently based on race: (1) "remediating specific, identified instances of past discrimination that violated the Constitution or a statute," and (2) "avoiding imminent and serious risks to human safety in prisons." *SFFA*, 600 U.S. at 207.

For three undisputed legal reasons, Houston cannot show that its MWSBE Program serves a compelling governmental interest. First, it flatly admits that it cannot identify any "specific Constitutional or statutory violations related to its public contracting or procurement process" in the past five years. Ex. 1, No. 20. Second, Houston cannot identify or specify any discrimination within Houston contracting in the past five years. Ex. 1, Nos. 2, 4, 5. Third, Houston's MWSBE Program is not based on any contemporary evidence of disparities or discrimination within the Houston area. Ex. 1, Nos. 6, 22. Each of these bases independently suffice to grant Plaintiffs' motion for summary judgment. Together, they make Houston's MWSBE Program the most obviously unconstitutional public procurement program in the nation.

8

**First**. *SFFA* clarified what *Croson* said over 35 years ago: government may not enact race-conscious set-aside programs unless there is an underlying statutory or constitutional violation that it is attempting to remedy. *SFFA*, 600 U.S. at 207; *Croson*, 488 U.S. at 500. *Croson* dealt with a contracting program in Richmond, Virginia, that required prime contractors to set aside 30% of their contract dollars to minority business enterprises. *Id.* at 477–78. In remarking on the type of interest that is needed to uphold such a facially discriminatory program, the Court explained that courts must undertake a "searching judicial inquiry into the justification" to ensure that governments are "pursuing a goal important enough to warrant use of a highly suspect tool." *Id.* at 493. Richmond's plan failed because it had "nothing approaching a prima facie case of a constitutional or statutory violation by anyone in the Richmond construction industry." *Id*. at 500.

Any argument that this holding of *Croson* is not binding on Houston is no longer tenable after *SFFA*. The Court could not have been clearer that the only interest sufficiently compelling to justify a race-conscious program is one that attempts to remedy prior statutory or constitutional violations. *SFFA*, 600 U.S. at 207. For its part, Houston admits that it knows of no "specific Constitutional or statutory violations related to its public contracting or procurement process or award" in the past five years. Ex. 1, No. 20. Given this admission, plaintiffs are entitled to summary judgment as a matter of law.

9

**Second**. Despite the clarity of the Supreme Court on this point, Houston believes it is not required to show any statutory or constitutional violation to maintain its MWSBE Program. Ex. 2, No. 7. Instead, Houston states that the Program can be upheld because it is "designed to mitigate and remedy the effects of past discrimination and its lingering effects against minority and women-owned businesses, and to make public contracting opportunities equally available to such businesses." Ex. 2, No. 4.

Assuming, *arguendo*, that Houston is not required to show its Program is designed to remedy a statutory or constitutional violation, it has still utterly failed to "identify the discrimination" its Program is purporting to remedy. *Croson*, 488 U.S. at 499, 500, 505, 507, 509. "[A] governmental entity must establish a factual predicate, tying its set-aside percentage to identified injuries in the particular local industry." *W.H. Scott Const. Co. v. City of Jackson*, 199 F.3d 206, 217 (5th Cir. 1999). Specific findings ensure that racial classifications are not merely unthinking discrimination or a form of racial politics. *Croson*, 488 U.S. at 493. It is well settled that cities "must identify that discrimination, public or private, with some specificity before they may use race-conscious relief." *Id.* at 504. Thus, Houston must identify past illegal discrimination before it can institute its discriminatory MWSBE Program.

Time and again, when asked to identify discrimination in Houston contracting, the City fails. It cannot identify any public contractor it has penalized for discrimination in the past five years. Ex. 2, No. 5; Ex. 1, No. 5. It cannot identify any city employee that it has sanctioned—or even investigated—for discrimination in the past five years. Ex. 2, No. 6; Ex. 1, No. 1. Houston admits that it has identified no prime contract awards in the past five years based on intentional discrimination. Ex. 1, No. 2. Houston does not know of any prime contractor that has discriminated against an M/WBE in the past five years. Ex. 1, No. 4. Put simply, Houston has no evidence of discrimination. None. And without identifying any illegal discrimination, Houston cannot demonstrate that it has a "strong basis in evidence" for its MWSBE Program. *See Shaw v. Hunt*, 517 U.S. 899, 910 (1996) (citation omitted).

**Third**. Even assuming Houston is not required to tailor its discriminatory program to a violation of the Constitution or statute—and even assuming Houston is not required to identify the discrimination it is purporting to remedy with precision—its MWSBE Program still fails as a matter law because the disparity study upon which the program rests is nearly ***20 years old***. As the City Attorney recognizes, this means that it is legally stale and cannot form the basis of a race-conscious program. *Supra* n.1.

While it's true that "gross [] disparities" may create an "inference of discriminatory exclusion,"[5] *Croson*, 488 U.S. at 501, 509, those disparities must, at an absolute bare minimum, reflect contemporary reality. *See, e.g.*, *O'Donnell Const. Co. v. D.C.*, 963 F.2d 420, 427 (D.C. Cir. 1992) (reliance on eight-year-old statistics for current MBE goal was "arbitrary"); *L. Tarango Trucking v. Cnty. of Contra Costa*, 181 F. Supp. 2d 1017, 1032 (N.D. Cal. 2001) (ten-year-old statistics were too stale); *DynaLantic Corp. v. U.S. Dep't of Def.*, 885 F. Supp. 2d 237, 258 (D.D.C. 2012) (dismissing stale disparity study evidence as not probative of compelling interest). Indeed, the United States Commission on Civil Rights has recommended abandoning disparity studies that are over five years old. U.S. Commission on Civil Rights, *Disparity Studies as Evidence of Discrimination in Federal Contracting*, at 76 (2006) ("States and localities must discard disparity studies conducted using data that is more than five years old. The results are too outdated to justify preferential awards given.")

---

[5] This oft-relied upon passage by governments is not intended as carte blanche to enact race-conscious programs in the presence of bare statistical disparities. An "inference of exclusion" simply means that governments can use gross disparities as a starting point for attempt to root out illegal discrimination. But they still must find the statutory or constitutional violation and identify it with specificity—a point the *Croson* Court made immediately after this passage. "The city could act ... by taking appropriate measures *against those who discriminate* on the basis of race." *Croson*, 488 U.S. at 509 (emphasis added). "In *the extreme case*, some form of narrowly tailored racial preference might be necessary to break down patterns of *deliberate exclusion*." *Id.* (emphasis added).

Whatever the line is—five years, eight years, ten years—Plaintiffs agree with Houston's City Attorney that the disparity study used to justify the current program is well beyond stale. It's moldy. As such, Houston has no compelling reason to continue discriminating against Plaintiffs.

## CONCLUSION

Houston Code § 15-81(a) is unconstitutional. Houston plainly has no compelling interest that allows it to administer and enforce its racially discriminatory procurement program. And the City knows it too. That's why, eight months into this lawsuit—as its discovery responses are rolling in—it is asking the Court to stay the case. The writing is on the wall. But Houston doesn't get to discriminate while they try to divest this Court of jurisdiction. The Constitution does not allow it. And Plaintiffs don't need further evidence to prove what is already admitted: Houston has zero evidence of contemporary discrimination in public contracting.

Plaintiffs' motion for summary judgment should be granted.

13

DATED: May 28, 2024.

|                                   | Respectfully submitted,            |
|-----------------------------------|------------------------------------|
| Anastasia Boden                   | s/ Erin E. Wilcox                  |
| *Of Counsel*                      | Erin E. Wilcox                     |
| Cal. Bar No. 281911               | *Attorney-in-Charge*               |
| S.D. Tex. Bar No. 3495077         | Cal. Bar No. 337427                |
| Joshua P. Thompson*               | S.D. Tex. Bar No. 3369027          |
| *Of Counsel*                      | Pacific Legal Foundation           |
| Cal. Bar No. 250955               | 555 Capitol Mall                   |
| Pacific Legal Foundation          | Suite 1290                         |
| 555 Capitol Mall                  | Sacramento, CA 95814               |
| Suite 1290                        | Telephone: (916) 419-7111          |
| Sacramento, CA 95814              | Fax: (916) 419-7747                |
| Telephone: (916) 419-7111         | ewilcox@pacificlegal.org           |
| Fax: (916) 419-7747               |                                    |
| aboden@pacificlegal.org           |                                    |
| jthompson@pacificlegal.org        |                                    |

*Pro Hac Vice

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2024, I served this document via the Court's

electronic filing system to Defendants' counsel of record as follows:

Lori Yount
Senior Assistant City Attorney
Darah Eckert
Senior Asst. City Attorney, General Litigation Section
City of Houston Legal Department
P.O. Box 368
Houston, Texas 77001-368
900 Bagby, 4th Floor
Houston, TX 77002
lori.yount@houstontx.gov
darah.eckert@houstontx.gov

Ben Stephens
Sandy Hellums-Gomez
Jarrett Dillard
HUSCH BLACKWELL LLP
600 Travis St., Suite 2350
Houston, Texas 77002
ben.stephens@huschblackwell.com
sandy.gomez@huschblackwell.com
jarrett.dillard@huschblackwell.com
*Counsel for City of Houston*

Brett J. Sileo
Britton B. Harris
Harris Hilburn P.L.L.C.
1111 Rosalie
Houston, Texas 77004
bsileo@hhstxlaw.com
bharris@hhstxlaw.com
*Counsel for Midtown Management District*

*s/ Erin E. Wilcox*
Erin E. Wilcox
Pacific Legal Foundation

15