## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| LANDSCAPE CONSULTANTS OF TEXAS, INC., and METROPOLITAN LANDSCAPE MANAGEMENT, INC., <br><br>                 Plaintiffs, <br><br> v. <br><br> CITY OF HOUSTON, TEXAS, and MIDTOWN MANAGEMENT DISTRICT, <br><br>                 Defendants. | Civil Action No. 4:23-cv-03516 |

### CITY OF HOUSTON'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

This case presents important issues warranting close examination by this Court on a fulsome evidentiary record. Plaintiffs' Motion for Summary Judgment seeks to avoid that close examination entirely. Summary judgment is not warranted on this record and should be denied or at most deferred.

### INTRODUCTION

Nine months after filing suit and well before the close of discovery under the current scheduling order, Plaintiffs seek summary judgment enjoining any further administration of the City's "current MWSBE Program". *See* Mot. for Summary Judgment, Doc. No. 44, at p. 2; Am. Sched. Order, Doc. No. 39, at 1. But summary judgment is improper at this stage for at least five reasons.

1

First, Plaintiffs fail to carry their burden of showing, at the summary judgment stage, that they have standing to bring this suit.

Second, even assuming Plaintiffs had presented evidence of standing, Plaintiffs fail to show as a matter of law that the City's existing evidence of disparities is automatically invalid simply because it is aged. The cases Plaintiffs cite do not support that sweeping proposition, and numerous cases uphold MBE programs on disparity studies more than five years old.

Third, Plaintiffs fail to present any evidence, analysis, or findings contradicting the City's evidence.

Fourth, the City's MBE program is currently being revised in light of the City's new disparity study, which will be presented to City Council for adoption in the fall of 2024. Judicial economy counsels against the Court's interference in the City's ongoing legislative process, particularly on this scant record.

Finally, Plaintiffs' motion, complaining of the absence of "current" evidence of disparities, ignores that the City is in the process of reviewing and adopting just such current evidence. Summary judgment in the waning months of a program the City of Houston is already revising is unnecessary and unjustified on the current record. At most, the Court should defer a ruling under Federal Rule of Civil Procedure 56(d).

## FACTUAL BACKGROUND

### A. The City's Program

The City of Houston administers a Minority, Women, and Small Business Enterprise (MWSBE) program, codified at Chapter 15, Article 5 of the City's Code of Ordinances.[1] Section 15-81(a) provides the purposes of the program are:

(1) To promote equal opportunity for participation amongst local minority, women and small business enterprises in all phases of city contracting;

(2) To increase the utilization of such local firms in providing certain goods and services;

(3) To provide opportunities to broaden and enhance local firms' ranges of capacities; and

(4) To increase opportunities for such local firms to serve as contractors, in addition to acting as subcontractors to others, there applicable, in an effort to remedy discriminatory practices and eliminate statistical disparities in city contracting.

The City's program is supported by two disparity studies from 2006 and 2012. *See* Exhibit "A," Declaration of Cylenthia Hoyrd (Hoyrd Decl.) at ¶ 4. The City contracted for a new disparity study in 2016, but due to unforeseen circumstances, that study could not be completed and adopted by the City. *Id.* at ¶ 5. Following the premature termination of that disparity study contract, the City contracted with

---

[1] Plaintiffs' Complaint specifically disclaims any challenge to "the City's preference programs for either woman-owned business enterprises or small business enterprises." *See* Compl., Doc. No. 1, at ¶ 17. The Motion for Summary Judgment appears to draw no such distinction, seeking to have the entirety of Houston Code § 15-81(a) declared unconstitutional. *See* Mot. for Summary Judgment, at 13. Plaintiffs must be held to their pleading, which challenges solely the minority business enterprise program.

another disparity study contractor in 2023. *Id.* at ¶ 6. That new study is currently undergoing review before its submission to City Council for approval in the fall of this year. *Id.* The new disparity study, like the existing disparity study, will guide the City on whether or not it needs to modify its program criteria to better serve all certified MWSBEs. *Id.* at ¶ 7.

**B. The Plaintiffs**

Landscape Consultants of Texas, Inc. ("Landscape Consultants") and Metropolitan Landscape Management, Inc. ("Metropolitan") are owned by Gerald Thompson and his wife. *See* Declaration of Gerald Thompson, Doc. No. 44-3, at ¶ 2. Between the two businesses, they share approximately fifty employees. *Id.* at ¶ 3. Mr. Thompson states a substantial portion of Landscape Consultants and Metropolitan's annual revenue comes from local government landscaping contracts. *Id.* at ¶ 4. Both Landscape Consultants and Metropolitan state they "intend to bid for public contracts with the City of Houston in future and would like to do so free from the disadvantage created by the MWSBE Program's racial preferences." *Id.* at ¶ 7. While Mr. Thompson's "understanding and belief" is that the City of Houston's MWSBE program puts "non-MWBE companies like Landscape Consultants and Metropolitan at a disadvantage when bidding for City contracts," Mr. Thompson offers no evidence or examples to support this understanding and belief. *Id.*

Omitted from Mr. Thompson's declaration is that Landscape Consultants has

in fact successfully bid on and been awarded a City of Houston contract, as of May 11, 2021. Hoyrd Decl. at ¶ 10. The term of this contract has not expired and Landscape is currently performing work, having been paid $644,273.00 by the City of Houston as of June 11, 2024 under that contract.[2] *Id.* at ¶ 10. Metropolitan, on the other hand, has never bid on a City of Houston contract. *Id.* at ¶ 12.

## LEGAL STANDARD

Summary judgment should only be granted when "the movant shows that there is no genuine dispute as to any material fact and that the movement is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Importantly, at the summary judgment stage, Plaintiffs may not rest solely on the pleadings to establish standing; rather, it is Plaintiffs burden at the summary judgment stage to provide specific facts and evidence that establish that they "have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Inclusive Communities Project, Inc. v. U.S. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019).

---

[2] Landscape has not currently retained the services of an MWSBE contractor for any portion of its City of Houston contract. Hoyrd Decl. at ¶ 11. The City has written Landscape letters, called them, and asked Landscape to submit evidence of its good faith efforts to utilize an MWSBE contractor. *Id.* To date, Landscape has not done so. *Id.*

## ARGUMENT AND AUTHORITIES

**I.     Plaintiffs lack standing to challenge the Program**.

Plaintiffs' motion for summary judgment must fail for lack of Article III standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). As the "party invoking federal jurisdiction," Plaintiffs "bear the burden of establishing standing." *Id.* "Each element of Article III standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, with the same evidentiary requirements of that stage of litigation." *Id.* (cleaned up). So, at summary judgment, Plaintiffs cannot "rely on mere allegations" but "must set forth, by affidavit or other evidence, specific facts" supporting standing. *Id.* (cleaned up).

### A. Plaintiffs are unable to establish an injury-in-fact.

Plaintiffs failed to establish nor did they address, standing in their opening brief, despite their burden and the issue's centrality to this litigation. Plaintiffs offered only one cursory declaration setting forth in a single paragraph the "understanding and belief" of Plaintiffs' owner that the City's program "puts non-MWBE companies like Landscape Consultants and Metropolitan at a disadvantage when bidding for City contracts . . . ." *See* Decl. of Gerald Thompson, Doc. No. 44-3, at ¶ 6. But this suggestion does not establish any element of Article III standing. Because Plaintiffs produce no specific evidence establishing their standing to sue, Plaintiffs' motion for summary judgment must be denied.

First, Plaintiffs are unable to show any personal grievance. In an equal-protection challenge involving a race-based government program, the "resulting injury 'accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct.'" *U.S. v. Hays*, 515 U.S. 737, 743 (1995) (quoting *Allen v. Wright*, 468 U.S. 737, 755 (1984)). Plaintiffs identify no evidence or specific facts supporting *any* injury. To the contrary, the only evidence that could even possibly be construed as going to standing is Mr. Thompson's statement that he *believes* companies *like* Plaintiffs are at a disadvantage when bidding for City contracts. *See* Decl. of Gerald Thompson, Doc. No. 44-3, at ¶ 6. Such a generalized grievance is not enough to establish injury-in-fact. Nowhere in the evidence supporting Plaintiffs' motion for summary judgment is any evidence that Plaintiffs themselves were personally denied equal treatment.[3]

Second, while Plaintiffs state they "intend to bid for public contracts with the City of Houston in future [sic]," there is no evidence that Plaintiffs have tried and failed to bid on City contracts in any way. *See* Decl. of Gerald Thompson, Doc. No. 44-3, at ¶ 7. "[S]ome day intentions do not support a finding of the actual or imminent injury that our cases require." *Carney v. Adams*, 592 U.S. 53, 64 (2020) (internal quotations and citations omitted); *see also Fla. Dep't of Ins. v. Chase Bank*

---

[3] At least as to Landscape Consultants, there is a good reason for this. Landscape Consultants currently has a contract with the City of Houston.

*of Tex. Nat'l Ass'n*, 274 F.3d 924, 929 (5th Cir. 2001) (citations omitted). Nor does the mere fact that Plaintiffs would "like to [bid]" on City contracts "free from the disadvantage created by the MWSBE Program's racial preferences" support a basis for standing. To the extent this threadbare statement could be construed as an assertion of a "stigmatic injury," that is not enough to establish an injury-in-fact for purposes of Article III. *Moore v. Bryant*, 853 F.3d 245, 249 (5th Cir. 2017) (rejecting, on standing grounds, plaintiff's equal protection challenge alleging stigmatic injury because it was unaccompanied by a corresponding denial of equal treatment); *see also Carroll v. Nakatani*, 342 F.3d 934, 946 (9th Cir. 2003) ("Being subjected to a racial classification differs materially from having personally been denied equal treatment."). Critically, Landscape Consulting currently has a City contract and Metropolitan has never tried to get a City contract. Neither plaintiff can establish a personal denial of equal treatment, even had they tried to do so. Plaintiffs have not even tried to bid on City contracts post-filing of this lawsuit. Hoyrd Decl. at ¶ 13.

**B. Plaintiffs cannot establish causation or redressability.**

To establish redressability, Plaintiffs must show that "it is likely, as opposed to merely speculative," that a favorable court decision will redress their injury. *Inclusive Communities Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019). Plaintiffs cannot make this showing. Metropolitan has never bid on a

City of Houston contract. Hoyrd Decl. at ¶ 12. Landscape Consultants bid on a City

contract, *and won*. *Id.* at ¶ 10. To date, Landscape Consultants has been paid almost

$650,000 on their contract. *Id.*

## II.    Plaintiffs cannot establish that the Program is unconstitutional.

### A. The City has evidence to support its compelling interest.

Although programs with racial classifications are subject to strict scrutiny, the

Supreme Court has made clear that the government may employ race-based

measures when necessary to dispel the effects of invidious discrimination. *City of*

*Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493-94 (1989) ("*Croson*"). The City

must point to evidence sufficient to create an inference of the government's active

or passive participation in discrimination. *Id.* at 509. "[A] significant statistical

disparity" between the availability and utilization of minority business by the City

or private actors, that cannot be adequately explained by non-discriminatory factors,

is sufficient circumstantial evidence to support an inference of discrimination. *Id.*

The government must also show that its program and racial classifications are

narrowly tailored to serve its identified compelling interest. *Adarand Constructors,*

*Inc. v. Peña*, 515 U.S. 200, 227 (1995).

Upon the City's making such a showing, the burden shifts to Plaintiffs "to

present 'credible, particularized evidence' to rebut the government's initial showing

of a compelling interest,'" and demonstrate that the program is not narrowly tailored

to meet that interest. *Rothe Dev., Inc. v. U.S. Dep't of Def.*, 107 F.Supp.3d 183, 207-08 (D.D.C. 2015) (quoting *Concrete Works VI*). Importantly, "[n]otwithstanding the initial burden of production that rests with the government, the ultimate burden of proof remains with the challenging party to demonstrate the unconstitutionality of an affirmative-action program." *DynaLantic Corp. v. U.S. Dep't of Def.*, 885 F.Supp.2d 237, 251 (D.D.C. 2012) (internal quotation marks, alterations, and citation omitted). Consequently, mere speculation that the government's evidence is insufficient or methodologically flawed does not suffice to rebut a state's showing. *See Concrete Works of Colo., Inc. v. City and Cty of Denver*, 321 F.3d 950, 959 (10th Cir. 1994) ("Concrete Works VI").

The City of Houston has two disparity studies undergirding its MWSBE program. *See* Hoyrd Decl. at ¶ 4. Disparity studies like the City of Houston's have been regularly credited by courts in challenges to race-based, remedial programs. *See, e.g., Kossman Contracting Co. v. City of Houston*, 2016 WL 11473826 (S.D. Tex. Feb. 17, 2016); *Midwest Fence Corp. v. U.S. Dep't of Transp*, 840 F.3d 932, 945 (7th Cir. 2016) (relying on a 2011 disparity study to uphold constitutionality of Illinois Department of Transportation DBE contracting program); *Assoc. Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1196-1200 (9th Cir. 2013) (upholding California DOT DBE program as constitutional based on a 2007 disparity study); *H.B. Rowe Co., Inc. v. Tippett*, 615

10

F.3d 233, 241 (upholding North Carolina DOT DBE program based on evidence from a 2004 disparity study); *Concrete Works VI*, 321 F.3d at 962-69 (upholding the City of Denver's disadvantaged business program based on the results of several disparity studies from 1989-1997); *Geyer Signal, Inc. v. Minnesota Dept. of Transp.*, No. 11-321, 2014 WL 1309092, at *19-20 (D. Minn. 2014) (upholding Minnesota's DOT DBE program based on a disparity study); *GEOD Corp. v. New Jersey Transit Corp.*, 746 F.Supp.2d 642, 654-57 (D.N.J. 2010) (upholding New Jersey Transit DBE program based on 2002 disparity study); *GEOD Corp. v. New Jersey Transit Corp.*, 678 F.Supp.2d 276, 284 n.4 (D.N.J. 2009) (disparity studies from 1995-1999 not stale approximately ten years later).

These cases confirm the City's disparity studies establish the City's *prima facie* case. Plaintiffs must "overcome that showing by the greater weight of evidence." *Kossman*, 2016 WL 11473826, at *17. But Plaintiffs offer nothing—not one piece of contrasting evidence, analysis, or findings.

### B. Plaintiffs make no effort to rebut the City's evidence.

Upon the City's making a showing—as it has—consistent with *Croson*, the burden shifts to Plaintiffs to produce "'credible, particularized evidence,' such as contrasting statistical data, testimony or documentation of neutral justifications for the statistical results, or proof that the disparity study results are flawed or insignificant." *Kossman*, 2016 WL 11473286, at *17; *H.B. Rowe Co.*, 615 F.3d at

241-42 ("Those challenging race-based remedial measures must 'introduce credible, particularized evidence to rebut' the state's showing of a strong basis in evidence for the necessity of remedial action." "Challengers may offer a neutral explanation for the state's evidence, present contrasting statistical data, or demonstrate that the evidence is flawed, insignificant, or not actionable.") (citation omitted) (collecting cases); *Concrete Works VI*, 321 F.3d at 959.

Plaintiffs do not even attempt to carry this burden. They make no effort at all to present the necessary "credible, particularized evidence" to demonstrate or even suggest that the City's evidence is flawed, insignificant, or not actionable. *Rothe Dev., Inc.*, 107 F.Supp.3d at 207-08 (quoting *Concrete Works VI*, 321 F.3d at 959). Plaintiffs do not argue that the studies are unreliable, utilize an improper methodology, or rely on flawed or insufficient data. Plaintiffs present no expert testimony, no affidavits, no reports, and no evidence of any kind to rebut the findings of the City's disparity studies.[4] In fact, Plaintiffs take no issue with the substance of the City's disparity studies at all and have no meaningful criticism of those studies. Their sole complaint is that the studies are old and therefore automatically invalid. In support of that notion, Plaintiffs rely exclusively on a small handful of inapplicable and distinguishable district cases.

---

[4] Plaintiffs apparently intend to make no such showing, as their expert designation deadline passed without Plaintiffs designating a single expert.

To support the proposition that disparity studies from 2006 and 2012 are "legally stale and cannot form the basis of a race-conscious program" (Mot. for Summary Judgment, Doc. No. 44, at 11), Plaintiffs cite *O'Donnell Const. Co. v. Dist. of Columbia*, 963 F.2d 420 (D.C. Cir. 1992), *L. Tarango Trucking v. Cnty. of Contra Costa*, 181 F.Supp.2d 1017 (N.D. Cal. 2001), and *DynaLantic Corp. v. U.S. Dep't of Def.*, 885 F.Supp.2d 237 (D.D.C. 2012). But these cases do not stand for that sweeping proposition.

*O'Donnell* simply states that new racial preferences in an existing program should be supported by evidence justifying those preferences. In that case, the court took issue with the government's passage of a new statute increasing the MBE goal without first conducting a new disparity study: "[r]aising the 'goal' by ten percentage points without any attempt to link the new racial preference to any identified discrimination was simply arbitrary." 963 F.3d at 427. *O'Donnell* certainly draws no bright line and creates no absolute rule that a disparity study of a certain age is invalid for purposes of an ongoing program.

In *L. Tarango*, MBE contractors alleged intentional discrimination by a California county in awarding public contracts, complaining of the county's "half-hearted commitment to affirmative action." 181 F.Supp.2d at 1021. Among other points, the MBE plaintiffs in that matter argued that the county's contracting policies resulted in proportionally lower percentage of contracts awarded to women and

minorities, as opposed to other contractors, when compared to the pool of available, qualified, contractors. *Id.* at 1031. On that specific issue, the Court observed that the county's data pertaining to availability was nearly ten years old, but that the Court could not infer intentional discrimination simply because the county did not have current data—"[a]t most, it knew that low numbers of women and minorities were being awarded contracts, but it also knew that the data it was receiving was both incomplete and inaccurate." *Id.* at 1032. The Court rejected this argument because— like Plaintiffs here—the plaintiffs in that case had "failed to produce any evidence that any minority-owned or woman-owned contractor actually was subjected to unlawful discrimination by any County employee." *Id.*

And the *DynaLantic* case does not directly address the question of whether aged disparity studies may be used to justify an ongoing program at all. Rather, the question addressed in that case was whether "post-enactment evidence of discrimination" may be used to justify a statute "over thirty years old." 885 F.Supp.2d at 257-58. Following the lead of virtually every court to have considered the question, the *DynaLantic* court agreed with the government that post-enactment evidence could be considered in determining whether a compelling interest in the present exists. *Id.* at 258. *Dynalantic* certainly does not stand for the proposition that a plaintiff is relieved of the burden of putting on *any* evidence simply because Plaintiffs believe the government's evidence to be too old—it stands for the contrary

14

proposition that the government is afforded significant latitude in using evidence of continuing disparities on an ongoing basis to support an MBE program.

The small handful of cases invalidating disparity programs based on old disparity studies have one factor in common that this case does not—the challenging parties in those cases presented evidence of their own, on a complete evidentiary record, after extensive fact and expert discovery. In *none* of those cases did the challengers simply state that the disparity studies underlying the challenged program were stale and therefore automatically insufficient to provide the underpinnings for a constitutional MBE or DBE program.

### C. Plaintiffs misapply *SFFA*.

In addition to misplaced reliance on the cases discussed above, Plaintiffs place heavy emphasis on *SFFA v. Harvard*, 600 U.S. 181 (2023). In *SFFA*, the Supreme Court held that the racial classifications in college admissions programs could not be "reconciled with the guarantees of the Equal Protection Clause." *Id*. at 230. But *this* case does not involve the educational benefits of diversity in the classroom. Rather, the City's MBE program was established to further the City's interest in stimulating the growth of local, minority, and small business enterprises by encouraging the full participation of those business enterprises in public contracting. Houston Code § 15-81(a). *SFFA* did not even address such programs other than to explicitly recognize that remediation-based programs are distinguishable and remain

constitutionally viable—flatly contrary to Plaintiffs' argument. *Id.* at 207 (citing cases).

SFFA simply does not provide guidance for the Court when analyzing programs, like the City's, that remedy discrimination and its lingering effects. Nothing in *SFFA* contradicts or countermands *Croson*'s statement that when the government "identif[ies] the characteristic that justifies the special treatment" of a racial class, remedial actions are appropriate. *See Croson*, 488 U.S. at 517; *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) (lower courts are bound to follow Supreme Court decisions until withdrawn or modified). The City has existing disparity studies providing a strong basis in evidence that the City's program is necessary to remedy past instances of discrimination. The age of those studies alone is simply not enough to invalidate them in the absence of any countervailing showing by Plaintiffs. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (noting that a principal purpose of Rule 56 is to screen out factually unsupported claims).

**III.    A permanent injunction is not an appropriate remedy at this stage.**

**A. Plaintiffs have not suffered irreparable harm.**

For irreparable injury, "the mere possibility of injury is not enough. Plaintiffs must demonstrate that irreparable injury is *likely* in the absence of an injunction." *Franciscan All., Inc. v. Becerra*, 553 F.Supp.3d 361, 376 (N.D. Tex. 2021).

Plaintiffs cannot make this showing. Landscape Consultants *currently holds a City of Houston contract*, flatly disproving the notion that it is somehow ineligible for or unable to be awarded City of Houston contracts. Hoyrd Decl. at ¶ 10. Neither Plaintiff has sought to bid on City contracts since the filing of this suit. *Id.* at ¶ 12. Any harm Plaintiffs might suffer in the future—particularly in light of the fact that the City's program will shortly be revised and updated—is purely speculative. "Speculative injury does not constitute the irreparable harm that would justify injunctive relief." *Digit. Generation, Inc. v. Boring*, 869 F.Supp.2d 761, 785 (N.D. Tex. 2012).

### B. The balance of hardships and public interest favor the City.

Plaintiffs must show that the injury of withholding a permanent injunction outweighs the harm of the injunction to the public. *Texas v. United States*, 524 F.Supp.3d 598, 663 (S.D. Tex. 2021). Plaintiffs fail to make this showing. As explained above, Plaintiffs have failed to identify an injury-in-fact necessary for Article III standing, let alone an injury that rises to the standard of irreparable harm. On the other hand, the harm to a public from a permanent injunction would be irreparable. The City's program would cease overnight, without the City having been provided the opportunity to complete its ongoing review of its new disparity study and update the ordinance in the process.

### C. The requested injunction is not (and cannot be) tailored to these Plaintiffs' non-existent injuries.

The Fifth Circuit has made it clear that an injunction must be tailored to the injury it remedies. *O'Donnell v. Harris Cnty.,* 892 F.3d 147, 163 (5th Cir. 2018), overruled on other grounds by *Daves v. Dallas Cnty.*, 64 F.4th 616 (5th Cir. 2023). But the Plaintiffs here have no injury. No injunction is or could be appropriate—the Court is "constrained by longstanding principles of equity" to redress only "*particular* injuries in *particular* cases or controversies." *VanDerStok v. Garland*, 633 F.Supp.3d 847, 854 (N.D. Tex. 2022) (emphasis added) (citations omitted) Absent a specific injury to these Plaintiffs, injunctive relief would simply be an improper advisory opinion regarding the constitutionality of the City's program.

### IV. The Court should allow the City's review of its own time-limited program to conclude before making any determination as to the program's constitutionality.

As explained in the City's Motion for Stay (Doc No. 41), the City is currently in the process of reviewing, considering, and implementing the findings from the City's new disparity study into Chapter 15 of the City of Houston Code of Ordinances. Fundamentally, Plaintiffs are asking this Court to declare unconstitutional a program that as of this fall likely will not exist in its current form.

The Court should refrain from issuing such a sweeping and unnecessary judgment. "[T]he principle of constitutional avoidance . . . requires the federal courts to strive to avoid rendering constitutional rulings unless absolutely necessary."

*Stinnie v. Holcomb*, 396 F.Supp.3d 653, 660 (W.D. Va. 2019) (citing *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) (internal quotations and citations omitted). Judicial economy, comity, and respect for the City's legislative process counsel against issuing a final summary judgment regarding the constitutionality of a program the City is currently revisiting.

### V.    At most, the Court should defer ruling under Fed. R. Civ. P. 56(d).

The federal rules afford the Court broad discretion to defer ruling on a motion for summary judgment (or deny such motion without prejudice) if the nonmovant shows that additional discovery is necessary before the summary judgment can be adequately addressed. Fed. R. Civ. P. 56(d). Denial or deferral of a motion for summary judgment on these grounds is "broadly favored and should be liberally granted." *Dominick v. Mayorkas*, 52 F.4th 992, 995 (5th Cir. 2022); *Total E&P USA, Inc. v. Marubeni Oil & Gas (USA), Inc.*, Civil Action No. H-16-2674, 2017 WL 11713728, at *1 (S.D. Tex. Sept. 18, 2017) (insufficiency of summary judgment record as to various key facts and incomplete discovery justified Rule 56(d) relief as to motion for summary judgment filed well before close of discovery).

The City believes for the reasons set forth in this brief that Plaintiffs' motion should be denied for lack of standing and Plaintiffs' inability to carry their burden on the merits. But a denial without prejudice under Rule 56(d) would be appropriate as well. Plaintiffs fault the City for not having "current" evidence of disparities to

justify the MWSBE program, but as the City's evidence shows, such evidence is forthcoming following the City's review and adoption of the new study. Hoyrd Decl. at ¶¶ 6-9.[5] A liberal construction of Rule 56(d), as the Fifth Circuit instructs, counsels in favor of deferring a ruling on Plaintiffs' motion for summary judgment until the new disparity study is complete.

## **<u>CONCLUSION</u>**

Plaintiffs lack standing as a matter of law. Even if this Court were to address the merits of Plaintiffs' motion, Plaintiffs invite the Court to take the unprecedented step of declaring unconstitutional an MBE program currently undergoing review by City administration, solely on the basis that the statistical evidence of disparities underlying that program is aged. Plaintiffs fail to direct the Court to any authority holding that such a conclusion is required as a matter of law, and fail to present *any* evidence of their own contradicting the City's compelling interest. The City respectfully requests the Court deny Plaintiffs' Motion for Summary Judgment.

---

[5] To the extent this process is not complete before the close of discovery, a stay of litigation would be appropriate for the reasons explained in the City's Motion for Stay. Doc No. 41. No prejudice from such a stay could or would result to Plaintiffs, one of whom (Landscape) has a current City contract for which it is being paid and on which it is performing, and the other of whom (Metropolitan) has never even tried to bid on a City contract under the current MWSBE program.

Respectfully submitted,

By:     /s/ Ben Stephens
        Ben Stephens
        State Bar No. 24098472
        SDTX Bar No. 2898153
        ben.stephens@huschblackwell.com
        Sandy Hellums-Gomez
        State Bar No. 24036750
        SDTX Bar No. 561314
        sandy.gomez@huschblackwell.com
        Jarrett Dillard
        State Bar No. 24099801
        SDTX Bar No. 2980302
        jarett.dillard@huschblackwell.com

HUSCH BLACKWELL LLP
600 Travis St., Suite 2350
Houston, Texas 77002
Telephone:    (713) 647-6800
Facsimile:    (713) 647-6884

        /s/ Darah Eckert
        Darah Eckert
        Senior Assistant City Attorney
        State Bar No. 24007141
        SDTX Bar No. 1890045
        darah.eckert@houstontx.gov
        Lori J. Yount
        Senior Assistant City Attorney
        State Bar No. 2209496
        SDTX Bar No. 24084592
        lori.yount@houstontx.gov

ARTURO G. MICHEL
CITY ATTORNEY
SUZANNE R. CHAUVIN
CHIEF, GENERAL LITIGATION SECTION
CITY OF HOUSTON LEGAL DEPARTMENT

21

P.O. Box 368 Houston, Texas 77001-368
900 Bagby, 4th Floor
Houston, Texas 77002
Telephone:   (832) 393-6219
Facsimile:   (832) 393-6259

**ATTORNEYS FOR THE CITY OF HOUSTON**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been served upon the following on June 18, 2024, via the CM/ECF Filing system.

*/s/ Ben Stephens*
Ben Stephens