**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| LANDSCAPE CONSULTANTS OF TEXAS, INC., and METROPOLITAN LANDSCAPE MANAGEMENT, INC.,<br><br>Plaintiffs,<br>v.<br><br>CITY OF HOUSTON, TEXAS, and MIDTOWN MANAGEMENT DISTRICT,<br><br>Defendants. | Civil Action No. 4:23-cv-03516<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT CITY OF HOUSTON** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii
INTRODUCTION ........ 1
I. Plaintiffs Have Standing ........ 2
A. Plaintiffs have suffered a quintessential Article III injury ........ 2
B. Plaintiffs' injury is redressable ........ 5
II. The MWSBE Program Is Unconstitutional as a Matter of Law ........ 6
A. The City admits it lacks a compelling interest for its MWSBE Program ........ 6
B. A 2006 disparity study cannot identify discrimination in Houston in 2024 ........ 8
III. Open-Ended Discrimination Is No Remedy ........ 10
CONCLUSION ........ 13
CERTIFICATE OF SERVICE ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adarand Constructors, Inc. v. Pena*,
515 U.S. 200 (1995) ........ 7

*Assoc. Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*,
713 F.3d 1187 (9th Cir. 2013) ........ 9

*City of Richmond v. J.A. Croson Co.*,
488 U.S. 469 (1989) ........ 7–9, 13

*Concrete Works of Colorado, Inc. v. City and County of Denver*,
321 F.3d 950 (10th Cir. 2003) ........ 9

*GEOD Corp. v. New Jersey Transit Corp.*,
746 F. Supp. 2d 642 (D.N.J. 2010) ........ 10

*Geyer Signal, Inc. v. Minn. Dep't of Transp.*,
No. 11-321, 2014 WL 1309092 (D. Minn. 2014) ........ 9–10

*H.B. Rowe Co., Inc. v. Tippett*,
615 F.3d 233 (4th Cir. 2010) ........ 9

*Kossman Contracting Co. v. City of Houston*,
No. H-14-1203, 2016 WL 11473826 (S.D. Tex. Feb. 17, 2016) ........ 9

*Midwest Fence Corp. v. U.S. Dep't of Transp.*,
840 F.3d 932 (7th Cir. 2016) ........ 9

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*,
508 U.S. 656 (1993) ........ 2–4

*Nuziard v. Minority Business Development Agency*,
676 F. Supp. 3d 473 (N.D. Tex. June 5, 2023) ........ 4–5

*Regents of Univ. of Cal. v. Bakke*,
438 U.S. 265 (1978) ........ 3

*Students for Fair Admissions v. President and Fellows of Harvard College*,
600 U.S. 181 (2023) .......... 7–8, 13

*W.H. Scott Constr. Co. v. City of Jackson*,
199 F.3d 206 (5th Cir. 1999) .......... 4, 9

### Statutes

Houston Code §15-83(b) .......... 2–3, 6

Houston Code § 15-83(c) .......... 6

### Rules

Fed. R. Civ. P. 56(d) .......... 10–11

### Other Authorities

NERA Economic Consulting, *The State of Minority- and Women-Owned Business Enterprise in Construction: Evidence from Houston* (Apr. 18, 2012),
https://www.houstontx.gov/obo/disparitystudyfinalreport.pdf .......... 8

Sledge, Matt, *Houston paid $821,000 for a contracting study it later scrapped, officials won't say why,* Houston Landing (Aug. 25, 2023), https://houstonlanding.org/houston-paid-821000-for-a-contracting-study-it-later-scrapped-officials-wont-say-why/ .......... 11

## INTRODUCTION

The City of Houston (City) first sought to stay this lawsuit, a course of action it now seems to have abandoned by failing to file a reply in response to Plaintiffs' opposition. ECF No. 41. But the City cannot unring the bell. Its motion was an overt attempt to continue discriminating against contractors like Plaintiffs, while simultaneously pursuing a strategy to moot the case and divest this Court of jurisdiction. ECF No. 41 at 3–4. Its stay motion forced Plaintiffs' hand and resulted in Plaintiffs filing the instant motion for summary judgment. ECF No. 44 at 1. After all, by its own admissions, the City is unable to identify any discrimination that the current MWSBE is attempting to remedy. ECF No. 44, Ex. 1, Nos. 1, 2, 4, 5, 6, 20.

By refusing to cease its admittedly unconstitutional MWSBE Program while it explored a replacement, the City is hoping that its gamesmanship can save it from that straightforward judgment. As it did in its motion to stay, the City again attempts to evade immediate judicial scrutiny by hinting at future compliance in its response to Plaintiffs' motion for summary judgment. This must be rejected. The Program is unconstitutional, and Plaintiffs are entitled to summary judgment as a matter of law.

## I. Plaintiffs Have Standing

A. Plaintiffs have suffered a quintessential Article III injury

The City resurrects the same standing arguments previously rejected by this Court.[1] *See* ECF No. 36 (Order denying Defs.' Mtns. to Dismiss). Once again, those arguments fail. Plaintiffs have demonstrated that they are qualified, willing, and able to bid on government contracts, *see* Dec. of Gerald Thompson, DCF No. 44-3, but the City's contracting program disadvantages them on the basis of their owner's race, Houston Code §15-83(b). This is a quintessential equal protection injury. *See, e.g.*, *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). And Plaintiffs therefore have standing.

Houston first argues that Plaintiffs have only made a "generalized" grievance about Houston's contracting scheme. ECF No. 45 at 7. According to the City, Gerald Thompson's statement that he believes companies "*like* Plaintiffs" are at a disadvantage when bidding for City contracts demonstrates the generalized nature of the injury. *Id.* But this misapprehends Mr. Thompson's declaration. His declaration shows that Plaintiffs are ready, willing, and able to bid on future City

[1] The City believes that Plaintiffs had the burden of affirmatively *arguing* standing in their opening brief. ECF No. 45 at 6. That is not the law. Plaintiffs need only provide evidence sufficient to demonstrate standing, and they have plainly done so here. It is bizarre, given the plethora of equal protection precedent already cited in prior briefing, that the City continues to insist that two landscaping companies that routinely bid on government contracts do not have standing to challenge a City procurement policy that treats them differently on the basis of the race of their owner. That this constitutes an Article III injury is black letter law.

contracts. ECF No. 44-3. Indeed, they have done so in the past, and, as the City recognizes, Landscape even has a contract with the City at present. ECF No. 45 at 8. Furthermore, the express text of the City code demonstrates that if Plaintiffs were to bid on contracts in the future, they'd be disadvantaged based on their owners' race. Houston Code § 15-83(b). Together, this indisputable evidence demonstrates that Plaintiffs, and Plaintiffs specifically, are injured and have standing to sue.

The City next argues that Plaintiffs have not shown that they "tried and failed" to bid on City contracts. ECF No. 45 at 7. In fact, the City says, at least one of the Plaintiffs currently has a contract with the City. *Id*. at n. 3. This gets Plaintiffs' injury wrong. In an equal protection lawsuit, the injury is not the denial of any particular benefit, but rather the denial of equal treatment. *See, e.g.*, *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 280 n.14 (1978) (injury in equal protection challenge was not being denied a spot at the medical school, but being unable to "compete for all 100 places in the class, simply because of his race"). Thus, in a forward-looking lawsuit challenging race-conscious contracting programs, the "'injury in fact' is the inability to compete on an equal footing in the bidding process, *not* the loss of a contract." *Ne. Fla. Chapter of Associated Gen. Contractors of Am.*, 508 U.S. at 666 (emphasis added). The fact that at least one of the Plaintiffs currently has a contract only bolsters Plaintiffs' standing arguments because it shows they have a serious intention to bid on future government contracts.

The City states, without citation, that the "mere fact that Plaintiffs would 'like to [bid]' on City contracts 'free from the disadvantage created by the MWSBE Program's racial preferences'" does not create standing. ECF No. 45 at 8. In fact, under well-established case law, that fact is exactly what creates a plaintiff's standing. *See, e.g.*, *Ne. Fla. Chapter of Associated Gen. Contractors of Am.*, 508 U.S. at 666; *W.H. Scott Constr. Co. v. City of Jackson*, 199 F.3d 206, 213 (5th Cir. 1999). Both the Supreme Court and the Fifth Circuit have repeatedly held that plaintiffs have standing when they would like to bid on government contracts, but the relevant program disadvantages them based on their race.

For example, in *Northeastern Florida Chapter of Associated General Contractors of America*, 508 U.S. at 666, an association of general contractors challenged a race-conscious city contracting scheme much like Houston's. The Supreme Court ruled that the injury in an equal protection challenge is the inability to compete on an equal basis. Thus, "[t]o establish standing, a party challenging a set-aside program … need only demonstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis." *Id.*

Similarly, in *W.H. Scott Construction Co. v. City of Jackson*, 199 F.3d at 213, the Fifth Circuit held that a construction company was not required to prove that it lost contracts because of the city's minority set-aside policy, but instead only that the

policy forced the company to compete for contracts on an unequal basis. *See also Nuziard v. Minority Business Development Agency*, 676 F. Supp. 3d 473, 480 (N.D. Tex. June 5, 2023) (a plaintiff has standing if he is likely to apply for a program in the reasonably foreseeable future if not for the government's unconstitutional barriers). That's exactly what Plaintiffs have demonstrated here.

Thus, the fact that Plaintiffs did not show they were denied a contract, or that one plaintiff has a contract, or that neither has tried to secure a contract under the discriminatory scheme since filing this lawsuit are all red herrings. Plaintiffs have a quintessential equal protection injury: they have demonstrated a serious intent to bid on future contracts under a facially discriminatory program.

B. Plaintiffs' injury is redressable

The City also argues that Plaintiffs' injury is not redressable because Metropolitan has never bid on a contract and because Landscape Consultants won a previous bid. Once again, these arguments misapprehend the nature of Plaintiffs' injury. Their injury is not having lost a previous contract, and they do not seek through this lawsuit to be awarded a past contract that they were denied on the basis of race. Rather, their injury is being subject to a racially discriminatory law, and they seek the ability to compete under a nondiscriminatory scheme. A favorable decision would redress Plaintiffs' injury because it would remove the unconstitutional racial discrimination and allow them to compete on equal terms with others.

## II. The MWSBE Program Is Unconstitutional as a Matter of Law

To defeat Plaintiffs' motion for summary judgment, the City primarily argues that Plaintiffs have not presented sufficient *evidence* to contradict the inference of discrimination created from its now 18-year-old disparity study. ECF No. 45 at 2. The City fundamentally misunderstands Plaintiffs' motion. After the City belatedly produced its discovery responses, it was clear that the City is unable to identify any remedial purpose for its discriminatory program. It's the City's own admissions that have allowed Plaintiffs to press three *legal* arguments: (1) the City admits it cannot identify any specific constitutional or statutory violations related to its MWSBE Program; (2) the City admits it cannot identify any discrimination within Houston's public contracting in the last five years; and (3) the City admits that the MWSBE Program is not based on any contemporary evidence of disparities or discrimination within the Houston area. ECF No. 44 at 8. Based upon the City's own admissions then, the MWSBE Program unconstitutionally discriminates against contractors based upon the race of their owners. Further evidence beyond the City's admissions of racial discrimination is irrelevant and unnecessary, and, based on these City admissions, Plaintiffs are entitled to summary judgment as a matter of law.

### A. The City admits it lacks a compelling interest for its MWSBE Program

The relevant facts of Plaintiffs' equal protection claim are not in dispute: (1) the City operates a race-conscious procurement program, Houston Code § 15-83(b)–(c); (2) that program is not intended to remedy any specific, past violation of

the U.S. Constitution, ECF No. 44, Ex. 2, No. 7; (3) the City has identified no specific constitutional or statutory violations related to its public contracting procurement processes in the last five years, ECF No. 44, Ex. 1, No. 20; and (4) the City has identified no intentional race or sex-based discrimination in procurement awards in the last five years and has not disciplined any employee or City official for discriminating in the award of public contracts during that period. *Id*. at Nos. 1–2. In short, the City racially discriminates against businesses to remedy racial discrimination that it cannot identify.

The Supreme Court was clear in *Students for Fair Admissions v. President and Fellows of Harvard College (SFFA)*, 600 U.S. 181, 207 (2023), that this justification does not suffice as a compelling interest to support a race-based public program. The City's attempt to distinguish *SFFA* because "*this* case does not involve the educational benefits of diversity in the classroom" is unpersuasive. ECF No. 45 at 15. The *SFFA* Court cites *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989), four times and criticizes the dissenting justices for their failure to do so. *SFFA*, 600 U.S. at 227. The Court's equal protection decisions in *Croson* and *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995), also cited in *SFFA*, clearly apply to its consideration of strict scrutiny in the higher education setting.

The City disingenuously argues that *SFFA* "explicitly recogniz[es] that remediation-based programs are distinguishable and remain constitutionally

viable—flatly contrary to Plaintiffs' argument." ECF No. 45 at 15–16. What the Court in *SFFA* explicitly recognized is a compelling interest in "remediating *specific, identified instances of past discrimination that violated the Constitution or a statute*." *SFFA*, 600 U.S. at 207 (emphasis added). But the City does not operate such a remedial program; the City admits its MWSBE Program does not remedy any specific constitutional or statutory violations related to its public contracting procurement process. ECF No. 44, Ex. 1, No. 20. Without such a remedial interest, the City has no compelling interest in operating a race-based public contracting program. *SFFA*, 600 U.S. at 207.

B. A 2006 disparity study cannot identify discrimination in Houston in 2024

The City's sole support for its nonremedial race-based public contracting program is an 18-year-old disparity study that even the City Attorney admits is stale.[2] ECF No. 44 at n.1. The Supreme Court and the Fifth Circuit are both clear that government must specifically identify the discrimination it seeks to remedy before it can employ race-based means. *See Croson*, 488 U.S. at 504 (Cities "must identify

[2] The City also points to a 2012 disparity study as a defense to Plaintiffs' equal protection claim. ECF No. 45 at 3. However, the 2012 disparity study was limited to the construction industry, and Plaintiffs are not construction companies. ECF No. 44 at 1 ("Landscape Consultants of Texas and Metropolitan Landscape Management (Plaintiffs) are two small Houston-area landscaping companies."); NERA Economic Consulting, *The State of Minority- and Women-Owned Business Enterprise in Construction: Evidence from Houston* (Apr. 18, 2012), https://www.houstontx.gov/obo/disparitystudyfinalreport.pdf.

that discrimination, public or private, with some specificity before they may use race-conscious relief."); *W.H. Scott*, 199 F.3d at 217 ("[A] governmental entity must establish a factual predicate, tying its set-aside percentage to identified injuries in the particular local industry."). Coupled with the admission that it has identified no racial discrimination in the public contracting procurement process in the last five years, a nearly two-decade-old disparity study cannot identify the discrimination the City seeks to remedy with anything near the specificity required by *Croson* and *W.H. Scott*. The point isn't just that the 2006 disparity study is stale—which it unquestionably is—it's that such a moldy piece of statistical evidence does absolutely nothing to identify discrimination in Houston today.

The disparity studies in the string of cases cited by the City do not hold otherwise; none even approach the age of the City's disparity study. ECF No. 45 at 10–11; s*ee also Kossman Contracting Co. v. City of Houston*, No. H-14-1203, 2016 WL 11473826, at *1 (S.D. Tex. Feb. 17, 2016) (two-year-old disparity study); *Midwest Fence Corp. v. U.S. Dep't of Transp.*, 840 F.3d 932, 949 (7th Cir. 2016) (contemporary disparity study); *Assoc. Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1191 (9th Cir. 2013) (four years); *H.B. Rowe Co., Inc. v. Tippett*, 615 F.3d 233, 243 (4th Cir. 2010) (contemporary disparity study); *Concrete Works of Colorado, Inc. v. City and County of Denver*, 321 F.3d 950, 962 (10th Cir. 2003) (two years); *Geyer Signal, Inc. v. Minn. Dep't of Transp.*,

No. 11-321, 2014 WL 1309092, at *19 (D. Minn. 2014) (two years); *GEOD Corp. v. New Jersey Transit Corp.*, 746 F. Supp. 2d 642, 648 (D.N.J. 2010) (two years). By citing dates of appellate opinions—and not the date the complaints were filed—the City tries to obscure the truth that all of these challenges were to MBE Programs that had relatively recent disparity studies. Not a single one of these cases supports the City's use of an 18-year-old disparity study. More to the point, the 18-year-old disparity study is not evidence of contemporary discrimination for an additional reason: the City has *repeatedly admitted* that it has no evidence of racial discrimination in public contract awards in the last five years. ECF No. 44, Ex. 1, Nos. 1, 2, 4, 5, 6, 20. Put simply, on the issue of a remedial interest, the City plainly has no evidence that its MWSBE Program is remedying discrimination today.

## III. Open-Ended Discrimination Is No Remedy

Despite admitting it operates a nonremedial public contracting program that discriminates on the basis of race, the City nonetheless asks this Court to allow it to continue discriminating indefinitely. This Court should decline for three reasons. First, the remedy for an equal protection violation is a permanent injunction—not deferred judgment under Fed. R. Civ. P. 56(d). Second, there is no guarantee that the City will cease its racial discrimination at all, and certainly not on its stated timetable. Third, Plaintiffs are free to challenge any future MWSBE Program that

injures them, but this does not eliminate the injury they suffer under the current MWSBE Program.

**First**, deferring judgment under Rule 56(d) is improper because the City has not shown by affidavit or declaration that "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The Hoyrd Affidavit accompanying the City's Response makes no such claims. ECF No. 45-1. Nor could it—the City already admits that its MWSBE Program is not intended to remedy a specific statutory or constitutional violation, and no additional facts can alter that admission of a lack of a compelling interest for its MWSBE Program. Plaintiffs should not be required to continue to operate under the City's admittedly discriminatory MWSBE Program while the City searches for more "'current' evidence of disparities to justify the MWSBE Program." ECF No. 45 at 19–20.

**Second**, the City offers only speculation that it will locate current evidence to justify its MWSBE Program. The City's history counsels caution; the last comprehensive disparity study was commissioned in 2016 and abandoned in 2020, and it took the City a further three years to initiate a replacement.[3] The date the City

[3] Matt Sledge, *Houston paid $821,000 for a contracting study it later scrapped, officials won't say why*, Houston Landing (Aug. 25, 2023), https://houstonlanding.org/houston-paid-821000-for-a-contracting-study-it-later-scrapped-officials-wont-say-why/. The City refuses to produce drafts or a final version of this disparity study, claiming that the study—which purports to identify race- and sex-based disparities in Houston's public contracting and procurement

expects to receive the new disparity study has varied over the course of this lawsuit, with the Interim Director of the Office of Business Opportunity variously giving May 1, May 15, and now July 17 as dates the study will be presented. Hoyrd Aff. ¶ 6, ECF No. 41-1; Hoyrd Aff. ¶ 6, ECF No. 44-2; Hoyrd Aff. ¶ 8, ECF No. 45-1. Even then, beyond "fall 2024," ECF No. 45 at 2, it is unknown when and even if the City Council will adopt the new disparity study's findings and the extent to which it will amend the City's MWSBE Program as a result. Plaintiffs' right to equal protection under the law is being violated now, by the current MWSBE Program, and the City's wait and see approach is unacceptable.[4]

**Third**, if the City does amend its MWSBE ordinance in response to a new disparity study, then Plaintiffs may challenge that amended ordinance if it violates their right to equal protection. But what the City may or may not do in the future has no bearing on Plaintiffs' current lawsuit. The City admits to currently operating a

---

processes—"is not relevant and not important to resolving any disputed issue" in this case. City of Houston's Responses to Pltfs.' Requests for Production, Ex. 3, No. 10.

[4] The City curiously argues that a permanent injunction is not an appropriate remedy "at this stage." ECF No. 45 at 16–18. For some unknown reason, the City then launched into the factors for a *preliminary injunction*. Plaintiffs are moving for *summary judgment*, not preliminary relief. A permanent injunction is a common and routinely granted remedy upon finding an equal protection violation. Indeed, it's difficult to imagine that a court could find a constitutional violation, yet deny relief based upon the balance of the hardships or public interest—each of which are factors courts consider for preliminary relief. The City's cited cases, each of which address preliminary injunctions, are plainly inapplicable. ECF No. 45 at 16–18.

race-conscious contracting program that is not intended to remedy any specific statutory or constitutional violation, and the City has no evidence of any such racial discrimination in the last five years. ECF No. 44, Ex. 1, Nos. 1, 2, 20. Plaintiffs do not challenge the MWSBE Program that may exist this fall or next year; they challenge the MWSBE Program that exists today and that prevents them from competing on a level playing field with other bidders because of their owners' race. ECF No. 1 ¶¶ 47–55. Far from a "sweeping and unnecessary judgment," ECF No. 44 at 18, holding that this program is unconstitutional requires only a straightforward application of strict scrutiny. *See Croson*, 488 U.S. at 493 (Compelling interest is required to "assur[e] that the legislative body is pursuing a goal important enough to warrant use of a highly suspect tool."); *SFFA*, 600 U.S. at 207 (Only two interests are sufficiently compelling to allow government to treat individuals differently based on race: (1) "remediating specific, identified instances of past discrimination that violated the Constitution or a statute," and (2) "avoiding imminent and serious risks to human safety in prisons."). The "sweeping and unnecessary" ruling would be allowing a plainly unconstitutional program to continue.

## CONCLUSION

For the foregoing reasons and those in Plaintiffs' Motion for Summary Judgment, ECF No. 44, this Court should grant summary judgment in favor of Plaintiffs.

DATED: June 25, 2024.

Respectfully submitted,

s/ Erin E. Wilcox
Erin E. Wilcox
*Attorney-in-Charge*
Cal. Bar No. 337427
S.D. Tex. Bar No. 3369027
Pacific Legal Foundation
555 Capitol Mall
Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Fax: (916) 419-7747
ewilcox@pacificlegal.org

Anastasia Boden
*Of Counsel*
Cal. Bar No. 281911
S.D. Tex. Bar No. 3495077
Joshua P. Thompson*
*Of Counsel*
Cal. Bar No. 250955
Pacific Legal Foundation
555 Capitol Mall
Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Fax: (916) 419-7747
aboden@pacificlegal.org
jthompson@pacificlegal.org

**Pro Hac Vice*

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 25, 2024, I served this document via the Court's electronic filing system to Defendants' counsel of record as follows:

Lori Yount
Senior Assistant City Attorney
Darah Eckert
Senior Asst. City Attorney, General Litigation Section
City of Houston Legal Department
P.O. Box 368
Houston, Texas 77001-368
900 Bagby, 4th Floor
Houston, TX 77002
lori.yount@houstontx.gov
darah.eckert@houstontx.gov

Ben Stephens
Sandy Hellums-Gomez
Jarrett Dillard
HUSCH BLACKWELL LLP
600 Travis St., Suite 2350
Houston, Texas 77002
ben.stephens@huschblackwell.com
sandy.gomez@huschblackwell.com
jarrett.dillard@huschblackwell.com
*Counsel for City of Houston*

Brett J. Sileo
Britton B. Harris
Harris Hilburn P.L.L.C.
1111 Rosalie
Houston, Texas 77004
bsileo@hhstxlaw.com
bharris@hhstxlaw.com
*Counsel for Midtown Management District*

s/ *Erin E. Wilcox*
Erin E. Wilcox
Pacific Legal Foundation