## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| LANDSCAPE CONSULTANTS OF TEXAS, INC., and METROPOLITAN LANDSCAPE MANAGEMENT, INC., | Civil Action No. 4:23-cv-03516 |
| Plaintiffs, | |
| v. | **PLAINTIFFS' OPPOSED MOTION TO COMPEL AND BRIEF IN SUPPORT** |
| CITY OF HOUSTON, TEXAS, and MIDTOWN MANAGEMENT DISTRICT, | |
| Defendants. | |

Plaintiffs Landscape Consultants of Texas, Inc. and Metropolitan Landscape Management, Inc. (Plaintiffs) move to compel Defendant City of Houston to produce documents in response to Plaintiffs' Request for Production No. 10, and for an award of reasonable attorney's fees and costs. *See* Fed. R. Civ. P. 37(a)(1), (a)(5)(A).

## INTRODUCTION

Disparity studies play a central role in Houston's defense of this case. It cites a stale 2006 disparity study as its justification for operating a race-conscious Minority, Woman, and Small Business Enterprise Program (MWSBE Program). Ex. 1, City of Houston's Resp. to Pltfs.' Interrogatories No. 7. It unsuccessfully asked this Court to stay Plaintiffs' lawsuit indefinitely until a new disparity study could be completed, adopted by the City Council, and its findings incorporated into

1

the city's MWSBE ordinance. ECF 41, 47. It is perplexing, then, that in discovery Houston refuses to produce any documents related to an unpublished 2020 disparity study (2020 Study), citing relevance, proportionality, and attorney-client and work-product privileges, but "[s]pecifically, a draft or incomplete disparity study never adopted or relied upon by the City of Houston is *not relevant and not important to resolving any disputed issue*." Ex. 2, City of Houston's Resp. to Pltfs.' Req. for Prod. No. 10 (emphasis added).

The 2020 Study was commissioned, in part, to determine if any disparities existed in awarding public contracts to minority business enterprises (MBE), and whether active racial discrimination exists in the Houston market area.[1] After three years of work, the 2020 Study was completed to the point that high-level Houston officials, including the mayor and Office of Business Opportunity director, held multiple meetings about it in late 2019 and early 2020. The contents of the 2020 Study—including its findings on whether racial disparities and active racial discrimination existed in Houston public contracting—are both relevant to a party's claim or defense and proportional to the needs of the case. This Court should grant Plaintiffs' motion to compel.

---

[1] City of Houston, Agreement for Disparity Study Consultant Services, https://houston.novusagenda.com/Agendaintranet/AttachmentViewer.ashx?AttachmentID=32164&ItemID=8362

## BACKGROUND

*Colette Holt & Associates 2020 disparity study*

On August 23, 2016, Houston's city council awarded a $942,608.45 3-year contract (with two one-year options) to Colette Holt & Associates (CHA) to produce a disparity study.[2] CHA is a national disparity study consulting firm with public clients including the U.S. Department of Justice, Amtrak, fourteen states, and numerous major cities, counties, and public agencies.[3] CHA completed a disparity study for Harris County in 2020.[4] Per its contract with Houston, CHA was engaged to produce a "comprehensive study" to determine:

1.  Discriminatory Effect: Whether as a result of direct action by the City, or as a result of the City's role as a passive participant in discriminatory behavior practiced by entities that do business with the City, disparity exists in awarding City contracts to minority-owned, women-owned business enterprises (M/WBE), disadvantaged business enterprises (DBE), and airport concession disadvantaged business enterprises (ACDBE) which are qualified and available to perform professional and construction contracts and provide goods and services in the City's Relevant Geographic Market Area (RMGA.)

2.  Active Discrimination: Whether active racial and gender discrimination continues to exist in the RGMA; whether there is still a disparity between the utilization of minority-owned, women-owned business enterprises, disadvantaged business enterprises, and airport concession disadvantaged business enterprises in the RGMA

---

[2] Houston City Council, Meeting Minutes, Ordinance 2016-0636, at 24 (Aug. 23, 2016), https://www.houstontx.gov/citysec/agenda/2016/20160823.pdf
[3] Colette Holt & Associates, Clients, http://www.mwbelaw.com/public-sector-clients/
[4] Colette Holt & Associates, Harris County Disparity Study 2020, https://www.hcp1.net/Portals/hcp1/Documents/Programs/DisparityStudy2020.pdf

compared to their availability, and if not, whether there would be disparities but for the existence of remedial programs.[5]

Though Houston calls the 2020 Study a "draft or incomplete study," it was complete enough by December 2019 that high-level city officials attended meetings to discuss it, including then-mayor Sylvester Turner, former Office of Business Opportunity Director Marsha Murray and her assistant directors, and Houston's Chief Development Officer. Ex. 3. A meeting with Murray and CHA called "City of Houston Disparity Study Draft Report Review" was scheduled for February 26, 2020. *Id*. An agenda from Murray's July 2020 one-on-one meeting with the Chief Development Officer mentions a meeting with Mayor Turner that week about "Disparity Study Rollout." *Id*. On June 11, 2020, Murray passed along a disparity study update for a Houston Contractors Association board meeting, saying that she anticipated having a final draft of the 2020 Study "this month." *Id*.

There are indications that Houston officials were not satisfied with the 2020 Study's conclusions. Starting in November 2019, emails show Murray searching for "statisticians in a similar space or with a similar skill set as our current consultant" to review CHA's work. Ex. 4. In January 2020, Murray met with consultants from HR&A Advisors, Inc., and a statistics professor at Rice University, then followed up

---

[5] City of Houston, Agreement for Disparity Study Consultant Services, at 35 https://houston.novusagenda.com/Agendaintranet/AttachmentViewer.ashx?AttachmentID=32164&ItemID=8362

by sending them each examples of availability and utilization analyses from other disparity studies. Ex. 5; Ex. 6. Availability and utilization analyses are key components of a disparity study that purport to show whether racial or gender disparities exist in a city's contracting program, and Houston's apparent disagreement with CHA's work in this area is a red flag.

An even more significant red flag is what happened next. Despite all indications that CHA produced a final or nearly final version of the 2020 Study, Houston officials proceeded to bury it. After spending over $800,000 of taxpayer funds over a four-year period, neither the public nor the City Council ever saw the 2020 Study.[6] Murray and Turner refused to speak with the media about the 2020 Study and Houston denied public records requests for the study and its communications with CHA.[7] Councilmember Amy Peck told *Houston Landing* that Houston's vague explanation of why it abandoned the 2020 Study—disagreements about the study's "data and methodology"—"could really just mean anything," and that "[w]hen you don't provide the information and the details, it makes people question what really is going on."[8]

---

[6] Matt Sledge, "Houston paid $821,000 for a contracting study it later scrapped, officials won't say why," *Houston Landing* (Aug. 25, 2023), https://houstonlanding.org/houston-paid-821000-for-a-contracting-study-it-later-scrapped-officials-wont-say-why/.

[7] *Id*.

[8] *Id*.

*Plaintiffs' Lawsuit and Request for Production*

Plaintiffs, two Houston-area landscaping companies, filed this lawsuit in September 2023 alleging in part that Houston's MWSBE Program violates their right to equal protection as guaranteed by the Fourteenth Amendment. ECF 1 at ¶¶ 47–55. Plaintiffs contend that the Program cannot withstand strict scrutiny because it lacks a strong basis in evidence that its minority business enterprise (MBE) goals are related to remedying the past or present effects of racial discrimination in any particular industry or in the City of Houston. ECF 1 at ¶¶ 47–55. Houston denies this allegation, ECF 35 at ¶ 51, and when asked to identify each compelling interest it contends is advanced by the Program, states that "[e]vidence demonstrates discriminatory barriers to fair competition between minority and non-minority contractors." Ex. 1, City Houston's Resp. to Pltfs.' Interrogatory No. 4.

In discovery, Plaintiffs requested: "All documents relating to any draft, incomplete, or complete disparity study undertaken by Colette Holt & Associates for the City between January 1, 2016, to January 1, 2021, including monthly progress reports." Ex. 2, Pltfs.' Req. for Prod. No. 10. Houston objects to producing the 2020 Study, citing relevance, proportionality, and attorney-client and work-product privileges, and arguing "[s]pecifically, a draft or incomplete disparity study never adopted or relied upon by the City of Houston is not relevant and not important to

resolving any disputed issue." Ex. 2, City of Houston's Resp. to Pltfs.' Req. for Prod. No. 10.

## ARGUMENT

The scope of discovery is broad and includes the 2020 Study and related documents that Plaintiffs seek to obtain. Plaintiffs may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case ..." Fed. R. Civ. P. 26(b)(1); *see also Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). The Federal Rules of Civil Procedure "promote broad discovery so that all relevant evidence is disclosed as early as possible …" *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993). District courts have "wide discretion in determining the scope and effect of discovery," *Equal Employment Opportunity Comm'n v. BDO USA, LLP*, 876 F.3d 690, 698 (5th Cir. 2017) (citation omitted), and "control of discovery is committed to the sound discretion of the trial court …" *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987).

### A. Plaintiffs are entitled to discovery on the existence of racial discrimination in Houston public contract awards

Plaintiffs contend that Houston has no compelling interest in using racial classifications to award public contracts. ECF 1 at ¶¶ 47–55. As an affirmative defense, Houston asserts that the Program does not violate the Fourteenth Amendment of the United States Constitution because Houston "has the authority to

eradicate the effects of its historic discrimination and private discrimination within its own legislative jurisdiction." ECF 35 at 14. The 2020 Study is important to this dispute because it was commissioned to determine both whether racial disparities exist in Houston's public contract awards and whether ongoing racial discrimination exists (as shown by a disparity between the utilization of MBEs compared to their availability in the Houston market area).[9] Adding to its relevance is that the 2020 Study is a decade more recent than the disparity study that Houston currently relies on to justify its Program.

The threshold for relevance at the discovery stage is lower than at trial. *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011). "[R]elevance is construed broadly to include '[a]ny matter that bears on, or that reasonably could lead to another matter that could bear on, any issue that is or may be in the case.'" *Id.* (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Evidence that speaks to whether racial discrimination or racial disparities exist in Houston public contract awards is central to this case—without it, Houston has no hope of proving that its race-conscious Program is necessary to remediate "specific, identified instances of past discrimination that violated the Constitution or a statute." *Students for Fair Admissions, Inc. v. President and Fellows of Harvard Coll.*, 600 U.S. 181, 207 (2023). By that same token, a study showing that no such disparities

---

[9] *Supra* n. 5.

or discrimination existed could assist Plaintiffs in proving their equal protection claim. Either way, the 2020 Study's relevance at this stage is not lessened because Houston chose not to adopt it.

### B. Production of the 2020 Study and related documents is proportional to the needs of the case.

Houston does not object to the proportionality of Plaintiff's Request for Production No. 10—nor should it, because Plaintiffs' request is proportionate to the needs of the case. To determine whether discovery is proportional, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, Plaintiffs seek a limited set of documents—the 2020 Study and any progress reports or other documents related to the 2020 Study—that are tailored to the important issue of Plaintiffs' equal protection claim and one of Houston's affirmative defenses. Plaintiffs have no access to the requested documents; Houston refuses to produce the 2020 Study in discovery and under the Texas Public Information Act.[10] Plaintiffs' request is not overly burdensome; it is time-limited to the five-year period in which the 2020 Study was commissioned, undertaken, reviewed, and buried by Houston

---

[10] *Supra* n. 6.

officials and requires the same reasonable document search that Houston has already undertaken in response to Plaintiffs' other requests for production. Plaintiffs' motion to compel production of responsive documents should be granted.

### C.   The Court should award Rule 37 attorney's fees.

Fed. R. Civ. P. 37(a)(5)(A) encourages the award of attorney's fees for a successful motion to compel, except in a limited set of circumstances. *See* Fed. R. Civ. P. 37(a)(5)(A) (fees and expenses "must" be awarded). None of those limited circumstances apply here. Counsel for both parties conferred in good faith but were unable to resolve this dispute without court action. Houston's nondisclosure of the 2020 Study and related documents—despite their importance to Plaintiff's equal protection claim and Houston's affirmative defense—is not substantially justified as a response to a "genuine dispute," nor could "reasonable people … differ as to the appropriateness of the contested action." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations and brackets omitted). An award of attorney's fees under Rule 37 is justified in this case.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion to compel and award reasonable attorney's fees.

DATED: July 25, 2024.

                                                           Respectfully submitted,

| | |
|---|---|
| Anastasia Boden | /s/ Erin E. Wilcox |
| *Of Counsel* | Erin E. Wilcox |
| Cal. Bar No. 281911 | *Attorney-in-Charge* |
| S.D. Tex. Bar No. 3495077 | Cal. Bar No. 337427 |
| Joshua P. Thompson* | S.D. Tex. Bar No. 3369027 |
| *Of Counsel* | Pacific Legal Foundation |
| Cal. Bar No. 250955 | 555 Capitol Mall |
| Pacific Legal Foundation | Suite 1290 |
| 555 Capitol Mall | Sacramento, CA 95814 |
| Suite 1290 | Telephone: (916) 419-7111 |
| Sacramento, CA 95814 | Fax: (916) 419-7747 |
| Telephone: (916) 419-7111 | ewilcox@pacificlegal.org |
| Fax: (916) 419-7747 | |
| aboden@pacificlegal.org | |
| jthompson@pacificlegal.org | |

*Pro Hac Vice

                              *Counsel for Plaintiffs*

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that the parties conferred by videoconference on July 1, 2024, but were unable to reach agreement on the issues disputed in this motion, necessitating Court intervention.

*/s/ Erin E. Wilcox*
Erin E. Wilcox
Pacific Legal Foundation

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 25, 2024, I served this document via the Court's electronic filing system to Defendants' counsel of record as follows:

Lori Yount
Senior Assistant City Attorney
Darah Eckert
Senior Asst. City Attorney, General Litigation Section
City of Houston Legal Department
P.O. Box 368
Houston, Texas 77001-368
900 Bagby, 4th Floor
Houston, TX 77002
lori.yount@houstontx.gov
darah.eckert@houstontx.gov

Ben Stephens
Sandy Hellums-Gomez
Jarrett Dillard
HUSCH BLACKWELL LLP
600 Travis St., Suite 2350
Houston, Texas 77002
ben.stephens@huschblackwell.com
sandy.gomez@huschblackwell.com
jarrett.dillard@huschblackwell.com
*Counsel for City of Houston*

Brett J. Sileo
Britton B. Harris
Harris Hilburn P.L.L.C.
1111 Rosalie
Houston, Texas 77004
bsileo@hhstxlaw.com
bharris@hhstxlaw.com
*Counsel for Midtown Management District*

*/s/ Erin E. Wilcox*
Erin E. Wilcox
Pacific Legal Foundation

13