UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LANDSCAPE CONSULTANTS OF TEXAS, INC., and METROPOLITAN LANDSCAPE MANAGEMENT, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF HOUSTON, TEXAS, and MIDTOWN MANAGEMENT DISTRICT, <br><br> Defendants. | Civil Action No. 4:23-cv-03516 |

**CITY OF HOUSTON'S
MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH**

The City of Houston, Texas seeks a protective order and an order quashing the notice of deposition of the City of Houston's corporate representative, which seeks discovery on topics that would invade the deliberative process and mental process privileges, and that are completely irrelevant to Plaintiffs' seemingly abandoned claim challenging the City of Houston's MWSBE program.

**BACKGROUND**

In considering this motion, the Court should keep in mind the gravamen of Plaintiffs' complaint. Plaintiffs maintain that the City's MBE program is unconstitutional because it violates the Equal Protection Clause by "picking winners and losers based on race." Doc. No. 1, Pls.' Compl. But since filing suit,

1

Plaintiffs have shown virtually no interest in pursuing that claim. Rather, Plaintiffs have preoccupied themselves exclusively with discovery pertaining to a draft of a disparity study worked on by a City of Houston consultant, Colette Holt & Associates (CHA), that ultimately was not adopted by the City (the "CHA Study"). Plaintiffs speculate that the City was dissatisfied with the tentative findings of that study. *See* Doc No. 48, Pls.' Mot. to Compel, at 4. Such speculation regarding the City's interpretation of the study is unrelated to the merits of any claim that Plaintiffs may have regarding the constitutionality of the City's MBE program. The reasons the City declined to adopt the CHA Study have no bearing on the validity or invalidity of the City's current MBE program.

In an attempt to manufacture some support for their baseless speculation regarding the City's motives, Plaintiffs served discovery requests seeking documents and communications related to the CHA Study. *See* Doc. No. 48-2, Pls.' Req. for Prod. No. 10. The City objected. *Id.* Plaintiffs moved to compel. Doc No. 48, Pls.' Mot. to Compel. The Court granted that motion in part and ordered production of a single document—a draft of the CHA Study—subject to an attorneys' eyes only agreed protective order. Doc No. 56, Agreed Protective Order.

Plaintiffs' own motion to compel asserted that the *contents of the CHA study* were what they needed: "[t]he contents of the 2020 Study—including its findings on whether racial disparities and active racial discrimination existed in

2

Houston public contracting—are both relevant to a party's claim or defense and proportional to the needs of the case." Doc No. 48, Pls.' Mot. to Compel, at 2. Per the Court's order, that is precisely what Plaintiffs received.

But Plaintiffs' continued pursuit of their theories about the CHA Study now seek to invade the deliberative process and mental process privileges, leading them even further afield from their original claim. On August 28, 2024, Plaintiffs renewed their absurdly overbroad document request, and noticed the 30(b)(6) deposition of a City representative on topics going to the heart of the City's decision-making process regarding the CHA Study. *See* Ex. A, Notice of Rule 30(b)(6) Deposition (the "Notice"). Specifically, Plaintiffs seek to elicit testimony on "the decision to commission the disparity study," the "decision to award the contract" to the consultant, "the decision to end the disparity study contract," and the subsequent "decision not to adopt" the disparity study. *Id.* Plaintiffs noticed the deposition for the final day of the discovery period. *Id.* Plaintiffs then served a second request for production seeking documents similar to those requested in the notice of deposition. *See* Ex. B, Pltfs'. Second Request for Production to the City. The City's review of materials for this request is ongoing, but is expected to involve thousands of documents, the great majority of which will be privileged if responsive.

The City seeks protection from the Notice. Plaintiffs' proposed discovery

3

concerns *exclusively* the City's decision-making process with regards to its consultant's and its own officials' opinions and recommendations. This discovery would not be permissible even if the City *had* adopted the incomplete disparity study for the City's MBE program. But it did not. Plaintiffs' pursuit of irrelevant evidence implicates the City's privileges, so the City seeks a protective order and an order quashing the Notice.

## ARGUMENT AND AUTHORITIES

"The role of discovery . . . is to find support for properly pleaded claims, not to find the claims themselves." *Torch Liquidating Trust ex rel. Bridge Assocs., L.L.C. v. Stockstill*, 561 F.3d 377, 392 (5th Cir. 2009). Accordingly, "Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Crosby v. Louisiana Health Serv. Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). To further the legitimate purposes of discovery, the Court has broad discretion, upon a showing of good cause, to issue a protective order to protect the responding party from annoyance, embarrassment, oppression, undue burden, or expense. Fed. R. Civ. P. 26(c)(1).

**A. The Noticed Deposition Topics are Irrelevant to Plaintiffs' Claim.**

Plaintiffs' proposed topics for examination include why the City commissioned a disparity study in 2016, why it contracted with and then terminated CHA, and why the City chose not to adopt the CHA Study. None of the

4

facts underlying these topics are disputed. The City did commission a disparity study in 2016, contracted with CHA prior to terminating CHA, and chose not to adopt the CHA study.

Notwithstanding these facts and disregarding the limits imposed by the Federal Rules of Civil Procedure, Plaintiffs intend to track down whatever material they can get to corroborate their hunch that the City declined to adopt the CHA Study for improper reasons. This is a quintessential fishing expedition, intended not to advance Plaintiffs' sole claim in this lawsuit (which will be mooted upon the City's adoption of a new disparity study and amendment of its ordinance), but to generate *post hoc* support for what have thus far been baseless insinuations regarding the City's motives. For the following reasons, the Court should put a stop to this pointless, time-consuming, and expensive exercise. *See Crosby*, 647 F.3d at 262 ("Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition.").

First, the City has already produced the evidence that Plaintiffs claimed was relevant. In moving to compel the production of documents responsive to their RFP 10, Plaintiffs told the Court that it was the "contents of the [CHA Study]" that were relevant and proportional to the needs of the case, because those contents would reveal the CHA Study's "findings on whether racial disparities and active racial discrimination existed in Houston public contracting." Doc No. 48, Pls.'

5

Mot. to Compel, at 2. Pursuant to the Agreed Protective Order resulting from the hearing on that motion to compel, the City produced a draft of the CHA Study on August 26, 2024. Having obtained what they said they needed—the contents of the CHA Study—they now seek the "how" and the "why" behind the City's decision to select CHA, the City's decision to terminate the CHA contract, and the City's decision not to adopt the CHA Study, along with "[a]ll documents not already produced" that "relat[e]" to the CHA Study.

These proposed areas of testimony underscore the irrelevancy of the requested discovery. Per Plaintiffs, it was the findings contained in the CHA Study pertaining to racial disparities in public contracting that were necessary to their claims. The City disputes and does not concede that "findings" in a draft study that the City never adopted have any relevancy (a draft document cannot by definition be said to make conclusive and actionable "findings"). But even if the argument of Plaintiffs' motion to compel were correct, whatever "findings" that draft study made are now in Plaintiffs' possession. The broadest possible limits of permissible discovery with regards to the CHA Study have been reached. Straying beyond those limits will drag the parties and the Court into disputes over information with no relationship to what Plaintiffs themselves stated was the extent of relevant and proportional discovery on the matter.

Second, the requested discovery is inadmissible as evidence and is therefore

outside the scope of permissible discovery. Plaintiffs have declined to designate any expert in this matter at all. Absent expert testimony, the "findings" of the CHA Study are of no evidentiary value. Testimony regarding the contents of the study by any of Plaintiffs' lay witnesses would be inadmissible hearsay, and a discovery request is relevant only when "the request seeks admissible evidence or is reasonably calculated to lead to the discovery of admissible evidence." *Crosby*, 647 at 262 (citation and internal quotation marks omitted).

Finally, the depositions topics are facially irrelevant because "the subjective knowledge, motive, or mental process of an individual legislator is irrelevant to a determination of the validity of a legislative act." *Elijah Group, Inc. v. City of Leon Valley, Tex.*, Civil Action No. SA-08-CV-0907 OG (NN), 2009 WL 774427, *2 (S.D. Tex. Mar. 24, 2009). Plaintiffs challenge the constitutionality of the City's MBE program, expressed as an official act through the City's MBE ordinance. *See* City of Houston Code of Ordinances § 15-81(a). Testimony regarding *why* the City took specific actions in furtherance of that program implicates the "motive[s] or mental process[es]" of legislators, irrelevant to Plaintiffs' arguments regarding the constitutionality of the program. *City of Leon Valley*, 2009 WL 774427, at *2. Such testimony is permissible only in "extraordinary circumstances" and is "usually to be avoided" (to the extent it is not privileged as is often the case). *Citizens to Preserve Overton Park v. Volpe*, 401

7

U.S. 402, 420 (1971). Here, Plaintiffs' challenge to the constitutionality of the City's MBE program is not dependent on the City's reason, or any individual City representative's reason, for rejecting the CHA Study. Plaintiffs have already been provided the disparity studies that the City actually adopted and on which it relied in promulgating its MBE ordinance. Plaintiffs also now have the original draft of the CHA Study which the City expressly did *not* adopt and which did not form the foundation of any City legislative act.

Because the Notice seeks testimony on facially irrelevant matters falling outside the scope of permissible discovery, the City seeks a protective order and order quashing the deposition.

### B. The Testimony Sought by Plaintiffs is Protected by the Deliberative Process and Mental Process Privileges.

Plaintiffs seek to depose a City representative to probe City officials' reasoning for various "decisions," including the "decision" to terminate the contract for the CHA study and the "decision" not to adopt the CHA study's findings. The scope of Plaintiffs' deposition topics makes clear that the sought-after testimony is protected by the deliberative process privilege and the closely related mental process privilege. Accordingly, the court must quash the deposition notice and prevent Plaintiffs from obtaining such testimony.

The deliberative process privilege is an evidentiary privilege recognized under federal common law, which governs assertions of evidentiary privilege in

8

suits arising under federal law. Pursuant to such privilege, a government can "prevent testimony that reflects advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1120–22 (N.D. Cal. 2003) (citing *FTC v. Warner Communications,* 742 F.2d 1156, 1161 (9th Cir.1984)). "The three specific policy objectives underlying this privilege are: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationale that were not, in fact, ultimately the grounds for an agency's action." *Judicial Watch, Inc. v. Dep't of the Army*, 435 F. Supp. 2d 81, 88 (D.D.C. 2006); *see also McQueen v. United States*, 264 F. Supp. 2d 502, 518 (S.D. Tex. 2003) (noting same policy objectives).

The U.S. Supreme Court has expressly recognized the deliberative process privilege as protecting the decision-making processes of government agencies. *See, e.g.*, *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 148–53 (1975) (discussing existence of deliberative process privilege); *see also Skelton v. U.S. Postal Serv*., 678 F.2d 35, 38 (5th Cir. 1982) (same). Moreover, there is a broad consensus among federal courts that governmental agencies at all levels may invoke the deliberative process privilege, including municipalities. *See, e.g.*, *Santiago v. City of Chicago*,

No. 1:19-CV-04652, 2023 WL 5096288, at *6 (N.D. Ill. Aug. 9, 2023) (collecting cases upholding municipal assertions of the privilege).

There are two requirements to establish the applicability of the privilege. First, the document or testimony "must be predecisional—*i.e.,* it must have been generated before the adoption of [a] policy or decision." *Sears,* 421 U.S. at 152; *see also F.T.C. v. Warner Communications Inc.,* 742 F.2d 1156, 1161 (9th Cir. 1984) (employing same definition of pre-decisional). Second, the document or testimony "must be deliberative in nature, containing opinions, recommendations, or advice about ... policies [or decisions]." *FTC,* 742 F.2d at 1161. "Purely factual material that does not reflect deliberative processes is not protected"; however, factual material that "is so interwoven with the deliberative material that it is not severable" is protected. *Id.*

An "inherent" part of the deliberative process privilege is the mental process privilege. *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003) (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318, 325 (D.D.C.1966)). This closely related privilege protects the "mental processes" of executive or administrative officials and aims to shield the "uncommunicated motivations for a policy or decision." *Carl Zeiss Stiftung*, 40 F.R.D. at 325. Accordingly, both the deliberative process privilege and the mental process privilege may be invoked to block deposition testimony that would probe the

unexpressed rationales and decision-making processes of government officials. *Id.; see also Citizens to Preserve Overton Park*, 401 U.S. at 420 (testimony that would evidence the deliberative process is habitually quashed because "inquiry into the mental processes of administrative decisionmakers is usually to be avoided."); *Heterochemical Corp. v. Food & Drug Admin.,* No. CIV.A. CV-86-0864, 1987 WL 15898, at *1 (E.D.N.Y. Aug. 12, 1987) (where the "true focus" of discovery is the deliberative process leading to a governmental decision, such discovery will not be allowed absent extraordinary circumstances).

Here, Plaintiffs' noticed deposition topics confirm that they are seeking to elicit testimony from the City's representative about the decision-making process of City officials. Such testimony would be "pre-decisional" because Plaintiffs are seeking details about the reasoning that preceded—and thereby informed—City officials' "decisions" to commission a new disparity study, to award the contract for the disparity study to CHA, to end the CHA contract, and to decline to adopt the CHA study. *See Longas-Palacio v. U.S. Citizenship & Immigration Services*, 658 F. Supp. 3d 416, 423 (S.D. Tex. 2023) (documents were pre-decisional because they predated the challenged policy and informed its development).

Such testimony would also be "deliberative" because it concerns the judgments and opinion of City officials regarding whether to proceed with a procurement and which methodology to employ in evaluating City policy. *See Ames*

11

*Constr., Inc. v. Clark Cnty.,* No. 218CV00299JCMEJY, 2020 WL 1674327, at *3–5 (D. Nev. Apr. 6, 2020) (internal process regarding decision not to proceed with procurement was protected by deliberative process privilege). Plaintiffs are seeking testimony regarding City officials' opinions and recommendations leading up to the referenced "decisions" and any factual material would be inextricably bound up with such deliberative material. Accordingly, the deliberative process privilege applies, and the court must quash the deposition notice and prevent Plaintiffs from obtaining testimony on the noticed topics.

The sought-after testimony must also be prevented because it triggers the policy objectives of the deliberative process and mental process privileges. Disclosure of this testimony would have a chilling effect on the candid exchange of views among City staff, which is one of the very harms that the deliberative process privilege was designed to avoid. The deposition notice also explicitly seeks to elicit the uncommunicated motivations for decisions by City officials. Plaintiffs transparently seek to uncover details regarding City officials' internal decision-making processes to dredge up an incriminating comment that they can then use to expand their efforts to discredit the City's MBE program. The deliberative process and mental process privileges are designed to preserve a necessary "zone of confidentiality" for the City's "policy process," however. *Dairyland Power Co-op. v. United States*, 79 Fed. Cl. 709, 720 (2007).

In addition, testimony regarding the City's handling of the terminated CHA study would lead to public confusion, leaving the false impression that the City's MBE program is informed by the CHA study or by City officials' interpretation of the study's findings. In fact, the City declined to adopt the study's findings and has not invoked the study as a rationale for the current MBE program. Accordingly, permitting the deposition of a City representative that would disclose the City's internal processes regarding its evaluation of the study would confuse the public as to the actual bases for the City's policy.

The deliberative process and mental process privileges are qualified, rather than absolute, privileges—an agency's interest in nondisclosure must be "balanced" against the Plaintiffs' evidentiary need for the sought-after testimony. *See, e.g.*, *In re New York City Policing During Summer 2020 Demonstrations*, 656 F. Supp. 3d 486, 492 (S.D.N.Y. 2023) (reciting five-factor balancing test). Here, the balance weighs strongly in favor of nondisclosure. First, as explained above, the "relevance of the evidence sought to be protected," *id.*, is effectively zero—Plaintiffs are seeking testimony regarding City officials' decision-making about a study that the City has never adopted and that has never been invoked as support for the City's MBE program. Accordingly, the sought-after testimony has no relevance to Plaintiffs' purported constitutional challenge to the City's MBE program. Similarly, the "availability of other evidence" factor, *id.,* weighs against disclosure, as Plaintiffs

13

have already received the draft of the study itself after prevailing on their motion to compel.

The fourth and fifth factors, covering the "role of the government in the litigation" and "the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable," *id.*, strongly favors sustaining the City's assertion of privilege. The City's interest in nondisclosure is potent, as allowing the sought-after testimony would compromise the City's internal policy processes and damage the quality of City officials' decision-making going forward.

The third factor regarding the "seriousness of the litigation and the issues involved" is neutral. Plaintiffs' constitutional equal protection challenge raises weighty issues, but their request to depose a City representative on irrelevant topics does not raise any such issues. Accordingly, the balance of the factors weighs in favor of sustaining the City's assertion of the deliberate process and mental process privileges and preventing testimony on the topics listed in Plaintiffs' deposition notice.

## **CONCLUSION**

For the foregoing reasons, the City respectfully requests that the Court quash the Notice of Deposition in its entirety and enter a protective order directing that the City not be required to comply with such Notice, and for such other and further

relief to which the City may show itself to be justly entitled.

        Respectfully submitted,

By:   */s/ Ben Stephens*
     Ben Stephens
     State Bar No. 24098472
     SDTX Bar No. 2898153
     ben.stephens@huschblackwell.com
    Sandy Hellums-Gomez
     State Bar No. 24036750
     SDTX Bar No. 561314
     sandy.gomez@huschblackwell.com
     Jarett Dillard
     State Bar No. 24099801
     SDTX Bar No. 2980302
     jarett.dillard@huschblackwell.com

HUSCH BLACKWELL LLP
600 Travis St., Suite 2350
Houston, Texas 77002
Telephone:   (713) 647-6800
Facsimile:    (713) 647-6884

     */s/ Darah Eckert*
     Darah Eckert
     Senior Assistant City Attorney
     State Bar No. 24007141
     SDTX Bar No. 1890045
     darah.eckert@houstontx.gov
     Lori J. Yount
     Senior Assistant City Attorney
     State Bar No. 2209496
     SDTX Bar No. 24084592
     lori.yount@houstontx.gov

ARTURO G. MICHEL
CITY ATTORNEY
SUZANNE R. CHAUVIN
CHIEF, GENERAL LITIGATION SECTION

CITY OF HOUSTON LEGAL DEPARTMENT
P.O. Box 368
Houston, Texas 77001-368
900 Bagby, 4th Floor
Houston, Texas 77002
Telephone:  (832) 393-6219
Facsimile:   (832) 393-6259

**ATTORNEYS FOR THE CITY OF HOUSTON**

### CERTIFICATE OF CONFERENCE

I certify that counsel for movant has conferred by email with counsel for Plaintiffs regarding the City's intent to seek a protective order from the 30(b)(6) deposition noticed for September 30, 2024, and counsel for Plaintiffs has confirmed their opposition to this motion and the relief sought therein.

*/s/ Ben Stephens*
Ben Stephens

### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been served upon the following on September 20, 2024, via the CM/ECF Filing system.

*/s/ Ben Stephens*
Ben Stephens