UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LANDSCAPE CONSULTANTS OF TEXAS, INC., and METROPOLITAN LANDSCAPE MANAGEMENT, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF HOUSTON, TEXAS, and MIDTOWN MANAGEMENT DISTRICT, <br><br> Defendants. | Civil Action No. 4:23-cv-03516 <br><br><br> **PLAINTIFFS' OBJECTIONS TO MAGISTRATE'S ORDER** |

Pursuant to 28 U.S.C. §636(b)(1)(A) and Fed. R. Civ. P. 72(a), Plaintiffs Landscape Consultants of Texas, Inc., and Metropolitan Landscape Management, Inc., (Plaintiffs) submit their Objections to the Magistrate Judge's Order granting Defendant City of Houston's Motion for Protective Order and Motion to Quash, Dkt. 64.

## INTRODUCTION

Houston filed a Motion for Protective Order and Motion to Quash (MPO/MQ) Plaintiffs' 30(b)(6) deposition notice seeking discovery into the decisionmaking surrounding a study into the existence of racial disparities in Houston's public contracting program. In its MPO/MQ, Houston claimed that the 30(b)(6) topics were not relevant, and that city officials and city council members were protected by

1

various privileges. Dkt. 58. Plaintiffs refuted these claims, arguing that no privilege attaches, and that because the study itself has already been adjudged to be relevant, discovery into the decisionmaking surrounding the study is also relevant. Dkt. 62.

In his Order, Magistrate Judge Bray addressed neither Houston's arguments nor Plaintiffs' defenses. Dkt. 64. Instead, the Court found that because Plaintiffs had not explained why the *contents* of the disparity study were relevant to its equal protection claims—despite having previously held that the study itself is relevant and discoverable—Houston was entitled to a protective order and quashed the 30(b)(6) deposition. *Id*. The Order should be set aside, and Houston's MPO/MQ should be denied.

## BACKGROUND

Plaintiffs contend that because Houston's race-conscious public contracting program "uses racial classifications to award public contracts, furthers no compelling interest, and is not narrowly tailored, it violates the Equal Protection Clause." Dkt. 1 at ¶ 53. Houston's only defense to this claim is that it "has the authority to eradicate the effects of its historic discrimination and private discrimination within its own legislative jurisdiction." Dkt. 35 at 14. Therefore, whether and to what degree the effects of Houston's "historic discrimination and private discrimination" currently exist are key to both Plaintiffs' claims and Houston's defense in this case.

Houston contends that "[e]vidence demonstrates discriminatory barriers to fair competition between minority and non-minority contractors." Ex. 1, City Resp. to Pltfs.' Interrog. No. 4. Despite this contention, Houston also admits that it has not debarred a public contractor for discrimination against minority subcontractors in the past five years, nor has it investigated or sanctioned Houston employees or officials for racial discrimination in procurement or the award of public contracts during that same period. *Id.* at Nos. 5–6; Ex. 2, City Resp. to Req. for Admissions Nos. 2, 4–5. And although city ordinance requires Houston to "make its best efforts" to review the race-conscious public contracting program to determine whether there is "strong statistical and anecdotal evidence of discrimination" to warrant continued use of racial classifications, Houston Code §15-81(b), Houston's only evidence of "discriminatory barriers to fair competition" comes from a study dated December 31, 2006.[1]

In 2016, Houston commissioned a disparity study from Colette Holt & Associates (CHA Study), which was delivered in 2020 and cost taxpayers almost $1 million.[2] For unknown reasons, Houston never published the CHA Study, the City Council never publicly voted on the CHA Study, and—despite being fourteen years

---

[1] The City of Houston Disparity Study, Mason Tillman Associates, December 2006, https://www.houstontx.gov/obo/docsandforms/2006-COH-Disparity-Study.pdf.
[2] Houston City Council, Meeting Minutes, Ordinance 2016-0636, at 24 (Aug. 23, 2016), https://www.houstontx.gov/citysec/agenda/2016/20160823.pdf.

3

newer than the last study—Houston never adopted the CHA Study as the basis for its race-conscious public contracting program.

The CHA Study was commissioned, in part, to determine if any disparities existed in awarding public contracts to minority business enterprises and whether active racial discrimination exists in the Houston market area.[3] Given Plaintiffs' contention that Houston has no compelling interest in operating a race-conscious public contracting program, they understandably question whether the CHA Study found that statistically significant racial disparities existed in Houston during the study period. After all, if the CHA Study *did not* find that racial disparities existed, it would support Plaintiffs' claim that Houston is operating a race-conscious public contracting program without any compelling interest for doing so.

On March 6, 2024, Plaintiffs first requested "[a]ll documents relating to any draft, incomplete, or complete disparity study undertaken by Colette Holt & Associates for the City between January 1, 2016, to January 1, 2021, including monthly progress reports." Ex. 3, Pltfs' First Req. for Production to Def. City No. 10. Two months later, Houston refused to produce any documents responsive to Plaintiffs' request, citing relevance and proportionality, but "[s]pecifically, a draft or incomplete disparity study never adopted or relied upon by the City of Houston is

---

[3] City of Houston, Agreement for Disparity Study Consultant Services, https://houston.novusagenda.com/Agendaintranet/AttachmentViewer.ashx?AttachmentID=32164&ItemID=8362.

4

not relevant and not important to resolving any disputed issue." Ex. 4, Houston's Resp. to Pltfs.' Req. for Prod. No. 10. After another two months of Houston's delay, Plaintiffs filed a motion to compel the production of documents in response to Plaintiffs' Request for Production No. 10. Dkt. 48. Notably, Plaintiffs' motion was not limited to the CHA Study only; Plaintiffs sought to compel all documents responsive to Request No. 10. *Id*. at 1 ("Plaintiffs … move to compel Defendant City of Houston to produce documents in response to Plaintiffs' Request for Production No. 10, and for an award of reasonable attorney's fees and costs. *See* Fed. R. Civ. P. 37(a)(1), (a)(5)(A).").

Plaintiffs' motion was referred to Magistrate Judge Bray, Dkt. 50, and a Zoom hearing took place on August 16, 2024. No transcript or recording of this hearing was made available to the parties. At the hearing, Magistrate Bray expressed his preference to compel production of the CHA Study under a protective order, and the parties complied with Magistrate Bray's request to submit an agreed protective order. Dkt. 56. Magistrate Bray edited the submitted agreed protective order to indicate that he granted Plaintiffs' motion to compel. *Id*. at 1.

Given this acknowledgment from the Court that the CHA Study is relevant to Plaintiffs' claims and Houston's affirmative defense, Plaintiffs again requested documents relating to the CHA Study. Ex. 5. On August 28, 2024—a little over a

5

month before the close of the discovery period—Plaintiffs also served a Fed. R. Civ. P. 30(b)(6) deposition notice on Houston, describing the matter to be examined as:

> The City of Houston disparity study produced by Colette Holt & Associates, Bates numbers CONFIDENTIAL COH0001082-COH0001222, including the decision to commission the disparity study, the decision to award the contract for the disparity study to Colette Holt & Associates, the decision to end the disparity study contract with Colette Holt & Associates, and the decision not to adopt the Colette Holt & Associates disparity study.

Ex. 6 at 2. The deposition notice also requested the witness provide or bring to the deposition all documents not already produced relating to the CHA Study, including monthly progress reports. *Id*.

On September 16, 2024 (and without sending the notice or topics required by the federal rules), Houston informed Plaintiffs via email that it would take their individual and corporate depositions in seven business days, on September 25. Dkt. 61 at 4. Plaintiffs objected to the lack of timely notice. *Id*. Apparently conceding that it failed to timely notice the corporate depositions, on September 17, Houston finally served a deposition notice for the individual deposition of Plaintiffs' owner Gerald Thompson. *Id*. at 5. Plaintiffs objected that this notice forced Mr. Thompson and his counsel to attend the individual and corporate deposition on separate days, an unnecessary waste of time and money, and requested the deposition be rescheduled. *Id*.

6

Instead, and without conferring with Plaintiffs' counsel, on Friday, September 20, Houston filed both an emergency motion to compel Mr. Thompson's deposition (Dkt. 57) and a Motion for Protective Order and Motion to Quash the deposition of Houston's corporate representative (Dkt. 58). Both motions were referred to Magistrate Judge Bray. Dkt. 59.

At 8:48am CT on Tuesday, September 24, the parties received notice setting both the emergency motion to compel *and* the nonemergency MPO/MQ for a hearing the next day, September 25, at 4pm CT. Dkt. 60. A few minutes later, the parties received an email from Magistrate Judge Bray's case manager informing them that any responses to either motion must be filed by 8am CT the next day. Ex. 7.

Plaintiffs filed their opposition to the Emergency Motion to Compel at 2:24pm on September 24, Dkt. 61, and an opposition to the MPO/MQ about six hours later. Dkt. 62. That same afternoon, Houston's counsel contacted Plaintiffs' counsel to propose a settlement regarding Houston's motion to compel. The parties came to an agreement and Houston withdrew its motion to compel, leaving the MPO/MQ to be heard at the next morning's hearing. Ex. 8. Instead, Magistrate Judge Bray terminated the September 25 hearing and issued an order denying the Motion to Compel as moot. Dkt. 63. The court took the MPO/MQ under advisement, *id.*, and on October 7, Magistrate Judge Bray granted Houston's motions. Dkt. 64.

7

**STANDARD OF REVIEW**

When reviewing a magistrate judge's decision of non-dispositive pretrial matters, the district judge in the case "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also Moore v. Ford Motor Co.*, 755 F.3d 802, 806 & n.6 (5th Cir. 2014). Factual findings are reviewed under the "clearly erroneous" standard and must be overturned when the reviewing district court is "left with the definite and firm conviction that a mistake has been committed." *Rivas v. U.S. Bank National Association*, No. H-14-3246, 2015 WL 8215137, at *1 (S.D. Tex. Dec. 8, 2015) (quoting *United States v. Stevens*, 487 F.3d 232, 240 (5th Cir. 2007) (*superseded by rule on other grounds*, Fed. R. Crim. P. 12)); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). The magistrate judge's legal conclusions are reviewed de novo. *Rivas*, 2015 WL 8215137, at *1.

**ARGUMENT**

**I.     The Magistrate Judge Improperly Considered the MPO/MQ on an Emergency Basis**

Under Local Civil Rule 7.3 and 7.4(A), responses to opposed motions must be filed by the motion's submission day, which is 21 days from the date of filing. Although Houston's MPO/MQ was filed on the same day as Houston's Emergency Motion to Compel, the MPO/MQ was not styled or otherwise designated as an emergency motion. Dkt. 58. The two motions did not concern the same subject

8

matter; the Emergency Motion sought to compel the individual deposition of Mr. Thompson, while the MPO/MQ involved Plaintiffs' 30(b)(6) deposition of Houston's corporate representative. Dkt. 57; Dkt. 58. Further, Houston's withdrawal of its Emergency Motion did not include the withdrawal of the MPO/MQ; Houston's counsel indicated the parties' intent to move forward with the September 25 hearing on the MPO/MQ. Ex. 8.

The Local Civil Rules are clear: Plaintiffs should have had 21 days, not less than 24 hours, to respond to Houston's MPO/MQ. *See Smith v. Ford Motor Co.*, 626 F.2d 784, 796 (10th Cir. 1980) ("[L]ocal rules of practice, as adopted by the district court, have the force and effect of law, and are binding upon the parties and the court which promulgated them until they are changed in [an] appropriate manner.") (citation omitted). The Order should be set aside and Houston's MPO/MQ should be denied.

## II. The CHA Study's Relevance Is Already Established

The Magistrate's Order states that while he was "interested in both parties having access to the contents of the [CHA Study]," it was "never the court's intention to allow free-ranging discovery into the origins and demise of the [CHA Study] without a showing that it bore some relevance to the claims in the case." Dkt 64 at 1–2. However, the relevance of the CHA Study to Plaintiffs' claims in this case was the entire focus of Plaintiffs' previous motion to compel Houston to produce

documents in response to Request for Production No. 10 (Dkt. 48)—a motion that the Magistrate Judge *granted*. Dkt. 56.

For example, in their Motion to Compel, Plaintiffs contended that "[t]he 2020 study is important to this dispute because it was commissioned to determine both whether racial disparities exist in Houston's public contract awards and whether ongoing racial discrimination exists (as shown by a disparity between the utilization of MBEs compared to their availability in the Houston market area)." Dkt. 48 at 8. Plaintiffs went on to argue that "[e]vidence that speaks to whether racial discrimination or racial disparities exist in Houston public contracting is central to this case—without it, Houston has no hope of proving that its race-conscious Program is necessary to remediate 'specific, identified instances of past discrimination that violated the Constitution or a statute.'" *Id*. (quoting *Students for Fair Admissions, Inc. v. President and Fellows of Harvard Coll.*, 600 U.S. 181, 207 (2023)). "By that same token," Plaintiffs continued, "a study showing that no such disparities or discrimination existed could assist Plaintiffs in proving their equal protection claim." *Id*. at 8–9. Relevance is a key part of the scope of discovery. *See* Fed. R. Civ. P. 26(b)(1). Therefore, when the Magistrate Judge granted Plaintiffs' Motion to Compel, Dkt. 56, he could only have done so because the CHA Study is relevant to a party's claim or defense.

Yet the Magistrate's Order requires Plaintiffs to relitigate that already-decided issue by faulting Plaintiffs' Opposition for "not discuss[ing] the contents of the study at all or even suggest[ing] that it supports their claims." Dkt. 64 at 2. To start, Plaintiffs had no need to do so because the Magistrate Judge had previously held that the CHA Study was relevant, Dkt. 56, a fact Plaintiffs noted in their Opposition to the MPO/MQ. Dkt. 62 at 1 ("In granting Plaintiffs' motion, this Court recognized that Plaintiffs may seek additional discovery related to the CHA Study—after all, this Court has already ruled the study is relevant to Plaintiffs' claims.").

But primarily, Plaintiffs' Opposition did not address the contents of the CHA Study because the contents of the CHA Study were not the subject of Houston's MPO/MQ. The MPO/MQ sought to prevent a 30(b)(6) deposition on Houston's decisionmaking about the CHA Study. Ex. 6; Dkt. 58 at 3 ("The City seeks protection from the Notice."). In response, Plaintiffs' Opposition devotes three pages to arguing that the 30(b)(6) deposition is relevant to Plaintiffs' equal protection claim. Dkt. 62 at 2–5. First, because the Court has already held that the CHA Study is relevant to Plaintiffs' equal protection claim, so further discovery on that topic is also relevant. *Id*. at 2–3. Next, because Houston incorrectly contended that evidence within the scope of discovery must be admissible, contrary to Fed. R. Civ. P. 26(b)(1). *Id*. at 3. And finally, because case law does not support Houston's contention that further discovery into the CHA Study is "facially irrelevant" because it involves Houston

officials or City Council members. *Id*. at 4–5. The rest of Plaintiffs' Opposition addresses Houston's Mental Process Rule and Deliberative Process Privilege arguments, which form the bulk of Houston's MPO/MQ, yet which are not addressed at all in the Magistrate's Order. Dkt. 58 at 8–14.

Instead of addressing the issues before it in Houston's MPO/MQ, the Magistrate's Order judged Plaintiffs' Opposition on a different standard that has already been litigated. Plaintiffs fully and completely refuted Houston's need for a protective order and to quash the 30(b)(6) deposition, within the extremely truncated 24-hour window given, and the Order to the contrary should be set aside.

### III.   Remedy

Any part of the Magistrate's Order that is clearly erroneous or contrary to law must be modified or set aside. Fed. R. Civ. P. 72(a). Because the Magistrate's Order considered a nonemergency motion on an emergency basis and held Plaintiffs to an incorrect legal standard, the entirety of the Magistrate's Order should be set aside and Houston's MPO/MQ should be denied. Alternatively, should this Court determine that the contents of the CHA Study are determinative to the outcome of Houston's MPO/MQ, the parties should be given the opportunity to submit supplemental briefing on that issue with the full time allotted by Local Rules 7.3 and 7.4.

## CONCLUSION

For the foregoing reasons, the Magistrate's Order, Dkt. 64, should be set aside and Houston's MPO/MQ should be denied.

DATED: October 21, 2024.

Respectfully submitted,

| | |
|---|---|
| Anastasia Boden | s/ Erin E. Wilcox |
| *Of Counsel* | Erin E. Wilcox |
| Cal. Bar No. 281911 | *Attorney-in-Charge* |
| S.D. Tex. Bar No. 3495077 | Cal. Bar No. 337427 |
| Joshua P. Thompson* | S.D. Tex. Bar No. 3369027 |
| *Of Counsel* | Pacific Legal Foundation |
| Cal. Bar No. 250955 | 555 Capitol Mall |
| Pacific Legal Foundation | Suite 1290 |
| 555 Capitol Mall | Sacramento, CA 95814 |
| Suite 1290 | Telephone: (916) 419-7111 |
| Sacramento, CA 95814 | Fax: (916) 419-7747 |
| Telephone: (916) 419-7111 | ewilcox@pacificlegal.org |
| Fax: (916) 419-7747 | |
| aboden@pacificlegal.org | |
| jthompson@pacificlegal.org | |

*Pro Hac Vice*

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2024, I served this document via the Court's electronic filing system to Defendants' counsel of record as follows:

Lori Yount
Senior Assistant City Attorney
Darah Eckert
Senior Asst. City Attorney, General Litigation Section
City of Houston Legal Department
P.O. Box 368
Houston, Texas 77001-368
900 Bagby, 4th Floor
Houston, Texas 77002
lori.yount@houstontx.gov
darah.eckert@houstontx.gov

Ben Stephens
Sandy Hellums-Gomez
Jarett Dillard
HUSCH BLACKWELL LLP
600 Travis St., Suite 2350
Houston, Texas 77002
ben.stephens@huschblackwell.com
sandy.gomez@huschblackwell.com
jarett.dillard@huschblackwell.com
*Counsel for City of Houston*

Brett J. Sileo
Britton B. Harris
Harris Hilburn P.L.L.C.
1111 Rosalie
Houston, Texas 77004
bsileo@hhstxlaw.com
bharris@hhstxlaw.com
*Counsel for Midtown Management District*

s/ *Erin E. Wilcox*
Erin E. Wilcox
Pacific Legal Foundation