## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| LANDSCAPE CONSULTANTS OF TEXAS, INC., and METROPOLITAN LANDSCAPE MANAGEMENT, INC., | Civil Action No. 4:23-cv-3516 |
| *Plaintiffs*, | |
| v. | |
| CITY OF HOUSTON, TEXAS, and MIDTOWN MANAGEMENT DISTRICT, | **JURY TRIAL DEMANDED** |
| *Defendants*. | |

## <u>DEFENDANT MIDTOWN MANAGEMENT DISTRICT'S MOTION FOR SUMMARY JUDGMENT</u>

Midtown Management District (the "District") files this Motion for Summary Judgment under Federal Rule of Civil Procedure 56. The District shows below that no material fact exists on the claims asserted by Landscape Consultants of Texas, Inc. ("Landscape Consultants") and Metropolitan Landscape Management, Inc. ("Metropolitan Landscape") and that the District is entitled to judgment as a matter of law on Plaintiff's equal protection and 42 U.S.C. § 1981 claims.

## I. FACTS:

**Midtown Management District**

The Midtown Management District was created in 2000 to provide quality of life services such as public safety, marketing services, maintenance and urban planning within the area of the Midtown Tax Increment Reinvestment Zone (TIRZ) in Midtown Houston.  (See Exhibit A, Deposition of Marlon Marshall, 11:18-22). The Midtown Redevelopment Authority was created to administer the daily operations and business of the Midtown TIRZ.  (See Exhibit A, Deposition of Marlon Marshall, 11:12-17).  Midtown Management District has an agreement with Midtown Redevelopment Authority to handle day-to-day administration of the Management District.  (See Exhibit A, Deposition of Marlon Marshall, 12:10-13:2). The District (operating through the District's Service and Maintenance Committee) is responsible for the maintenance and upkeep of public right of way and public facilities within the Midtown Management District.  (See Exhibit A, Deposition of Marlon Marshall, 17:10-20).

**Landscape Consultants Never Bid for Work for Midtown**

Landscape Consultants has never made any bid to work on projects for Midtown Management District or done any work for Midtown Management District. (See Exhibit B, Deposition of Gerald Thompson, 76:8-16).   According to Gerald Thompson, one of the owners of both Landscape and Metropolitan, this is because

the companies operate basically as one and the same, so it was never necessary for Landscape to bid on work for Midtown Management District. (See Exhibit B, Deposition of Gerald Thompson, 76: 8-22). Landscape never intends to make any bids to Midtown Management District for projects. (Exhibit B, Deposition of Gerald Thompson, 82:4-7). Landscape is not contending that it suffered its own injury but is also seeking recovery from Midtown because Landscape is co-owned with Metropolitan. (Exhibit B, Deposition of Gerald Thompson, 81:18-82:3).

**Metropolitan's History Working for Midtown**

Metropolitan, however, has a long history of working for Midtown Management District over the past 15-20 years. (Exhibit B, Deposition of Gerald Thompson, 77:4-16). Metropolitan is even performing work for the District today in performing landscape maintenance for Baldwin Park and Glover Park. (Exhibit B, Deposition of Gerald Thompson, 77:24-78:2. Metropolitan bid on the contract for maintaining Baldwin Park and Glover Park along with the contract for the District's Field Maintenance Services at the same time, and won the contracts to maintain Baldwin Park and Glover Park, but was not awarded the Field Maintenance Services contract. (Exhibit B, Deposition of Gerald Thompson, 79:6-12). Metropolitan has held the contract for Field Maintenance Services and well as the contracts for maintaining the District's park landscaping on and off over the years, holding the

contract for about 12-14 of the past 18 years. (Exhibit B, Deposition of Gerald Thompson, 78:16-79:2). This shows that Metropolitan has been capable, and in fact has been awarded contracts for the District under the District's Minority, Women and Disadvantaged Program, as Metropolitan and Landscape owner Gerald Thompon admitted. (Exhibit B, Deposition of Gerald Thompson, 80:7-13).

**Landscape and Metropolitan Ownership**

Landscape and Metropolitan are also each owned 50% by Gerald Thompson and 50% by his wife, Theresa, Thompson (Exhibit B, Deposition of Gerald Thompson, 10:13-11:5), although they previously represented that the companies were 51% owned by Theresa Thompson, a women, to qualify for preferences given to women owned businesses under the Texas Historically Underutilized Business (HUB) program. (Exhibit B, Deposition of Gerald Thompson, 89:6-18). Landscape and Metropolitan were certified as Historically Underused Businesses for many years, but decided not to renew that certification. (Exhibit B, Deposition of Gerald Thompson, 89:6-90:5).

**Plaintiff's Alleged Injury Is Not Being Awarded Contract for Field Maintenance Services by Midtown**

The crux of Plaintiffs' complaint is that they were injured because Metropolitan was not awarded the contract for the Field Maintenance Services because of the way Metropolitan's bid was scored under the District's Minority,

Women and Disadvantaged Business Enterprise (MWDBE) Program. (Exhibit B, Deposition of Gerald Thompson, Midtown Management District operates its MWDBE program because it is commanded have such a program by the Texas Legislature's enactment of Texas Local Government Code §375.222 in 1991 which orders management districts such as Midtown Management District to have a program for disadvantaged businesses. The plaintiffs are not challenging that this statute is unconstitutional.

**Texas Local Government Code §375.222 Requires District's MWDBE Program**

Texas Local Government Code §375.222(a) states that "[a] district shall attempt to stimulate the growth of disadvantaged businesses inside its boundaries by encouraging the full participation of disadvantaged businesses in all phases of its procurement activities and affording those disadvantaged businesses a full and fair opportunity to compete for district contracts." The Texas Legislature thus has already identified that there is a compelling interest for the District to stimulate the growth of disadvantaged businesses and directed the District to do so.

Texas Local Government Code §375.222(b) provides that "[a] district shall establish one or more programs designed to increase participation by disadvantaged businesses in public contract awards. Each program shall be structured to further

remedial goals and shall be established to eradicate the effects of any prior discrimination."

**Midtown's MWDBE Bid Scoring Program**

The District's MWDBE program  to increase participation by disadvantaged businesses in bidding for the District's public contracts includes both outreach to organizations that target disadvantaged businesses to advertise upcoming procurement (Exhibit A, Deposition of Marlon Marshall, 51:23-52:3) and bid scoring criteria that included 50 points for financial considerations, 25 points for organizational qualifications and references, 15 points for proposed approach, and 10 points for being a Minority, Woman or Disadvantaged Enterprise. (See Exhibit A. Deposition of Marlon Marhsall, 28:4-38:24 and Exhibit C – Midtown Management District's Invitation to Bid for the Field Maintenance Services Project, page 4 that was Exhibit 3 to Marlon Marshall's deposition).

This Invitation to Bid (Exhibit C) was issued on October 21, 2022, by Midtown Management District and is the document controlling the bidding for the Field Maintenance Service Project upon which Metropolitan bid, but was not awarded the contract, resulting in the current complaint.  On Page 4 of the Invitation to Bid, the District's MWDBR policy is explicitly stated as:

PARTICIPATION OF MINORITY, WOMEN, AND DISADVANTAGED BUSINESS ENTERPRISES (MWDBE):  It is the policy or the Midtown District to stimulate the growth of minority, women, and disadvantaged business enterprises (MWDBEs) by encouraging the full participation of MWDBE businesses in all phase of its procurement activities and affording those firms a full and fair opportunity to compete for contracts.  MEDBE firms must be certified by the City of Houston, Houston Minority Business Council, and/or the Houston Women's Business Council.  Proof of Certifications must be included with the Response." (Exhibit C, Page 4).

After Midtown received Metropolitan's bid for the Field Maintenance Services Project, Metropolitan submitted a response on the District's Request to Clarify Bid Form (Exhibit B, Deposition of Gerald Thompson, 87:2-90:4).  This Request to Clarify Bid Form is attached here as Exhibit D, and was Exhibit 7 to MR. Thompson's deposition.  Metropolitan checked "yes" on this form that it was a MWDBE certified by the City of Houston, Houston Minority Business Council, and/or Houston Women's Business Council.  (See Exhibit D and Exhibit B, Deposition of Gerald Thompson, 87:20-88:1).  Metropolitan then added a note that read:  Metropolitan Landscape has always been owned at 51% by Theresa Thompson.  Metropolitan has been HUB certified by the State of Texas.  And Metropolitan does not have one of the three certificates requested."  (Exhibit D and

Exhibit B, Deposition of Gerald Thompson, 88:2-10). Landscape and Metropolitan, despite maintaining that they were a 51% woman-owned company, never pursued certification with the Houston Women's Council that would have qualified them as a MWDB to gain the up to ten points offered for the bid score by Midtown. (Exhibit B, deposition of Gerald Thompson, 88:16-89-1). Metropolitan and Landscape never even reached out to Houston Women's Council to see what its certification requirements would be. (Exhibit B, deposition of Gerald Thompson, 89:2-5). Metropolitan and Landscape therefore cannot show that they would not have qualified for MWDBE certification if they had pursued it to qualify to earn points under Midtown's MWDBE program.

**Metropolitan's Bid**

Metropolitan's bid was awarded 84.98 total points by Midtown, but lost the award of the Field Maintenance Services contract to SMC Landscape Services, which was awarded 87.68 total points(Exhibit E – Bid Tabulation and See Exhibit B, Deposition of Gerald Thompson, 96:25-98:25) Metropolitan was not the lowest bidder financially, as Four Eleven LLC was awarded 50 out of 50 points for financial considerations where Metropolitan was only awarded 46.14 points. (Id.) Metropolitan did score highest in Organizational Qualifications and References (24.58 out of 25) and Proposed Approach (14.25 out of 15) but was not awarded 10

points for qualifying as a certified MWDBE, and therefore scored lower than SMC. (Id.).  The bid scoring for the Proposed Approach category is somewhat subjective and includes the bid scoring committee's opinion as to whether the bidder provides value added services or recommends performing services more efficiently.  (Exhibit A, Deposition of Marlon Marhsall, 32:1-15).  The bid scoring committee also evaluated the organizational qualifications and references with the score being the average of the committee members, up to 25 points for that category.  (Exhibit A, Deposition of Marlon Marshall, 36:21-38:1).  The MWDBE score awarded by the bid committee is also the average assigned by the committee members, up to 10 points, with the number of points at the discretion of the committee members.  (Exhibit A, Deposition of Marlon Marshall, 38:2-24). The award of 10 points to a bidder certified as a MWDBE is discretionary, not mandatory.   (Exhibit A, Deposition of Marlon Marhsall, 38:22-24).  Four Eleven was the lowest bidder, but it was not awarded the contract because it had lower scores in other categories.  (Exhibit A, Deposition of Marlon Marshall, 35:24-36:20).

## I.    ARGUMENT AND AUTHORITIES

**A.    The District is Entitled to Summary Judgment on Plaintiffs' Section 1981 Claims No Independent Cause of Action Exists Against the District.**

The District is entitled to summary judgment on both Plaintiffs' section 1981 claims because section 1981 does not provide an independent cause of action against local government entities. *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 731-33 (1989); *see Oden v. Oktibbeha Cnty.*, 246 F.3d 458, 463 (5th Cir. 2001) (section 1981 does not provide "a remedial cause of action against local government entities."). A plaintiff asserting a claim against a governmental entity for an alleged violation of section 1981 must do so through section 1983. *Jett*, 491 U.S. at 735-36.

Here, Plaintiffs assert two separate "Claims for Relief" against the District. First, Plaintiffs assert the District's program "Violates the Equal Protection Clause of the Fourteenth Amendment, through 42 U.S.C. § 1983." Compl. ¶¶ 56-64. Second, Plaintiffs assert the District's program "Violates Plaintiffs' Equal Rights Under the Law, through 42 U.S.C. § 1981." Compl. ¶¶ 70-74. On the face of the Complaint, Plaintiffs assert two separate claims for relief. Plaintiffs improperly present their section 1981 claim for relief as an independent cause of action against a local government entity, and therefore the section 1981 claims should be dismissed as a matter of law.

Plaintiffs not only pleaded two separate causes of action under sections 1981 and 1983 against the District, but the Plaintiffs also seek relief against the District

without any reference to either statute. Plaintiffs seek declaratory relief asking the court to declare the District's disadvantaged program to be "unconstitutional under the Equal Protection Clause of the Fourteenth Amendment." Prayer for Relief ¶ 3. It is unclear whether Plaintiffs seek declaratory relief under either statute but permitting a claim under section 1981 to proceed with "implicit references to § 1983 would effectively create an independent cause of action under § 1981 where none exists." *Jenkins v. City of Dallas*, No. 3:22-CV-0960-B, 2022 WL 6225559, at *4 (N.D. Tex. Oct. 6, 2022).

The United States District Court here in the Southern District of Texas held that Section 1981 does "not provide a separate cause of action against local governmental entities." *Bluitt v. Houston Indep. Sch. Dist.*, 236 F. Supp. 703, 720 (S.D. Tex. 2002). The *Bluitt* court followed the precedent established by the United State Supreme Court in *Jett* that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 733, 109 S. Ct. 2702, 2722 (1989). The court must dismiss both Plaintiffs' claims against Midtown under Section 1981 because Plaintiffs do not have a private right of action against a state governmental unit such as Midtown.

Despite section 1983 serving as the "exclusive federal" remedy for violations of section 1981, the Plaintiffs clearly pleaded their section 1981 claim against the District as an independent cause of action. *Jett*, 491 U.S. at 735. Because the Plaintiffs cannot assert an independent claim against the District under section 1981, the Plaintiffs' claims must fail and the District is entitled to summary judgment.

**b.    Landscape Consultants' Failure To Bid On A District Contract Requires Dismissal Of Their Section 1981 Claims.**

Landscape Consultants' section 1981 claims for relief against the District also should be dismissed because Landscape Consultants failed to establish "the loss of an actual, not speculative contract interest." *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751 (5th Cir. 2001). Landscape Consultants contends the District's program "discriminates on the basis of race in violation of 42 U.S.C. § 1981." Compl. ¶ 72. Section 1981 guarantees to "[a]ll persons within the jurisdiction of the United States…the same right to make and enforce contracts…as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

Fifth Circuit precedent requires a plaintiff bringing a section 1981 claim to "establish the loss of an actual, not speculative or prospective, contract interest." *Morris*, 277 F.3d at 751. Plaintiffs fail to allege that the District's program interfered with anything more than the hope that "Plaintiffs would like to bid on MMD contracts in the future." Compl. ¶ 45. Landscape Consultants does not allege that it has ever bid on a District contract, and its 30(b)(6) representative Gerald Thompson

12

testified, as detailed above, that Landscape never intends to bid on a contract with Midtown because Landscape and Metropolitan share ownership and Metropolitan is the company designated by the owners to bid for contracts with Midtown.

An allegation of the "mere possibility" that the District "would interfere" with Landscape Consultants' right to contract in the future, "is insufficient to support recovery under § 1981." *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003). Since Landscape Consultants never bid on a District contract, their allegation that they "would like" to bid on future District contracts is entirely speculative. Compl. ¶ 45. The Fifth Circuit stated, where a party "has engaged in an actual attempt to contract that was thwarted by the merchant, courts have been willing to recognize a section 1981 claim." *Morris*, 277 F.3d at 752. Landscape Consultants failed to allege that it ever engaged in an "actual attempt" to contract with the District. Landscape Consultants does not allege that it ever bid on a District contract, negotiated with the District, or otherwise attempted to secure a contract for District work. Landscape Consultants alleges only that it "would like" to place a speculative future bid on a District contract that may never materialize. Compl. ¶ 45. This direct language of the complaint shows that Landscape Consultants 1981 claim is purely speculative.

The Fifth Circuit approvingly cited a Federal District Court's holding that a "§ 1981 claim must allege that the plaintiff was 'actually prevented, and not merely deterred'" from contracting. *Morris*, 277 F.3d at 752 (citing *Henderson v. Jewel*

13

*Food Stores, Inc.,* No. 96 C 3666, 1996 WL 617165 at *3-4 (N.D. Ill. Oct. 23, 1996)). Assuming arguendo that the District's program "deters" Landscape Consultants from submitting a bid, their section 1981 claim remains speculative because the District never "actually prevented" Landscape Consultants from contracting. *Id.* In fact, under the District's program, all contractors can bid on all contracts subject to the District's evaluation criteria. No contractor is meaningfully deterred from submitting a bid.

The Fifth Circuit rejected a similar argument in *Meyers v. LA Porte Independent School District*. In *Meyers*, a plaintiff asserted a section 1981 claim against a school district alleging that the district's discriminatory treatment interfered with her ability to obtain a college athletic scholarship. *Meyers v. LA Porte Indep. Sch. Dist.*, No. CIV.A. H-05-1087, 2007 WL 7119878, at *2 (S.D. Tex. Apr. 25, 2007), aff'd, 277 Fed. Appx. 333 (5th Cir. 2007). The plaintiff argued if she participated in more games, her chances of obtaining an athletic scholarship would have increased. *Id.* The Southern District of Texas held the athletic scholarships plaintiff "may have lost out on are not *actual* contracts, but merely speculative or prospective ones. Alleged interference with such speculative contracts cannot form the basis of a § 1981 claim." *Id.* Similarly, Landscape Consultants has not lost out on an actual District contract solely because it desires to bid on future contracts. Landscape Consultants never participated in the District's

bidding process and is no closer to an actual District contract than the high school senior in *Meyers* was to an athletic scholarship.

A successful section 1981 claim requires "the loss of an actual, not speculative or prospective, contract interest." *Morris*, 277 F.3d at 751. Landscape Consultants' failure to bid on any District contracts means that the court should grant the District summary judgment on Landscape Consultants' claims.

**C.    Landscape Consultants' Section 1983 Claim Fails to Allege Disparate Treatment Under the District's Program.**

Landscape Consultants fails to state a claim under section 1983 for the District's violations of the Equal Protection Clause because Landscape Consultants does not adequately allege the District treated it differently than other applicants for District contracts. Landscape Consultants further fails to allege any relationship with the District.

The Equal Protection clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state a successful claim for violation of rights under the Equal Protection Clause, including through section 1983, a plaintiff must allege: (1) it "received treatment different from that received by similarly situated individuals;" and (2) "the unequal treatment stemmed from a discriminatory intent." *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004) (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)). "Allegations [of discriminatory

intent] that are merely conclusory, without reference to specific facts, will not suffice." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (quoting *Priester*, 354 F.3d at 420).

Landscape Consultants makes no specific factual allegations against the District. Landscape Consultants levies a conclusory allegation that "Plaintiffs would like to bid on MMD contracts in the future." Compl. ¶ 45. Landscape Consultants fails to allege disparate treatment by the District as required to state a claim under the Equal Protection Clause.

Landscape Consultants' specific allegations also only discuss its relationship with the City of Houston. Compl. ¶¶ 29-33. Landscape Consultants alleges the City of Houston treats its business differently because it is required to "compensate for the percentage of the total contract value that must be given away to an MBE or WBE." Compl. ¶ 31. Nowhere in the Complaint are there specific allegations against the District regarding disparate treatment or discriminatory intent relating to Landscape Consultants. Compl. ¶¶ 34-46.

Landscape Consultants fails to plead or offer any evidence that it ever bid on a District contract, that it negotiated with the District, or otherwise attempted to secure a contract for District work. Landscape Consultants does allege it "would like" to place a speculative future bid on a District contract that may never materialize. Compl. ¶ 45. Landscape Consultants fails to sufficiently plead disparate

treatment or any treatment by the District as required to state a claim under the Equal

Protection Clause, so the court should grant summary judgment.

### III. THE DISTRICT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' EQUAL PROTECTION CLAIMS

#### A.    Midtown's Disadvantaged Business Program is Required by Texas State Law to Remedy Past Discrimination.

Plaintiffs'' position appears to be that the only two compelling interests

that permit race-based government policies like Midtown's disadvantaged

business program are "remediating specific, identified instances of past

discrimination that violated the Constitution or a statute" or avoiding prison

race riots, as Plaintiffs' argued in response to the District's Motion to Dismiss,

citing *Students for Fair Admissions, Inc. v. President and Fellows of Harvard*

*College (SFFA)*, 600 U.S. 181, 207 (2023).    Midtown adopted its

disadvantaged business program because it was specifically required by the

Texas Legislature to establish one or more programs designed to increase

participation by disadvantaged businesses in public contract awards.  Tex.

Local Gov't Code §375.222(b).  The Texas Legislature further directed that

Midtown's program shall be structured to further remedial goals and shall be

established to eradicate the effects of any prior discrimination.  Tex. Local

Gov't Code §375.222(b).  The Texas Legislature therefore already determined

that there was prior discrimination that violated the Constitution in enacting these laws requiring Midtown to create and operate its disadvantaged business program.

Midtown's disadvantaged business program is therefore permissible under the *Students for Fair Admissions* standard.  The state legislature already determined that there has been past discrimination and requires Midtown to apply its disadvantaged business policy as a remedy.  Plaintiffs do not argue in their Complaint that Midtown's policy is not narrowly tailored to remedy past discrimination, but instead argue that Midtown should not be allowed to have a disadvantaged business program at all.  This sharply clashes with the clear directive from the Texas Legislature that Midtown have a disadvantaged business policy to remedy past discrimination as identified by the Texas Legislature.  Plaintiffs do not argue that Tex. Local Gov't Code §375.222 is unconstitutional or deprive Plaintiffs of equal protection under the law.  Plaintiffs instead argue that this court should enjoin Midtown from applying its disadvantaged business program, which would place Midtown in violation of state law.  Plaintiffs have failed to show that they have a valid equal protection claim or valid claims under either Section 1981 or 1983.

### B. Midtown's Program Was Tailored as a Good Faith Effort to Comply with Tex. Local Gov't Code §375.222

Midtown's MWDBE program includes a discretionary award of up to 10 points for a certified MWDBE business, not a mandatory award of points, and therefore there is no automatic award of points simply because a business is certified as women or minority owned. The District created the category for an award of up to 10 points for a MWDBR business as part of the District's good faith effort to comply with Texas Local Government Code §375.222 and similar requirements from the City of Houston. (Exhibit A, Deposition of Marlon Marshall, 53:9-17). The District felt that this was the most effective way to address the history of discrimination of public contractors while ensuring that highly qualified contractors provided the District with quality goods and services, while not overly disadvantaging anybody. (Exhibit A, Deposition of Marlon Marshall, 52:22-54:1). The District's Service and Maintenance Committee, legal counsel and District staff arrived at the award of 10 points out of 100 to meet the Texas Legislature's MWDBE requirements. (Exhibit A, Deposition of Marlon Marhsall, 54:10-16). The District entered into an agreement with the Midtown Redevelopment Authority to administer and comply with the laws of the state and to review the administrative policy annually. (Exhibit A, Deposition of Marlon Marshall, 26:12-19). The District is also awaiting the results of the disparity study currently being conducted by the City of Houston, which is expected to be received by the District for review and possible adoption within the next month. Metropolitan also demonstrated that it can win

contracts with the District under the current policy, including approximately 12 out of the last 18 years for the Field Maintenance Services project and the current contracts for Baldwin and Glover Parks.  The District's program therefore does not unfairly disadvantage Plaintiffs and is narrowly tailored enough to redress the past history of discrimination in public contracting in the Houston metropolitan area while still affording Plaintiffs the opportunity to win the award of contracts from the District.

Midtown's program is not a racial set aside program such as the one disapproved in *City of Richmond v. J.A. Croson Co*., 488 U.S. 469, 493 (1989). There is no set quota or percentage for hiring MWDBE contractors, and race or gender certified businesses receive points that are part of a complete holistic review of factors including financial considerations, qualifications and references, proposed approach to the project.  The bid is not awarded to a company just because it is a MWDBE, but because the balance of all factors being considered shows that the company is best suited to perform the work while the District also complies with the requirement by the Texas Legislature to have a program to remedy past discrimination.  The District admittedly does not have a history of discriminating against minority or women owned businesses because it has only existed for a shirt time, but the reality is that the history of public contracting in Houston and Texas is rife with discrimination such that the Texas Legislature commanded management

districts to have MWDBE programs.  The court should grant summary judgment to the District against the Plaintiffs' equal protection and all other claims.

Courts must undertake a "searching judicial inquiry into the justification" of a race-based program to ensure that government entities are "pursuing a goal important enough to warrant use of a highly suspect tool." City of Richmond v. J.A. Croson Co., 488 U.S. 469, 493 (1989)

## IV. CONCLUSION AND PRAYER

For the foregoing reasons, the District respectfully requests that the Court grant summary judgment that Plaintiffs take nothing by way of all of their claims against the District.

DATED: December 13, 2023

Respectfully submitted,

HARRIS HILBURN P.L.L.C.

/s/ *Britton B. Harris*

Britton B. Harris
Attorney in Charge
So. Dist. of Texas No. 00021
Texas Bar. No. 09054500
bharris@hhstxlaw.com
1111 Rosalie
Houston, Texas 77004

Telephone: (713) 223-3936
Facsimile: (713) 224-5358
**Attorneys for Defendant**
**Midtown Management District**

OF COUNSEL:
Brett J. Sileo
So. Dist. Of Texas No. 22560
Texas Bar No. 00794634
bsileo@hhstxlaw.com
Harris Hilburn, PLLC.
1111 Rosalie
Houston, Texas 77002
Telephone: (713) 223-3936
Facsimile: (713) 224-5358

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record via the Court's electronic filing system following the Federal Rules of Civil Procedure, on November 29, 2024.


        */s/ Britton B. Harris*
        Britton B. Harris