# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| LANDSCAPE CONSULTANTS OF TEXAS, INC., and METROPOLITAN LANDSCAPE MANAGEMENT, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> CITY OF HOUSTON, TEXAS, and MIDTOWN MANAGEMENT DISTRICT, <br><br> *Defendants*. | Civil Action No. 4:23-cv-03516 <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT MIDTOWN MANAGEMENT DISTRICT'S MOTION FOR SUMMARY JUDGMENT** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii
PRELIMINARY STATEMENT ...........................................................................................1
STATEMENT OF FACTS ....................................................................................................1
ARGUMENT .........................................................................................................................3
    I.    State Law Does Not Require Midtown's Program..........................................3
    II.   Landscape Consultants Has Standing for Its Section 1983 Claim ..................7
    III. Plaintiffs Are Entitled to Summary Judgment on Their § 1981 Claims ........10
        A.   Plaintiffs' section 1981 claims seek only equitable remedies ...................10
        B.   Section 1981 claims do not require an ongoing contractual relationship ..12
CONCLUSION ....................................................................................................................15
CERTIFICATE OF SERVICE ............................................................................................16

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Adarand Constructors, Inc. v. Pena*,
  515 U.S. 200 (1995) ........................................................................................... 9

*Arguello v. Conoco, Inc.*,
  330 F.3d 355 (5th Cir. 2003) ............................................................................ 14

*Bluitt v. Houston Independent School District*,
  236 F. Supp. 2d 703 (S.D. Tex. 2002) .............................................................. 11

*Causey v. Sewell Cadillac-Chevrolet, Inc.*,
  394 F.3d 285 (5th Cir. 2004) ............................................................................ 12

*City of Richmond v. J.A. Croson Co.*,
  488 U.S. 469 (1989) .................................................................................... 6–7, 9

*Domino's Pizza, Inc. v. McDonald*,
  546 U.S. 470 (2006) .................................................................................... 12–13

*Escamilla v. Elliott*,
  816 F. App'x 919 (5th Cir. 2020) ..................................................................... 11

*Fennell v. Marion Independent School District*,
  804 F.3d 398 (5th Cir. 2015) ....................................................................... 9–10

*Gratz v. Bollinger*,
  539 U.S. 244 (2003) ........................................................................................... 7

*Grutter v. Bollinger*,
  539 U.S. 306 (2003) ........................................................................................... 6

*Javinsky-Wenzek v. City of St. Louis Park*,
  829 F. Supp. 2d 787 (D. Minn. 2011) ............................................................... 11

*Jett v. Dallas Independent School District*,
  491 U.S. 701 (1989) .................................................................................... 10–11

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................... 8

*Meyers v. La Port Independent School District*,
  No. Civ.A. H-05-1987, 2007 WL 7119878
  (S.D. Tex. Apr. 25, 2007) ........................................................................... 13–14

*Miller v. Vilsack*,
   No. 4:21-CV-0595-O, 2021 WL 11115194
   (N.D. Tex. July 1, 2021) ...................................................................................5

*Morris v. Dillard Dep't Stores, Inc.*,
   277 F.3d 743 (5th Cir. 2001) .........................................................................14

*N.E. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*,
   508 U.S. 656 (1993).................................................................................2, 8–9

*Oden v. Oktibbeha County*,
   246 F.3d 458 (5th Cir. 2001) .........................................................................11

*Patsy v. Bd. of Regents of State of Fla.*,
   457 U.S. 496 (1982)........................................................................................9

*Priester v. Lowndes County*,
   354 F.3d 414 (5th Cir. 2004) .........................................................................10

*Scelsa v. City Univ. of New York*,
   806 F. Supp. 1126 (S.D.N.Y. 1992) ..............................................................11

*Students for Fair Admissions v. President and Fellows of Harvard College*,
   600 U.S. 181 (2023)....................................................................................4–5

*Vitolo v. Guzman*,
   999 F.3d 353 (6th Cir. 2021) ...........................................................................5

*W.H. Scott Constr. Co. v. City of Jackson*,
   199 F.3d 206 (5th Cir. 1999) ...........................................................................8

*Walker v. City of Mesquite*,
   169 F.3d 973 (5th Cir. 1999) ...........................................................................7

### Statutes and Regulations

42 U.S.C. § 1981................................................................................................*passim*

42 U.S.C. § 1981(b) ................................................................................................13

42 U.S.C. § 1983................................................................................................*passim*

Houston Code § 15-82 ..............................................................................................3

Tex. Local Gov't Code § 375.222 ............................................................................4

Tex. Local Gov't Code § 375.222(b).......................................................................5

Tex. Local Gov't Code § 375.222(d).......................................................................4

34 Tex. Admin. Code § 20.283(a) ............................................................................3

## PRELIMINARY STATEMENT

Defendant Midtown Management District freely admits that its Minority, Women, and Disadvantaged Business Enterprise (MWDBE) program discriminates against bidders based on race. Midtown's justification for this blatant violation of the constitution and civil rights laws is that the Texas Legislature made them do it. Midtown's attempt to pass the buck does not approach the high bar needed for government programs that use racial classifications. Midtown's Motion for Summary should be denied.

## STATEMENT OF FACTS

Midtown's Motion misstates several basic facts. First is that "Landscape is not contending that it suffered its own injury but is also seeking recovery[1] from Midtown because Landscape is co-owned with Metropolitan." Dkt. 69 at 3. Landscape Consultants has always claimed that it is injured by Midtown's MWDBE program. Dkt. 1 ¶ 63. Plaintiffs made clear in their Complaint that they "would like to bid on [Midtown] contracts in the future but cannot submit competitive bids for many or all of those contracts due to the 10-point disadvantage they suffer as non-[minority] certified businesses." Dkt. 1 ¶ 45. Plaintiffs were equally clear in their Opposition to Midtown's Motion to Dismiss that Landscape Consultants "is qualified, willing, and able to bid on government contracts in the Houston area,

---

[1] Plaintiffs seek only declaratory and injunctive relief, not "recovery from Midtown" in the form of damages. Dkt. 69 at 3; Dkt. 1 at 16–17.

1

which includes [Midtown], and that it is prevented from doing so on an equal basis by [Midtown's] MWDBE program." Dkt. 31 at 6.

Relatedly, Midtown wrongly states that the "crux" of Plaintiffs' Complaint is that Midtown was not awarded a Field Maintenance Service contract due to Midtown's MWDBE program. Dkt. 69 at 4. That is not true legally or factually. As Plaintiffs have repeatedly explained, "[i]n a forward-looking equal protection claim to a racial bid preference program like [Midtown's], the '"injury in fact" is the inability to compete on an equal footing in the bidding process, not the loss of a contract.'" Dkt. 31 at 5 (quoting *N.E. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993)). Plaintiffs repeatedly allege this forward-looking injury in their Complaint.

Next, Midtown incorrectly states that Metropolitan "has been awarded contracts for the District under the District's Minority, Women and Disadvantaged Program, as Metropolitan and Landscape owner Gerald Thompon [sic] admitted." Dkt. 69 at 4. Mr. Thompson admitted no such thing. Metropolitan does not qualify as a minority-owned business under Midtown's MWDBE program and therefore cannot be awarded the extra ten points that are available only to minority and women-owned businesses during bid evaluations. Mr. Thompson testified that *despite* this significant racial disadvantage, Metropolitan has won contracts with Midtown in the past. Ex. 1, Thompson Dep. Tr. 80:7–13. Mr. Thompson also

2

testified that Metropolitan lost the Field Maintenance Service contract due to Midtown's racially discriminatory MWDBE program: "[W]e lost the bid because we got no points for the Minority Program." *Id.* at 95:21–22.

Midtown also faults Metropolitan for not pursuing a women-owned business certification through the "Houston Women's Council." Dkt. 69 at 8. It's unclear who the Houston Women's Council is—Midtown provides no support for this contention and the organization does not appear to have an online presence. But even if it is a real organization, it wouldn't move the needle. Being woman-owned is not the only requirement for certification as a woman-owned business. In addition to ownership percentage, the female owner must exercise day to day control over the business' operations—something Metropolitan's majority female owner does not do. Ex. 1, Thompson Dep. Tr. 119:15–17; 34 Tex. Admin. Code § 20.283(a); Houston Code § 15-82.

## ARGUMENT

### I.  State Law Does Not Require Midtown's Program

Midtown openly admits that it lacks any evidence of discrimination against minority owned businesses. Dkt. 69 at 20. Despite this, Midtown operates a public contracting program that uses racial classifications for an ostensibly remedial purpose. Ex. 2, nos. 5–6, 8–9; Ex. 3, nos. 1–2, 4–6, 13, 21. But Midtown cannot say what it is remedying. Instead, Midtown's justification for this racial discrimination is, essentially, that the state government made them do it. Dkt. 69 at 17–18. This is

3

both factually incorrect and legally insufficient to justify its race-conscious contracting program.

Factually, Tex. Local Gov't Code § 375.222 does not force Midtown to enact a race-conscious program. In fact, Tex. Local Gov't Code § 375.222(d) expressly prohibits it. Instead, it requires that programs established under the statute "must attempt to remedy any statistically significant disparities *that are found to exist*," and may continue "only until its purposes and objectives are met as determined by the regular periodic review." *Id.* (emphasis added). Midtown does not know whether statistically significant disparities exist because it has never conducted a study to find out, and Midtown admits it has no statistical basis for its program. Ex. 3, no. 6. Instead, "discussions by staff and/or committees" determined that the race-based 10-point award "would be the most efficient way to address the history of discrimination[.]" Ex. 2, no. 8. Accordingly, Midtown's program does not even meet the standard set by Tex. Local Gov't Code § 375.222. And it certainly does not demonstrate the compelling government interest and narrow tailoring required to survive strict scrutiny.

There are only two compelling interests that permit the government to treat individuals differently based on race: (1) "remediating specific, identified instances of past discrimination that violated the constitution or a statute," and (2) "avoiding imminent and serious risks to human safety in prisons …." *Students for Fair*

4

*Admissions v. President and Fellows of Harvard College*, 600 U.S. 181, 207 (2023) (*SFFA*). Midtown contends that its program satisfies the first *SFFA* prong because in enacting Tex. Local Gov't Code § 375.222(b), the Texas Legislature "already determined that there was prior discrimination that violated the Constitution in enacting these laws requiring Midtown to create and operate its disadvantaged business program." Dkt. 69 at 17–18.

Even if the Texas Legislature could satisfy *Midtown*'s compelling interest, it has done no such thing. Midtown can establish a compelling interest in remedying racial discrimination only if it meets three criteria: (1) it identifies a specific instance of past discrimination and does not rely on general allegations of bias in the industry; (2) it provides direct evidence of intentional discrimination as opposed to mere disparities; and (3) it shows past participation in the discrimination it seeks to remedy. *Miller v. Vilsack*, No. 4:21-CV-0595-O, 2021 WL 11115194, at *8 (N.D. Tex. July 1, 2021) (*citing Vitolo v. Guzman*, 999 F.3d 353, 361 (6th Cir. 2021) (summarizing U.S. Supreme Court precedents)). Here, Midtown admits it is aware of no specific instances of past discrimination in its contracting process. Ex. 2, no. 7; Ex. 3, no. 21 Further, Midtown has no direct evidence of intentional discrimination (or even "mere disparities," for that matter) and instead intuits them from a statewide statute. Ex. 3, nos. 16, 21–22. And Midtown has no evidence that it has participated in discrimination in its public contracting program. Ex. 3, nos. 1–2, 4–6, 21.

5

Midtown also misunderstands the requirement that racial classifications be narrowly tailored. First, there is no "good faith effort" exception to the Equal Protection Clause, as Midtown contends. Dkt. 69 at 18–19. Midtown's program awards ten points to businesses based on their owner's skin color, without any evidence whatsoever that the race-based preference is necessary. Midtown's explanation for this racial bonus is that it "*felt* that this was the most effective way to address the history of discrimination of public contractors while ensuring that highly qualified contractors provided the District with quality goods and services, while not overly disadvantaging anybody." *Id.* at 19 (emphasis added).

Of course, Midtown's feelings are not evidence. It's also not evidence of narrow tailoring that Midtown is "awaiting the results of a disparity study currently being conducted by the City of Houston, which is expected to be received by the District for review and possible adoption within the next month."[2] *Id.* at 19. Equally irrelevant is Midtown's claim that because Plaintiff Metropolitan has previously won Midtown contracts, the program is "narrowly tailored enough[.]" *Id.* at 20. Neither of these statements demonstrate the "serious, good faith consideration of workable race-neutral alternatives" required for a race-conscious program to be narrowly tailored. *Grutter v. Bollinger*, 539 U.S. 306, 339 (2003); *City of Richmond v. J.A.*

---

[2] Midtown has not adopted local disparity studies in the past. For example, it did not adopt the 2020 Harris County disparity study as the basis for the compelling interest of its MWDBE policy or 10-point bid award. Ex. 3, no. 23.

6

*Croson Co.*, 488 U.S. 469, 507 (1989). And while Midtown is correct that quotas of the type struck down in *Croson* are unconstitutional, it does not follow that Midtown's program is constitutional because it awards a rote ten-point bonus. Dkt. 69 at 20. The Supreme Court struck down such a point system in *Gratz v. Bollinger*, finding that a policy that automatically distributed points to minority applicants solely because of race was not narrowly tailored. 539 U.S. 244, 270 (2003).

Midtown concedes that its program is a racial remedy in search of an injury: "The District admittedly does not have a history of discriminating against minority or women owned businesses because it has only existed for a shirt [sic] time[.]" Dkt. 69 at 20. Race-conscious programs "should be the remedy of last resort." *Walker v. City of Mesquite*, 169 F.3d 973, 982–83 (5th Cir. 1999). Midtown presents no evidence that any remedy, let alone a race-conscious one, is needed for its public contracting program, and Texas law does not give Midtown cover to violate federal law and the Constitution. Midtown's Motion should be denied.

## II. Landscape Consultants Has Standing for Its Section 1983 Claim

After failing to prove that its program serves a compelling interest and is narrowly tailored, Midtown resorts to repeating the same standing arguments this Court previously rejected in Midtown's Motion to Dismiss. Dkt. 26; Dkt. 36. With the benefit of discovery, Midtown's claims are even less persuasive now.

7

As it did in its Motion to Dismiss, Midtown once again argues that Landscape Consultants fails to state a claim under section 1983 because it "does not adequately allege" disparate treatment and because Landscape Consultants does not have a "relationship" with Midtown. Dkt. 26 at 9–10; Dkt. 69 at 15. Midtown still does not understand the nature of the injury in a forward-looking equal protection case like this one. Landscape Consultants has not brought a Title VII disparate impact or a claim of racial harassment under Title VI—it alleges, and has now conclusively proven, that Midtown's program facially discriminates against non-minority businesses in violation of the Equal Protection Clause. Dkt. 1 ¶¶ 47–55; Dkt. 68 at 13–18.

As this Court already held, Landscape Consultants suffers an "injury in fact" sufficient to sustain Article III standing in its equal protection claim against Midtown. Dkt. 36; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). In a forward-looking equal protection challenge to a race-conscious contracting program, the "'injury in fact' is the inability to compete on an equal footing in the bidding process, not the loss of a contract." *N.E. Fla.*, 508 U.S. at 666. Landscape Consultants does not have to prove that it previously held or lost contracts because of Midtown's racial discriminatory program, only that the program forces Landscape Consultants to compete for contracts "on an unequal basis." *W.H. Scott Constr. Co. v. City of Jackson*, 199 F.3d 206, 213 (5th Cir. 1999) (citing *N.E. Fla.*, 508 U.S. at 666: "The

8

'injury in fact' … is the denial of equal treatment resulting from the imposition of [a] barrier, not the ultimate inability to obtain the benefit."). There is no requirement—and Midtown cites none—that a plaintiff must first bid for a racially discriminatory contract before it can challenge the discriminatory bidding process. *Northeastern Florida* says the opposite, 508 U.S. at 666, and imposing such a requirement would add an administrative exhaustion requirement for exercising one's constitutional rights, which the Supreme Court has flatly rejected. *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 500–01 (1982) ("this Court has stated categorically that exhaustion is not a prerequisite to an action under § 1983 ….").

Additionally, Midtown is incorrect that Landscape Consultants must allege that (1) it received different treatment from others and (2) the unequal treatment came from discriminatory intent in order to raise a successful equal protection claim. Dkt. 69 at 15. Discriminatory intent or animus is not required in equal protection challenges to race-based government programs. *See, e.g.*, *Croson*, 488 U.S. at 500 (striking down race-based contracting program despite supposedly benign purpose); *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 226 (1995) ("good motives" not enough when state employs explicit racial classification system). The cases Midtown cites in support of its argument do not involve race-based public contracting programs and are not relevant to Landscape Consultants' equal protection claim. Dkt. 69 at 15–16. *Fennell v. Marion Independent School District* involved a Title VI

9

racially hostile environment claim and an equal protection claim by a student against her school district for racial discrimination and harassment. 804 F.3d 398, 401 (5th Cir. 2015). Similarly, *Priester v. Lowndes County* involved a racially motivated attack on a high school student. 354 F.3d 414, 418 (5th Cir. 2004). These cases have no relevance here whatsoever.

### III. Plaintiffs Are Entitled to Summary Judgment on Their § 1981 Claims

Midtown does not dispute Plaintiffs' claims that Midtown's program violates Plaintiffs right to the full and equal benefit of all laws under 42 U.S.C. § 1981. Instead, as it did in its Motion to Dismiss, Midtown once again claims that section 1981 does not provide an independent cause of action against government actors and that Landscape Consultants lacks standing for a section 1981 claim. Dkt. 25 at 4; Dkt. 69 at 10–15. This Court has already dismissed Midtown's arguments once and should do so again at summary judgment. Dkt. 36.

#### A. Plaintiffs' section 1981 claims seek only equitable remedies

Section 1981 supports an independent cause of action against government entities like Midtown when the claim for relief is entirely forward-looking. Midtown's reliance on *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989), is misplaced because Plaintiffs here seek only prospective injunctive relief, not damages. Dkt. 69 at 12. In *Jett*, the Supreme Court concluded that section 1983 "provides the exclusive federal *damages remedy* for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." 491 U.S. at

10

735 (emphasis added). Interpreting the history of the Civil Rights Act of 1866 and 1871, the Court determined that "Congress intended that the explicit remedial provisions of § 1983 be controlling *in the context of damages actions* brought against state actors alleging violation of the rights declared in § 1981." *Id.* at 731 (emphasis added); *see also Escamilla v. Elliott*, 816 F. App'x 919, 922 (5th Cir. 2020) (applying *Jett* to find that section 1983 claims required "in order to obtain a *monetary* remedy for violations of civil rights protected by § 1981.") (emphasis added); *Scelsa v. City Univ. of New York*, 806 F. Supp. 1126, 1138 (S.D.N.Y. 1992) (prospective injunctive relief and attorney's fees available in section 1981 claim against public officials); *Javinsky-Wenzek v. City of St. Louis Park*, 829 F. Supp. 2d 787, 794–95 (D. Minn. 2011) (claim for injunctive relief against municipality was justiciable).

Yet again, Midtown does not dispute that Plaintiffs seek only declaratory and injunctive relief, nor does it cite any case holding that section 1981 does not provide an *equitable* remedy for claims against state actors. *Oden v. Oktibbeha County*, 246 F.3d 458 (5th Cir. 2001), does not help Midtown; the plaintiff in that case sought compensatory and punitive damages against the government defendants. *Id.* at 462. *Bluitt v. Houston Independent School District* is equally unhelpful; the plaintiff in *Bluitt* sought damages and the decision quotes *Jett*'s holding that section 1983 is the exclusive federal damages remedy for section 1981 violations. 236 F. Supp. 2d 703, 720 (S.D. Tex. 2002). Unlike the plaintiffs in those cases, Plaintiffs seek forward

11

looking relief only and may seek that relief through section 1981 claims against Midtown.

B. <u>Section 1981 claims do not require an ongoing contractual relationship</u>

Midtown also rehashes its failed Motion to Dismiss argument that Landscape Consultant must have bid on and lost a Midtown contract in order to bring a section 1981 claim. Dkt. 69 at 12. As in its Motion to Dismiss, Midtown again fails to identify any case that stands for this proposition.

Instead, Midtown contends that Landscape Consultants' section 1981 claims are too speculative. Dkt. 60 at 12–13. They are not. To establish a prima facie case under section 1981, Landscape Consultants must show that: (1) they are members of a racial minority;[3] (2) Midtown had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288–89 (5th Cir. 2004).

It is not speculative that Midtown's program intentionally discriminates on the basis of race; Midtown's program expressly awards ten points to minority-owned bidders based on race alone, and admits that its program "may disadvantage non-MWBE firms even if such firms have not shown a history of discrimination

---

[3] Section 1981 "protects the equal right of all persons … without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (cleaned up).

12

themselves." Ex. 3, no. 16. It is also not speculative that Midtown's discriminatory public contracting policy concerns an activity enumerated under section 1981: Plaintiffs' "making … of contracts" with Midtown for landscaping services. 42 U.S.C. § 1981(b). A contract "need not already exist" to trigger section 1981's protections; the statute "protects the would-be contractor along with those who already have made contracts." *Domino's Pizza*, 546 U.S. at 476.

Given that Midtown admits to advantaging some businesses over others depending on the race of the business' owners, Midtown's renewed claim that "[n]o contractor is meaningfully deterred from submitting a bid" is as irrelevant as it is ridiculous. Dkt. 69 at 14. Whether a business is deterred from submitting a bid—and Midtown's assertion is completely unsupported—does not change that every business is discriminated against and disadvantaged from receiving a contract. That's the whole purpose of Midtown's ten-point racial bonus plan—to give businesses a preference on the basis of race.

The same cases that failed to support this argument in Midtown's Motion to Dismiss continue to fail here. In *Meyers v. La Port Independent School District*, a high school softball player claimed that her failure to be promoted to the varsity team until her senior year was due to her race and that it prevented her from "generating playing statistics that would have led colleges and universities to consider her for athletic scholarships." No. Civ.A H-05-1987, 2007 WL 7119878, at *1 (S.D. Tex.

13

Apr. 25, 2007). A possible athletic scholarship on a team of unknown caliber at an unknown university is in no way comparable to a defined landscaping contract. The myriad factors that determine whether a student is offered a college athletic scholarship, like athletic ability, injury status, team needs, GPA, or open roster positions—none of which the Court addressed in *Meyers*—are in no way comparable to Midtown's program, which awards ten points only to minority business enterprises. Midtown's remaining cases apply only in the retail context. Dkt. 69 at 13–14; *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 752 (5th Cir. 2001) (customer detained for shoplifting); *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003) ("the law in this circuit for section 1981 claims in the *retail* context is established by *Morris*.").

## CONCLUSION

For the foregoing reasons, Midtown's Motion for Summary Judgment should be denied and Plaintiffs' Motion for Summary Judgment, dkt. 68, should be granted.

DATED: December 20, 2024.

|  |  |
|---|---|
| Anastasia Boden | Respectfully submitted, |
| *Of Counsel* | s/ Erin E. Wilcox |
| Cal. Bar No. 281911 | Erin E. Wilcox |
| S.D. Tex. Bar No. 3495077 | *Attorney-in-Charge* |
| Joshua P. Thompson* | Cal. Bar No. 337427 |
| *Of Counsel* | S.D. Tex. Bar No. 3369027 |
| Cal. Bar No. 250955 | Pacific Legal Foundation |
| Pacific Legal Foundation | 555 Capitol Mall |
| 555 Capitol Mall | Suite 1290 |
| Suite 1290 | Sacramento, CA 95814 |
| Sacramento, CA 95814 | Telephone: (916) 419-7111 |
| Telephone: (916) 419-7111 | Fax: (916) 419-7747 |
| Fax: (916) 419-7747 | ewilcox@pacificlegal.org |
| aboden@pacificlegal.org |  |
| jthompson@pacificlegal.org |  |

*Pro Hac Vice

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2024, I served this document via the Court's electronic filing system to Defendants' counsel of record as follows:

Lori Yount
Senior Assistant City Attorney
Darah Eckert
Senior Asst. City Attorney, General Litigation Section
City of Houston Legal Department
P.O. Box 368
Houston, Texas 77001-368
900 Bagby, 4th Floor
Houston, TX 77002
lori.yount@houstontx.gov
darah.eckert@houstontx.gov

Ben Stephens
Sandy Hellums-Gomez
Jarett Dillard
HUSCH BLACKWELL LLP
600 Travis St., Suite 2350
Houston, Texas 77002
ben.stephens@huschblackwell.com
sandy.gomez@huschblackwell.com
jarett.dillard@huschblackwell.com
*Counsel for City of Houston*

Brett J. Sileo
Britton B. Harris
Harris Hilburn P.L.L.C.
1111 Rosalie
Houston, Texas 77004
bsileo@hhstxlaw.com
bharris@hhstxlaw.com
*Counsel for Midtown Management District*

s/ *Erin E. Wilcox*
Erin E. Wilcox
Pacific Legal Foundation