# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| LANDSCAPE CONSULTANTS OF TEXAS, INC., and METROPOLITAN LANDSCAPE MANAGEMENT, INC., | Civil Action No. 4:23-cv-03516 |
| *Plaintiffs*, | |
| v. | **PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF HOUSTON'S MOTION FOR SUMMARY JUDGMENT** |
| CITY OF HOUSTON, TEXAS, and MIDTOWN MANAGEMENT DISTRICT, | |
| *Defendants*. | |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT .......................................................... 1

STATEMENT OF FACTS ................................................................. 2

ARGUMENT ..................................................................................... 5

   I.   Plaintiffs Have Article III Standing ........................................ 5

     A.  Plaintiffs suffered an injury in fact .................................... 5

     B.  Plaintiffs challenge the entire MWSBE program ...................... 9

   II.   Houston's MWSBE Program Fails Strict Scrutiny ..................... 10

     A.  Houston has no evidence of a compelling interest ................... 10

     B.  Houston has no evidence of narrow tailoring ........................ 11

CONCLUSION ................................................................................ 17

CERTIFICATE OF SERVICE ........................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adarand Constructors, Inc. v. Pena,*
  515 U.S. 200 (1995)......................................................................................5

*Biden v. Nebraska,*
  600 U.S. 482 (2023)......................................................................................8

*City of Richmond v. J.A. Croson Co.,*
  488 U.S. 469 (1989)................................................................................11–12

*Fisher v. Univ. of Tex. at Austin,*
  570 U.S. 297 (2013)....................................................................................12

*Grutter v. Bollinger,*
  539 U.S. 306 (2003)....................................................................................12

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992)......................................................................................5

*N.E. Fla. Chapter of Associated Gen. Contractors of Am. v.*
  *City of Jacksonville,*
  508 U.S. 656 (1993)..........................................................................5–6, 8, 10

*Nuziard v. Minority Business Development Agency,*
  721 F.Supp.3d 431 (N.D. Tex. Mar. 5, 2024) ................................................15

*Parents Involved in Community Schools v. Seattle Sch. Dist. No. 1,*
  551 U.S. 702 (2007)..................................................................................5, 11

*Shaw v. Hunt,*
  517 U.S. 899 (1996)....................................................................................11

*Students for Fair Admissions v.*
  *President and Fellows of Harvard Coll.,*
  600 U.S. 181 (2023)..........................................................................10–11, 13

*Texas v. United States,*
  50 F.4th 498 (5th Cir. 2022) .........................................................................8

*Ultima Servs. Corp. v. U.S. Dep't of Agriculture,*
  683 F.Supp.3d 745 (E.D. Tenn. July 19, 2023)..............................................9

*Vitolo v. Guzman,*
  999 F.3d 353 (6th Cir. 2021) .......................................................................11

*W.H. Scott Const. Co. v. City of Jackson*,
    199 F.3d 206 (5th Cir. 1999) ..........................................................*passim*

*Walker v. City of Mesquite*,
    169 F.3d 973 (5th Cir. 1999) ...........................................................11

## Statutes

Houston Code § 15-81(b)...............................................................16

Houston Code § 15-82 .............................................................9, 14–15

Houston Code § 15-85(a)..............................................................4

## Rule

Fed. R. Civ. P. 26(e)(1)................................................................1

## Other Authority

Houston Television, Houston City Council Consolidated Session Meeting
    (Jan. 17, 2024), https://houstontx.new.swagit.com/videos/295029.....................3

## PRELIMINARY STATEMENT

When Plaintiffs Landscape Consultants of Texas, Inc. (Landscape Consultants) and Metropolitan Landscape Management, Inc. (Metropolitan) initiated this lawsuit challenging Defendant City of Houston's Minority, Woman, and Small Business Enterprise (MWSBE) program, Plaintiffs claimed that Houston had no compelling interest in operating a race-based public contracting program and that, even if it had, the MWSBE program was not narrowly tailored to achieve that interest. Dkt.1 ¶¶ 47–55. Over a year later, Houston admits what Plaintiffs initially alleged: the MWSBE program does not remedy specific, identified instances of racial discrimination that violate the Constitution or a statute, and its racial classifications are unmoored from any evidence of discrimination against the preferred groups. Plaintiffs have moved for summary judgment on these grounds, Dkt. 68, and their motion should be granted.

Houston, however, contends that it is entitled to summary judgment as a matter of law. Houston relies almost entirely on a new disparity study with significant problems. Foremost is that Houston withheld this disparity study from Plaintiffs throughout discovery, despite Houston's continuing obligation to produce responsive documents under Fed. R. Civ. P. 26(e)(1). Houston's professional and ethical breach is the subject of Plaintiffs' accompanying Motion to Strike and for Sanctions. Regardless, the disparity study is only a draft; it has not been adopted by

the Houston city council and the MWSBE program has not been amended to reflect the study's findings. Speculating on what Houston might do in the future based on a disparity study it hasn't adopted says nothing about the constitutionality of the program it actually has.

Plaintiffs don't challenge some speculative future Houston program; they challenge Houston's current MWSBE program. Rather than defend its MWSBE program, Houston asks this Court to judge a MWSBE program that does not exist. Rather than offer evidence of a compelling interest and narrow tailoring to justify the MWSBE program's use of racial preferences, Houston offers a city official's musings on what might happen if the city council adopts the new disparity study. And because it cannot defend its current, racially discriminatory MWSBE program, Houston tries yet again to challenge Plaintiffs' standing, despite no supporting evidence.

Houston's speculation, obfuscation, and misconduct cannot hide what is readily apparent: Houston operates a public contracting program that discriminates against bidders due to race, in violation of Plaintiffs' right to equal protection of the laws. Houston's motion for summary judgment should be denied.

## STATEMENT OF FACTS

Houston's motion misstates several key facts. First, Houston's MWSBE program does not "remedy active and passive discrimination," Dkt. 71 at 8, because

2

it has no evidence that such discrimination exists. The MWSBE program is based on the findings of a 2006 disparity study.[1] Dkt. 71, Hoyrd Decl. ¶ 8. This 18-year-old study is too old and stale to support Houston's race-based contracting program—a fact Houston officials openly admit[2] and Houston does not seriously dispute. Dkt. 71 at 31.

Houston also claims that a new, unadopted draft disparity study (MGT Study) justifies the current MWSBE program. However, in addition to the procedural and ethical issues raised in Plaintiffs' accompanying Motion to Strike and for Sanctions, this is logistically impossible. First, the draft MGT Study is dated May 7, 2024, while Houston's current MWSBE program was adopted nearly a decade before in 2013. Dkt. 71 at 8; Hoyrd Decl. Ex. E. Second, the Houston city council has not voted to adopt the draft MGT Study (and is not "expected to" for two more months), making it no more final or official than the 2020 Colette Holt & Associates disparity study

---

[1] Houston's motion also references a 2012 disparity study that was limited to the construction industry. Dkt. 71 at 11; Hoyrd Decl. ¶ 8. It has nothing to do with the landscaping preferences at issue in this case.

[2] *See* Houston Television, Houston City Council Consolidated Session Meeting (Jan. 17, 2024), https://houstontx.new.swagit.com/videos/295029 at 39:29 (City Attorney Arturo Michel: "You have to have a disparity study to show what the issue is. They get stale over time. Ours is now stale."), 39:43 (Mayor John Whitmire: "We probably need to review the process to emphasize how important it is. It seems to me like some of the valuations are pretty subjective. I heard the other day that one prime [contractor] had gone through 31 possible [MWBE] subs and the issue wasn't resolved and the firm was rejected, so it just seems to me like we need to review our process, support it, and be prepared to go to court with our strongest case.").

that Houston scrapped and is withholding from public view. *Id*. at Hoyrd Decl. ¶ 19; *see* Dkt. 68 at 2–3. Finally, Houston has not revised its MWSBE Ordinance to reflect the MGT Study's findings—the MWSBE program currently in effect is based on the 2006 disparity study. Dkt. 71, Hoyrd Decl. ¶ 19. In other words, the MGT Study has no bearing whatsoever on the MWSBE program that Plaintiffs challenge in this lawsuit.

And while Houston describes the MWSBE program's Good Faith Efforts policy as flexible and permissible, the reality is anything but. Dkt. 71 at 9–10. Bidders who cannot secure an agreement with a minority subcontractor to satisfy a contract goal must submit both a "Record of Good Faith Efforts" and a request for deviation, which Houston may or may not grant. Dkt. 71, Hoyrd Decl. Ex. 3. While Houston downplays the work involved in demonstrating Good Faith Efforts as merely "showing its efforts to obtain bids from minority- or women-owned businesses," in reality bidders must take 16 distinct and time-consuming actions to demonstrate Good Faith Efforts with no guarantee that Houston will grant a waiver. *Id*. If a successful bidder fails to meet the MWSBE goal post-award, a list of 13 additional actions determines whether Houston will excuse the failure or sanction the company. *Id*. Houston Code § 15-85(a) authorizes the Office of Business Opportunity director to suspend noncompliant contractors for up to five years.

## ARGUMENT

## I.   Plaintiffs Have Article III Standing

A. <u>Plaintiffs suffered an injury in fact</u>

Houston does not challenge the second and third prongs of Article III standing, focusing only on Plaintiffs' "injury in fact." Dkt. 71 at 16–18, 20–21; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). To establish standing, a party challenging a race-based set-aside program like Houston's "need only demonstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so …." *N.E. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). The "'injury in fact' is the inability to compete on an equal footing in the bidding process, not the loss of a contract." *Id.*; *see also Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995); *Parents Involved in Community Schools v. Seattle Sch. Dist. No. 1*, 551 U.S. 702, 719 (2007). This Court already held that Plaintiffs satisfied the injury in fact requirement in the initial stages of this case, and Houston makes no showing to contradict that holding at summary judgment.

Instead, Houston contends that its MWSBE program—which is facially discriminatory—does not treat Plaintiffs differently. Dkt. 71 at 16–18, 21–22. Houston cites no cases in support of this argument. Instead, Houston claims that Landscape Consultants has not suffered an injury in fact because Houston's

MWSBE program "does not exclude Landscape or anyone else from the opportunity to compete for City contracts." *Id*. at 16.

The standard for whether a discriminatory policy prevents Plaintiffs from competing on an equal footing is not whether Plaintiffs are completely excluded from bidding on Houston contracts, it is whether "a discriminatory policy prevents them from [bidding] on an equal basis." *Id*. at 14 (quoting *N.E. Fla.*, 508 U.S. at 666); *W.H. Scott Const. Co. v. City of Jackson*, 199 F.3d 206, 212 (5th Cir. 1999). In *Scott*, for example, the plaintiff company was not excluded from bidding on City of Jackson contracts—in fact, it won six city contracts while the challenged MWBE program was in place—yet the company was still at a competitive disadvantage due to the program's racial preferences. 199 F.3d at 212–14; *see also N.E. Fla.*, 508 U.S. at 666 ("The 'injury in fact' … is the denial of equal treatment resulting from the imposition of [a] barrier, not the ultimate inability to obtain the benefit.").

Next, Houston argues that Landscape Consultants is not injured because (according to the Office of Business Opportunity director) it will not be penalized if it fails to meet its current contract's MWSBE goals.[3] Dkt. 71 at 16–17. Again, the standard for whether a discriminatory policy prevents Plaintiffs from competing on

---

[3] And as Landscape Consultant's corporate representative testified, the company has already received multiple notices from Houston regarding failure to meet MWSBE goal milestones on its current contract with the city. Ex. A, Thompson Dep. Tr. 50:12–52:8.

an equal footing is not whether Plaintiffs are subject to mandatory penalties (or any penalties at all) for failure to meet an MWSBE goal in an existing contract. Dkt. 71 at 16–17. In *Scott*, the court rejected the city's argument that the plaintiff company was not disadvantaged by the MWSBE program because the city often awarded contracts to bidders who did not meet a contract's MWSBE goal. 199 F.3d at 213. The Fifth Circuit further held that "the inconsistency with which the obligation is enforced is irrelevant, because it has not negated the existence of the obligation." *Id*. Likewise, just because Houston's Office of Business Opportunity director says that her department won't penalize Landscape Consultants for failing to meet a contract's MWSBE goal, the obligation to comply still exists and it places Plaintiffs at a competitive disadvantage due to race.

Houston contends that minority prime contractors can only fulfill 50% of a MWSBE goal themselves and must subcontract out the remaining 50% to minority subcontractors. Dkt. 71 at 17. Houston argues this makes MWSBE contractors and Plaintiffs equal because nonminority prime contractors and minority prime contractors are both required to subcontract out part of an MWSBE goal. *Id*. Simple math undercuts Houston's argument—per Houston's policy, minority contractors keep 50% of the value of the MWSBE goal and give away 50% to a minority subcontractor, while Plaintiffs keep 0% and give away 100% to a minority

subcontractor. It's hard to imagine a better example of competing on "unequal footing" than the impact of this policy.

Further, Houston's claim that Metropolitan lacks an injury in fact because it hasn't bid on a Houston contract is a red herring. As Plaintiffs' corporate representative Gerald Thompson testified, Landscape Consultants and Metropolitan share the same employees. Ex. A, Thompson Dep. Tr. 25:2–7. The companies were acquired at the same time and were not merged because of customer brand awareness and loyalty; much like Hardees and Carl's Jr., some customers (like Houston) were familiar with the Landscape Consultants name and some (like Midtown) with the Metropolitan name. *Id*. at 14:22–15:1, 16:1–22, 38:9–39:1. That brand strategy solidified over time; when asked if Midtown sought out Landscape Consultants to bid on a recent Midtown contract, Mr. Thompson testified that he doesn't think "Midtown knows who Landscape is in that sense." *Id*. at 115:13–16. But marketing decisions do not defeat standing; Metropolitan is able and ready (as proven by its employees currently performing a Houston contract under the Landscape Consultants name) to bid on Houston contracts but for Houston's discriminatory MWSBE policy. *See Scott*, 199 F.3d at 213; *N.E. Fla.*, 508 U.S. at 666. In any event, in a case with multiple plaintiffs, "[i]f at least one plaintiff has standing, the suit may proceed." *Biden v. Nebraska*, 600 U.S. 482, 490 (2023); *see also Texas v. United States*, 50 F.4th 498, 512 (5th Cir. 2022).

B. Plaintiffs challenge the entire MWSBE program

Houston wrongly contends that Landscape Consultants' standing should be cabined to "other services" contracts. Dkt. 71 at 18–19. Houston's argument makes little sense; it presents no evidence that its MWSBE Ordinance is severable or that it administers its MWSBE policy differently for "other services" contracts as opposed to professional services, construction, or goods contracts. Further, Plaintiffs seek relief from the MWSBE program's racial classifications. Dkt. 1 ¶¶ 47–55. These racial classifications determine which business owners are eligible to become certified as a minority business enterprise and enjoy a racial preference when bidding on Houston public contracts. Houston Code § 15-82. The administrative category Houston places landscaping companies in for purposes of bidding is irrelevant in this challenge to Houston's use of racial classifications in its MWSBE program.

*Scott* does not support Houston's argument. The decision in *Scott* focused on Jackson's construction program because the plaintiff challenged a special racial quota applicable only to construction contracts. 199 F.3d at 209–11. Typically, courts evaluate race-based programs as a whole regardless of which administrative category a plaintiff falls into. For example, in *Ultima Servs. Corp. v. U.S. Dep't of Agriculture*, a professional services plaintiff's challenge was not limited—the federal court enjoined the entire Small Business Administration Section 8(a) program. 683 F.Supp.3d 745 (E.D. Tenn. July 19, 2023). Likewise, the construction

company plaintiff in *Northeastern Florida* was not limited to challenging only the portion of Jacksonville's MBE program that regulated construction contracts. 508 U.S. at 666. Constricting Plaintiffs' challenge to the specific contracts on which they bid, Dkt. 71 at 19–20, requires Plaintiffs to show that they lost contracts because of the MWSBE policy. The Fifth Circuit has explicitly held such a showing is not required to demonstrate standing in equal protection challenges to affirmative action policies, and it should not be required of Plaintiffs in this case. *Scott*, 199 F.3d at 213 (citing *N.E. Fla.*, 508 U.S. at 666).

## II.    Houston's MWSBE Program Fails Strict Scrutiny

In its Motion for Summary Judgment, Houston does not even attempt to defend its current MWSBE Ordinance and program. Instead, it relies entirely on the unadopted, *draft* MGT Study that plays no role in the creation or administration of the program that Plaintiffs challenge. Dkt. 71 at 25–38. For the reasons stated in Plaintiffs' accompanying Motion to Strike, this Court should not consider the MGT Study. With the irrelevant MGT Study stripped away, it is clear Houston's MWSBE program does not survive strict scrutiny and must be declared unconstitutional and enjoined.

### A. Houston has no evidence of a compelling interest

To survive the "daunting two-step examination" of strict scrutiny, Houston must first prove that its MWSBE program remediates "specific, identified instances of past discrimination that violated the Constitution or a statute." *Students for Fair*

*Admissions v. President and Fellows of Harvard Coll.*, 600 U.S. 181, 206–07 (2023) (*SFFA*). This compelling interest standard was first formulated over 35 years ago in *Croson* and reemphasized by the Supreme Court just last year in *SFFA*. *See City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 500 (1989). Houston's motion for summary judgment ignores it completely. Dkt. 71 at 22–32.

Instead, Houston claims a compelling interest in "remedying the effect of past and present racial discrimination in City contracting." Dkt. 71 at 23. This is insufficient; programs that rest on a "generalized assertion that there has been past discrimination in an entire industry" cannot justify race-based preferences. *Croson*, 488 U.S. at 498; *see also Shaw v. Hunt*, 517 U.S. 899, 909–10 (1996); *Parents Involved*, 551 U.S. at 732; *Vitolo v. Guzman*, 999 F.3d 353, 361 (6th Cir. 2021). Houston presents no evidence of "specific, identified instances of past discrimination that violated the Constitution or a statute." *SFFA*, 600 U.S. at 207. Nor can it, because Houston has already admitted that it is not aware of any racial discrimination within its MWSBE program. Ex. B, nos. 2, 4–5, 22. With no evidence of discrimination to remedy, Houston has no compelling interest in operating a race-conscious public contracting program.

B. Houston has no evidence of narrow tailoring

A race-conscious program should be the remedy of last resort. *Walker v. City of Mesquite*, 169 F.3d 973, 982–83 (5th Cir. 1999). Houston's race-conscious

MWSBE program is a remedy of first resort. Houston provides no evidence that its race-neutral "Hire Houston First" program or vague "numerous education and outreach programs" were considered prior to embarking on the race-conscious MWSBE program nearly 40 years ago. Dkt. 71 at 34–38. It's unknown whether "Hire Houston First" and the "numerous education and outreach programs" even predate Houston's race-conscious contracting program. What *is* known is that for a race-based program to survive narrow tailoring analysis, the government must show "serious, good faith consideration of workable race-neutral alternatives." *Grutter v. Bollinger*, 539 U.S. 306, 339 (2003); *Croson*, 488 U.S. at 407. Houston does not even attempt such a showing, and that is fatal to the program's constitutionality. *Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 312 (2013) (courts must strike down race-based programs unless they are "satisfied that no workable race-neutral alternative" would achieve the compelling interest).

The rest of Houston's narrow tailoring argument relies on the unadopted, draft MGT Study that is unrelated to the MWSBE program Plaintiffs challenge in this lawsuit. Dkt. 71 at 34–38. For example, Houston claims "MBE participation goals under the City's program are tailored to statistical evidence of underutilization of MBEs by procurement category," citing to declarations from the Office of Business Opportunity director and a consultant on the MGT Study. Dkt. 71 at 35–36. But the current program's MBE participation goals are not based on the unadopted, draft

MGT study that Houston never disclosed. They are based on a stale 2006 disparity study that Houston makes no attempt at arguing is properly tailored.

Houston next asks this Court to agree that the current MWSBE program—which preferences minority-owned firms—"does not negatively affect non-minority firms" because at some future date the city may potentially implement a race-neutral method of fulfilling contract goals. Dkt. 71 at 36. Whatever changes Houston may or may not make to its MWSBE program in the future have zero impact on the constitutionality of the race-based MWSBE program in effect today. Houston's MWSBE program provides a benefit to MWSBE bidders that is not available to Plaintiffs and other non-MWSBE bidders, solely because of race. No individualized showing of racial discrimination is necessary, because Houston assumes all individuals from the same racial groups are the same. Ex. B, no. 12. This is the very definition of racial stereotyping and is "contrary … to the core purpose of the Equal Protection Clause." *SFFA*, 600 U.S. at 221 (citation omitted).

Houston incorrectly claims that it has "not attempted to include minority groups for which there is no evidence of past or present discrimination or to exclude other similarly situated groups." Dkt. 71 at 38. To the contrary, Houston's MWSBE program gives racial preferences to companies owned by "minority person[s]" as follows:

a. Black American, which includes persons having origins in any of the black racial groups of Africa;

13

b. Hispanic American, which includes persons of Mexican, Puerto Rican, Cuban, Central or South American, or other Spanish or Portuguese culture or origin, regardless of race;

c. Asian-Pacific American, which includes persons having origins from Japan, China, Taiwan, Korea, Burma (Myanmar), Vietnam, Laos, Cambodia (Kampuchea), Thailand, Malaysia, Indonesia, the Philippines, Brunei, Samoa, Guam, the U.S. Trust Territories of the Pacific Islands (Republic of Palau), the Commonwealth of the Northern Marianas Islands, Macao, Fiji, Tonga, Kiribati, Juvalu [sic], Nauru, the Federated States of Micronesia, or Hong Kong, or the region generally known as the Far East;

d. Native American, which includes persons having origins in any of the original people of North America, American Indian, Eskimo, Aleut, Native Hawaiian; or

e. Subcontinent Asian American, which includes persons whose origins are from India, Pakistan, Bangladesh, Bhutan, the Maldives Islands, Nepal, or Sri Lanka.

Houston Code § 15-82.

Houston admits that this definition of "minority persons" is not based on specific data from the Houston metropolitan area. Ex. B, no. 10. Houston also admits it has not identified any prime contract awards based on intentional discrimination against MWSBE bidders in the last five years, nor has it disciplined any employee or City official for discriminating in the award of public contracts during that period. Ex. B, nos. 1–2. Houston has not identified any specific constitutional or statutory violations related to its public contracting or procurement process or awards during that period either. Ex. B, no. 20. Houston admits that it does not require evidence that an applicant to the MWSBE program has experienced previous discrimination when determining whether to grant preferential MWSBE status. Ex. B, no. 14.

Without evidence of racial discrimination towards members of any racial or ethnic group, it's impossible to credit Houston's claim that it "has provided evidence of discrimination for each of the minority groups addressed by the program." Dkt. 71 at 38.

Instead, Houston's MWSBE program is grossly under- and over-inclusive. Houston does not distinguish between recent immigrants and those whose families have been citizens for generations. Ex. B, no. 13. Moreover, the MWSBE program preferences an individual from Pakistan but excludes his Afghan neighbor. *Id*.; Houston Code § 15-82. It prefers the business owner from Nauru despite no evidence of racial discrimination against Nauruans in Houston public contracting. Yet it excludes a Palestinian immigrant who could prove that she lost a bid because of a Houston official's prejudice against Middle Eastern individuals. *Id*. Without "clear evidence tracing one-for-one" each of Houston's preferred racial groups to "concrete discrimination in this context," Houston's racial presumptions are not narrowly tailored. *Nuziard v. Minority Business Development Agency*, 721 F.Supp.3d 431, 491 (N.D. Tex. Mar. 5, 2024).

Finally, Houston incorrectly claims that the MWSBE program is "limited in duration and has a logical endpoint." Dkt. 71 at 36. While it is true that city ordinance requires Houston to review its MWSBE program every five years and the program should continue "only until its purposes and objectives are achieved," Houston has

disregarded that ordinance for twenty years. Houston Code § 15-81(b). More than ten years passed between the 2006 comprehensive disparity study and the next comprehensive disparity study completed in 2020. Dkt. 68 at 1–2. Houston waited another three years after burying the 2020 disparity study before it commissioned a replacement. *Id*. at 3. The MGT Study, which Houston first claimed would be adopted in May 2024, has still not been voted on by the city council. Dkt. 41-1, Hoyrd Aff. ¶ 5; Dkt. 71, Hoyrd Decl. ¶ 19. Meanwhile, Plaintiffs continue to be subjected to Houston's race-based public contracting program that is based on no compelling interest, is not narrowly tailored, and violates their right to equal protection as guaranteed by the Fourteenth Amendment.

## CONCLUSION

For the foregoing reasons, Houston's motion for summary judgment should be denied and Plaintiffs' motion for summary judgment, Dkt. 68, should be granted.

DATED:  December 20, 2024.

Respectfully submitted,

|  |  |
|---|---|
| Anastasia Boden | s/ Erin E. Wilcox |
| *Of Counsel* | Erin E. Wilcox |
| Cal. Bar No. 281911 | *Attorney-in-Charge* |
| S.D. Tex. Bar No. 3495077 | Cal. Bar No. 337427 |
| Joshua P. Thompson* | S.D. Tex. Bar No. 3369027 |
| *Of Counsel* | Pacific Legal Foundation |
| Cal. Bar No. 250955 | 555 Capitol Mall |
| Pacific Legal Foundation | Suite 1290 |
| 555 Capitol Mall | Sacramento, CA 95814 |
| Suite 1290 | Telephone: (916) 419-7111 |
| Sacramento, CA 95814 | Fax: (916) 419-7747 |
| Telephone: (916) 419-7111 | ewilcox@pacificlegal.org |
| Fax: (916) 419-7747 | |
| aboden@pacificlegal.org | |
| jthompson@pacificlegal.org | |

*\*Pro Hac Vice*

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2024, I served this document via the

Court's electronic filing system to Defendants' counsel of record as follows:

Lori Yount
Senior Assistant City Attorney
Darah Eckert
Senior Asst. City Attorney, General Litigation Section
City of Houston Legal Department
P.O. Box 368
Houston, Texas 77001-368
900 Bagby, 4th Floor
Houston, TX 77002
lori.yount@houstontx.gov
darah.eckert@houstontx.gov

Ben Stephens
Sandy Hellums-Gomez
Jarett Dillard
HUSCH BLACKWELL LLP
600 Travis St., Suite 2350
Houston, Texas 77002
ben.stephens@huschblackwell.com
sandy.gomez@huschblackwell.com
jarett.dillard@huschblackwell.com
*Counsel for City of Houston*

Brett J. Sileo
Britton B. Harris
Harris Hilburn P.L.L.C.
1111 Rosalie
Houston, Texas 77004
bsileo@hhstxlaw.com
bharris@hhstxlaw.com
*Counsel for Midtown Management District*

s/ *Erin E. Wilcox*
Erin E. Wilcox
Pacific Legal Foundation