# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| LANDSCAPE CONSULTANTS OF TEXAS, INC., and METROPOLITAN LANDSCAPE MANAGEMENT, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF HOUSTON, TEXAS, and MIDTOWN MANAGEMENT DISTRICT, <br><br> Defendants. | Civil Action No. 4:23-cv-03516 |

---

## DEFENDANT CITY OF HOUSTON'S RESPONSE IN OPPOSITION TO PLAINTIFFS' SECOND MOTION FOR SUMMARY JUDGMENT

---

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF THE ARGUMENT ............................1

LEGAL STANDARD FOR SUMMARY JUDGMENT ..........................................2

OBJECTIONS TO PLAINTIFFS' SUMMARY JUDGMENT EVIDENCE ..........4

ARGUMENT ..................................................................................................7

I.   Plaintiffs fail to satisfy their burden to demonstrate Article iii standing. ...........7

II.  Plaintiffs fail to satisfy their burden of demonstrating that the City's MBE
     program violates the Equal Protection Clause. ....................................9

  A.  Plaintiffs lack any credible and particularized evidence to rebut the
      City's showing of a compelling governmental interest. ...........................10

    1.  Plaintiffs misstate the standard for the City to demonstrate a
        compelling governmental interest in remediating racial
        discrimination. .........................................................................10

    2.  Plaintiffs provide no evidence to rebut any of the City's
        disparity studies. .......................................................................11

  B.  Plaintiffs cannot show that the City's program fails to satisfy the
      narrow tailoring inquiry ..............................................................13

    1.  Plaintiffs fail to rebut the City's showing that it employs race-
        neutral alternatives to remedy discrimination. ...................................14

    2.  Plaintiffs fail to rebut the City's showing that the MBE program
        is neither under- nor over-inclusive. ..............................................15

    3.  Plaintiffs fail to rebut the City's showing that the MBE program
        has a logical endpoint. ...............................................................16

    4.  Plaintiffs fail to rebut the City's showing that the MBE program
        does not use race as a stereotype or as a negative. ..............................17

III. Plaintiffs fail to satisfy their burden of showing an underlying constitutional
     violation to support their Section 1981 claim. ...................................18

CONCLUSION ...................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Adarand Constructors, Inc. v. Peña*,
   515 U.S. 200 (1995) ................................................................................9

*Barley v, Fox Chase Cancer Ctr.*,
   46 F. Supp. 565 (E.D. Pa. 2014) .............................................................4

*Bennett v. Spear*,
   520 U.S. 154 (1997) ................................................................................7

*Bienkowski v. Ne. Univ.*,
   285 F.3d 138 (1st Cir. 2002) ...................................................................3

*Bolen v. Dengel*,
   340 F.3d 300 (5th Cir. 2003) ...................................................................8

*City of Richmond v. J.A. Croson Co.*,
   488 U.S. 469 (1989) ...........................................................................9, 10

*Concrete Works of Colo., Inc. v. City and Cty of Denver*,
   321 F.3d 950 (10th Cir. 1994) ...............................................................12

*DynaLantic Corp. v. U.S. Dep't of,*
   *Def.*, 885 F.Supp.2d 237 (D.D.C. 2012) ..............................................11

*Escamilla v. Elliott*,
   816 Fed. App'x 919 (5th Cir. 2020) ......................................................19

*Facenda v. N.F.L. Films, Inc.*,
   542 F.3d 1007 (3d Cir. 2008) ...................................................................3

*Fontenot v. Upjohn Co.*,
   780 F.2d 1190 (5th Cir. 1986) .................................................................3

*Gallentine v. Housing Auth. of City of Port Arthur, Tex.*,
   919 F. Supp. 2d 787 (E.D. Tex. 2013) ...................................................19

*Geiserman v. MacDonald*,
   893 F.2d 787 (5th Cir. 1990) ...................................................................4

*In re: Taxotere (Docetaxel) Products Liability Litigation*,
  26 F. 4th 256 (5th Cir. 2022) ...................................................................5

*Inclusive Communities Project, Inc. v. U.S. Dep't of Treasury*,
  946 F.3d 649 (5th Cir. 2019) ...................................................................7

*Jett v. Dall. Indep. Sch. Dist.*,
  491 U.S. 701 (1989) ...............................................................................18

*Jordan v. Helix Energy Solutions Grp., Inc.*,
  346 F. Supp. 3d 890 (S.D. Tex. 2018) ....................................................3

*Lechuga v. S. Pac. Transp. Co.*,
  949 F.2d 790 (5th Cir. 1992) .................................................................12

*McCormick v. Miami Univ.*,
  693 F.3d 654 (6th Cir. 2012) .................................................................19

*Oden v. Oktibbeha, Cnty, Miss.*,
  246 F.3d 458 (5th Cir. 2001) .................................................................19

*Rothe Dev., Inc. v. U.S. Dep't of,*
  *Def.*, 107 F.Supp.3d 183 (D.D.C. 2015) ..............................................10

*Slay v. State of Ala.*,
  636 F.2d 1045 (5th Cir. 1981) .................................................................4

*Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrecoverable Tr. Dated June 27,*
  *2002*, 410 F.3d 304 (6th Cir. 2005) .......................................................3

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
  397 F. Supp. 126 (D. Mass. 2019) .........................................................17

*Vitolo v. Guzman*,
  999 F.3d 353 ................................................................................. 11, 15

*W.H. Scott Const. Co., Inc. v. City of Jackson, Miss.*,
  199 F.3d 206 (5th Cir. 1999) ...................................................................5

*Warfield v. Byron*,
  436 F.3d 551 (5th Cir. 2006) ...................................................................6

*Wilson v. Woods,*
   163 F.3d 935 (5th Cir. 1999)................................................................................5

**Statutes**

42 U.S.C. § 1981 ................................................................................2, 7

**Rules**

Fed. R. Civ. P. 56 ................................................................................1, 3

FED. R. CIV. P. 56(a)................................................................................2

FED. R. EVID. 402 ................................................................................4

FED. R. EVID. 702 ................................................................................5

FED. R. EVID. 802 ................................................................................6

**Other Authorities**

Wright, Miller, & Kane, *Federal Practice and Procedure* § 2720 ..........................3

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Defendant City of Houston ("the City") files this response in opposition to Plaintiffs' Second Motion for Summary Judgment. Six months ago, Plaintiffs filed a premature motion for summary judgment that the Court denied without prejudice. Despite ample time to bolster their case, Plaintiffs' second effort still falls far short of carrying their burden to establish "beyond peradventure" every essential element of their claims as required by Fed. R. Civ. P. 56.

First, Plaintiffs fail to carry their burden of demonstrating that they have suffered an injury-in-fact sufficient to support Article III standing for any of their claims. Plaintiffs rely on a conclusory assertion in Gerald Thompson's declaration that his companies must compete for City contracts at a disadvantage to minority-owned firms. But Thompson's self-serving statements are contradicted by the record, which shows that one of Thompson's companies is successfully performing a contract with the City and has never been penalized for failure to meet minority participation goals, while the other has never even bid on a City contract and has no plans to do so. Accordingly, this Court lacks jurisdiction to adjudicate Plaintiffs' claims, let alone to grant summary judgment in their favor.

Second, even if Plaintiffs' jurisdictional showing were adequate, Plaintiffs still fail to carry their ultimate burden of demonstrating that the City's minority business enterprise ("MBE") program violates the Equal Protection Clause. Because

1

the City has provided empirical evidence to support its compelling interest in employing race-conscious measures to remedy racial discrimination, Plaintiffs have the burden of coming forward with credible and particularized evidence to rebut the City's showing. Plaintiffs have provided no admissible evidence, findings, or analysis that would contradict the City's evidence, however. Moreover, Plaintiffs fail to provide any evidence that would undermine the City's showing that the MBE program is narrowly tailored to advance the City's compelling interest in remedying racial discrimination.

Finally, Plaintiffs are not entitled to judgment on their 42 U.S.C. § 1981 claim because it is duplicative of their § 1983 claim, which is the only federal damages remedy that may be invoked against a local government for alleged violations of the rights enumerated by § 1981. Accordingly, the Court should dismiss Plaintiffs' § 1981 claim as superfluous. Even if a § 1981 claim could be pleaded separately from a § 1983 claim, Plaintiffs are not entitled to judgment on their § 1981 claim for the same reasons that they fail to carry their burden on their § 1983 claim, *viz.* Plaintiffs have failed to show that they have standing or that that the City's program is unconstitutional.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV.

P. 56(a). "If the movant bears the burden of proof on an issue . . . because he is the plaintiff . . . he must establish beyond peradventure *all* of the essential elements of the claim . . . to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The nonmoving party is required to show specific facts that present a genuine issue worthy of trial, but the nonmovant does not need to show that the dispute as to material facts will be resolved in its favor. *See, e.g.*, *Jordan v. Helix Energy Solutions Grp., Inc.*, 346 F. Supp. 3d 890, 896 (S.D. Tex. 2018).

On cross-motions for summary judgment, the Court "must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Bienkowski v. Ne. Univ.*, 285 F.3d 138, 140 (1st Cir. 2002) (quoting 10A Charles Alan Wright, Arthur Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed. 1998)). The "mere fact that both parties seek summary judgment does not constitute a waiver of a full trial or the right to have the case presented to a jury." *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008) (quoting Wright, Miller, & Kane, *Federal Practice and Procedure* § 2720); *see also Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrecoverable Tr. Dated June 27, 2002*, 410 F.3d 304, 309 (6th Cir. 2005) ("[T]he filing of cross-motions for summary judgment does not necessarily mean that an award of summary judgment is appropriate." (quotations omitted)). Rather, "[a] party moving for summary

judgment concedes the absence of a factual issue and the truth of the nonmoving party's allegations only for purposes of his own motion." *Barley v, Fox Chase Cancer Ctr.*, 46 F. Supp. 565, 572 (E.D. Pa. 2014); *see also Slay v. State of Ala.*, 636 F.2d 1045, 1047 (5th Cir. 1981) ("Appellant is not estopped by the mere filing of his cross-motion for summary judgment from now asserting genuine issues of fact.").

### OBJECTIONS TO PLAINTIFFS' SUMMARY JUDGMENT EVIDENCE

Plaintiffs reference and attach as Exhibit 2 to their motion for summary judgment the Colette Holt & Associates ("CHA") study that the City commissioned in 2016. The CHA study was only a draft and was never adopted by the City. The CHA study is not admissible or reliable evidence that the Court may consider in adjudicating Plaintiffs' claims.

First, as the City has argued consistently at every stage of briefing in this case, the CHA study is irrelevant to any factual or legal issue disputed in this suit. Accordingly, the CHA study is inadmissible at trial and may not be considered at summary judgment. *See* FED. R. EVID. 402; *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990) ("[M]aterial that is inadmissible will not be considered on a motion for summary judgment."). The City has not adopted the CHA study or endorsed its draft findings, nor has the City ever sought to rely upon the CHA study as empirical evidence to support its conclusion that race-conscious remedial action is necessary. A draft disparity study that was never adopted by the City can have no

probative value in evaluating the constitutionality of the City's MBE program. *See W.H. Scott Const. Co., Inc. v. City of Jackson, Miss.*, 199 F.3d 206, 218 (5th Cir. 1999) (considering unadopted study that city introduced for purposes of litigation and concluding that "whatever probity the study's findings might have had on our analysis is of no moment" given city's refusal to adopt it).

Second, Plaintiffs cannot invoke the CHA study and rely on it as evidence without designating an expert. Complex statistical studies involving the interpretation of voluminous amounts of data require expert analysis. *See* FED. R. EVID. 702; *In re: Taxotere (Docetaxel) Products Liability Litigation*, 26 F. 4th 256 (5th Cir. 2022). An expert witness may be qualified "by knowledge, skill, experience, training, or education[,]" FED. R. EVID. 702, but a court must exclude an expert witness "if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods,* 163 F.3d 935, 937 (5th Cir. 1999) Here, Plaintiffs have not designated any experts, let alone the CHA study's author—instead, Plaintiffs effectively usurp the role of expert witness by self-interpreting the data and findings in the CHA study. There is nothing in Plaintiffs' briefing to suggest, however, that Plaintiffs have any knowledge of the methodology utilized by the study. The study's author is the only expert witness that can vouch for the study's methodology and findings and explain how they contradict, if at all, the disparity studies adopted by the City. Without supporting expert testimony,

Plaintiffs' proposed interpretation of the CHA study's findings constitutes mere inadmissible conjecture, not reliable, competent evidence that the Court can consider at summary judgment.

Finally, the CHA study's conclusions constitute inadmissible hearsay and cannot be considered at summary judgment. *See Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006) ("[T]he hearsay rule applies with equal force in the context of a summary judgment."). The CHA study's conclusions are out-of-court statements being offered by Plaintiffs to "prove the truth of the matter asserted." FED. R. EVID. 802. Namely, Plaintiffs rely on the CHA study's contents to argue that there is no substantial or statistically significant disparity between the availability and utilization of minority-owned firms in City contracting—contradicting the MGT study discussed by the City's expert, as well as past studies commissioned and adopted by the City. Because the CHA study's author has not provided expert testimony regarding the study, and because the CHA study was never finalized or adopted by the City or its agents, the Court may not consider the CHA study in adjudicating Plaintiffs' summary judgment motion.

## ARGUMENT

Plaintiffs fail to meet their burden at summary judgment to prove "beyond peradventure" every essential element of their claims.[1] First, they fail to satisfy their burden of demonstrating Article III standing. Second, they fail to meet their ultimate burden of showing that the City's MBE program violates the Equal Protection Clause. Finally, their § 1981 claim is duplicative of their § 1983 constitutional claim and fails for the same reasons. Each argument is discussed in turn below.

## I.   PLAINTIFFS FAIL TO SATISFY THEIR BURDEN TO DEMONSTRATE ARTICLE III STANDING.

At the summary judgment stage, Plaintiffs may not rest solely on the pleadings to establish standing. Rather, it is Plaintiffs' burden at the summary judgment stage to provide specific facts and evidence that establish that they have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Inclusive Communities Project, Inc. v. U.S. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019). A plaintiff cannot rely on "mere allegations," let alone understanding and belief, to meet its burden at summary judgment. *Id.*; *see also Bennett v. Spear*, 520

---

[1] The City fully incorporates herein all evidence previously attached to and filed with its Motion for Summary Judgment, Dkt. No. 71, as well as all its pleadings and exhibits previously filed in this action.

U.S. 154, 168 (1997) (recognizing that, to survive summary judgment, a plaintiff must set forth by affidavit or other evidence specific facts).

Here, Plaintiffs fail to meet their burden to provide specific facts showing that they have suffered an injury-in-fact sufficient to support Article III standing. Plaintiffs do not address standing in their Second Motion for Summary Judgment at all. In Gerald Thompson's declaration, Plaintiffs throw in, almost as an afterthought, a conclusory assertion that Thompson's "understanding and belief" is that the City's MBE program forces him to compete for City contracts at a disadvantage because of his race. Dkt. No. 66-9, ¶ 6. Thompson's conclusory statement contradicts the greater weight of the evidence in the record and is inadequate to support standing. *See Bolen v. Dengel,* 340 F.3d 300, 313 (5th Cir. 2003) (concluding that an affidavit based merely on "information and belief" is incompetent summary judgment evidence). As the City argued in its Motion for Summary Judgment, *see* Dkt. No. 71, pgs. 13–22, Plaintiff Landscape Consultants of Texas, Inc. is successfully performing a contract with the City and has never been penalized for failure to meet minority participation goals. Thompson Depo., Dkt. No. 71-1, 33:12–17; 52:6–10; *see* Dkt. No. 71, pgs. 13–22. Even if it were somehow shown that Landscape competes at a disadvantage to minority-owned firms that can satisfy MBE goals with their own work, Landscape is only ready, willing, and able to bid on "other services" contracts and thus lacks standing to challenge the City's program with respect to

other procurement categories. Hoyrd Decl., Dkt. No. 71-2, ¶ 5; Dkt. No. 71, pgs. 18–20. Moreover, Plaintiff Metropolitan Landscape Management, Inc. has never even bid on a City contract and has no plans to do so. Dkt. No. 71, pg. 21; Thompson Depo., Dkt. No. 71-1, 37:10–12; Hoyrd Decl., Dkt. No. 71-2, ¶ 6. Accordingly, Plaintiffs have failed to carry their burden at the summary judgment stage to prove standing by specific facts.

## II. PLAINTIFFS FAIL TO SATISFY THEIR BURDEN OF DEMONSTRATING THAT THE CITY'S MBE PROGRAM VIOLATES THE EQUAL PROTECTION CLAUSE.

Although programs with racial classifications are subject to strict scrutiny, the Supreme Court has made clear that the government may employ race-based measures when necessary to dispel the effects of invidious discrimination. *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493-94 (1989) ("*Croson*"). To show its compelling interest, the City must point to evidence sufficient to create an inference of the government's active or passive participation in discrimination. *Id.* at 509. The City must also show that its program is narrowly tailored to serve its identified compelling interest. *See Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 227 (1995).

The City has satisfied its burden at strict scrutiny by pointing to empirical evidence to support its MBE program. *See* Dkt. No. 71, pgs. 23–38. Accordingly, the burden now shifts to Plaintiffs "to present 'credible, particularized evidence' to rebut the government's initial showing of a compelling interest,'" and demonstrate

that the program is not narrowly tailored to meet that interest. *Rothe Dev., Inc. v. U.S. Dep't of Def.*, 107 F.Supp.3d 183, 207–08 (D.D.C. 2015).

**A.    Plaintiffs lack any credible and particularized evidence to rebut the City's showing of a compelling governmental interest.**

Plaintiffs fall far short of carrying their burden to rebut the City's evidence. First, Plaintiffs misstate the legal standard by arguing that statistical "disparities" are insufficient to justify remedial minority contracting programs and that the City must pinpoint specific episodes of discrimination by its employees and contractors that occurred in the recent past. *See* Dkt. No. 66-1, pgs. 7–13. Second, Plaintiffs have failed to designate an expert of any kind to opine on or rebut *any* of the studies adopted by the City, including the 2006 and 2012 studies, as well as the recently released MGT study. Each issue is discussed in turn below.

**1.    *Plaintiffs misstate the standard for the City to demonstrate a compelling governmental interest in remediating racial discrimination.***

Plaintiffs argue that the City cannot show a compelling interest in remedying past discrimination unless it can point to specific episodes in the past five years in which the City or its prime contractors have discriminated on the basis of race. *See* Dkt. No. 66-1, pgs. 7–13. Plaintiffs' standard is at odds with Supreme Court precedent, however. Under *Croson*, the City need only come forward with evidence sufficient to create an inference of the government's active or passive participation in discrimination. *Id.* at 509. "[A] significant statistical disparity" between the

10

availability and utilization of minority owned firms in City contracting that cannot be adequately explained by non-discriminatory factors is sufficient circumstantial evidence to support an inference of discrimination. *Id.*

Although several cases have determined that the federal government failed to show a compelling interest to justify racial preferences in subsidy programs based on evidence of broad socioeconomic disparities, *see, e.g.*, *Vitolo*, 999 F.3d 353 at 361–62, the Supreme Court has made clear that disparities in utilization in the local contracting context support an inference that there has been past intentional discrimination by the local government at issue. Accordingly, the City, by providing the MGT disparity study, as well as invoking the consistent findings of past disparity studies, has met its burden of producing a strong basis in evidence for the use of race-conscious remedial measures. *See* Dkt. No. 71, pgs. 23–32.. It thus falls to Plaintiffs to provide credible and particularized evidence to rebut this showing.

## 2. *Plaintiffs provide no evidence to rebut any of the City's disparity studies.*

Plaintiffs' motion does not bring forward any credible and particularized evidence to rebut the City's 2006 and 2012 disparity studies. Notwithstanding the initial burden of production that rests with the government, the ultimate burden of proof remains with the challenging party to demonstrate the unconstitutionality of an affirmative-action program." *DynaLantic Corp. v. U.S. Dep't of Def.*, 885 F.Supp.2d 237, 251 (D.D.C. 2012) (internal quotation marks, alterations, and

citation omitted). Consequently, mere speculation that the government's evidence is insufficient or methodologically flawed does not suffice to rebut a state's showing. *See Concrete Works of Colo., Inc. v. City and Cty of Denver*, 321 F.3d 950, 959 (10th Cir. 1994) ("Concrete Works VI").

Here, Plaintiffs have come forward with no admissible evidence, findings, or analysis that could rebut the City's 2006 or 2012 studies. Plaintiffs' only argument throughout this litigation has been that those studies are too old, but the City's prior briefing addresses the lack of precedent to support that proposition. *See* Dkt. No. 71, pgs. 31–32. Plaintiffs' second motion for summary judgment now also criticizes the City's program and supporting studies by dredging up the CHA draft study that was commissioned by the City in 2016 but never finalized or adopted. Nevertheless, for the reasons discussed above, the CHA study is not admissible or reliable evidence that Plaintiffs can bring forward to meet their burden at summary judgment.

Lacking any expert testimony or any alternative study of their own, Plaintiffs rely on general criticism and mere conjecture alone to cast doubt on the City's 2006 and 2012 studies and the City's showing of a compelling interest in remedying discrimination. But such general criticism and conjecture will not suffice to carry Plaintiffs' burden at this stage. *See, e.g.*, *Lechuga v. S. Pac. Transp. Co*., 949 F.2d 790, 798 (5th Cir. 1992).

Moreover, Plaintiffs' motion for summary judgment does not address the MGT disparity study that the City presented in its cross-motion for summary judgment. Now that the MGT study has been released and its adoption by the City is underway, it has become the operative study supporting the City's MBE program. *See* MGT Study, Dkt. No. 71-3, pgs. 6–164. Thus, to meet their ultimate burden of showing that the City's program is unconstitutional, Plaintiffs must develop and come forward with evidence to rebut the MGT study. Plaintiffs cannot carry their burden at summary judgment without grappling with the City's new evidence, even if that means the timeline for adjudication of this action must be modified.[2]

### B.    Plaintiffs cannot show that the City's program fails to satisfy the narrow tailoring inquiry.

Plaintiffs' motion also mischaracterizes crucial features of the City's program and fails to show that the City's program is not narrowly tailored. First, Plaintiffs did not consider the City's efforts to enact race-neutral small business and veteran-owned business programs, nor did they credit existing race-neutral options like the Hire Houston First program. *See* Hoyrd Decl., Dkt. No. 71-2, ¶¶ 20-21. Second, Plaintiffs err in calling the program over- and under- inclusive because the MBE

---

[2] The MGT study was completed and released after the close of discovery; nevertheless, ignoring it now would undermine judicial efficiency, as a ruling on the constitutionality of the City's program would be rendered ineffectual by the adoption of new evidence supporting the City's compelling interest in remedying discrimination during the pendency of the cross-motions for summary judgment.

program sets minority contracting goals based on measured disparities documented in the City's 2006 and 2012 studies and confirmed by the MGT study. Third, Plaintiffs are mistaken in stating that the program will not end when the record shows that the City has shown a willingness to evaluate the program periodically and to make appropriate changes up to and including termination once goals have been met. Finally, Plaintiffs cannot show support in the record for their claim that the City's program uses race as a stereotype or as a negative.

### 1. *Plaintiffs fail to rebut the City's showing that it employs race-neutral alternatives to remedy discrimination.*

As the City argued in its motion for summary judgment, *see* Dkt. No. 71, the City employs race-neutral measures to combat discrimination in City contracting. Plaintiffs' argument that the City has never "attempted a workable race-neutral alternative" to the Program is incorrect. Dkt. No. 66-1, at 16-17. The City administers the Hire Houston First program which is aimed at supporting all local small businesses, irrespective of race. *See* Hoyrd Decl., Dkt. No. 71-2, ¶¶ 20-21. In addition, the City offers many educational and outreach initiatives structured to empower small businesses and position them for long-term success.

Furthermore, the City has indicated that it is currently poised to enhance opportunities for small business enterprises (SBEs) to serve as substitutes for MBEs across all procurement categories—per the recommendation of the MGT disparity study—and that a new certification for veteran-owned businesses is currently in the

works. *See* Hoyrd Decl., Dkt. No. 71-2, ¶¶ 20-21. This race-neutral measure will soon be available for virtually all City contracts, allowing the City and its prime contractors to meet their contract goals. *Id.*

### 2.    *Plaintiffs fail to rebut the City's showing that the MBE program is neither under- nor over-inclusive.*

The City's MBE program is neither overinclusive or underinclusive, as it only promotes participation of minority-owned firms for which there is clear evidence of underutilization. Bernal Decl., Dkt. No. 71-3, ¶ 7. Plaintiffs compare this program to the federal subsidy program at issue in *Vitolo v. Guzman*; however, the government's evidence in *Vitolo* is distinguishable from the evidence before this Court. *Vitolo v. Guzman*, 999 F.3d 353, 361 (6th Cir. 2021). There, the government's evidence only pointed to "general[] societal discrimination against minority business owners." *Id.*

Here, however, the MGT study, like the 2006 and 2012 studies conducted by the City, documents significant and statistically meaningful underutilization of minority-owned firms within each group addressed by the program. Bernal Decl., Dkt. No. 71-3, ¶ 7, 9. Furthermore, the MGT study, along with the 2006 and 2012 studies, relies on the same Census-based definitions of minority groups which correspond directly to those used in the City's Ordinance and policies. *Id.* The City has not included minority groups without evidence of discrimination nor excluded

similarly situated groups. Instead, it has provided evidence of discrimination for each group covered by the program.

Additionally, Plaintiffs assert that the program is underinclusive because it excludes "any minority business owner who owns less than 51% of their business." Dkt. No. 66-1, at 22. Including every firm with a minority stakeholder would pose administrability challenges for the program. Moreover, the distinction between a controlling and minority stakeholder in a business does not involve a race; thus, it should only be subject to rational basis review and should not be decisive with respect to strict scrutiny of the City's program.

### 3.    *Plaintiffs fail to rebut the City's showing that the MBE program has a logical endpoint.*

Despite Plaintiffs' contentions that the Program "never ends," the City's program was not designed to continue into perpetuity. The City's Ordinance calls for periodic review every five years. *See* Hoyrd Decl., Dkt. No. 71-2, Ex. A., § 15-81(b). The language of the ordinance expressly states that the program will continue "only until its purposes and objectives are achieved." *Id.* The City's commissioning and imminent adoption of the MGT Study and its planned incorporation of race-neutral programs like those mentioned above demonstrate its willingness to terminate the program once its stated goals are achieved. *See* Hoyrd Decl., Dkt. No. 71-2, ¶¶ 8, 9, 18-21; Hoyrd Decl., Dkt. No. 71-2, Ex. D, MGT Study Executive Summary 9-10.

16

### 4. *Plaintiffs fail to rebut the City's showing that the MBE program does not use race as a stereotype or as a negative.*

The City's program does nothing more than encourage participation of minority-owned firms where the evidence shows underutilization. *See* Hoyrd Decl., Dkt. No. 71-2, ¶ 8; Bernal Decl., Dkt. No. 71-3, ¶¶ 7, 9. As a program centered on remedying discrimination in public contracting, the use of racial stereotypes is inapplicable. *See* Hoyrd Decl., Dkt. No. 71-2, ¶ 8; Bernal Decl., Dkt. No. 71-3, ¶¶ 7, 9. Plaintiffs' argument to the contrary rests heavily on the *SFFA* decision. However, *SFFA* is distinguishable.

First, the Court's analysis there rested on voluminous discovery conducted in earlier proceedings that revealed crass stereotyping in Harvard's admissions process. *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 397 F. Supp. 126, 141–43, 146–47 & 156–58 (D. Mass. 2019). Such stereotyping linked certain individuals' race with presumed viewpoints and personality traits, leading the Court to note that colleges "may not operate their admissions programs on the 'belief that minority students always (or even consistently) express some characteristic minority viewpoint on any issue.'" *SFFA*, 600 U.S. 181,219–20 (2023). By contrast, the City's program engages in no such stereotyping with respect to traits or viewpoints and is focused exclusively on promoting participation by underutilized firms in City contracting. *See* Hoyrd Decl., Dkt. No. 71-2, ¶ 8.

Moreover, the City's program does not negatively impact third parties. Plaintiffs cannot demonstrate any adverse impact, as they only need to show good faith efforts to meet contract goals. Even if they fall short, they cannot point to any penalties that have been imposed. Additionally, all contracting firms must demonstrate good faith efforts towards at least half of the contract goal, ensuring that the program does not disadvantage non-minority firms. *See* Hoyrd Decl., Dkt. No. 71-2, ¶¶ 13-17. Once fully implemented, the small business and veteran-owned business programs will provide all contractors with a race-neutral method of meeting contract goals. *Id.* ¶¶ 20-21. Accordingly, the City's program does not negatively affect non-minority firms.

Since Plaintiffs fail to carry their burden on either compelling interest or narrow tailoring, they are not entitled to summary judgment. Plaintiffs had the burden to come forward with evidence showing beyond peradventure that the City's program is unconstitutional. Plaintiffs failed to rebut the City's evidence and at the very least there remain disputed factual issues as to *both* parts of the strict scrutiny analysis.

## III. PLAINTIFFS FAIL TO SATISFY THEIR BURDEN OF SHOWING AN UNDERLYING CONSTITUTIONAL VIOLATION TO SUPPORT THEIR SECTION 1981 CLAIM.

Supreme Court precedent has long recognized that § 1983 is the sole remedy available for a violation of the rights enumerated in § 1981 when brought against a municipality. *See Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 731-33 (1989)

18

(concluding that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in Section 1981 by state governmental units"). Section 1981 does not create a cause of action or a corresponding remedy against a municipality separate from what is already provided for by § 1983. *See McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) ("Section 1983's express clause permitting these suits obviates the need to imply the same right under the general provisions of § 1981."); *Gallentine v. Housing Auth. of City of Port Arthur, Tex.*, 919 F. Supp. 2d 787, 808 (E.D. Tex. 2013) (dismissing plaintiff's § 1981 claims where they were asserted independently of § 1983 against a state entity); *Escamilla v. Elliott*, 816 Fed. App'x 919, 924 (5th Cir. 2020) ("[T]he law is well-settled that § 1983 provides the only federal damages remedy against local government actors for violations of § 1981."). Therefore, a plaintiff must use § 1983 as the proper procedural device to assert its § 1981 claims against a municipality; it cannot maintain those claims independently. *See Elliott*, 816 Fed. App'x at 927.

Here, Plaintiffs have alleged freestanding § 1981 claims that are inherently duplicative of their § 1983 claims. To allow Plaintiffs to succeed on their § 1981 claims would be in direct contravention of settled law. *See Oden v. Oktibbeha, Cnty, Miss.*, 246 F.3d 458, 463 (5th Cir. 2001). Because Plaintiffs have not pled an appropriate cause of action under § 1981, any potential relief is contingent upon their

19

ability to successfully demonstrate entitlement to such relief under § 1983. However, as discussed above and extensively briefed in the City's Motion for Summary Judgment, Plaintiffs fail to demonstrate that they have standing to bring their § 1983 claims and, additionally, cannot establish that the City's program fails to satisfy strict scrutiny. *See* Dkt. No. 71.

## CONCLUSION

For the foregoing reasons, the Court must deny Plaintiffs' second motion for summary judgment.

By:    */s/ Ben Stephens*
       Ben Stephens
       State Bar No. 24098472
       SDTX Bar No. 2898153
       ben.stephens@huschblackwell.com
       Sandy Hellums-Gomez
       State Bar No. 24036750
       SDTX Bar No. 561314
       sandy.gomez@huschblackwell.com
       Jarrett Dillard
       State Bar No. 24099801
       SDTX Bar No. 2980302
       jarett.dillard@huschblackwell.com

Husch Blackwell LLP
600 Travis St., Suite 2350
Houston, Texas 77002
Telephone:  (713) 647-6800
Facsimile:   (713) 647-6884

       */s/ Darah Eckert*
       Darah Eckert
       Senior Assistant City Attorney

20

State Bar No. 24007141
SDTX Bar No. 1890045
darah.eckert@houstontx.gov
Lori J. Yount
Senior Assistant City Attorney
State Bar No. 2209496
SDTX Bar No. 24084592
lori.yount@houstontx.gov

Arturo G. MICHEL
CITY ATTORNEY
SUZANNE R. CHAUVIN
CHIEF, GENERAL LITIGATION SECTION
CITY OF HOUSTON LEGAL DEPARTMENT
P.O. Box 368
Houston, Texas 77001-368
900 Bagby, 4th Floor
Houston, Texas 77002
Telephone:   (832) 393-6219
Facsimile:    (832) 393-6259

**ATTORNEYS FOR THE CITY OF HOUSTON**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing has been served upon the following on December 20, 2024, via the CM/ECF Filing system.

*/s/ Ben Stephens*
Ben Stephens

21