# UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION

| | |
|---|---|
| LANDSCAPE CONSULTANTS OF TEXAS, INC., and METROPOLITAN LANDSCAPE MANAGEMENT, INC.,<br>    *Plaintiffs*, <br><br><br><br>CITY OF HOUSTON, TEXAS, and MIDTOWN MANAGEMENT DISTRICT,<br><br>    *Defendants*. | Civil Action No. 4:23-cv-3516 <br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## DEFENDANT MIDTOWN MANAGEMENT DISTRICT'S REPONSE IN OPPOSITON TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Midtown Management District ("Midtown" or "District") files this Response in Opposition to Plaintiffs' Motion for Summary Judgment under Federal Rule of Civil Procedure 56. The District shows below Plaintiffs have failed to carry their burden of proof on required elements on the claims asserted by Landscape Consultants of Texas, Inc. and Metropolitan Landscape Management, Inc. ("Metropolitan"), that Plaintiffs motion for summary judgment should be denied, and that further, that Midtown is entitled to a judgment as a matter of law on all Plaintiffs' claims as demonstrated in Midtown's pending motion for summary judgment.

## SUMMARY OF ARGUMENT

Plaintiffs' motion for summary judgment should be denied because Plaintiffs have not carried their ultimate burden of proof to establish that the suffered any injury-in-fact to support their standing under Article III for all of their claims. Plaintiffs further failed to carry their burden to show that Midtown's Minority, Women and Disadvantaged Business Enterprise (MWDBE) program violates the Equal Protection Clause as applied to Plaintiffs. Midtown shows that it has a compelling interest in establishing the MWDBE program because it was commanded to enact such a program by the Texas Legislature which found the need for such a program to encourage and increase participation by historically disadvantaged businesses in public contractive. Plaintiffs also fail to come forward with any evidence, or with insufficient evidence, to show that Midtown's program is not narrowly tailored to serve this compelling interest. Plaintiffs have not designated any experts or produced any evidence to dispute Midtown's assertion that its program is narrowly tailored to serve a compelling interest.

Plaintiffs also are not entitled to summary judgment on their §1981 claims, as such claims duplicate claims under §1983, and §1981 claims cannot be asserted against a local governmental entity such as Midtown.

The court should deny Plaintiffs' motion for summary judgment and Midtown's pending motion for summary judgment. Midtown further incorporates

the arguments and evidence offered in support of Midtown's Motion for Summary Judgment as part of Midtown's response in opposition to Plaintiffs' Motion for Summary Judgment.

## PLAINTIFFS HAVE NO STANDING FOR ARTICLE III CLAIMS

In order to satisfy their burden to show that Plaintiffs have standing under Article III, Plaintiffs must bring forward specific facts and evidence that establish that they have suffered an injury-in fact that is fairly traceable to the challenged conduct of the defendant and that is likely to be redressed by a favorable judicial decision. *Inclusive Communities Project, Inc. v U. S. Dept. of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019). However, here Plaintiffs do not address their standing under Article II at all. Plaintiffs rely on the conclusory statements in Gerald Thompson's declaration that it is his "understanding and belief" that the City of Houston's MWBE program puts non MWBE programs like Landscape and Metropolitan at a disadvantage when bidding for City of Houston contracts. (Plaintiff's Exhibit 7 at paragraph 6). Mr. Thompson's declaration does not even address Midtown's MWDBE program. Plaintiffs fail to demonstrate that they have suffered any injury-in-fact to support that they have standing under Article III for any of their claims. Plaintiffs assert that they are injured by Midtown's policy of awarding up to ten points in scoring contract bids to qualified, certified disadvantaged minority or women owned contractors Metropolitan, however, has a

3

long history of working for Midtown Management District over the past 15-20 years while Midtown's MWDBE program has been in force.  (Midtown's Motion for Summary Judgment Exhibit B, Deposition of Gerald Thompson, 77:4-16). Metropolitan is even performing work for the District today in performing landscape maintenance for Baldwin Park and Glover Park. (Midtown's Motion for Summary Judgment Exhibit B, Deposition of Gerald Thompson, 77:24-78:2) Landscape also has never bid on a contract with Midtown and never will, as Landscape and Metropolitan are both owned by Gerald Thompson and his wife and they simply choose to use Metropolitan as the company that bids on work with Midtown. Mr. Thompson admitted that Landscape did not have a separate injury from Metropolitan as the two companies are connected, and that there was no need for Landscape to ever submit a bid for Midtown's work, as Metropolitan was the lead on Midtown contracts.  (Midtown's MSJ Exhibit B. Deposition of Gerald Thompson, 81:18-82:7).  Plaintiffs failed to carry their burden at this stage to prove standing by specific facts and are not entitled to summary judgment.

### PLAINTIFFS FAIL TO CARRY THEIR BURDEN TO SHOW THAT MIDTOWN'S DISADVANTAGED BUSINESS PROGRAM VIOLATES THE EQUAL PROTECTION CLAUSE

Plaintiffs ignore Supreme Court precedent that the government may use race-based policies when necessary to dispel the effects of invidious discrimination. *City of Richmond v. J.A. Croson Co.,* 488 U.S. 469, 493-494 (1989).  Plaintiffs argue

4

that Midtown cannot show that there has been any invidious discrimination because Midtown, which is a relatively new governmental entity, has never received any complaints of discrimination committed by Midtown. However, Midtown satisfied its burden at strict scrutiny by showing that the Texas Legislature already found that history of discrimination already existed in the public contracting arena.

As argued in Midtown's cross motion for summary judgment, Midtown adopted its disadvantaged business program because it was specifically required by the Texas Legislature to establish one or more programs designed to increase participation by disadvantaged businesses in public contract awards. Tex. Local Gov't Code §375.222(b). The Texas Legislature further directed that Midtown's program shall be structured to further remedial goals and shall be established to eradicate the effects of any prior discrimination. Tex. Local Gov't Code §375.222(b). The Texas Legislature therefore already determined that there was prior discrimination that violated the Constitution in enacting these laws requiring Midtown to create and operate its disadvantaged business program. Midtown's disadvantaged business program is therefore permissible under *Croson* and the standards in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.,* 600 U.S. 181 (2023).

Plaintiffs also fail to show that Midtown's MWDBE program is not narrowly tailored to serve the identified compelling interest of encouraging participation by

5

historically disadvantaged minority and women owned firms in public contracting. See *Adarand Contractors, Inc. v. Pena,* 515 US 200, 227 (1995). As argued in Midtown's motion for summary judgment, Midtown created the category for an award of up to 10 points for a MWDBE business as part of Midtown's good faith effort to comply with Texas Local Government Code §375.222 and similar requirements from the City of Houston. (Midtown's MSJ Exhibit A, Deposition of Marlon Marshall, 53:9-17). The award of 10 points to a bidder certified as a MWDBE is discretionary, not mandatory, and any range of points from 0 to 10 could be awarded for a qualified, certified disadvantaged contractor. (Exhibit A, Deposition of Marlon Marhsall, 38:22-24). The District felt that this was the most effective way to address the history of discrimination against public contractors while ensuring that highly qualified contractors provided the District with quality goods and services, while not overly disadvantaging anybody. (Exhibit A, Deposition of Marlon Marshall, 52:22-54:1).

The District's Service and Maintenance Committee, legal counsel and District staff arrived at the award of up to 10 points out of 100 to meet the Texas Legislature's MWDBE requirements. (Exhibit A, Deposition of Marlon Marhsall, 54:10-16). The District entered into an agreement with the Midtown Redevelopment Authority to administer and comply with the laws of the state and to review the administrative policy annually. (Exhibit A, Deposition of Marlon

Marshall, 26:12-19). The District's program therefore does not unfairly disadvantage Plaintiffs and is narrowly tailored enough to redress the past history of discrimination in public contracting in the Houston metropolitan area while still affording Plaintiffs the opportunity to win the award of contracts from the District. As noted above, Metropolitan does have a long history of winning contract bids from Midtown under this policy and Metropolitan is continuing to perform work on Midtown's park maintenance projects under a current contract with Midtown today.

Plaintiffs also have not designated any expert to provide any evidence on the alleged injurious impact of Midtown's policies on Plaintiffs or on any other contractor bidding on work for Midtown. Plaintiffs have not produced any evidence to demonstrate that Midtown's policies are unconstitutional, and therefore cannot carry their ultimate burden of proof to demonstrate the unconstitutionality of Midtown's programs. See *Dynatlantic Corp. v. U.S. Dept. of Def.,* 885 F. Supp. 257, 251 (D.D.C. 2012).

Plaintiffs further allege that Midtown's MWDBE program used racial stereotypes simply because it adopted the City of Houston's definition of what constitutes a disadvantaged business. However, no evidence has been shown in discovery that Midtown engaged in any stereotyping that linked a contract bidders' race or gender with presumably negative traits, viewpoints or opinions as was shown in the evidence introduced in the lower courts in the *Students for Fair*

7

*Admissions* case. See *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll*, 397 F. Supp 126, 141-143, 146-47, 156-58 (D. Mass. 2019). Midtown's policy in no way implicated the beliefs or personality traits of any of the contractors bidding for Midtown's work. This case is therefore greatly distinguishable from the *Students for Fair Admissions, Inc.* case that Plaintiffs so heavily rely upon to support their arguments.

Midtown therefore has carried the burden to show that there is a compelling interest in Midtown's MWDBE policy and that such policy is narrowly tailored. Plaintiffs' motion for summary judgment should be denied.

### PLAINTIFFS §1981 CLAIM FAILS

As argued in Midtown's motion for summary judgment, the United States District Court here in the Southern District of Texas held that Section 1981 does "not provide a separate cause of action against local governmental entities." *Bluitt v. Houston Indep. Sch. Dist.*, 236 F. Supp. 703, 720 (S.D. Tex. 2002). The *Bluitt* court followed the precedent established by the United State Supreme Court in *Jett* that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 733, 109 S. Ct. 2702, 2722 (1989). The court should not grant Plaintiffs' claims against Midtown

under Section 1981 because Plaintiffs do not have a private right of action against a state governmental unit such as Midtown.

Despite section 1983 serving as the "exclusive federal" remedy for violations of section 1981, the Plaintiffs clearly pleaded their section 1981 claim against the District as an independent cause of action. *Jett*, 491 U.S. at 735. Because the Plaintiffs cannot assert an independent claim against the District under §1981, the Plaintiffs' claims under §1981 must fail. See *Oden v. Oktibbeha Cnty. Miss.*, 246 F.3rd 458, 463 (5th Cir. 2001).

## OBJECTION TO SUMMARY JUDGMENT EVIDENCE

Midtown joins and adopts the objections made by the City of Houston in the City's response to Plaintiff's motion for summary judgment to Exhibit 2 attached to df Plaintiffs' motion for summary judgment, the Colette & Holt study commissioned by the City of Houston in 2016. As the City of Houston states, this was a draft never adopted by the City or by Midtown and it is not admissible or reliable evidence that the court may consider. The study's conclusions are also inadmissible hearsay.

## CONCLUSION AND PRAYER

For the foregoing reasons, the District respectfully requests that the Court deny Plaintiffs' motion for summary judgment, grant Midtown's motion for

9

summary judgment, and that Plaintiffs take nothing by way of all of their claims against the District.

DATED: December 20, 2024

                          Respectfully submitted,

                          HARRIS HILBURN P.L.L.C.

                          */s/ Britton B. Harris*

                          Britton B. Harris
                          Attorney in Charge
                          So. Dist. of Texas No. 00021  Texas Bar. No. 09054500
                          bharris@hhstxlaw.com
                          1111 Rosalie Street
                          Houston, Texas 77004
                          Telephone:  713-223-3936
                          Facsimile:  713-223-3936
                          **Attorneys for Defendant**
                          **Midtown Management District**

OF COUNSEL:
Brett J. Sileo
So. Dist. Of Texas No. 22560
Texas Bar No. 00794634
bsileo@hhstxlaw.com Harris Hilburn, PLLC. 1111 Rosalie
Houston, Texas 77002
Telephone: (713) 223-3936
Facsimile: (713) 224-5358

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record via the Court's electronic filing system following the Federal Rules of Civil Procedure, on December 20, 2024.

*/s/ Britton B. Harris*

Britton B. Harris