# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| LANDSCAPE CONSULTANTS OF TEXAS, INC., and METROPOLITAN LANDSCAPE MANAGEMENT, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> CITY OF HOUSTON, TEXAS, and MIDTOWN MANAGEMENT DISTRICT, <br><br> *Defendants*. | Civil Action No. 4:23-cv-03516 <br><br><br><br> **PLAINTIFFS' REPLY TO DEFENDANT CITY OF HOUSTON'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ...........................................................................1

LEGAL STANDARD........................................................................1

ARGUMENT ................................................................................2

    I.   Houston's Evidentiary Double Standard Must Be Rejected ....................2

        A.   CHA study is admissible evidence; MGT study is not ...................2

        B.   Expert testimony is not required for understanding the CHA study ...................................................................4

        C.   The CHA study is admissible evidence ..........................4

    II.   Plaintiffs Have Article III Standing.............................................6

    III.   Houston's Evidence Does Not Satisfy Strict Scrutiny .............................7

        A.   Houston's program furthers no compelling government interest ....7

        B.   Houston's program is not narrowly tailored ..................10

    IV.   Houston's Program Violates the Twin Commands..................................13

    V.   Section 1981 Creates an Independent Cause of Action ...........................14

CONCLUSION...............................................................................15

CERTIFICATE OF SERVICE .............................................................17

# TABLE OF AUTHORITIES

**Pages(s)**

## Cases

*Adarand Constructors, Inc. v. Pena,*
515 U.S. 200 (1995).................................................................6–7, 12

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)......................................................................1, 7

*City of Richmond v. Croson,*
488 U.S. 469 (1989)....................................................................*passim*

*Escamilla v. Elliott,*
816 F. App'x 919 (5th Cir. 2020) ........................................................15

*Gallentine v. Housing Authority of City of Port Arthur,*
919 F. Supp. 2d 787 (E.D. Tex. 2013)..................................................15

*Grutter v. Bollinger,*
539 U.S. 306 (2003)........................................................................10

*Jett v. Dallas Independent School District,*
491 U.S. 701 (1989)..................................................................14–15

*Johnson v. California,*
543 U.S. 499 (2005)......................................................................7, 10

*Lee v. Offshore Logistical & Transport, LLC,*
859 F.3d 353 (5th Cir. 2017) ...............................................................5

*McCormick v. Miami Univ.,*
693 F.3d 654 (6th Cir. 2012) .............................................................15

*N.E. Fla. Chapter of Associated Gen. Contractors of Am. v.
City of Jacksonville,*
508 U.S. 656 (1993)..........................................................................6

*Oden v. Oktibbeha County,*
246 F.3d 458 (5th Cir. 2001) .............................................................15

*Palmore v. Sidoti,*
466 U.S. 429 (1984)........................................................................14

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1,*
551 U.S. 702 (2007)........................................................................6, 9

*Regents of University of California v. Bakke*,
    438 U.S. 265 (1978)..................................................................8, 13

*Salem v. United States Lines Co.*,
    370 U.S. 31 (1962)..........................................................................4

*In re Schooler*,
    725 F.3d 498 (5th Cir. 2013) ..........................................................4

*Shaw v. Hunt*,
    517 U.S. 899 (1996)......................................................................8–9

*Shaw v. Reno*,
    509 U.S. 630 (1993)........................................................................13

*Students for Fair Admissions, Inc. v.*
    *President and Fellows of Harvard Coll.*,
    600 U.S. 181 (2023)...................................................................*passim*

*United States v. Johnston*,
    127 F.3d 380 (5th Cir. 1997) ..........................................................5

*Vitolo v. Guzman*,
    999 F.3d 353 (6th Cir. 2021) ......................................................9, 12

*Walker v. City of Mesquite*,
    169 F.3d 973 (5th Cir. 1999) ....................................................10–11

*Wygant v. Jackson Bd. of Educ.*,
    476 U.S. 267 (1986)........................................................................12

**Statutes**

42 U.S.C. § 1981 ..............................................................................14–15

42 U.S.C. § 1983 ..................................................................................14

Houston Code §15-81 *et seq.* ...............................................................3

Houston Code § 15-82 .......................................................................6, 11

Houston Code § 15-83(c)........................................................................6

**Rules**

Fed. R. Civ. P. 56(a)..............................................................................1

Fed. R. Civ. P. 56(c)(1)(A) ....................................................................1

Fed. R. Civ. P. 56(c)(2)..........................................................................5

iii

## INTRODUCTION

Defendant City of Houston's Response in Opposition to Plaintiffs' Motion for Summary Judgment, Dkt. 77, rehashes unsuccessful arguments, relies on documents Houston purposefully withheld from Plaintiffs, and hides a lack of evidence behind conclusory statements and sparse legal support. Stripped of these distractions, it is clear that Houston has not met its obligation to provide specific evidence demonstrating that its race-based public contracting program is narrowly tailored to serve a compelling government interest. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). This Court should grant summary judgment in favor of Plaintiffs.

## LEGAL STANDARD

Fed. R. Civ. P. 56(a) requires a court to grant summary judgment if the moving party "shows that there is no genuine issue of dispute as to any material fact and the movant is entitled to judgment as a matter of law." Although Houston baldly asserts that "there remain disputed factual issues," Dkt. 77 at 18, it identifies none. Fed. R. Civ. P. 56(c)(1)(A) (a party asserting that a fact is genuinely disputed must support its assertion by "citing to particular parts of materials in the record."). There are no disputed material facts presented in Plaintiffs' Motion for Summary Judgment. Dkt. 68. Accordingly, Plaintiffs are entitled to judgment as a matter of law.

## ARGUMENT

### I.    Houston's Evidentiary Double Standard Must Be Rejected

A. <u>CHA study is admissible evidence; MGT study is not</u>

Houston contends that the 2020 CHA study, Dkt. 67, may not be considered at summary judgment because it is "irrelevant to any factual or legal issue disputed in this suit." Dkt. 77 at 4. The CHA study is irrelevant, Houston argues, because "[a] draft disparity study that was never adopted by the City can have no probative value in evaluating the constitutionality of the City's MBE program." *Id*. at 4–5. Yet when it comes to the 2024 MGT study[1]—also an unadopted draft—Houston claims the opposite. Houston relies extensively on the MGT study in both its Response and its cross-motion for summary judgment, Dkt. 71, and claims it is so integral to the resolution of this lawsuit that "to meet their ultimate burden of showing that the City's program is unconstitutional, Plaintiffs must develop and come forward with evidence to rebut the MGT study." Dkt. 77 at 13. Houston never disclosed this study to Plaintiffs. Dkt. 75.

Houston cannot have it both ways. Neither the CHA study nor the MGT study have been voted on by the Houston City Council. Neither the CHA study nor the MGT study were relied on by Houston in creating its MWBE policy. Houston's

---

[1] Houston falsely refers to the MGT study as the "operative study supporting the City's MBE program" when the MGT study has not been voted on or adopted by the Houston City Council and Houston's MBE ordinance has not been amended to reflect the MGT study's findings. Dkt. 77 at 13.

MWBE ordinance, Houston Code §15-81 *et seq.*, has not been amended to reflect the findings of either the CHA study or the MGT study. The CHA study is not irrelevant simply because Houston does not like its conclusions.

Houston's use of the MGT study at summary judgment and Houston's counsels' willful disregard of the rules governing discovery are the subject of a pending motion to strike and for sanctions. Dkt. 75. In addition to the arguments put forward in that motion, which Plaintiffs incorporate here, Plaintiffs dispute Houston's attempt to deflect from its sanctionable conduct by describing the MGT study as "completed and released after the close of discovery …." Dkt. 77 at 13 n.2. The MGT study is dated May 7, 2024, well before the close of discovery on September 30, 2024. Dkt. 71-2, Hoyrd Decl. Exs. D, E. Further, Houston's claim that "ignoring [the MGT study] now would undermine judicial efficiency" is laughable. Dkt. 77 at 13 n.2. In addition to the fact that the MGT study is a draft that has not been voted on by the Houston City Council and does not form the basis of the Houston ordinance that Plaintiffs challenge, considering it at this juncture would require the reopening of fact and expert discovery—a delay Houston unmistakably welcomes. Dkt. 77 at 13. This Court already denied Houston's first attempt to delay in order to potentially moot this case. Dkt. 56. Houston's continued gamesmanship should not be tolerated. Any further delay due to Houston's intentional discovery

violations would only reward Houston's misconduct and force Plaintiffs to wait even longer for the justice they are plainly due.

B. <u>Expert testimony is not required for understanding the CHA study</u>

Expert testimony is not needed where the trier of fact is "as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation." *Salem v. United States Lines Co.*, 370 U.S. 31, 35 (1962); *see also In re Schooler*, 725 F.3d 498, 514 (5th Cir. 2013). Plaintiffs' Motion for Summary Judgment does not interpret the CHA study's data, perform statistical analysis, or ask this Court to do so. Dkt. 68 at 2–3. Instead, it reproduces and quotes brief portions of the report's narrative—a narrative written for the laypeople of the Houston City Council and Houston government, not for experts and statisticians. *Id.* Plaintiffs do not "usurp the role of expert witness by self-interpreting the data and findings in the CHA study" as Houston claims; they reproduce the plain language of the study's narrative report. Dkt. 77 at 5. This Court is more than capable of reading and understanding the report's plain language.

C. <u>The CHA study is admissible evidence</u>

Houston does not dispute the CHA study's authenticity, and Houston's contention that the CHA study is inadmissible hearsay misstates Plaintiffs' argument. Dkt. 77 at 6. Plaintiffs do not argue that Houston's program is unconstitutional because there is "no substantial or statistically significant disparity"

in Houston contracting, *id*.—they argue that Houston has no evidence "specific, identified instances of past discrimination that violated the Constitution or a statute" and therefore lacks a compelling interest for its race-based public contracting program. *Students for Fair Admissions, Inc. v. President and Fellows of Harvard Coll.*, 600 U.S. 181, 207 (2023) (*SFFA*); Dkt. 68 at 9, 12. It is irrelevant whether the CHA study demonstrates a statistical disparity because such evidence of societal discrimination is insufficient. *SFFA*, 600 U.S. at 226. The CHA study is not hearsay because it is not offered for the truth of the matter asserted. *See United States v. Johnston*, 127 F.3d 380, 394 (5th Cir. 1997).

Even if the CHA study were hearsay, Houston has not objected—as it must under Fed. R. Civ. P. 56(c)(2)—that the CHA study "cannot be presented in a form that would be admissible as evidence." This Court's order prohibiting discovery related to the CHA study has prevented Plaintiffs from obtaining sworn testimony regarding the study's admissibility. Dkt. 64. But because Plaintiffs could present the CHA study at trial without these limitations, the CHA study is admissible on summary judgment. *See Lee v. Offshore Logistical & Transport, LLC*, 859 F.3d 353, 355 (5th Cir. 2017) (reversing lower court dismissal of unsworn report because report's author could have testified at trial).

## II.    Plaintiffs Have Article III Standing

This Court already determined that Plaintiffs suffered an injury in fact sufficient to support Article III standing. Dkt. 36. Plaintiffs have now proven those allegations with evidence that Houston does not dispute. Plaintiffs are landscaping companies that have bid on Houston landscaping contracts in the past, have a current contract with the City of Houston, and will bid on Houston contracts in the future. Ex. 1, Thompson Dep. Tr. 19:18–23; 74:11–75:2. Houston's MWSBE Program discriminates against landscaping companies on the basis of their owner's race. *Id.* at 56:9–58:9; 60:24–61:4; 68:3–20. It's hard to conceive of another business that is more directly injured by Houston's discriminatory program. Houston's standing arguments are borderline frivolous.

In an equal protection challenge to a race-based set-aside program like Houston's, "the 'injury in fact' is the inability to compete on an equal footing in the bidding process, not the loss of a contract." *N.E. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993); *see also Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995); *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 702, 719 (2007). Houston's program is facially discriminatory. Under Houston's MBE ordinance, only "minority persons" may perform a percentage of many public contracts. Houston Code §§ 15-82; 15-83(c). Plaintiffs' majority owner is not a "minority person" and, as Plaintiffs'

6

corporate representative testified, Plaintiffs are excluded from work while their minority-owned competitors are not. Ex. 1, Thompson Dep. Tr. 68:4–20; 70:4–12.

Houston does not (because it cannot) dispute the plain language of its MBE ordinance. Instead, it repeats irrelevant arguments from its cross-motion for summary judgment. Dkt. 77 at 8–9. Plaintiffs have thoroughly refuted these claims in their Response to Houston's cross-motion for summary judgment, Dkt. 76 at 5–8, and incorporate those arguments here.

## III.  Houston's Evidence Does Not Satisfy Strict Scrutiny

Racial classifications "are constitutional only if they are narrowly tailored measures that further compelling governmental interests." *Adarand*, 515 U.S. at 227. Houston does not dispute that it bears the burden of proving that its racial classifications satisfy strict scrutiny. Dkt. 77 at 9; *Johnson v. California*, 543 U.S. 499, 505 (2005); *Celotex*, 477 U.S. at 322–23. Houston fails to carry this burden.

### A.    Houston's program furthers no compelling government interest

Houston disagrees with the Supreme Court's holding in *SFFA* that there are "only two compelling interests that permit resort to race-based government action": (1) "remediating specific, identified instances of past discrimination that violated the Constitution or a statute"; and (2) "avoiding imminent and serious risks to human safety in prisons, such as a race riot." 600 U.S. at 207. Contrary to Houston's belief, the requirement for evidence of actual constitutional or statutory violations is not new in *SFFA*. In *City of Richmond v. Croson*, the leading case on race-based public

contracting, the Court explained that "for the governmental interest in remedying past discrimination to be triggered, 'judicial, legislative, or administrative findings of constitutional or statutory violations' must be made." 488 U.S. 469, 497 (1989) (citing *Regents of University of California v. Bakke*, 438 U.S. 265, 307 (1978)). "Only then," the Court held, "does the government have a compelling interest in favoring one race over another." *Id.*

Houston directly admits it has no evidence of "specific, identified instances of past discrimination that violated the Constitution or a statute." *SFFA*, 600 U.S. at 207; Dkt. 66-4 at no. 20. That should end the discussion. Instead, Houston contends "the government may employ race-based measures when necessary to dispel the effects of invidious discrimination." Dkt. 77 at 9 (citing *Croson*, 488 U.S. at 493–94). "Dispelling the effects" of invidious discrimination is not the same thing as remediating *specific*, *identified* instances of past discrimination that violated the Constitution or a statute. Houston's stated interest is explicitly rejected in *SFFA*, where the Court traces its long history of precedents holding that ameliorating societal discrimination does not constitute a compelling interest to justify race-based state action. 600 U.S. at 226. Without any evidence of specific, identified instances of past Constitutional or statutory violations, Houston's program rests on a "generalized assertion that there has been past discrimination in an entire industry" that cannot justify race-based preferences. *Croson*, 488 U.S. at 498; *see also Shaw*

8

*v. Hunt*, 517 U.S. 899, 909–10 (1996); *Parents Involved*, 551 U.S. at 732; *Vitolo v. Guzman*, 999 F.3d 353, 361 (6th Cir. 2021).

Plaintiffs' motion for summary judgment discusses several cases in this Circuit that interpret *SFFA* and apply its contexts outside of higher education admissions. Dkt. 68 at 8–13. Houston does not distinguish or even discuss these cases, instead relying on pre-*SFFA* cases and their outdated formulations for establishing a compelling interest in race-based government programs. Dkt. 77 at 11.

Houston is incorrect that Plaintiffs must rebut Houston's stale 2006 disparity study.[2] Dkt. 77 at 12. There is nothing for Plaintiffs to rebut. In addition to being too old to provide a compelling interest for Houston's program, *see* Dkt. 68 at 12–13, the study is not evidence of "specific, identified instances of past discrimination that violated the Constitution or a statute," and therefore does not provide a compelling interest for Houston's racially discriminatory public contracting program, even if it weren't almost twenty years old. *SFFA*, 600 U.S. at 207.

---

[2] The 2012 *construction-only* study, in addition to being woefully stale as well, has nothing to do with landscaping and is therefore also legally irrelevant.

9

B.    <u>Houston's program is not narrowly tailored</u>

Houston wrongly argues that Plaintiffs must show that Houston's program is not narrowly tailored. Dkt. 77 at 13. That burden is on Houston, and Houston fails to carry it. *Johnson*, 543 U.S. at 505.

Houston's "evidence" of narrow tailoring consists entirely of unverified, non-record[3] statements that it has or intends to start race-neutral programs. Dkt. 77 at 13–14. For example, Houston quotes an official that she "anticipate[s]" Houston will expand its race-neutral program for small businesses. Hoyrd Decl., Dkt. 71-2, ¶ 20. The official also "anticipate[s]" a few other changes to Houston's program that do not alter the racial classifications used to award percentages of most public contracts to businesses based on the race of their owners. *Id.* at ¶ 21. A Houston official's anticipation of something that may or may not happen in the future is not *ex ante* evidence of "serious, good faith consideration of workable race-neutral alternatives." *Grutter v. Bollinger*, 539 U.S. 306, 339 (2003); *Croson*, 488 U.S. at 507. Equally unpersuasive is Houston's bare assertion that it operates a "Hire Houston First" program; there is no evidence that "Hire Houston First" was considered and rejected as a workable, race-neutral alternative to its race-conscious public contracting program. Dkt. 77 at 13; *Walker v. City of Mesquite*, 169 F.3d 973,

---

[3] Houston failed to disclose these statements or witnesses during discovery. Dkt. 75 at 1–4.

982–83 (5th Cir. 1999) (race-conscious programs are a remedy of last resort).

Moreover, narrow tailoring requires more than just consideration of workable, race-neutral alternatives. It also demands a close fit between the identified compelling interest and the means used to achieve them. *SFFA*, 600 U.S. at 215 (race-based programs must "articulate a meaningful connection between the means they employ and the goals they pursue."). Houston's MBE program gives a racial preference to businesses owned by individuals from five continents and dozens of countries. Houston Code § 15-82. Despite this, Houston cannot point to a *single instance* of discrimination against any of the racial groups advantaged by its MBE program. Dkt. 66-4 at nos. 1–2, 20.

Houston has no evidence that businesses owned by individuals from the Federated States of Micronesia have experienced discrimination in Houston contracting or demonstrated why its program includes Pakistan but excludes neighboring Afghanistan. The "random inclusion of racial groups that, as a practical matter, may never have suffered from discrimination" in Houston public contracting casts significant doubt that Houston's plan is intended to remedy past discrimination. *Croson*, 488 U.S. at 506. In *Croson*, the Court noted that if Richmond's set-aside was narrowly tailored to compensate black contractors for past discrimination, "one may legitimately ask why they are forced to share this 'remedial relief' with an Aleut citizen who moves to Richmond tomorrow?" *Id.*

11

This Court should ask the same question of Houston's program. As in *Croson*, where the city also had no evidence of past discrimination against many of the groups included in the city's minority contracting program, the "gross overinclusiveness" of Houston's racial preference "strongly impugns the city's claim of remedial motivation." *Croson*, 488 U.S. at 506; *see Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 284 n.13 (1986) (haphazard inclusion of racial groups "further illustrates the undifferentiated nature of the plan").

*Vitolo* is not distinguishable from this case, as Houston contends. Dkt. 77 at 15. Houston admits that it relies on alleged racial group statistical disparities, not individual instances of discrimination. *Id.* But "[s]tatistical disparities don't cut it." *Vitolo*, 999 F.3d at 361. It is a "basic principle" that the Fourteenth Amendment "protect[s] *persons*, not *groups*." *Adarand*, 515 U.S. at 227. Like the program struck down in *Vitolo*, which relied on a patchwork of racial preferences supported only by broad statistical disparities, Houston has failed to put forth any evidence of specific instances of intentional discrimination against any of the racial groups included in its program. 999 F.3d at 361–62.

Finally, while Houston's MBE ordinance purports to require five-year reviews, periodic review does not "make unconstitutional conduct constitutional." *SFFA*, 600 U.S. at 225. Moreover, Houston routinely ignores this statutory requirement; the only comprehensive "reviews" of its program in the record are the

disparity studies in 2006, 2020 (which was never presented to the City Council for a vote), and 2024 (which the City Council has also not voted on). Dkt. 67; 71-2; 71-3. Based upon this record alone, it is impossible to credit Houston's "willingness to terminate the program once its stated goals are achieved." Dkt. 77 at 16.

## IV.  Houston's Program Violates the Twin Commands

The Equal Protection Clause's "twin commands" require that race never be used as a negative and that it may never operate as a stereotype. *SFFA*, 600 U.S. at 218. Houston does not dispute that its program uses race as a negative. Dkt. 68 at 18; Dkt. 77 at 17–18. Houston does, however, attempt to twist the legal standard for stereotyping beyond recognition. Dkt. 77 at 17 (arguing that legal standard requires stereotyping of "traits or viewpoints"). Race-based government programs "reinforce common stereotypes" when they treat individuals according to broad racial group characteristics. *Bakke*, 438 U.S. at 298. In *SFFA*, the Supreme Court held that it had "time and again forcefully rejected the notion that government actors may intentionally allocate preference to those 'who may have little in common with one another but the color of their skin.'" 600 U.S. at 220 (citing *Shaw v. Reno*, 509 U.S. 630, 647 (1993)). This is exactly what Houston's program does, in violation of the Equal Protection Clause.

Houston's program gives race-based preferential treatment to individuals originating from five continents and dozens of countries, and Houston admits that it

13

cannot identify individuals from each of these continents and countries who have suffered discrimination in its procurement process or awards. Dkt. 66-4 at no. 12. Yet despite having no knowledge of discrimination against any member of this vast category of minority-owned businesses, Houston's program still gives these businesses a race-based advantage in public contracting. Houston's program absolutely "allocate[s] preference to those who may have little in common but the color of their skin." *SFFA*, 600 U.S. at 220 (internal citation omitted). This is racial stereotyping, and it is "contrary … to the 'core purpose' of the Equal Protection Clause." *Id.* at 221 (citing *Palmore v. Sidoti*, 466 U.S. 429, 432 (1984)).

## V.    Section 1981 Creates an Independent Cause of Action

Houston repeats its claim—which this Court has already rejected, Dkt. 36— that section 1981 does not create an independent cause of action against a state actor. Dkt. 77 at 18–19. Houston's argument is no more persuasive this time around.

*Jett v. Dallas Independent School District*, 491 U.S. 701 (1989), still does not support Houston's claim. In *Jett*, the Supreme Court concluded that section 1983 "provides the exclusive federal *damages remedy* for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Id.* at 735 (emphasis added). Interpreting the history of the Civil Rights Acts of 1866 and 1871, the Court determined that "Congress intended that the explicit remedial provisions of § 1983 be controlling *in the context of damages actions* brought against state

14

actors alleging violation of the rights declared in § 1981." *Id.* at 731 (emphasis added). Here, Plaintiffs do not seek damages, only declaratory and prospective injunctive relief. Dkt. 1 at 16–17 (Prayer for Relief).

*Oden v. Oktibbeha County*, 246 F.3d 458, 462 (5th Cir. 2001), is equally unhelpful; there, the plaintiff sought compensatory and punitive damages against the government defendants. In fact, money damages were sought in all of the cases Houston relies on. *See McCormick v. Miami Univ.*, 693 F.3d 654, 656 (6th Cir. 2012) (damages); *Gallentine v. Housing Authority of City of Port Arthur*, 919 F. Supp. 2d 787, 815 (E.D. Tex. 2013) (punitive damages); *Escamilla v. Elliott*, 816 F. App'x 919, 921 (5th Cir. 2020) (actual and punitive damages). Houston does not dispute that Plaintiffs seek only forward-looking relief, nor does it cite any case holding that section 1981 does not provide an equitable remedy for claims against state actors.

Houston does not dispute Plaintiffs' standing to bring section 1981 claims or argue that Houston's program does not discriminate on the basis of race in violation of section 1981. Dkt. 77 at 18–20. For the reasons articulated in Plaintiffs' Motion for Summary Judgment, Dkt. 66 at 19–20, Houston's program should be struck down for violating Plaintiffs' right to the full and equal benefit of the laws.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment should be granted.

15

DATED: January 10, 2025.

Respectfully submitted,

Anastasia Boden
*Of Counsel*
Cal. Bar No. 281911
S.D. Tex. Bar No. 3495077
Joshua P. Thompson*
*Of Counsel*
Cal. Bar No. 250955
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
aboden@pacificlegal.org
jthompson@pacificlegal.org

*\*Pro Hac Vice*

s/ Erin E. Wilcox
Erin E. Wilcox
*Attorney-in-Charge*
Cal. Bar No. 337427
S.D. Tex. Bar No. 3369027
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Fax: (916) 419-7747
ewilcox@pacificlegal.org

*Counsel for Plaintiffs*

16

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2025, I served this document via the

Court's electronic filing system to Defendants' counsel of record as follows:

Lori Yount
Senior Assistant City Attorney
Darah Eckert
Senior Asst. City Attorney, General Litigation Section
CITY OF HOUSTON LEGAL DEPARTMENT
P.O. Box 368
Houston, Texas 77001-368
900 Bagby, 4th Floor
Houston, TX 77002
lori.yount@houstontx.gov
darah.eckert@houstontx.gov

Ben Stephens
Sandy Hellums-Gomez
Jarett Dillard
HUSCH BLACKWELL LLP
600 Travis St., Suite 2350
Houston, Texas 77002
ben.stephens@huschblackwell.com
sandy.gomez@huschblackwell.com
jarett.dillard@huschblackwell.com
*Counsel for City of Houston*

Brett J. Sileo
Britton B. Harris
HARRIS HILBURN P.L.L.C.
1111 Rosalie
Houston, Texas 77004
bsileo@hhstxlaw.com
bharris@hhstxlaw.com
*Counsel for Midtown Management District*

s/ *Erin E. Wilcox*
Erin E. Wilcox
Pacific Legal Foundation