UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LANDSCAPE CONSULTANTS OF TEXAS, INC., and METROPOLITAN LANDSCAPE MANAGEMENT, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> CITY OF HOUSTON, TEXAS, and MIDTOWN MANAGEMENT DISTRICT, <br><br> *Defendants*. | Civil Action No. 4:23-cv-03516 <br><br><br> **PLAINTIFFS' REPLY TO DEFENDANT MIDTOWN MANAGEMENT DISTRICT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Defendant Midtown Management District's (Midtown) Response to Plaintiffs Landscape Consultants of Texas, Inc. (Landscape Consultants) and Metropolitan Landscape Management, Inc.'s (Metropolitan) Motion for Summary Judgment falls far short of satisfying strict scrutiny. Midtown is miles away from meeting its obligation to provide specific evidence demonstrating that its race-based public contracting program is narrowly tailored to serve a compelling government interest. It doesn't even try. Instead, Midtown shifts responsibility, first to the Texas Legislature and then to another municipal entity. Dkt. 78 at 5–6. This Court should grant summary judgment in favor of Plaintiffs.

1

## ARGUMENT

### I. Plaintiffs Have Article III Standing

This Court has already rejected Midtown's argument that Plaintiffs lack Article III standing to bring their Section 1983 claim. Dkt. 26; Dkt. 36. Plaintiffs have now provided specific evidence to prove the allegations of injury in their complaint. Ex. 1, Thompson Dep. Tr. 80:22–25 (Midtown's program gives minority bidders a "10 percent advantage before any else comes in to bid on that, and that's the disadvantage."); 81:5–17 (Midtown's 10 point program forced Metropolitan to choose between lowering bid price or losing "valuable" contract that provides eight full time jobs); 94:11–95:22 (lost contract "because we got no points for the Minority Program."); Ex. 9 (2022 Field Maintenance Services Project bid tabulation showing Metropolitan would have received the highest score but for receiving zero of ten points in the MWDBE category). Midtown has not provided any evidence that would call Plaintiffs' standing into question—nor could it. Plaintiffs are businesses that have contracted with Midtown in the past, are currently in a contract with Midtown, and intend to continue contracting in the future. *Id.* at 108:4–12; 115:9–12. Midtown discriminates against Plaintiffs on the basis of race. A more straightforward case of Article III standing may not exist in the federal courts.

Midtown does not challenge the traceability or redressability prongs of Article III standing and focuses only on Plaintiffs' injury in fact. Dkt. 78 at 3–4. In a forward-looking equal protection challenge to a race-conscious contracting

program, "the 'injury in fact' is the inability to compete on an equal footing in the bidding process, not the loss of a contract." *N.E. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). Plaintiffs are not required to prove that they previously held or lost contracts because of Midtown's racially discriminatory program, only that the program forces Plaintiffs to compete for contracts "on an unequal basis." *W.H. Scott Constr. Co. v. City of Jackson*, 199 F.3d 206, 213 (5th Cir. 1999) (citing *N.E. Fla.*, 508 U.S. at 666: "The 'injury in fact' … is the denial of equal treatment resulting from the imposition of [a] barrier, not the ultimate inability to obtain the benefit.").

When evaluating bids, Midtown awards ten percent of all the available points—10 out of 100 available points—on the basis of race. Dkt. 66-5 at Ex. 3, p. 4; Dkt. 66-8 at no. 8. Plaintiffs are not minority-owned businesses, so—based solely on race—Plaintiffs can never receive these ten points when bidding on Midtown contracts. This is a textbook injury in fact in a forward-looking equal protection challenge to a race-based government program. *See, e.g.*, *N.E. Fla.*, 508 U.S. at 666; *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995) ("The injury in cases of this kind is that a 'discriminatory classification prevent[s] the plaintiff from competing on an equal footing.'") (quoting *N.E. Fla.*, 508 U.S. at 667); *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007).

It is irrelevant that Metropolitan "has a long history of working for Midtown Management District." Dkt. 78 at 3–4. All that shows is that Metropolitan's interest in future contracts is genuine.[1] Metropolitan has indeed won past Midtown contracts despite being forced to compete in a discriminatory, race-based system—and it has lost past Midtown contracts because of this system as well. For example, Metropolitan lost the 2022 Field Maintenance Services Project solely because of its owner's race. Ex. 1, Thompson Dep. Tr. 79:9–80:6; Thompson Dep. Tr. Ex. 9. The successful bidder received ten points in the "MWDBE" category; Metropolitan did not. *Id.* at Thompson Dep. Tr. Ex. 9. If not for the ten points that Metropolitan did not receive because of its owner's race, Metropolitan would have scored higher than all other bidders and secured the $350,000 contract. *Id.*

## II. Midtown Does Not Satisfy Its Burden of Proof

The Supreme Court is unequivocal that "all racial classifications, imposed by whatever federal, state, or local governmental actor, must be analyzed by a reviewing court under strict scrutiny." *Adarand*, 515 U.S. at 227. Midtown's

---

[1] It is irrelevant that Landscape Consultants, as opposed to Metropolitan, has not previously bid on a Midtown contract. *Id.* at 4. As Plaintiffs' corporate representative, Gerald Thompson, testified, the two companies share the same employees. Ex. 1, Thompson Dep. Tr. 25:2–7. Though acquired at the same time, the companies remain distinct because some customers (like Houston) were familiar with the Landscape Consultants' brand and some (like Midtown) with the Metropolitan brand. *Id.* In any event, in cases with multiple plaintiffs, "[i]f at least one plaintiff has standing, the suit may proceed." *Biden v. Nebraska*, 600 U.S. 482, 489 (2023); *see also Texas v. United States*, 50 F.4th 498, 514 (5th Cir. 2022).

4

program uses racial classifications to award ten extra points to some bidders and not others, and those classifications "are constitutional only if they are narrowly tailored measures that further compelling governmental interests." *Id.*

Midtown incorrectly places the burden of proving a compelling interest and narrow tailoring on Plaintiffs. Dkt. 78 at 3–4. Where the government imposes racial classifications, the *government* bears the burden of proving that its racial classifications satisfy strict scrutiny. *Johnson v. California*, 543 U.S. 499, 505 (2005) (citing *Adarand*, 515 U.S. at 227). Where the nonmoving party bears the burden of proof on an issue at trial, the movant need only point to the absence of evidence, shifting the burden to the nonmoving party to show why summary judgment should not be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Midtown not only fails to meet its burden; it barely attempts it.

A. <u>Midtown's program furthers no compelling government interest</u>

Midtown offers no proof of a compelling interest for operating a race-based public contracting program. The only compelling interest available to Midtown is "remediating specific, identified instances of past discrimination that violated the constitution or a statute." *Students for Fair Admissions, Inc. v. President and Fellows of Harvard Coll.*, 600 U.S. 181, 207 (2013) (*SFFA*). To establish it possesses such a compelling remedial interest, Midtown must: (1) identify a specific instance of past discrimination (and not rely on general allegations of bias in the industry);

5

(2) provide direct evidence of intentional discrimination (as opposed to mere disparities); and (3) show past governmental participation in the discrimination it seeks to remedy. *Miller v. Vilsack*, No. 4:21-CV-0595-O, 2021 WL 11115194, at *8 (N.D. Tex. July 1, 2021) (citing *Vitolo v. Guzman*, 999 F.3d 353, 361 (6th Cir. 2021) (summarizing U.S. Supreme Court precedents)).

Midtown fails all three. It admits that it is aware of no specific instances of past discrimination in its contracting program. Dkt. 66-7 at no. 7; Dkt. 66-8 at no. 21. Midtown has no direct evidence of intentional discrimination. Dkt. 66-8 at nos. 16, 21–22. And Midtown has no evidence that it participated in discrimination in its public contracting program. *Id.* at nos. 1–2, 4–6, 21.

Instead, Midtown argues that Tex. Local Gov't Code § 375.222(b) provides a compelling interest for its race-based public contracting program. It does not. In fact, a race-conscious public contracting program like Midtown's is expressly prohibited by Tex. Local Gov't Code 375.222(d). It requires that programs established under the statute "must attempt to remedy any statistically significant disparities *that are found to exist*," and may continue "only until its purposes and objectives are met as determined by the regular periodic review." *Id.* (emphasis added). Midtown has no idea whether statistically significant disparities exist because it has never conducted a study to find out, and it further admits that there is no statistical basis for its race-based contracting program. Dkt. 66-8 at no. 6.

6

Accordingly, in addition to failing to establish that its program furthers a compelling interest as required by the Equal Protection Clause, Midtown plainly fails the statutory requirements of Tex. Local Gov't Code §375.222(d) as well.

B. <u>Midtown's program is not narrowly tailored</u>

Even if it could somehow establish that its racially discriminatory program furthers a compelling interest, Midtown offers no evidence that the ten-point bonus is narrowly tailored to that interest. Narrow tailoring requires the government to show "serious, good faith consideration of workable race-neutral alternatives." *Grutter v. Bollinger*, 539 U.S. 306, 339 (2003); *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 507 (1989). A policy is not narrowly tailored if its racial classifications are either overbroad or underinclusive, *Croson*, 488 U.S. at 507–08; *Gratz v. Bollinger*, 539 U.S. 244, 273–75 (2003), and it must have an end point. *SFFA*, 600 U.S. at 225. Instead of proving that its program is narrowly tailored, Midtown offers excuses for why it is not.

None of these excuses satisfy narrow tailoring. First, Midtown's corporate representative's testimony that the ten-point award is "discretionary" and can range from "0 to 10" does not alter the fact nonminority plaintiffs will always receive zero points. Dkt. 78 at 6. Second, Second, Midtown's reliance on its relationship with the Redevelopment Authority to conduct an annual program review does not satisfy narrow tailoring. Dkt. 78 at 6–7. After all, Midtown's corporate representative

testified that he was not sure what the program review consisted of, and that the review was documented only in board meeting minutes for the approval of the "Midtown Redevelopment Authority's policies and procedures" document. Dkt. 78-1, Marshall Dep. Tr. 26:20–27:22. Midtown's representative also testified that he did not know whether Midtown produced a yearly program report at all. *Id.* Passing the buck to the Redevelopment Authority is not the "serious, good faith consideration of workable race-neutral alternatives" required to satisfy narrow tailoring. *Grutter*, 539 U.S. at 339.

C. <u>Midtown's program fails the "twin commands" of the Equal Protection Clause</u>

Midtown does not dispute that its racially discriminatory public contracting program violates one of the Equal Protection Clause's "twin commands" by treating race as a negative. As for whether the program stereotypes individuals on the basis of race, Midtown misunderstands the legal standard. Dkt. 78 at 7–8 (arguing that stereotyping turns on whether the program uses "personality traits"). Race-based government programs "reinforce common stereotypes" when they treat individuals according to broad racial group characteristics. *Univ. of Cal. Regents v. Bakke*, 438 U.S. 265, 298 (1978). In *SFFA*, the Supreme Court held that it had "time and again forcefully rejected the notion that government actors may intentionally allocate preference to those 'who may have little in common with one another but the color of their skin.'" 600 U.S. at 220 (citing *Shaw v. Reno*, 509 U.S. 630, 647 (1993)). Yet

this is exactly what Midtown's program does, in violation of the Equal Protection Clause's "twin commands that race may never be used as a 'negative' and that it may not operate as a stereotype." *SFFA*, 600 U.S. at 218.

Midtown admits that its policy is to use Houston's definition of "minority person," as found in Houston Code §15-82, when determining eligibility for its 10-point award. Dkt. 66-8 at no. 10. Midtown also admits that this definition includes individuals originating from five continents and dozens of countries, and that Midtown cannot identify individuals from each of these continents and countries who have suffered discrimination in its procurement process or awards. *Id.* at nos. 12–13. Yet despite having no knowledge of discrimination against any member of this vast category of "minority persons," Midtown still awards ten points to minority-owned businesses and does not award those points to nonminority-owned businesses. Midtown's program absolutely "allocate[s] preference to those who may have little in common with one another but the color of their skin." *SFFA*, 600 U.S. at 220 (internal citation omitted). This is racial stereotyping, and it is "contrary … to the 'core purpose' of the Equal Protection Clause." *Id.* at 221 (citing *Palmore v. Sidoti*, 466 U.S. 429, 432 (1984)).

D. Expert testimony on Plaintiffs' injury in fact is not required

It is unclear why Midtown contends that Plaintiffs must have designated an expert to "provide any evidence on the alleged injurious impact of Midtown's

policies on Plaintiffs or on any other contractor bidding for work for Midtown." Dkt. 78 at 7. It is also unclear why Midtown raises this point in the context of its requirement to prove its discriminatory program is narrowly tailored. *Id.*

As discussed above, the injury in fact in a forward-looking equal protection claim like Plaintiffs' is not the loss of a contract. *Supra* at 2–4. Regardless, expert testimony is not required for this Court to understand the plain meaning of Midtown's ten-point award system or how it disadvantages nonminority-owned bidders like Plaintiffs. Ex. 1, Thompson Dep. Tr. Ex. 9. The policy is clear that minority-owned bidders receive extra points that are not available to nonminority bidders based solely on race. This is the "denial of equal treatment resulting from the imposition of [a] barrier" that creates Plaintiffs' injury in fact. *N.E. Fla.*, 508 U.S. at 666.

### III. Plaintiffs Properly Raise Section 1981 Claims

Midtown does not dispute Plaintiffs' claims that Midtown's program violates Plaintiffs' right to the full and equal benefit of all laws under 42 U.S.C. §1981, nor that Plaintiffs have standing to bring these claims. Instead, Midtown rehashes previous arguments that section 1981 does not support an independent cause of action against government actors. Dkt. 78 at 8. This Court has already rejected Midtown's argument once and Midtown provides no reason why this Court should not do so again. Dkt. 36.

Neither *Bluitt v. Houston Independent School District*, 236 F. Supp. 2d 703 (S.D. Tex. 2002), nor *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989), support Midtown's argument. In *Jett*, the Supreme Court concluded that section 1983 "provides the exclusive federal *damages remedy* for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." 491 U.S. at 735 (emphasis added). Interpreting the history of the Civil Rights Acts of 1866 and 1871, the Court determined that "Congress intended that the explicit remedial provisions of § 1983 be controlling *in the context of damages actions* brought against state actors alleging violation of the rights declared in § 1981." *Id.* at 731 (emphasis added). Here, Plaintiffs do not seek damages, only declaratory and prospective injunctive relief. Dkt. 1 at 16–17 (Prayer for Relief).

Midtown does not dispute that Plaintiffs seek only forward-looking relief, nor does it cite any case holding that section 1981 does not provide an equitable remedy for claims against state actors. *Bluitt* is inapplicable; the plaintiff in that case sought damages and the decision quotes *Jett*'s holding that section 1983 is the exclusive federal damages remedy for section 1981 violations. 236 F. Supp. 2d at 720. *Oden v. Oktibbeha County*, 246 F.3d 458, 462 (5th Cir. 2001), is equally unhelpful; there, the plaintiff sought compensatory and punitive damages against the government defendants.

11

## IV. The Colette Holt & Associates Study Is Inapplicable to Midtown

It is unclear why Midtown "joins and adopts" Houston's objections to Plaintiffs' use of the 2020 Colette Holt & Associates disparity study that was commissioned and then buried by Houston (Dkt. 67). Dkt. 78 at 9. Midtown does not contend that its program is based upon the 2020 study or provide any evidence that the 2020 study is relevant to Midtown's program in any way. Midtown also offers no support for its conclusory statements that the 2020 study is "not admissible or reliable evidence that the court may consider" and that the "study's conclusions are also inadmissible hearsay." Dkt. 78 at 9. Midtown's statements on this topic are as confusing as they are irrelevant. They should be disregarded.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgement should be granted.

DATED: January 10, 2025.

Respectfully submitted,

| | |
|---|---|
| Anastasia Boden | s/ Erin E. Wilcox |
| *Of Counsel* | Erin E. Wilcox |
| Cal. Bar No. 281911 | *Attorney-in-Charge* |
| S.D. Tex. Bar No. 3495077 | Cal. Bar No. 337427 |
| Joshua P. Thompson* | S.D. Tex. Bar No. 3369027 |
| *Of Counsel* | Pacific Legal Foundation |
| Cal. Bar No. 250955 | 555 Capitol Mall |
| Pacific Legal Foundation | Suite 1290 |
| 555 Capitol Mall | Sacramento, CA 95814 |
| Suite 1290 | Telephone: (916) 419-7111 |
| Sacramento, CA 95814 | Fax: (916) 419-7747 |
| Telephone: (916) 419-7111 | ewilcox@pacificlegal.org |
| Fax: (916) 419-7747 | |
| aboden@pacificlegal.org | |
| jthompson@pacificlegal.org | |

*\*Pro Hac Vice*

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2025, I served this document via the Court's electronic filing system to Defendants' counsel of record as follows:

Lori Yount
Senior Assistant City Attorney
Darah Eckert
Senior Asst. City Attorney, General Litigation Section
City of Houston Legal Department
P.O. Box 368
Houston, Texas 77001-368
900 Bagby, 4th Floor
Houston, TX 77002
lori.yount@houstontx.gov
darah.eckert@houstontx.gov

Ben Stephens
Sandy Hellums-Gomez
Jarett Dillard
HUSCH BLACKWELL LLP
600 Travis St., Suite 2350
Houston, Texas 77002
ben.stephens@huschblackwell.com
sandy.gomez@huschblackwell.com
jarett.dillard@huschblackwell.com
*Counsel for City of Houston*

Brett J. Sileo
Britton B. Harris
Harris Hilburn P.L.L.C.
1111 Rosalie
Houston, Texas 77004
bsileo@hhstxlaw.com
bharris@hhstxlaw.com
*Counsel for Midtown Management District*

s/ *Erin E. Wilcox*
Erin E. Wilcox
Pacific Legal Foundation