## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| LANDSCAPE CONSULTANTS OF TEXAS, INC., and METROPOLITAN LANDSCAPE MANAGEMENT, INC., <br><br> Plaintiffs, <br> v. <br><br> CITY OF HOUSTON, TEXAS, and MIDTOWN MANAGEMENT DISTRICT, <br><br> Defendants. | Civil Action No. 4:23-cv-03516 |

## DEFENDANT CITY OF HOUSTON'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

In this challenge to the City of Houston's Minority Business Enterprise (MBE) program, the City has presented robust evidence affirming the constitutionality of its current program. The City relied in part on the City's existing and currently adopted 2006 and 2012 disparities studies to do so. The City also provided the MGT Study, which highlights ongoing disparities and suggests potential future revisions and updates to the current program. In response, Plaintiffs clarified that their requested relief targets only the City's *current* MBE program, ordinance, policies, and procedures, and not any future version of the same program.

1

Plaintiffs do not believe either the MGT Study or the new program it will support should play any role in this case. Essentially, they seek only an advisory opinion regarding the constitutionality of a program that is on the cusp of replacement.

The Court should decline to issue such an advisory opinion. If the Court decides to take any action, it should grant the City's Motion for Summary Judgment. Plaintiffs lack standing, and the City has successfully demonstrated a compelling interest, supported by substantial evidence (other than the MGT Study), in employing narrowly tailored race-conscious measures to remedy racial discrimination in City contracting.

## ARGUMENT

### I.    Plaintiffs have not met their burden to show Article III standing by specific facts.

Plaintiffs maintain that the ability of minority owned firms to use their own work to satisfy up to 50% of MBE participation goals forces them to compete on unequal footing. Doc. No. 76 at 7-8. The evidence shows, however, that Plaintiffs retained 100% of contract dollars on Landscape's contract with the City, including for work that had been originally assigned to a minority owned firm, with no adverse consequences. *See* Doc. No. 71 at 17-18.

Plaintiffs invoke the Fifth Circuit's holding in favor of Article III standing in *W.H. Scott Const. Co. v. City of Jackson*, but the City of Jackson's MBE program challenged in that case was different. 199 F.3d 206 (5th Cir. 1999). The program

2

there did not deal with the possibility of a minority prime contractor satisfying MBE goals with its own work—rather, the Court interpreted the progam's text *sua sponte* as authorizing minority firms to do so for up to 100% of minority participation goals. *Id.* at 214-15. By contrast, the City's MBE program addresses this possibility explicitly and limits minority prime contractors to satisfying only 50% of minority participation goals with their own work. With respect to the remaining contract dollars designated for meeting MBE goals, both minority and non-minority prime contractors must either subcontract to minority-owned firms or show good faith efforts to do so. Thus, minority and non-minority firms operate under very similar obligations and any differential burden on non-minority firms is minimal. Moreover, as the record shows, even when Landscape ostensibly ran afoul of the bare textual requirement imposing the alleged inequality, they suffered no adverse consequences, indicating that any competitive disadvantage caused by the program is illusory in Landscape's case.

Moreover, even if Plaintiffs can be said to show standing, such standing is limited to the contracts on which they are ready, willing, and able to bid—in this case, by Landscape's own admission, "other services" contracts. *Scott*, 199 F.3d at 212. With respect to other types of contracts, Plaintiffs share the same grievance as any citizen who takes offense at the use of racial classifications. Such a widely

shared grievance does not confer standing under Article III, however. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 574 (1992).

In any event, injunctive relief must be narrowly tailored to the injury alleged and striking down an entire MBE program based on a dispute affecting only one procurement category would be excessively broad. *See Green Valley Spec. Util. Dist. v. City of Schertz, Tex.*, 969 F.3d 460, 478 n. 39 (5th Cir. 2020). Notably, Plaintiffs maintain that the 2012 study on discrimination in construction contracting relied upon by the City "has nothing to do" with the landscaping contract at issue here and cannot be used to support the City's compelling interest in remedying discrimination. *See* Doc. No. 76 at 3, n.1. Plaintiffs' position confirms that they do not have standing to challenge minority participation goals for such construction contracts—contracts which "have nothing to do" with the non-professional services contracts that they are ready, willing, and able to bid on.

Finally, Metropolitan lacks standing because it is by its own admission not ready, willing, or able to bid on City contracts of any kind. Accordingly, the City is entitled to judgment with respect to claims alleged by Metropolitan.

## II. The City has satisfied its burden of demonstrating a strong basis in evidence for its compelling interest in employing race-conscious measures to remedy racial discrimination in City contracting.

### A. Plaintiffs mischaracterize the legal standard for the City to show a compelling interest in remedying discrimination.

4

To show its compelling interest, the City must point to evidence sufficient to create an inference of the government's active or passive participation in discrimination. *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 509 (1989). "[A] significant statistical disparity" between the availability and utilization of minority owned firms in City contracting that cannot be adequately explained by non-discriminatory factors is sufficient circumstantial evidence to support an inference of discrimination. *Id.* Accordingly, the City, through the consistent findings of past disparity studies, as well as the MGT disparity study, has met its burden of identifying a strong basis in evidence for the use of race-conscious remedial measures. *See* Doc. No. 71, pgs. 23–32. In response, Plaintiffs identified absolutely no evidence to the contrary, and did not even designate an expert witness to critique the several disparity studies upon which the City relies.

Plaintiffs err in arguing that the City must point to specific episodes of past discrimination. That proposition is taken out of context from the Supreme Court's opinion in *SFFA* and has no application to a local minority contracting program. *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023). Indeed, contrary to Plaintiffs' unsupported assertions, anecdotal evidence of isolated instances of discrimination is, by itself, insufficient to carry the City's burden. The key is the "potent combination" of statistical evidence regarding disparity in utilization of minority-owned firms and anecdotal evidence of

discrimination. *See, e.g. H.B. Rose Co. v. Tippett*, 615 F.3d 233, 249 (4th Cir. 2010); *Coral Constr. v. King Co.*, 941 F.2d 910, 919 (9th Cir. 1989). The past studies referenced by the City provide both. Accordingly, the City has met its burden of showing a compelling interest in taking race-conscious remedial action.

**B. Plaintiffs provide no credible or particularized evidence to rebut the City's evidence.**

The burden shifts to Plaintiffs "to present 'credible, particularized evidence' to rebut the government's initial showing of a compelling interest,'" and demonstrate that the program is not narrowly tailored to meet that interest. *Rothe Dev., Inc. v. U.S. Dep't of Def.*, 107 F.Supp.3d 183, 207–08 (D.D.C. 2015). Plaintiffs have provided no admissible evidence, analysis, or findings that could possibly be understood to rebut the City's evidence of compelling interest.

Plaintiffs' position appears to be that there is nothing for them to rebut because the City's prior disparity studies are too old and the MGT study is too new. Neither position is justified. As the City has argued consistently in its prior briefing, the 2006 study is not too old and cannot be simply disregarded by the court on this basis.

**C. The MGT Study confirms the findings of the City's past disparity studies are still valid, but need not be considered by the Court in evaluating the City's current program.**

It is no secret that the City's MBE program is undergoing revision, a critical component of which is the finalization of a new disparity study. *See* Doc. No. 1 at ¶ 28 ("The City recently engaged a consulting firm to provide a new disparity study.").

For that reason, the City moved for a stay of this litigation until the new disparity study was adopted by City council and the City's MBE program and policies were updated to reflect the results of that study. Doc. No. 41. Plaintiffs successfully opposed that stay, and Plaintiffs' response to the City's Motion for Summary Judgment confirms that Plaintiffs do not seek an injunction of the forthcoming and updated MBE program. Rather, Plaintiffs seek an injunction of the current MBE program that is about to be replaced.

For the reasons explained in the City's opposition to Plaintiffs' Motion to Strike (Doc. No. 75), the Court need not consider the MGT Study at all in ruling on either the City's motion or on Plaintiffs', as the MGT Study is not the evidentiary basis for the *current* MBE program. As set forth in the City's Motion for Summary Judgment and above, the City's current MBE program is supported by other compelling evidence in the form of disparity studies and anecdotal data. Plaintiffs fault the age of that evidence, [1] but offer no other admissible evidentiary critique.

---

[1] While Plaintiffs wish to disregard that evidence because of its age, no absolute rule permitting automatic invalidation of disparity studies of a certain age exists. Even those cases striking down disparity programs based on old evidence involved fulsome evidentiary records, with the challenging party's presentation of its own statistical evidence following complete fact and expert discovery. *See* Doc. No. 45 at 11-15. Here, Plaintiffs designated no experts, pursued no testimony from the City other than discovery pertaining to the City's incomplete 2016 study (which the Court quashed), and at summary judgment presented zero countervailing evidence or even argument pertaining to the City's evidence of statistical disparities found in the 2006 and 2012 disparity studies.

No authority supports that notion that age alone automatically invalidates an otherwise unchallenged disparity study.

### III.   The City has satisfied its burden of showing that the MBE program is narrowly tailored.

#### A. The City considered race-neutral alternatives prior to the enactment of the MBE program.

The summary judgment record shows that the City's current program includes race-neutral alternatives—for example, the Hire Houston First ordinance, the City's educational and outreach programs, and, significantly, the Small Business Enterprise program itself, which is race- and gender-neutral across all procurement categories. Hoyrd Decl. at ¶ 20. Moreover, the City's planned expansion of race-neutral means to accomplish its objectives is further evidence that the City's goal in continued administration of the MBE program is a proper remedial goal, not an improper political one. *Aiken*, 37 F.3d at 1164 (failure to consider race-neutral method of promotions suggested a political rather than a remedial purpose).

#### B. The City's MBE program is not overinclusive.

The categories used to define minority-owned firms eligible to participate in the MBE program are narrowly tailored because the 2006 study used the same categories in evaluating its findings as did the MGT study. Because the study uses those categories, and the ordinance is based on the study, the ordinance is not overinclusive.

8

Plaintiffs' argument is copied and pasted from court opinions in recent cases adjudicating challenges to federal loan and subsidy program, but local minority contracting programs are different. In *Vitolo*, the federal government drew on various studies conducted at different times and covering multiple jurisdictions, and the classifications utilized in its program necessarily differed from those used in the studies, rendering them over- and under-inclusive. *Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021). Here, the City based its ordinance on a disparity study that makes specific findings regarding underutilization of firms owned by the very minority groups defined by the ordinance.

### C. The MBE program has a logical endpoint.

There is a logical endpoint to the program despite delays in city operations. A delay in reviewing the program is not the same as a willful decision to allow the program to continue in perpetuity.

**IV.    Plaintiffs' request for prospective relief with respect to a program that they concede is on the cusp of being supplanted is at odds with principles of federal jurisdiction.**

Plaintiffs are asking the Court to issue what is in effect, if not in substance, an advisory opinion. Any injunction by the Court on the terms requested by Plaintiffs would apply exclusively to the current program and the evidence that supported its enactment, which all parties must concede are about to be replaced. Indeed, it is likely that the old program will have been replaced by the time a decision is rendered

9

on the pending cross-motions for summary judgment. If Plaintiffs' challenge is exclusively to the existing ordinance and program, as they aver, then this is no longer a live case, as that program has been scheduled for obsolescence. *Daves v. Dallas Cnty., Tex.*, 64 F.4th 616, 634 (5th Cir. 2023) (ruling on the constitutionality of procedures, subject to amended legislation, "based on evidence largely generated during proceedings that occurred pre-amendment[] would constitute no more than an advisory opinion."); *Veasy v. Abbott*, 888 F.3d 792, 799 (5th Cir. 2018) ("[A] lawsuit challenging a statute would become moot by the legislature's enactment of a superseding law," and "any federal court ruling on the old law would have no practical effect and the court's conclusions would constitute an advisory opinion."). Plaintiffs offer no critique of the City's forthcoming amended and updated program (and in fact ask the Court to disregard the MGT Study's evidence pertaining to the City's new program). Rather, Plaintiffs opportunistically seek an all-but-moot declaration regarding the constitutionality of a program that is scheduled for obsolescence by February 12. *See* City of Houston's Response to Motion to Strike and for Sanctions, Hoyrd Decl. at ¶ 14.

Moreover, the Court is unable to extend any injunction order to control or to supervise the new ordinance and accompanying regulations that the City will adopt. If Plaintiffs' requested relief is limited to the existing program, then the Court's jurisdiction ends, at the latest, with the enactment of a new program, and practically,

it has already ended due to the strong likelihood that the City will act before the Court does.

## CONCLUSION

For the foregoing reasons, the Court should grant the City's Motion for Summary Judgment and deny Plaintiffs' Second Motion for Summary Judgment.

By:   */s/ Ben Stephens*
        Ben Stephens
        State Bar No. 24098472
        SDTX Bar No. 2898153
        ben.stephens@huschblackwell.com
        Sandy Hellums-Gomez
        State Bar No. 24036750
        SDTX Bar No. 561314
        sandy.gomez@huschblackwell.com

Husch Blackwell LLP
600 Travis St., Suite 2350
Houston, Texas 77002
Telephone:  (713)  647-6800
Facsimile:   (713)  647-6884

        */s/ Darah Eckert*
        Darah Eckert
        Senior Assistant City Attorney
        State Bar No. 24007141
        SDTX Bar No. 1890045
        darah.eckert@houstontx.gov
        Lori J. Yount
        Senior Assistant City Attorney
        State Bar No. 2209496

SDTX Bar No. 24084592
lori.yount@houstontx.gov

Arturo G. MICHEL
CITY ATTORNEY
SUZANNE R. CHAUVIN
CHIEF, GENERAL LITIGATION SECTION
CITY OF HOUSTON LEGAL DEPARTMENT
P.O. Box 368
Houston, Texas 77001-368
900 Bagby, 4th Floor
Houston, Texas 77002
Telephone:  (832) 393-6219
Facsimile:   (832) 393-6259

**ATTORNEYS FOR THE CITY OF HOUSTON**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been served upon the following on January 10, 2025, via the CM/ECF Filing system.

*/s/ Ben Stephens*
Ben Stephens