UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LANDSCAPE CONSULTANTS OF TEXAS, INC., and METROPOLITAN LANDSCAPE MANAGEMENT, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF HOUSTON, TEXAS, and MIDTOWN MANAGEMENT DISTRICT, <br><br> Defendants. | Civil Action No. 4:23-cv-03516 |

**DEFENDANT CITY OF HOUSTON'S RESPONSE TO MOTION TO STRIKE AND FOR SANCTIONS**

It is no surprise to anyone involved in this litigation that the City of Houston has obtained a new disparity study for use in evaluating the continuance, amendment of, and updating to its Minority Business Enterprise (MBE) program. Plaintiffs knew the preparation of that study was underway when they filed suit almost sixteen months ago. *See* Doc. No. 1, at ¶ 28 ("The City recently engaged a consulting firm to provide a new disparity study.").

To allow time for the new study to be completed and adopted, and for the City's MBE program to be updated to reflect the new study, the City proposed a stay of the litigation. Doc. No. 41. Plaintiffs elected against a stay and in favor of

1

proceeding with litigation regarding the soon-to-be-retired MBE program. Doc. No. 43. In doing so, Plaintiffs' objective became clear: secure a ruling on the City's expiring program in the brief window of time remaining before the City replaced it.

The City has presented substantial evidence supporting its compelling interest in administering the current MBE program, demonstrating that the program is narrowly tailored. Plaintiffs have failed to provide any evidence to the contrary on either point. Additionally, the City has provided the Court and the parties with the MGT Study, which confirms that disparities identified in previous studies have not been fully addressed. Sharing the evidence that will support the City's future program with Plaintiffs and the Court is not "unfair surprise," but rather an example of the City's transparency and over-disclosure. The City should not be penalized for Plaintiffs' choice to litigate a policy and evidence that is already being phased out, rather than the policy and evidence the City will soon adopt and implement.

## BACKGROUND

Plaintiffs' lawsuit deliberately challenges an MBE program on its way out the door. In September 2023, the City was in the midst of a periodic review of its MWSBE program, with the expectation of amending the City's MWSBE ordinance and updating the Office of Business Opportunity's (OBO) MWSBE policies and procedures. As Plaintiffs alleged, that review included the procurement of a new disparity study. *See* Complaint, Doc. No. 1, at ¶ 28.

Plaintiffs perceived an opportune moment to file suit, given that the new disparity study was not yet completed and, in their view, the City's 2006 and 2012 disparity studies were too old to support a constitutional MBE program. *See* Doc. No. 44 at 11 (arguing the City's program "fails as a matter law [sic] because the disparity study upon which the program rests is nearly **20 years old**.") (emphasis in original); Plaintiffs' Second Motion for Summary Judgment, Doc. No. 66-1 at 12 (2006 disparity study is "too old and stale to constitute evidence of past intentional discrimination today."). Notwithstanding the reality that the current version of the City's MBE program and the evidence supporting that program is undergoing active revision, Plaintiffs instructed the Court to disregard "some hypothetical *future* policy" and to instead render judgment invaliding the program the City is working to replace. *See* Doc. No. 43, at p. 2. Transparently, Plaintiffs sought (and continue to seek) an advisory opinion the Court will imminently lose jurisdiction to render. *Id.*, at p. 8 n.1 (noting that the Court's granting Plaintiffs' first motion for summary judgment "would offer the City guidance on enacting a future policy").

Plaintiffs motion makes much of their "surprise" at the City's disclosure of its new disparity study, but Plaintiffs filed this lawsuit with full knowledge that preparation of that study was underway. Plaintiffs acknowledged as much in their September 2023 complaint. Doc. No. 1, at ¶ 28. After minimal post-filing activity in the lawsuit, the City moved for a stay on May 6, 2024, to allow the new disparity

3

study to be finalized and the City's policies and procedures to be updated accordingly. Doc. No. 41. In support of that motion, the City explained that it had retained a disparity study consultant, MGT of America Consulting, LLC ("MGT"), in March 2023; that MGT was expected to provide a disparity study to the City by May 15, 2024; that once received, the City would review the study and make recommendations for adjustments to the MBE program; that the City's MBE ordinance would be updated; and that any such changes would occur, at the earliest, in September 2024, subject to the review and approval of City Council. *See* Doc. No. 41-1 at ¶¶ 5-7.

Plaintiffs opposed the stay, explaining that in their opinion the City had already admitted that no evidence supported the existing MBE program (Plaintiffs simultaneously, and unsuccessfully, moved for a first summary judgment on that basis, Doc. No. 44),[1] and that notwithstanding the City's new disparity study and corresponding adoption of a new MBE program in the future, the Court could still

---

[1] The City's opposition to Plaintiffs' First Motion for Summary Judgment included still more information on the new disparity study and the City's work to amend its MBE program, and urged the Court to defer a final judgment on the program's constitutionality while the City's work continued. Doc. No. 45, at pp. 18-19; Doc. No. 45-1, at ¶¶ 5-9 (discussing the new disparity study, anticipating its presentation to the City's Economic Development Committee on July 17, and discussing the portions of the City's MBE program that would likely change as a result of the disparity study's evidence).

"offer the City guidance on enacting [that] future policy" by declaring the expiring program unconstitutional on its way out the door. Doc. No. 43, p. 8, n.1.

On July 2, 2024, the Court denied the City's Motion for a Stay and Plaintiffs' First Motion for Summary Judgment without prejudice. Doc. No. 47.

In the meantime, the City's work to revise the MBE program continued, and the City received a final draft of the MGT Study from MGT for the City's final review on May 7, 2024. Ex. A, Hoyrd Decl. at ¶ 3. That draft underwent non-substantive revisions to non-statistical components of the study over the following months, with the goal of having the draft in a form for presentation to the City's Economic Development Committee at a public meeting, originally scheduled to take place on July 17, 2024. *Id.* at ¶ 6.

However, the 2024 Houston derecho and Hurricane Beryl caused a delay of the Economic Development Council's July meeting until August. *Id.* at ¶ 7. The 2024 Democratic National Convention caused a delay of the August meeting until October. *Id.* at ¶ 8. And, following an unplanned cancellation of the October meeting, the MGT Study was finalized and presented to the public and the Economic Development Committee at the committee's November 20, 2024 meeting. *Id.* at ¶ 9. On the same day, the MGT Study was published in full, with an executive summary and explanatory powerpoint, to the City's disparity study website. *Id.* at ¶ 10. The same version of the study made available to the public was provided to Plaintiffs

5

with the City's motion for summary judgment filed ten days later. *See* Doc. No. 71-2. City Council is scheduled to take action to adopt the MGT Study and enact a new MBE ordinance on February 12, 2025. Ex. A, Hoyrd Decl. at ¶ 14

The Court should deny Plaintiffs' Motion to Strike, not least because Plaintiffs have effectively mooted it themselves. Plaintiffs' response to the City's Motion for Summary Judgment is abundantly clear that Plaintiffs do not challenge and are not concerned with either the substance of the MGT Study itself or with the revisions and updates to the MBE program the City is implementing and finalizing in February. Rather, Plaintiffs seek an injunction against an already-expiring program, and a declaration that the program the City will imminently replace is unconstitutional. The MGT Study has nothing to do with that program (beyond confirming that disparities identified in the City's previous studies continue to exist), and the Court need not consider the MGT Study at all in addressing Plaintiffs' request for relief.

Whether it considers the MGT Study or not, the Court should decline Plaintiffs' invitation to issue an advisory opinion on an expiring program. But if the Court does rule, it should deny Plaintiffs' Second Motion for Summary Judgment because, as explained in the City's Motion for Summary Judgment, the current program is supported by its own evidence of significant statistical disparities in the market and anecdotal data of the same.

6

Finally, sanctions in this case are completely unwarranted. The MGT Study was disclosed within ten days of its initial public release. Furthermore, any potential surprise or prejudice to Plaintiffs resulting from this disclosure is rendered irrelevant by their own admission that they only challenge the version of the City's MBE program that is about to expire, and which does not rely on or incorporate the MGT Study in any way.

## ARGUMENT

**I.     The City disclosed the MGT Study promptly after it became public.**

Plaintiffs' motion to strike is premised on the notion that the City withheld the MGT Study until the summary judgment deadline for a tactical advantage. This is not the case. The City provided the MGT Study to Plaintiffs on November 30, ten days after the study was presented to the City's Economic Development Committee for approval and disseminated to the public on November 20. Ex. A, Hoyrd Decl. at ¶ 9. And the City disclosed the MGT Study to the Plaintiffs "in writing" by providing the study in full along with an affidavit from the consultant who prepared it (the City's designated expert), complying with Rule 26(e). *See* Fed. R. Civ. P. 26(e)(1)(A).

Plaintiffs state without evidence that the City "deliberately concealed" the study from Plaintiffs, but—as the City's evidence shows—the draft the City received on May 7, 2024 underwent additional non-substantive revisions following that date,

7

as well as internal reviews by the office of the Mayor, the Chair of the Economic Development Committee, and ultimately the Economic Development Committee itself at a public meeting. Ex. A, Hoyrd Decl. at ¶¶ 3-10. There is simply no basis to conclude that the City "deliberately concealed" the MGT Study, when in reality the City asked for a stay of the litigation to allow the MGT Study to be finalized and adopted; repeatedly and consistently updated both Plaintiffs and the Court on the status of the MGT Study, its presentation to the Economic Development Committee, and the timeline for its adoption by City Council; and provided the entire study along with testimony from its author to Plaintiffs within days of the study being made available to the public.

Nor can Plaintiffs reasonably feign surprise at the City's consistent position that the working draft of the MGT Study and other documents and communications pertaining to it are privileged from discovery. Plaintiffs occupied much of the City's and the Court's time in an unsuccessful effort to compel extensive and burdensome discovery pertaining to the City's draft of an incomplete study from 2016. The City's opposition to discovery pertaining to that draft applies equally to disclosure of the City's deliberative and mental processes surrounding the MGT Study. *See, e.g. N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1120-22 (N.D. Cal. 2003) (citing *FTC v. Warner Communications*, 742 F.2d 1157, 1161 (9th Cir. 1984) (the deliberative process privilege pertains to "testimony that reflects advisory opinions,

8

recommendations and deliberations comprising part of a process by which government decisions and policies are formulated."). The City's work following its May 7, 2024 receipt of the MGT Study was precisely the type of predecisional, deliberative work the deliberative process privilege is intended to protect. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148-53 (1975); *Judicial Watch, Inc. v. Dep't of the Army*, 435 F. Supp. 2d 81, 88 (D.D.C. 2006) (policy objectives of privilege include encouraging "open, frank discussions on matters of policy"; protection against "premature disclosure of proposed policies before they are finally adopted"; and protection against "public confusion that might result from disclosure of reasons and rationale" not ultimately the grounds for action).

Plaintiffs' speculation about deliberate concealment is clearly refuted by the evidence presented to the Court concerning the timeline of events leading to the study's public release. Simply put, the City fully adhered to Rule 26(e) by providing the MGT Study to Plaintiffs in writing as soon as it became publicly available.

II. **Plaintiffs are not harmed by inclusion of the MGT Study, but whether included or excluded, the MGT Study is not necessary to either the City's or Plaintiffs' motions for summary judgment.**

No Rule 26(e) violation has occurred, because the City timely disclosed the MGT Study in compliance with the rule. But even if it had, any violation is harmless because (1) Plaintiffs admit the MGT Study is irrelevant to their claims, because Plaintiffs challenge only the current MBE program; (2) the MGT Study is not

evidence pertaining to the City's current MBE program, and the City does not rely on it to defend the current program, so Plaintiffs suffer no prejudice from its inclusion; and (3) although a continuance to allow Plaintiffs to pursue discovery regarding the MGT Study would cure any prejudice, Plaintiffs do not want a continuance and the City does not believe a continuance is necessary. *See Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

### A.   The MGT Study is not necessary to resolve any pending motion.

In their recent briefing, Plaintiffs are clear that they challenge only the current permutation of the City's MBE program, not the "hypothetical program that [the City] might enact sometime in the future" based on the new evidence set out in the MGT Study. *See* Doc. No. 75, at p. 6. Taking Plaintiffs at their word, the MGT Study is irrelevant to their claims, as the MGT Study has nothing to do with the City's current MBE program. The City has not yet adopted it, and no portion of the City's current MBE ordinance, policies, or procedures are informed by it.

Plaintiffs nevertheless contend that they will be prejudiced if the MGT Study is not excluded, because the City relies "exclusively" on the MGT Study to support the constitutionality of the current program. *See* Doc. No. 75 at 6. But this is a badly misleading representation of the City's summary judgment briefing and of the extensive evidence the City has presented to the Court.

The City provided the MGT Study in support of the City's motion for summary judgment, because, like the 2006 and 2012 studies underpinning the City's current program, the MGT Study confirms that disparities identified in those studies continue to exist. *See* Doc. No. 71 at 29-32. Like the MGT Study, the 2006 and 2012 studies found underutilization of MBEs in City contracting compared to their availability in the marketplace. *See* Doc. No. 71 at 28-29. The current MBE program that Plaintiffs challenge is founded on those studies, and the City defends the current program on the basis of those studies. The MGT Study reinforces that prior evidence, but with regards to the current program, it is just that—reinforcement. The City's revised and updated program, incorporating the MGT Study, is not anticipated to be finalized until after February of this year. Ex. A, Hoyrd Decl. at ¶ 14.

Nor is the City's narrow tailoring argument "entirely dependent on the MGT Study." Doc. No. 75 at 7. This bizarre contention is squarely contradicted by the City's motion itself. The City only mentions the MGT Study with regards to three of the six narrow-tailoring factors the City's motion addresses, and even then only to show that the MGT Study will allow the City to expand on *existing* narrow tailoring and race-neutral measures. Doc. No. 75 at 34 (MGT Study will support the City's planned expansion of existing race-neutral small-business and veteran-owned business enterprises into all areas of City contracting); *id.* at 36-37 (citing the expansion of existing race-neutral measures based on the MGT Study as evidencing

11

the City's commitment to ultimately sunsetting the MBE program once its remedial goals are met); and *id.* at 38 (discussing how the MGT study *and* prior studies document underutilization of minority firms for each of the minority groups addressed by the City's program).

The MGT Study is not even the primary source upon which the City relies for any of the narrow tailoring factors, let alone the only source. Setting aside the MGT Study entirely, the summary judgment evidence shows that the City currently utilizes a variety of race-neutral measures to combat discrimination, including the Hire Houston First program, education and outreach programs, and the existing Small Business Enterprise program. Doc. No. 71 at 34. To be sure, per the recommendation of the MGT Study, the City will be expanding these race-neutral measures significantly, allowing prime contractors to substitute small or veteran-owned business for minority businesses in every City contracting category. *Id.* But the City presented evidence that other race-neutral measures exist currently, having nothing to do with the MGT Study.

Both the City's 2006 and 2012 disparity studies are part of the summary judgment record. Doc. No. 71-2 at Exhibits E and F. The City's current MBE ordinance, policies and procedures are part of the summary judgment record. *Id.* at Exhibits A and B. And unchallenged testimony from the City's designated expert regarding the evidence supporting the existing program is in the record as well. Doc.

No. 71-3. Even if the Court declines to consider the MGT Study at all, as Plaintiffs invite the Court to do, the current program stands on its own feet supported by the balance of the City's uncontroverted evidence.

### B. Plaintiffs do not want a continuance.

Plaintiffs acknowledge the possibility of a continuance to allow discovery regarding the MGT Study. However, they insist any delay would further prejudice them "by keeping Houston's unconstitutional MWSBE program in place even longer." Doc. No. 75 at 8. The relevance of this assertion is unclear. This lawsuit is not a class action, and there is no suggestion that Plaintiffs will be injured by the MBE program in the near future: Landscape is currently performing a $1.3 million dollar contract with the City, which they secured despite the program they are contesting, and Metropolitan does not participate in bidding for City contracts in the first place. Doc. No. 71 at 15, 20. The only meaningful time sensitivity with regards to Plaintiffs' claim is its imminent mootness due to the City's implementation of a revised and updated MBE program.

Likely for that reason, Plaintiffs do not want a continuance. Their clear objective is to secure a ruling on the constitutionality of the City's current, but expiring, MBE program in the brief window of time before that program expires and a new ordinance, policies, and procedures are formally enacted by the City. They claim they are "plainly entitled to" that decision. Doc. No. 75 at 9. But no such

decision is warranted, because the City has presented evidence, independent of the MGT Study, demonstrating a compelling interest in the City's administration of the current program, and showing that it is narrowly tailored. *See* Doc. No. 71. In contrast, Plaintiffs presented nothing: no expert reports,[2] no data of their own, no competing studies, and no admissible critique of the City's evidence. *But see Concrete Works of Colo, Inc. v. City & Cnty. of Denver*, 321 F.3d 950, 959 (10th Cir. 2003) (Plaintiffs must rebut a showing of compelling interest by "(1) showing that the statistics are flawed; (2) demonstrating that the disparities shown by the statistics are not significant or actionable; or (3) presenting contrasting statistical data.").

The MGT Study is set to be adopted by the City in just over a month and will play a crucial role in guiding the City's upcoming revision and updates to the MBE program. *See* Ex. A, Hoyrd Decl. Plaintiffs attempt to disregard these realities by

---

[2] Plaintiffs feign indignation at the City's criticism of Plaintiffs' lack of any expert testimony, artificially cabining that criticism as pertaining only to the MGT Study. Doc. No. 75 at 8, n.2. But that was not the City's critique. It is, of course, understandable Plaintiffs would not have an expert report to rebut a disparity study Plaintiffs did not have. It is less understandable that Plaintiffs would not secure expert testimony to respond to the 2006 and 2012 disparity studies, or to address the City's existing policies and procedures. Plaintiffs' approach now, as it was six months ago, is to (1) rest their entire case on the unsupportable notion that the City's existing statistical evidence can be completely disregarded simply because of its age, and (2) to insist that the new disparity study and new MBE program Plaintiffs knew was coming when they filed this suit can be similarly disregarded, so as to secure a ruling on the expiring program. *See* Doc. No. 45 at 11-15.

14

focusing on the City's expiring program. Consequently, the motion to strike should be denied. The MGT Study is not the evidentiary foundation for the City's current program, nor does the City rely on it as evidentiary support for the current program. It is, therefore, irrelevant to Plaintiffs' claims, which specifically challenge only the City's current program.

### III.   No sanctions are warranted.

Because no Rule 26 violation has occurred, and because Plaintiffs have suffered no prejudice, sanctions are unwarranted.

Plaintiffs' request for sanctions appears to function as a platform for Plaintiffs to opportunistically air various complaints. These complaints have either not previously been communicated to the City in a setting where those complaints could be addressed without court involvement, or represent an attempt to relitigate grievances on which Plaintiffs have already sought and been denied relief.

For example, to support their request for significant sanctions in this instance, Plaintiffs point to a typographical error not previously addressed with the City, but easily fixable had it been raised (i.e., a citation to TRCP rather than FRCP). *See* Doc. No. 75 at 11. Plaintiffs also complain of allegedly insufficient notice of a deposition. *Id.* But Plaintiffs sought protection from that notice, and the parties were able to resolve the dispute amicably without requiring a ruling from Magistrate Judge Bray. *Id.*; *see also* Doc. No. 63 (denying as moot City's motion to compel deposition after

parties informed Judge Bray that the parties had agreed on a course of action). Lastly, Plaintiffs criticize the City for filing a motion for leave to exceed page limits without previously conferring. But Plaintiffs omit that they already requested sanctions on those grounds, and the Court promptly denied their request. *See* Response in Opposition to Motion for Leave to File Excess Pages and Request for Sanctions, Doc. No. 72 (filed 7:53 a.m. on Dec. 2, 2024); Order Granting Motion for Leave and Denying Request for Sanctions, Doc. No. 73 (entered 2:10 p.m. on Dec. 2, 2024).

Setting these grounds aside, Plaintiffs argue a "deliberate[] and intentional[] fail[ure] to produce the MGT Study to Plaintiffs," asserting without evidence that the City "acted in bad faith by concealing the MGT Study until after discovery closed." Doc. No. 75 at 12, and n.3. But, after presenting Plaintiff with the option of agreeing to stay the litigation altogether until the MGT Study was concluded, the City kept Plaintiffs and the Court informed regarding the status of the MGT Study (without waiving the City's privileges) from the time the City moved for a stay through the filing of summary judgment. *See* Doc. No. 41; Doc. No 45; Doc. No. 71. The City disclosed the MGT Study to Plaintiffs immediately after the study was presented to the Economic Development Committee and published for public review and comment. Ex. A, Hoyrd Decl. at ¶¶ 9-10. And Plaintiffs' summary judgment briefing has now made clear that their challenge is exclusively to the current version of the MBE program which does not utilize nor rely upon the MGT Study in any

16

way. Thus, any harm resulting from the timing of the City's disclosure of the MGT Study is illusory. Sanctions are unwarranted for either the disclosure or non-disclosure of evidence Plaintiffs neither need nor intend to use to prosecute their claims.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Strike and for Sanctions and grant the City all other relief that law and equity may require.

By: */s/ Ben Stephens*
Ben Stephens
State Bar No. 24098472
SDTX Bar No. 2898153
ben.stephens@huschblackwell.com
Sandy Hellums-Gomez
State Bar No. 24036750
SDTX Bar No. 561314
sandy.gomez@huschblackwell.com
Jarrett Dillard
State Bar No. 24099801
SDTX Bar No. 2980302
jarett.dillard@huschblackwell.com

Husch Blackwell LLP
600 Travis St., Suite 2350
Houston, Texas 77002
Telephone: (713) 647-6800
Facsimile: (713) 647-6884

*/s/ Darah Eckert*
Darah Eckert
Senior Assistant City Attorney
State Bar No. 24007141
SDTX Bar No. 1890045

darah.eckert@houstontx.gov
Lori J. Yount
Senior Assistant City Attorney
State Bar No. 2209496
SDTX Bar No. 24084592
lori.yount@houstontx.gov

Arturo G. Michel
City Attorney
Suzanne R. Chauvin
Chief, General Litigation Section
City of Houston Legal Department
P.O. Box 368
Houston, Texas 77001-368
900 Bagby, 4th Floor
Houston, Texas 77002
Telephone:  (832) 393-6219
Facsimile:   (832) 393-6259

**ATTORNEYS FOR THE CITY OF HOUSTON**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been served upon the following on January 10, 2025, via the CM/ECF Filing system.

*/s/ Ben Stephens*
Ben Stephens