UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LANDSCAPE CONSULTANTS OF TEXAS, INC., and METROPOLITAN LANDSCAPE MANAGEMENT, INC.,<br><br>*Plaintiffs*,<br><br>v.<br><br>CITY OF HOUSTON, TEXAS, and MIDTOWN MANAGEMENT DISTRICT,<br><br>*Defendants*. | Civil Action No. 4:23-cv-03516<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO STRIKE AND FOR SANCTIONS AGAINST DEFENDANT CITY OF HOUSTON** |

# INTRODUCTION

On November 30, 2024, Houston filed a motion for summary judgment based on the MGT disparity study and attached a copy of the study as an exhibit. Dkt. 71. Despite having requested—point blank—the MGT Study in discovery, this was the first time Plaintiffs saw any version of the MGT Study. Plaintiffs do not move to strike that study, and for sanctions against Houston's counsel, because they were surprised that the MGT Study *existed*. There is no question that Plaintiffs knew the study existed. Plaintiffs filed the instant motion to strike and for sanctions because Houston did not disclose the MGT Study during discovery, and then relied on that undisclosed study in its motion for summary judgment. Houston's intentional violation of the federal rules—just the latest in a pattern of blatant disregard for this Court's rules and policies—harms Plaintiffs. This Court should grant Plaintiffs' motion and put an end to Houston's unprofessional gamesmanship.

# ARGUMENT

## I. Plaintiffs Do Not Seek an Advisory Opinion

In a last-ditch attempt to avoid a final decision on its racially discriminatory public contracting program, Houston contends that Plaintiffs' civil rights lawsuit seeks an "advisory opinion on an expiring program." Dkt. 84 at 6. What this argument has to do with Houston's defense of its intentional violation of Fed. R. Civ. P. 26(e)(1)(A) is unclear, but what *is* clear is Plaintiffs' right to challenge

1

Houston's *current* MWBE program that *currently* discriminates against Plaintiffs based on race.

Houston is correct that Plaintiffs knew when they filed this lawsuit that Houston was considering a new disparity study. Dkt. 1 ¶ 28 ("The City recently engaged a consulting firm to provide a new disparity study."). Plaintiffs also know that Houston spent four years and nearly $1 million on a previous study but never sent it to the City Council for a vote, and then hid it from the public. Dkt. 68 at 2. Plaintiffs know that Houston submitted multiple declarations *to this Court* in this lawsuit stating when the MGT Study would be presented to the City Council—May 1, 2024; May 15, 2024; "fall of 2024"—and then blew past those deadlines. Dkt. 41 at 2; 41-1 ¶ 6; Dkt. 45-1 ¶ 6. Plaintiffs know that the City Council has still not voted on adopting the MGT Study's findings or amended Houston's MWBE Ordinance in response to the MGT Study's findings. Dkt. 84-1 ¶ 14.

What is unknown, given Houston's track record, is whether the City Council will vote to adopt the MGT Study's findings on February 12, as Houston claims. *Id*. And even if the study is adopted, it is unknown how long it will take Houston to implement corresponding changes to its MWBE program. It is also completely unknown whether the amended program will continue to discriminate against Plaintiffs based on race.

Regardless, any potential—or even actual—change to Houston's program does not moot Plaintiffs' case. In *Northeast Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, Jacksonville repealed the challenged MWBE ordinance and replaced it with a new one. The Court's jurisdiction remained undisturbed due to "the 'well settled' rule that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" 508 U.S. 656, 661 (1993) (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)); *see also Texas v. Biden*, 20 F.4th 928, 959 (5th Cir. 2021), *rev'd on other grounds*, *Biden v. Texas*, 597 U.S. 785 (2022) (government cannot moot a case "simply by tweaking its challenged law").

Houston asks this Court to put Plaintiffs in an impossible position: either challenge a MWBE program that doesn't yet exist or allow the current program to violate Plaintiffs' rights indefinitely. That's not how federal jurisdiction works. Before this Court are fully briefed cross-motions for summary judgment on a law that is currently unconstitutional and violates Plaintiffs' rights under 42 U.S.C. § 1981. If Houston ultimately amends its MWBE program and the program continues to discriminate against Plaintiffs due to race, Plaintiffs will challenge that program too. In the meantime, Plaintiffs operate every day under a public contracting program that treats them differently because of their owner's race. Regardless of

3

what Houston may or may not do with its program in the future, this unconstitutional racial discrimination must end now.

## II.     Houston Admits It Violated Fed. R. Civ. P. 26(e)

Though Houston claims that "[n]o Rule 26(e) violation has occurred," Dkt. 84 at 9, its admitted actions prove the opposite. Under Fed. R. Civ. P. 26(e)(1)(A), Houston, as a "party who has made a disclosure under Rule 26(a)" or "responded to an interrogatory, request for production, or request for admission," is required to "supplement or correct its disclosure or response in a timely manner[.]"

Houston does not dispute that on March 6, 2024, Plaintiffs served five requests for production to which the MGT Study would have been responsive. Dkt. 75 at 1–2. In fact, Houston's Response brief does not reference Plaintiffs' discovery requests at all. Dkt. 84. Houston does not dispute that it responded to Plaintiffs' requests for production on May 6, 2024. Dkt. 75 at 2; Dkt. 75-2. Houston does not dispute that per Rule 26(e)(1)(A), as a party who responded to a request for production, it "must supplement or correct its … response in a timely manner[.]" And Houston does not dispute that it failed to supplement or correct its responses to Plaintiffs' discovery requests when it received the final draft of the MGT Study on May 7, 2024. Dkt. 84 at 5–6. Instead, Houston admits it waited until November 30, 2024—ten days after the MGT Study was made publicly available—and attached the MGT Study to its

4

motion for summary judgment. *Id*. Houston's undisputed actions are a clear, unequivocal violation of the continuing obligation to supplement under Rule 26(e).

Since Houston cannot seriously dispute that it failed to comply with Rule 26(e), it instead offers a litany of excuses. None are persuasive.

First, Houston claims that it did not understand what Plaintiffs were asking for in their discovery requests. Houston repeatedly states that it complied with Rule 26(e) because it "disclosed the MGT Study promptly after it became public." Dkt. 84 at 7; *see also id.* at 5–6, 16. However, Plaintiffs' discovery requests did not seek only the final draft of the MGT Study after it had been released publicly. And there is certainly no rule that Plaintiffs are only entitled to publicly available documents in discovery.

Plaintiffs' Request for Production No. 11 directly and unequivocally requested "[a]ll documents relating to any draft, incomplete, or complete disparity study undertaken by MGT Consulting, from January 2020, to present." Dkt. 75-2 at 7; *see also* Dkt. 75 at 2 n.1 (four other requests encompassing the MGT Study). The final MGT Study was not drafted in a vacuum; Houston undoubtedly possesses and withheld earlier drafts and other responsive documents relating to the study's progress. But even when, as Houston admits, it received the final draft of the study on May 7, 2024, Houston *still* did not supplement its discovery responses. Dkt. 84

5

at 5–6. Instead, Houston waited over six months, past the close of discovery, and relied on the MGT Study in its motion for summary judgment. Dkt. 71 at 25–38.

Houston next attempts a belated privilege argument to excuse its Rule 26(e) violation, asking this Court to intuit from Houston's opposition to discovery on the 2020 CHA Study that Houston would also oppose discovery pertaining to the MGT Study.[1] Dkt. 84-8. However, aside from a boilerplate objection that Plaintiffs' Request for Production No. 11 was "subject to the attorney-client and work-product privileges," Houston did not provide any support for its objection, did not provide a privilege log to indicate what documents were withheld and on what basis, and did not provide a redacted version of the MGT Study or any other responsive documents. Dkt. 48-2 at 9. Houston attempts to support its position now with citations to out-of-circuit opinions on the deliberative and mental process protections, which are obviously inapplicable. Dkt. 84 at 8–9; *see Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001) (deliberative process privilege does "not [] protect Government secrecy pure and simple"). The time to address Houston's privilege claims regarding the MGT Study was during discovery—and they could have been addressed, had Plaintiffs known that a final draft existed. But Houston intentionally withheld that responsive document until well after discovery closed

---

[1] By this logic, when this Court rejected Houston's privilege argument and granted Plaintiffs' Motion to Compel production of the 2020 CHA study in August 2024, Dkt. 56, Houston should have produced the MGT Study as well.

and cannot now use an intentional Rule 26(e) violation as a shield from its discovery obligations.

Finally, Houston tries blaming the weather and the Democrats. The delay of the Economic Development Council's meeting due to the 2024 Houston derecho, Hurricane Beryl, the Democratic National Convention, and an "unplanned cancellation" do not explain why, upon receiving the final draft MGT Study on May 7, 2024, Houston did not produce that document to Plaintiffs or provide notice that the document was being withheld and on what grounds. Dkt. 84 at 5. Nor does Houston explain how it was able to overcome these "obstacles" and email counsel other responsive documents throughout the six months that it failed to produce the MGT Study.

Houston's obligation under Rule 26(e) was straightforward: supplement discovery responses when new responsive information becomes available. Houston admits that new responsive information became available on May 7, 2024. Dkt. 84 at 5. Houston also admits that it did not disclose that information to Plaintiffs for over six months, until Houston filed its motion for summary judgment. *Id*. at 5–6. This is a textbook Rule 26(e) violation.

### III. Houston Concedes the MGT Study Should Be Stricken

Houston's motion for summary judgment relies extensively on the MGT Study. That is the entire reason for Plaintiffs' Motion to Strike—Plaintiffs dispute

that Houston may use evidence at summary judgment that it withheld during discovery. Dkt. 75 at 1. Houston's contention that it "does not rely on [the MGT Study] to defend the current program" is baffling. Dkt. 84 at 10.

In its motion for summary judgment, the MGT Study forms the basis of Houston's argument that its *current* MWBE program is based on a compelling interest. Dkt. 71 at 25–29 (MGT Study's statistical findings are proof of racial discrimination in Houston contracting). In fact, Houston contends that the MGT Study "*carries the City's burden* of demonstrating that there is racial discrimination in City contracting and that the City is at least a passive participant in that discrimination." *Id*. at 29 (emphasis added). The MGT Study plays a starring role in Houston's narrow tailoring argument too, despite Houston's attempt now to minimize it. Dkt. 84 at 11. Of Houston's five reasons why its program is narrowly tailored, only one—that the program is flexible—does not cite either the MGT Study or the MGT Study author's declaration. *Id*. at 34–38. The MGT Study is not mere "reinforcement" of Houston's prior, undeniably stale disparity studies. Dkt. 84 at 11. It is the foundation of Houston's entire defense of its current MWBE program. *Id*. at 25–38.

Houston's extensive reliance on the MGT Study undercuts its contention that the Rule 26(e) violation was "harmless" because the study is "not necessary to resolve any pending motion." Dkt. 84 at 9–10. If the MGT study is not relevant to

8

Houston's summary judgment motion, why is it the most frequently cited source in Houston's defense of its MWBE program? Dkt. 71 at 25–38. Relevance to a future summary judgment motion is not the standard for determining compliance with Rule 26(e)(1)(A) during discovery. Under the Rule, parties are only excused from supplementing or correcting discovery responses if the additional information has "otherwise been made known to the other parties during the discovery process or in writing[.]" Fed. R. Civ. P. 26(e)(1)(A). Houston does not dispute that the MGT Study's contents were not otherwise made known to Plaintiffs; it claims instead that this Court should not strike the MGT Study because the evidence it purposefully withheld from Plaintiffs and then relied on at summary judgment isn't relevant after all. Dkt. 84 at 15. Unsurprisingly, Houston cites no cases in support of this novel interpretation of Rule 26(e).

The MGT Study is not relevant to Houston's motion for summary judgment—on this, at least, the parties agree. Dkt. 75 at 1 (MGT Study is a draft that has not been voted on by the city council and does not inform city policy). Since irrelevance is not a safe harbor from Rule 26(e)'s continuing obligation to supplement discovery responses, however, the remedy for Houston's Rule 26(e) violation is to strike the MGT Study and all references to the MGT Study in all summary judgment briefing in this lawsuit. Fed. R. Civ. P. 37(c)(1). Since Houston concedes that its current

9

MWBE program "stands on its own feet" even without consideration of the MGT Study, this outcome is a win-win. Dkt. 84 at 13.

## IV. Sanctions Are Appropriate

Houston does not dispute that it failed to supplement its discovery responses once it received the MGT Study final draft last May, and it does not dispute that it produced the MGT Study to Plaintiffs for the first time at summary judgment. Houston also does not dispute that its actions were intentional—Houston does not argue that it mistakenly or negligently failed to supplement its discovery responses in a timely manner.[2] The harm to Plaintiffs from Houston's intentional 26(e) violation is not "illusory." Dkt. 84 at 17. In addition to the prejudice and surprise that Rule 26(e) is designed to prevent, *Reed v. Iowa Marine and Repair Corp.*, 16 F.3d 82, 86 (5th Cir. 1994), Plaintiffs incurred attorney's fees to prepare their motion to strike and this reply. Where a party willfully fails to disclose production of responsive materials in violation of the opposing side's discovery rights, reasonable fees and costs are appropriate. *See, e.g.*, *ESN, LLC v. Cisco Systems, Inc.*, 685 F.Supp.2d 631, 651 (E.D. Tex. Dec. 30, 2009) (ordering defendants to reimburse plaintiff for all expenses, including attorney's fees, reasonably associated with

---

[2] Even if Houston's Rule 26(e) violation had been due to negligence instead of bad faith, even "negligent failures are sanctionable." *Tri Investments, Inc. v. United Fire & Casualty Co.*, No. 5:18-cv-116, 2019 WL 13114344, at *2 (S.D. Tex. Oct. 30, 2019) (citation omitted).

defendants' failure to timely produce relevant document); *FDIC v. Conner*, 20 F.3d 1376, 1382–83 (5th Cir. 1994) (affirming monetary sanction for violation of discovery order); *Orchestrate HR, Inc. v. Trombetta*, 178 F.Supp.3d 476, 510–11 (N.D. Tex. Apr. 18, 2016) (ordering award of attorney's fees and expenses for failure to produce documents).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Strike and for Sanctions should be granted. Specifically, this Court should: (1) strike all references to the MGT Study in Houston's motion for summary judgment, Dkt. 71, Houston's response to Plaintiff's motion for summary judgment, Dkt. 77, and Houston's reply in support of its motion for summary judgment, Dkt. 83; and (2) order Houston to pay Plaintiffs' reasonable costs, including attorney's fees, for the preparation of this Motion.

DATED: January 17, 2025.

|  |  |
|---|---|
| Anastasia Boden<br>*Of Counsel*<br>Cal. Bar No. 281911<br>S.D. Tex. Bar No. 3495077<br>Joshua P. Thompson*<br>*Of Counsel*<br>Cal. Bar No. 250955<br>Pacific Legal Foundation<br>555 Capitol Mall<br>Suite 1290<br>Sacramento, CA 95814<br>Telephone: (916) 419-7111<br>Fax: (916) 419-7747<br>aboden@pacificlegal.org<br>jthompson@pacificlegal.org | Respectfully submitted,<br>s/ Erin E. Wilcox<br>Erin E. Wilcox<br>*Attorney-in-Charge*<br>Cal. Bar No. 337427<br>S.D. Tex. Bar No. 3369027<br>Pacific Legal Foundation<br>555 Capitol Mall<br>Suite 1290<br>Sacramento, CA 95814<br>Telephone: (916) 419-7111<br>Fax: (916) 419-7747<br>ewilcox@pacificlegal.org |

*\*Pro Hac Vice*

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2025, I served this document via the Court's electronic filing system to Defendants' counsel of record as follows:

Lori Yount
Senior Assistant City Attorney
Darah Eckert
Senior Asst. City Attorney, General Litigation Section
City of Houston Legal Department
P.O. Box 368
Houston, Texas 77001-368
900 Bagby, 4th Floor
Houston, TX 77002
lori.yount@houstontx.gov
darah.eckert@houstontx.gov

Ben Stephens
Sandy Hellums-Gomez
Jarett Dillard
HUSCH BLACKWELL LLP
600 Travis St., Suite 2350
Houston, Texas 77002
ben.stephens@huschblackwell.com
sandy.gomez@huschblackwell.com
jarett.dillard@huschblackwell.com
*Counsel for City of Houston*

Brett J. Sileo
Britton B. Harris
Harris Hilburn P.L.L.C.
1111 Rosalie
Houston, Texas 77004
bsileo@hhstxlaw.com
bharris@hhstxlaw.com
*Counsel for Midtown Management District*

s/ *Erin E. Wilcox*
Erin E. Wilcox
Pacific Legal Foundation