UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LANDSCAPE CONSULTANTS OF TEXAS, INC., and METROPOLITAN LANDSCAPE MANAGEMENT, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF HOUSTON, TEXAS, and MIDTOWN MANAGEMENT DISTRICT,<br><br>Defendants. | Civil Action No. 4:23-cv-03516 |

## DEFENDANT CITY OF HOUSTON'S MOTION TO DISMISS FOR LACK OF JURISDICTION

Defendant City of Houston ("the City") files this Motion to Dismiss for Lack of Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

On March 28, 2023, the City of Houston engaged MGT of America Consulting, LLC to provide the City with a new disparity study for the City's use in administration of its Minority, Women, and Small Business Enterprise ("MWSBE") program. On May 6, 2025, after a multi-year review process that involved extensive community engagement and consultation with local stakeholders, the Houston City Council enacted Ordinance No. 2025-378, which adopted MGT's completed

1

disparity study and modified the City's MWSBE program to incorporate certain findings and recommendations contained in the MGT study. *See* Exhibit A, Ordinance No. 2025-378. Because the City's enactment of Ordinance No. 2025-378 effectively rescinded and replaced the earlier version of the MWSBE program that Plaintiffs challenge in this litigation, this case has become moot and the Court lacks jurisdiction to decide it. Accordingly, this case must be dismissed without prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

In their Complaint, Plaintiffs challenge a City policy, codified in Chapter 15 of the City's Code of Ordinances, that is designed to "stimulate the growth of local minority, women, and small business enterprises by encouraging the full participation of these business enterprises in various phases of city contracting." Complaint, Doc. No. 1, at ¶ 15. Specifically, Plaintiffs maintain that the elements of the City's program encouraging participation by minority business enterprises are unconstitutional under the Equal Protection Clause., Plaintiffs do not challenge the City's program for either woman-owned business enterprises or small business enterprises. *Id.* at ¶ 16.

Plaintiffs contend they "have been in the past and, unless enjoined by this Court, will continue to be harmed in the future by the City's MWSBE program." Doc. No. 1, at ¶ 54. According to Plaintiffs, the City's program inflicts injury-in-fact sufficient to establish Article III standing by compelling them to divert some contract

2

dollars to minority-owned subcontractors, thereby requiring Plaintiffs to compete on an unequal footing with minority-owned firms who can satisfy contract participation goals with their own workforce. Doc. No. 76, at 7–8. Plaintiffs seek a permanent injunction prohibiting the City from operating the MWSBE program. Doc. No. 1, at 16.

In their complaint, Plaintiffs acknowledged that the City had already begun the process of obtaining a new disparity study months before Plaintiffs filed suit. *See* Doc. No. 1 at ¶ 26 (noting "[t]he City recently engaged a consulting firm to provide a new disparity study."). In fact, the City had contracted with MGT in March 2023—six months before Plaintiffs sued—to provide a new disparity analysis. Doc. No. 41-1, at ¶ 5. But Plaintiffs' constitutional challenge was nevertheless premised on the central, and now outdated, fact that "[t]he most recent comprehensive disparity study [to support the City's program] is dated December 31, 2006." *Id.* at ¶ 26. The alleged "staleness" of the evidence undergirding the City's program formed the basis for Plaintiffs' two motions for summary judgment brought to date. *See* Pls.' First Mot. for Summ. J., Doc. No. 44 (arguing "[t]he entire impetus for the Program is a disparity study that is two decades old" and that "[n]o Court has ever upheld a race-conscious set-aside program based on decades-old disparities"); Pls.' Second Mot. for Summ. J., Doc. No. 66 (arguing disparities "must, at an absolute bare minimum,

reflect contemporary reality" and that the "2006 study is too old and stale to constitute evidence of past intentional discrimination today.").

But that "stale evidence," foundational to Plaintiffs' constitutional challenge, has now been voided by the City's recent adoption of the MGT Study. The City's new ordinance "recogniz[e]s the qualitative, quantitative and anecdotal data [contained in the MGT study] as the basis" for the ongoing administration of the City's MBE program. *See* Exhibit A, Ordinance 2025-378, at Section 2.

The City's modifications of the MWSBE program also include (1) use and participation of SBEs across all City contract categories (as opposed to the previous capped limits on SBE participation in construction contracts only); (2) the addition of a Veteran-Owned Small Business (VOSB) category to the City's program; (3) directives to City department directors to assign contract-specific goals that can include SBE utilization; (4) directives to the Office of Business Opportunity to provide the Administration with additional recommendations for the MWSBE program and a timeline for implementation of those recommendations; and other findings regarding the study, the disparities it identified, and the City's stated intention to ensure compliance with constitutional mandates concerning race and gender specific MWBE programs.

## LEGAL STANDARD

"Federal Rule of Civil Procedure 12(b)(1) requires that a court dismiss a claim if the court does not have subject matter jurisdiction over the dispute." *Buc-ee's, Ltd. v. Bucks, Inc.*, 262 F. Supp. 3d 453, 457 (S.D. Tex. 2017). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

"Federal courts lack subject-matter jurisdiction over moot controversies." *La Unión del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, No. 5:21-CV-00071, 2024 WL 5452813, at *3 (S.D. Tex. Sept. 23, 2024) (citing *Carr v. Saucier*, 582 F.2d 14, 15 (5th Cir. 1978)). "Consequently, Rule 12(b)(1) is the proper mechanism for a defendant to assert that an action is moot." *Brustein & Manasevit, PLLC v. United States Dep't of Educ.*, 30 F. Supp. 3d 1, 5 (D.D.C. 2013) (citing *Young v. D.C. Housing Auth.,* 31 F.Supp.3d 90, 92–95 (D.D.C. Mar. 12, 2014)); *see also City of Austin v. Kinder Morgan Tex. Pipeline, LLC*, 528 F. Supp. 3d 670, 678 (W.D. Tex. 2021) ("If a case becomes moot, it deprives the Court of jurisdiction and should be dismissed under Rule 12(b)(1) of the Federal Rules of Procedure."). "Mootness can be raised 'by any party at any time.'" *La Union*, 2024 WL 5452813, at *3 (quoting *Carr*, 582 F.2d at 15).

"In motions to dismiss for mootness . . . the burden [of proof] shifts to the party asserting mootness." *Id.* Accordingly, the burden of establishing mootness here lies with the City.

## ARGUMENT

I. **The City's enactment of Ordinance No. 2025-378 replaced the challenged program and rendered this case moot such that Plaintiffs' claims must be dismissed.**

The City's burden to show mootness is satisfied here because the City enacted a modified MWSBE program that is supported by new empirical evidence and characterized by new race-neutral program elements designed to expand participation in City contracting. Moreover, none of the exceptions to mootness apply because the City's policy modification was made in good faith and cannot reasonably be reversed without a years-long policy review process like the one that was just completed. In short, since the specific ordinance that Plaintiffs challenged in this suit has been replaced, this case no longer presents a live controversy under Article III and must be dismissed.

> A. *Because Plaintiffs challenge a particular City program and seek only prospective relief, the City's overhaul of that program renders Plaintiffs' challenge moot.*

A claim is rendered moot when a "case or controversy" no longer exists between the parties. *See, e.g.*, *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 345 (5th Cir. 2017). "[A] case will become moot where 'there are no longer adverse

6

parties with sufficient legal interests to maintain the litigation' or 'when the parties lack a legally cognizable interest in the outcome' of the litigation." *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 527 (5th Cir. 2008) (quoting *In re Scruggs,* 392 F.3d 124, 128 (5th Cir. 2004)). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quotations omitted).

"Mootness is 'the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).'" *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006) (quoting *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 397 (1980). Moreover, "[s]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 123 F.4th 309, 315 (5th Cir. 2024) (Davis, J., concurring).

Federal courts have applied the aforementioned core principles of the mootness doctrine in emphasizing the "'well-settled principle of law' [that] 'when an agency has rescinded and replaced a challenged regulation, litigation over the

7

legality of the original regulation becomes moot.'" *Alaska v. United States Dep't of Agric.*, 17 F.4th 1224, 1226–27 (D.C. Cir. 2021) (quoting *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 827 F.3d 100, 113 (D.C. Cir. 2016)). Indeed, "[f]inding a case 'plainly moot' when [an] agency order has been 'superseded by a subsequent . . . order' is so routine that [courts] usually 'would handle such a matter in an unpublished order.'" *Id.* (quoting *Freeport-McMoRan Oil & Gas Co. v. FERC*, 962 F.2d 45, 46 (D.C. Cir. 1992)); *see also Ozinga v. Price*, 855 F.3d 730, 734 (7th Cir. 2017) ("When a plaintiff's complaint is focused on a particular statute, regulation, or rule and seeks only prospective relief, the case becomes moot when the government repeals, revises, or replaces the challenged law and thereby removes the complained-of defect.").

To show that a case is truly moot and that the controversy is no longer ongoing, a defendant "must prove no reasonable expectation remains that it will return to [its] old ways." *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024) (quotations omitted). If there is a "substantial likelihood" that the challenged policy will be reinstated once the suit is terminated, the case will not be recognized as moot. *Ozinga*, 855 F.3d at 734. Courts do not lightly assume, however, that public entities or officials are modifying policies to manipulate the litigation process—on the contrary, the Court presumes that government officials have "acted in good faith in repealing [a] challenged law or policy." *Id.* Government actors, like the City,

8

receive "some solicitude" in the mootness analysis and bear a "lighter burden" to show that mootness results from the voluntary modification of a challenged policy. *Stewart v. Tex. Tech Univ. Health Scis. Ctr.*, 741 F. Supp. 3d 528, 544–45 (N.D. Tex. 2024).

Here, the City's enactment of Ordinance No. 2025-378 effectively repealed and replaced the prior version of the City's MWSBE program that Plaintiffs challenge in this case. The old program relied on and implemented the findings of a prior disparity study, whereas the new ordinance adopts the 2024 MGT study that brings the City's analysis of racial disparities in City contracting up to date. Moreover, the new program has fundamentally different elements, such as a veteran-owned business program and a small business program that provide entirely new race-neutral options for contractors to satisfy the City's participation goals for City contracts.

Plaintiffs filed this action almost two years ago alleging that the City's old MWSBE program was unconstitutional and seeking only prospective injunctive relief. After the City's enactment of the new program, this Court can no longer provide Plaintiffs with the requested relief as any injunction directed to the prior ordinance "necessarily would be meaningless, as [such ordinance] no longer exists." *Ozinga*, 855 F.3d at 735.

Nor can the controversy be revived because there is no possibility that the City will go back to the old program. The MGT Consulting study took several years and millions of dollars to complete and City policymakers went through an extensive consultation process prior to adopting that study and implementing changes to the MWSBE program. The City has acted in good faith through the democratic process to effectuate an important and long-anticipated policy change that it neither can, nor wants to, undo. *Cf. Pool v. City of Houston*, 978 F.3d 307, 314 (5th Cir. 2020) (case was not moot due to uncertainty as to whether City made a formal and permanent policy change where there was no evidence the City had actually approved a form change that was published on a public website).

Plaintiffs suggested in their most recent filing that, because the new program still utilizes racial classifications, their claims remain alive and the case must proceed on its current trajectory. Plaintiffs' reasoning should be rejected, however. Even if Plaintiffs still object to the City's new ordinance, the claims they have filed can only be adjudicated based on the evidentiary record that the parties compiled during the discovery period with respect to the City's old MWSBE program. That record is now factually inaccurate and incomplete after the City's policy change. If this lawsuit is to continue, it will place the City in an impossible situation, where its new program will be subjected to a strict scrutiny standard of review without the

opportunity to compile and develop the evidence needed to meet the associated burden of proof to justify the program.

Moreover, Plaintiffs can no longer demonstrate the elements of Article III standing with respect to the specific form of relief that they seek, *viz.* a permanent injunction of the City's MWSBE program. *See Env't Tex. Citizen Lobby,* 123 F.4th at 315. Plaintiffs' pleaded injury can no longer be traced to the City's MWSBE ordinance, which has never been applied to them. Nor would an injunction directed at the City's MWSBE program do anything to redress Plaintiffs' pleaded harms, which can only derive from enforcement of contract participation goals established under the discontinued program. Accordingly, however Plaintiffs characterize their disagreement with the City's program, Plaintiffs cannot establish that the Court has jurisdiction to entertain a request for prospective injunctive relief as to the City's MWSBE program based on the existing pleadings and record.

**B.     *No exceptions to the mootness doctrine apply.***

The three exceptions to mootness do not apply here.[1] Each exception is discussed in turn.

**1.     Capable of repetition yet evading review**

---

[1] In addition to the three exceptions discussed below, the case law also contains a fourth exception for certain class actions. Here, Plaintiffs have not styled their suit as a class action, such that the class action exception to mootness does not apply.

The "capable of repetition, yet evading review" exception to mootness has two requirements: (1) the challenged action must be too short to be fully litigated prior to cessation or expiration; and (2) there must be a "reasonable expectation that the same complaining party [will] be subject to the same action again." *Honeywell Intern., Inc. v. Nuclear Regul. Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010) (quotation omitted). Neither requirement is satisfied here. The City's old MWSBE program was in effect for years before and during the pendency of Plaintiffs' constitutional challenge and bears no resemblance to the type of transitory government action that the exception was designed to address. Moreover, as explained above, there is no possibility that Plaintiffs will be subjected to the City's old MWSBE program again. The City's policy will not change again except in conjunction with the periodic review of underlying data and program elements required by the ordinance.

### 2. Voluntary cessation

The "voluntary cessation" exception "prevent[s] a private defendant from manipulating the judicial process by voluntarily ceasing the complained of activity, and then seeking a dismissal of the case, thus securing freedom to 'return to his old ways.'" *Alaska*, 17 F.4th at 1227 (quoting *Clarke v. United States*, 915 F.2d 699, 705 (D.C. Cir. 1990) (en banc)). But courts do not "impute such manipulative conduct" to government officials. *Id.* (quoting *Clarke*, 915 F.2d at 705).

While government defendants still have the burden to show mootness when the policy change is voluntary, as explained above, government actors "receive some solicitude in this analysis." *Stewart*, 741 F. Supp. 3d at 544–45. "[G]overnment actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties." *Id.* at 545 (quotation omitted). Under this presumption, "[w]ithout evidence to the contrary, [courts] assume that formally announced changes to official government policy are not mere litigation posturing." *Id.* (quotation omitted). As a result, government defendants have a "lighter burden" to show that a case is moot. *Id.* Unless there is "evidence that the voluntary cessation is a sham for continuing possibly unlawful conduct, a government defendant does not have to show a physical or logical impossibility that the challenged policy will be reenacted." *Id.* (quotation omitted). Indeed, some courts have emphasized that "the 'voluntary cessation' exception to mootness has no play" when the agency did not act "in order to avoid litigation." *Alaska*, 17 F.4th at 1229–30 (quotations omitted).

Here, this exception does not apply because the City did not change its program to avoid litigation, and there is no possibility that the old program will be revived. The City's new program is the result of years of legislative effort, including the long and expensive process of commissioning and completing the MGT disparity

study. The City will not, and could not, overhaul the program again without going through a similarly extensive legislative process, making the possibility of a reversion to the old program effectively impossible.

And far from acting to avoid litigation, the significant time devoted to the City's legislative process has resulted in this case advancing to the cusp of trial. Plaintiffs insisted on pressing forward with this challenge despite the City's efforts to stay the case and despite multiple notifications that the City was in the process of developing a new program.

Moreover, the City is entitled to a presumption that it has acted in good faith to adopt a new program with the laudatory aim of expanding participation in City contracting, and that such change is formal and permanent. It is long-anticipated policy change, not a "sham" technique aimed at denying Plaintiffs their day in court. Accordingly, the voluntary cessation exception does not apply here and Plaintiffs' claims are moot.

### 3. Collateral legal consequences

"Even if [a] plaintiff's primary injury has been resolved, the collateral consequences doctrine serves to prevent mootness when the violation in question may cause continuing harm and the court is capable of preventing such harm." *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 227 (5th Cir. 1998) (citation omitted). "As long as the parties maintain a 'concrete interest in the outcome' and effective

relief is available to remedy the effect of the violation, the size of the dispute is irrelevant." *Id.* (quoting *Firefighters Loc. Union No. 1784 v. Stotts*, 467 U.S. 561, 571 (1984)).

Plaintiffs appear to invoke this exception when they suggest in their most recent filing that their challenge remains live because the City's new ordinance still contains racial classifications and therefore still harms them. But it is incorrect to suggest that any policy that the City adopts that still contains remedial racial classifications would automatically "disadvantage [Plaintiffs] in the same fundamental way" as the old program. *Ne. Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 662 (1993).

Rather, the City's program, and the evidence supporting it, has "changed substantially." *Id.* n.3. Both the adoption of the MGT disparity study and the enactment of new race-neutral program elements amount to a "major revision" of the City's program on the level with the substantial statutory revisions that have previously been understood to a moot a constitutional Equal Protection challenge. *Id.* For this reason, Plaintiffs' claims are moot and any alleged continuing harm from the City's new program must be litigated anew on a new record.

Moreover, as explained above, Plaintiffs do not maintain a concrete interest in the specific relief that they are seeking in the operative complaint. The existing pleadings and record do not suffice to establish that Plaintiffs maintain Article III

standing to seek a permanent injunction of the City's revised MWSBE program. Plaintiffs' pleaded harms, if any, derive from the discontinued program, not from the City's revised ordinance. Accordingly, Plaintiffs' claims are moot and must be dismissed without prejudice, or Plaintiffs must be required to amend their pleading and develop a new record to challenge the City's new MWSBE program.

## CONCLUSION

For the reasons stated above, Plaintiffs' claims are moot and this case must be dismissed. If the Court chooses to retain jurisdiction to hear Plaintiffs' new challenge to the City's new program, Plaintiffs must be ordered to file an amended complaint and all scheduling orders and case deadlines associated with Plaintiffs' moot claims must be vacated.

By: */s/ Ben Stephens*
Ben Stephens
State Bar No. 24098472
SDTX Bar No. 2898153
ben.stephens@huschblackwell.com
Sandy Hellums-Gomez
State Bar No. 24036750
SDTX Bar No. 561314
sandy.gomez@huschblackwell.com

HUSCH BLACKWELL LLP
600 Travis St., Suite 2350
Houston, Texas 77002
Telephone: (713) 647-6800
Facsimile: (713) 647-6884

*/s/ Darah Eckert*
Darah Eckert

16

Senior Assistant City Attorney
State Bar No. 24007141
SDTX Bar No. 1890045
darah.eckert@houstontx.gov
Lori J. Yount
Senior Assistant City Attorney
State Bar No. 2209496
SDTX Bar No. 24084592
lori.yount@houstontx.gov

ARTURO G. MICHEL
CITY ATTORNEY
SUZANNE R. CHAUVIN
CHIEF, GENERAL LITIGATION SECTION
CITY OF HOUSTON LEGAL DEPARTMENT
P.O. Box 368
Houston, Texas 77001-368
900 Bagby, 4th Floor
Houston, Texas 77002
Telephone:  (832) 393-6219
Facsimile:   (832) 393-6259

**ATTORNEYS FOR THE
CITY OF HOUSTON**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been served upon the following on May 23, 2025, via the CM/ECF Filing system.

*/s/ Ben Stephens*
Ben Stephens

17