**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

LANDSCAPE CONSULTANTS OF TEXAS, INC., and METROPOLITAN LANDSCAPE MANAGEMENT, INC.,

Plaintiffs,

v.

CITY OF HOUSTON, TEXAS, and MIDTOWN MANAGEMENT DISTRICT,

Defendants.

Civil Action No. 4:23-cv-03516

**PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF HOUSTON'S MOTION TO ALTER OR AMEND THE JUDGMENT**

Defendant City of Houston lost this case after four days of trial. Dkt. 157. It now asks this Court for a do-over. Rule 59(e) provides no such opportunity. It is an "extraordinary remedy that should be used sparingly," not a vehicle for rehashing evidence, legal theories, or arguments raised before judgment. *Templet v. HydroChem, Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004); *see also Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (A Rule 59(e) motion "cannot be used to raise arguments which could, and should, have been made before judgment issued.").

Yet rehashing is all Houston offers. It identifies no new law, no new evidence, and no argument it lacked an opportunity to make. Instead, it asks the Court to reconsider the same authorities, the same MGT disparity study, and the same arguments Houston presented at summary judgment, during trial, and in its post-trial briefing—and this time enter judgment for Houston. Indeed, Houston boldly announces what it is doing: Section III is actually entitled, "As Set Forth in Houston's Motion for Summary Judgment …" Dkt. 163 at 22. It even admits that the material in that section appeared "in substantially the same form" before trial. *Id.* at n.2

Houston's disagreement with the Court's decision is not a basis for Rule 59(e) relief. Repackaging rejected arguments as "clear error" and an adverse judgment as a "manifest injustice" does not transform an appeal into a proper Rule 59(e) motion. Houston had every opportunity to make its case, the Court considered it, and

Houston lost. If Houston believes the Court got the law or the evidence wrong, it has a remedy: appeal. Rule 59(e) does not entitle Houston to keep litigating the same arguments until it gets a different answer. The motion should be denied.

## LEGAL STANDARD

Rule 59(e) is an "extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479. It only permits alteration of a judgment based on an intervening change in controlling law, newly discovered evidence, or a manifest error of law or fact. *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012). A "manifest error" is one that is "plain and indisputable, and that amounts to a complete disregard of the controlling law." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (citation omitted).

Just as important, Rule 59(e) is not an opportunity to litigate the case again. It is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 478–79. Nor may a party use it to raise arguments that "could, and should, have been made before the judgment issued." *Simon*, 891 F.2d at 1159. The Rule thus "favor[s] the denial of motions to alter or amend a judgment" where they merely recycle matters already available to the movant. *Southern Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

## ARGUMENT

### A. Rule 59(e) Does Not Permit Houston to Relitigate the Case It Lost

Houston satisfies none of Rule 59(e)'s narrow grounds for relief. It identifies no intervening change in controlling law, presents no newly discovered evidence, and identifies no manifest error or injustice. Dkt. 163 at 7. Instead, Houston repackages the same legal arguments and evidence it presented before judgment as "clear error" and "manifest injustice" and asks the Court to decide them again. Rule 59(e) does not permit that. *Templet*, 367 F.3d at 478–79.

Houston makes no effort to hide its blatant repetition. Its principal evidentiary argument appears under the heading, "*As Set Forth in Houston's Motion for Summary Judgment* ..." Dkt. 163 at 22 (emphasis added). A footnote then confirms that the materials were presented at summary judgment "in substantially the same form."[1] *Id.* at 22 n.2. Houston nevertheless spends the next seventeen pages asking the Court to reconsider that same MGT disparity study, the same disparity statistics, the same passive-participation theory, the same narrow-tailoring arguments, and the preposterous claim that Plaintiffs "did not even try"[2] to rebut Houston's evidence.

---

[1] Houston undersells its repetition. Houston litigated these same issues again during four days of trial and again in its post-trial briefing. Its Rule 59(e) motion thus represents at least a fourth attempt to persuade this Court of arguments the Court has already heard and rejected three prior times.

[2] Houston's assertion that Plaintiffs "did not even try" to rebut its evidence is difficult to take seriously. Houston brushes aside four days of trial that included testimony from Plaintiffs' own expert and a cross-examination of Houston's disparity study

*Id.* at 22–39. That is precisely the "rehashing [of] evidence, legal theories, or arguments" that *Templet* holds Rule 59(e) cannot be used to accomplish. 367 F.3d at 478–79.

The same is true of Houston's principal legal argument. Houston contends that *Croson*, *Shaw*, and their Fifth Circuit progeny—not *Harvard* and *Callais*—supply the governing standard for its race-conscious contracting program. Dkt. 163 at 8–22 (citing *City of Richmond v. J.A. Croson Co*., 488 U.S. 469 (1989); *Shaw v. Hunt*, 517 U.S. 899 (1996); *Students for Fair Admissions, Inc. v. President and Fellows of Harvard Coll.*, 600 U.S. 181 (2023); *Louisiana v. Callais*, 146 S.Ct. 1131 (2026)). But Houston already made that argument before judgment. Its post-trial proposed conclusions of law relied on *Croson* and the Fifth Circuit's remedial equal protection cases to argue that Houston needed to show only a "strong basis in evidence" that it had become a "passive participant in a system of racial exclusion." Dkt. 146 ¶ 56 (quoting *Vitolo v. Guzman*, 999 F.3d 353, 361 (6th Cir. 2021)). The Court considered that position and rejected it. Dkt. 157 ¶¶ 83–85. It did so expressly and unequivocally, concluding that that Houston's theory failed "[w]hether analyzed under *Harvard* ***or under the Fifth Circuit's longstanding remedial-equal-protection cases***." *Id.* ¶¶ 85, 89 (emphasis added).

---

author—both of which exposed fundamental defects in the methodology underlying Houston's evidence. Trial Tr. vol. 1, 128:14–200:4; vol. 3, 54:1–93:3.

Houston may believe that conclusion was wrong. Repeating its losing position a fourth time, however, does not make the Court's rejection of it a manifest error. Houston's disagreement with the Court's legal analysis is not the "plain and indisputable" error that "amounts to a complete disregard of the controlling law" required to alter this Court's judgment. *Guy*, 394 F.3d at 325 (citation omitted); *see also Bank One, Tex., N.A. v. Fed. Deposit Ins. Corp.*, 16 F.Supp.2d 698, 713 (N.D. Tex. 1998) ("'[M]anifest error' is an obvious mistake or departure from the truth.").

Nor does Houston identify any "manifest injustice." Its theory appears to be that simply *losing* is the manifest "injustice." That is not the standard. Houston had summary judgment, four days of trial, and post-trial briefing to present arguments and evidence. The Court considered them and ruled against Houston. Compare that ordinary course of litigation with circumstances courts have actually found sufficient to establish manifest injustice: a death-row prisoner denied federal habeas review through compounded errors of appointed counsel, *Jones v. Stephens*, 998 F.Supp.2d 529, 536 (N.D. Tex. 2014), or a party prevented from taking discovery until after summary judgment was entered against it, *Bender Square Partners v. Factory Mut. Ins. Co.*, No. 4:10-cv-4295, 2012 WL 1952265, at *4 (S.D. Tex. May 30, 2012). Houston suffered nothing remotely comparable. It complains only that the Court "announce[d] an incorrect, overly-restrictive standard" and therefore reached the

wrong result. Dkt. 163 at 7. That is an allegation of legal error, not manifest injustice. Houston was not denied its day in court; it had several. It simply lost.

Houston's requested relief confirms the nature of its motion. It asks the Court to withdraw its opinion and judgment, reconsider the MGT disparity study, decide issues the Court found unnecessary to reach, reject Plaintiffs' challenges to Houston's evidence, dissolve the injunction, and enter a take-nothing judgment for Houston. Dkt. 163 at 39. That is not correction of a manifest error. It is an appeal seeking complete reversal of the judgment, directed to the Court that entered it. But Houston does not get an appeal from this Court to itself. Rule 59(e) is not a substitute for appellate review.

### B. Houston Invents a Conflict Between *Harvard* and *Croson* That Does Not Exist

Even if Rule 59(e) permitted Houston to relitigate arguments the Court already rejected, Houston's claimed legal error rests on a false premise. Houston accuses this Court of interpreting *Harvard* and *Callais* to displace or overrule *Croson*, *Shaw*, and their Fifth Circuit progeny. Dkt. 163 at 9–12. This Court did no such thing. *Harvard* and *Callais* apply and clarify the same fundamental limitation on governmental use of race that runs through all of these decisions: before government may classify citizens by race to remedy discrimination, it must identify the discrimination being remedied with sufficient particularity to justify that extraordinary remedy.

That requirement comes directly from *Croson*. Government may remedy discrimination only after it has "identif[ied] that discrimination, public or private, with some specificity." *Croson*, 488 U.S. at 504. *Shaw* repeated the requirement almost verbatim: the discrimination must be "identified discrimination," not a "generalized assertion" of discrimination, and the government must possess a "strong basis in evidence" for concluding that race-conscious relief is necessary. 517 U.S. at 909–10; *see also Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995). The Fifth Circuit has applied the same rule. *Dean v. City of Shreveport* requires "strong evidence of past discrimination warranting the remedy." 438 F.3d 448, 455 (5th Cir. 2006). None of this required Houston to "self-incriminate."[3] Dkt. 163 at 13–17. Houston's "self-incrimination" argument is merely another take on its

[3] Houston's repeated invocation of "self-incrimination" is a caricature of the Court's holding, not a description of it. The Court required Houston to identify the discrimination that warrants its racial remedy; it did not order Houston to confess to legal wrongdoing. Houston has repeatedly represented in discovery, joint admissions, and through trial testimony that it possesses no evidence of specific discrimination by Houston. Dkt. 118-5, Jt. Admission 5–7; Trial Tr. vol. 2, 141:8–13; Trial Tr. vol. 3, 56:3–21. If those representations remain true, there is nothing from which Houston needs to "self-incriminate." If Houston now means to suggest otherwise—that evidence of its own discrimination actually exists but was not disclosed in discovery or is inconsistent with its sworn testimony at trial—that would raise problems considerably more serious than the one Houston invents to avoid the Court's judgment. And to the extent its "self-incrimination" theory is instead a new legal argument, it comes too late. *Simon*, 891 F.2d at 1159 (A Rule 59(e) motion "cannot be used to raise arguments which could, and should, have been made before the judgment issued.").

claim that *Harvard* does not apply to this public contracting case, and that is a claim this Court has already squarely denied. Dkt. 157 ¶¶ 84–85.

*Harvard* and *Callais* did not change that rule. They made its meaning clearer. In *Harvard*, the Court explained that a remedial interest capable of justifying racial classifications concerns "specific, identified instances of past discrimination that violated the Constitution or a statute." 600 U.S. at 207. And it cited *Shaw* for that proposition—the same *Shaw* that relied on *Croson*'s requirement of identified discrimination. *Id.* Likewise, *Callais* did not discard *Croson* or *Shaw* or *Adarand*; it relied on them. The Supreme Court again explained that racial classifications require an identified legal wrong rather than generalized racial disparities, this time in determining when race-conscious action may be justified to remedy a violation of the Voting Rights Act. *Callais*, 146 S.Ct. at 1152–53 (quoting *Croson*, 488 U.S. at 499). Houston's suggestion that these decisions somehow conflict with *Croson* thus gets the doctrine backwards. In *Harvard* and *Callais*, the Supreme Court was explaining *Croson*, not overruling it. Indeed, Houston itself emphasizes that *Harvard* and *Callais* repeatedly rely on *Croson* and *Shaw*. Dkt. 163 at 9–12. The constitutional principle did not change. What became clearer was what that principle demands.

This Court did not choose *Harvard* and *Callais* over *Croson* and *Shaw*. It read those decisions together. Its ultimate conclusion could hardly be clearer: "***Whether***

***analyzed under* Harvard *or under the Fifth Circuit's longstanding remedial-equal-protection cases***, Houston is required to identify concrete, particularized discrimination and demonstrate that its use of race is necessary to remedy that discrimination." Dkt. 157 ¶ 89 (emphasis added). Houston's motion therefore attacks a strawman, and invents a conflict the Court never recognized and Supreme Court precedent does not create.

Lastly, Houston's renewed reliance on its expert Andres Bernal fares no better. At trial, Bernal conceded that the MGT disparity study identified no specific constitutional or statutory violation and no specific discriminatory act by Houston. Trial Tr. vol. 3, 56:10–21. Cross-examination then exposed what lay beneath his topline disparity numbers: elementary assumptions masquerading as proof of discrimination, methodological choices without a defensible foundation, and comparisons that ignored whether firms were actually qualified, willing, and able to compete for the same work. Trial Tr. vol. 3, 55:23–93:3. Houston presented Bernal as its expert, and he was exposed—the Court saw Bernal's methodology tested rather than simply asserted. *Id*. It did not survive the test. Dkt. 157 ¶ 88. Rule 59(e) does not permit Houston to put Bernal's conclusions back on the stand after cross-examination revealed the faulty methodology beneath them.

***

Houston's motion thus ends where it began. No new law. No new evidence. No overlooked argument. No manifest error. Just the same authorities, the same

MGT disparity study, and the same arguments Houston presented before judgment and lost. Houston is free to tell the Fifth Circuit that this Court got it wrong. Rule 59(e) does not entitle Houston to keep pounding the table until this Court changes its mind.

## CONCLUSION

For the foregoing reasons, Houston's Motion to Alter or Amend the Judgment should be denied.

DATED: August 27, 2026.

Respectfully submitted,

s/ Erin E. Wilcox
Erin E. Wilcox, *Attorney-in-Charge*
Cal. Bar No. 337427
S.D. Tex. Bar No. 3369027
Joshua P. Thompson, *Of Counsel**
Cal. Bar No. 250955
PACIFIC LEGAL FOUNDATION
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Fax: (916) 419-7747
ewilcox@pacificlegal.org
jthompson@pacificlegal.org

Laura D'Agostino, *Of Counsel**
D.C. Bar. No. 241868
Dean McGee, *Of Counsel**
N.Y. Bar No. 5135884
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
Fax: (916) 419-7747
ldagostino@pacificlegal.org
dmcgee@pacificlegal.org

**Pro Hac Vice*

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2026, I served this document on all counsel of record via the Court's electronic filing system.

s/ *Erin E. Wilcox*
Erin E. Wilcox
Pacific Legal Foundation